# EXHIBIT A

# PART 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC, and GOOGLE INC.,<br><br>Defendants. | C.A. No. 12-1701-RGA |

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT SPECTRUM L.P., SPRINT COMMUNICATIONS COMPANY L.P., and GOOGLE INC.,<br><br>Defendants. | C.A. No. 12-1702-RGA |

| | |
|---|---|
| CALLWAVE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON SERVICES CORP., CELLCO PARTNERSHIP, D.B.A. VERIZON WIRELESS, and GOOGLE INC.,<br><br>Defendants. | C.A. No. 12-1704-RGA |

-1-

CWF00000036614

|                                        |                              |
|----------------------------------------|------------------------------|
| BROADSOFT, INC.,                       |                              |
| Plaintiff,                             |                              |
| v.                                     | Case No. 1:13-cv-00711-RGA   |
| CALLWAVE COMMUNICATIONS, LLC,          |                              |
| Defendant.                             |                              |

## DEFENDANTS' PRELIMINARY INVALIDITY CONTENTIONS RELATING TO THE CALL PROCESSING TRACK

Pursuant to United States District Court for the District of Delaware Default Standard for Discovery Paragraph 4(d) and the Scheduling Order in these matters, Defendants Google, Inc. ("Google"), Verizon Services Corp. and Cellco Partnership d.b.a. Verizon Wireless (collectively "Verizon"), Sprint Spectrum L.P. and Sprint Communications Company L.P. (collectively "Sprint"), ("Sprint"), and Broadsoft Inc. ("Broadsoft") (collectively "Defendants"), make the following disclosures to Plaintiff, CallWave Communications, LLC ("CallWave").

The disclosures provided herein are based on information reasonably available to Defendants at the present time. Defendants' investigation of their defenses is ongoing, as is discovery in this action. Defendants reserve the right to amend and/or supplement these disclosures as additional information becomes available and/or additional analysis is performed, including without limitation in connection with claim construction proceedings or further discovery. These disclosures are provided without the benefit of the Court's claim construction or knowledge of CallWave's claim construction positions, and with the understanding that a range of claim construction positions may potentially be advanced by the parties and adopted by the Court. These disclosures therefore should not be deemed to admit the correctness or

CWF00000036615

incorrectness of any construction of any limitation of any Asserted Claim. Moreover, particular constructions advocated by CallWave or adopted by the Court may give rise to additional defenses not reflected herein, including, for example, defenses under 35 U.S.C. § 112. Defendants reserve the right to assert such defenses in the future. Furthermore, by making these disclosures, Defendants do not concede the adequacy of CallWave's Preliminary Infringement Contentions or that any assertion or construction inherent in those infringement contentions is correct.

Pursuant to Paragraph 4(d), Defendants are producing a copy of the prior art references identified herein, bearing Bates numbers DEF-CP-INV-00000001 to DEF-CP-INV-00004710.

## I.    Invalidity under 35 U.S.C. §§ 102 and 103

The following prior art references, alone and/or in combination, anticipate and/or render obvious one or more Asserted Claims of the Asserted Patents,[1] as identified in CallWave's Preliminary Infringement Contentions.[2]

In particular, the table below identifies patents, patent applications, and publications that are invalidating prior art under at least 35 U.S.C. § 102 for one or more claims of each of the Asserted Patents:

---

[1] CallWave's Preliminary Infringement Contentions assert one or more claims of each of the following patents ("Asserted Patents") against one or more of the Defendants: United States Patent Nos. 7,822,188 ("'188 pat."), 8,064,588 ("'588 pat."), 8,351,591 ("'591 pat. "), 7,636,428 ("'428 pat. "), 7,555,110  ("'110 pat. ") 8,325,901 ("'901 pat. "), and 7,397,910 ("'910 pat. ").

[2] These invalidity contentions relate to all asserted patents in the Call Processing Track but not all of such patents are asserted against every defendant. Therefore, these invalidity contentions should be deemed to apply only to the extent that the patents are specifically asserted against any particular defendant.

CWF00000036616

CWF0000036617

| INVALIDATING REFERENCES UNDER §§ 102 AND/OR 103 | | | | | | | |
|---|---|---|---|---|---|---|---|
| REFERENCES | '188 pat. | '588 pat. | '591 pat. | '428 pat. | '110 pat. | '901 pat. | '910 pat. |
| U.S. Pat. No. 6,816,481 ("Adams") | X | X | | X | | | |
| U.S. Pat. No. 6,430,282 ("Bannister") | X | | | | | | |
| U.S. Pat No. 6,122,347 ("Borland") | | | | X | | X | X |
| U.S. Pat. No. 7,224,774 ("Brown") | X | X | | X | X | X | X |
| A Proposal for Internet Call Waiting Service using SIP ("Brusilovsky") | X | X | | X | | | |
| U.S. Pat. App. 2002/0067816 ("Bushnell") | | | X | | | | |
| U.S. Pat No. 5,432,845 ("Burd") | X | X | | | | | |
| The CallManager system ("CallManager") | | | | X | | | |
| U.S. Pat. No. 6,404,860 (Casellini) | | X | | X | | | |
| U.S. Pat. No. 5,946,381 ("Danne") | X | X | | X | | | |
| U.S. Pat. No. 6,366,661 ("Devillier") | X | X | | X | | | |
| U.S. Pat. No. 5,991,394 ("Dezonno") | X | | | | | | |
| U.S. Pat. No. 4,723,273 ("Diesel") | | X | | | | | |
| U.S. Pat No. 6,477,246 ("Dolan") | | X | | X | | | |
| U.S. Pat. No. 6,144,667 ("Doshi") | X | | | | | | |
| U.S. Pat. No. 7,190,773 ("D'Silva") | X | X | | X | | | |
| U.S. Pat No. 7,242,680 ("Gallant") | X | | | | | | |

-4-

CWF0000036618

| INVALIDATING REFERENCES UNDER §§ 102 AND/OR 103 | | | | | | | |
|---|---|---|---|---|---|---|---|
| REFERENCES | '188 pat. | '588 pat. | '591 pat. | '428 pat. | '110 pat. | '901 pat. | '910 pat. |
| U.S. Pat. App. Pub. No. 2002/0176404 ("Girard") | X | X | X | X | | | |
| U.S. Pat No. 6,031,896 ("Gardell") | | X | | X | X | X | X |
| U.S. Pat No. 6,389,117 ("Gross") | X | | | | | | |
| U.S. Pat No. 7,020,255 ("Gruchala") | X | | X | | | | |
| U.S. Pat No. 5,471,519 ("Howe") | | X | | X | | | |
| U.S. Pat No. 6,693,897 ("Huang") | X | X | X | X | | | |
| U.S. Pat No. 5,475,748 ("Jones") | X | X | X | | X | | |
| U.S. Pat No. 6,690,672 ("Klein") | X | | | | | | |
| U.S. Pat. No. 6,366,659 ("Koponen") | X | | X | | | | |
| U.S. Pat No. 5,802,160 ("Kugell") | X | X | X | | | | |
| U.S. Pat No. 5,903,636 ("Malik") | X | | X | | | | |
| U.S. Pat. No. 5,862,208 ("McLampy") | | | | X | X | X | X |
| U.S. Pat. No. 7,245,612 ("Petty '612") | X | X | X | X | X | X | X |
| U.S. Pat. No. 6,337,858 ("Petty '858") | X | | | | | | |
| Rizzetto Catania, A Voice Over IP Service Architecture for Integrated Communications ("Rizzetto & Catania") | | X | | X | | | |
| U.S. Pat. No. 6,137,870 ("Scherer") | X | | X | | | | |
| U.S. Pat. No. 6,130,935 ("Shaffer") | X | | X | | | | |

| INVALIDATING REFERENCES UNDER §§ 102 AND/OR 103 | | | | | | | |
|---|---|---|---|---|---|---|---|
| REFERENCES | '188 pat. | '588 pat. | '591 pat. | '428 pat. | '110 pat. | '901 pat. | '910 pat. |
| U.S. Pat No. 5,487,111 ("Slusky") | X | | | | | | |
| U.S. Pat. No. 5,784,444 ("Snyder") | X | | X | | | | |
| U.S. Pat. No. 5,864,612 ("Strauss") | X | | X | | | | |
| U.S. Pat No. 5,901,209 ("Tannenbaum") | X | | X | | | | |
| U.S. Pat. No. 6,091,808 ("Wood") | X | | X | | | | |
| U.S. Pat. No. 6,574,328 ( "Wood '328") | X | X | | X | | | |
| U.S. Pat. No. 7,194,080 ("Worsham") | X | | | | | | |

-6-

CWF0000036619

To the extent any of the above cited references do not teach an element of any Asserted Claim, each such reference in combination with the knowledge of one of ordinary skill and/or one or more of the references identified within these contentions, renders the respective claim element obvious.

Attached hereto, and identified in the table below, are Exhibits containing exemplary invalidity charts describing where individual elements of the Asserted Claims for each of the Asserted Patents may be found in certain prior art references that Defendants contend are invalidating under 35 U.S.C. § 102 and/or under 35 U.S.C. § 103 (alone or in combination).  The charts include representative examples of where each element may be found in a given prior art reference and are not intended to be an exhaustive description of each instance of an element in a given prior art reference.[3]

|  | '188 pat. | '588 pat. | '591 pat. | '428 pat. | '110 pat. | '901 pat. | '910 pat. |
|---|---|---|---|---|---|---|---|
| EXHIBIT RANGE | A1 – 31 | B1 – B19 | C1 – C14 | D1-D18 | E1-E5 | F1-F4 | G1-G5 |

In response to the Defendants' discovery requests, CallWave has not identified any evidence, and has not produced any documents, related to conception or reduction to practice of the inventions claimed in the Asserted Patents.  The Defendants reserve the right to amend and/or supplement these contentions in light of any additional discovery with respect to the priority date of each of the Asserted Patents, including any claim of priority by CallWave.  The Defendants further contend that the earliest priority date that the Asserted Patents are entitled to are the filing dates of the patent applications that directly matured into the Asserted Patents and

---

[3] Any reference to figures and drawings in the prior art references should also be understood to refer to the accompanying text from the specification describing the figures or drawings, and vice versa.

CWF00000036620

that the Asserted Patents are not entitled to the priority date of any provisional applications or continuation-in-part patents listed on the Asserted Patents because the provisional applications and/or continuation-in-part patents do not provide written disclosure and/or enablement support for the Asserted Claims of the Asserted Patents.

## II.    Invalidity under 35 U.S.C. § 103

The prior art references identified in these contentions, standing alone and/or in combination with each other, render the Asserted Claims obvious.  It would have been obvious to one of ordinary skill in the art to combine one or more of the prior art references herein with each of the other references and/or his or her own knowledge to arrive at the claimed invention.

Each combination of references would have produced predictable results, and each combination at most would simply represent a known alternative to one of ordinary skill in the art.  *See KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398, 414-18 (2007) (rejecting the Federal Circuit's "rigid" application of a requirement of teaching, suggestion, or motivation to combine and instead applying an "expansive and flexible" approach).  A person of ordinary skill is "a person of creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420-21.

Nonetheless, a person of ordinary skill in the art at the time of the alleged invention of the Asserted Patents would have been motivated to combine each of the prior art references identified herein.  The motivation and/or incentive to combine these references comes from many sources, including, but not limited to, the known, published prior art references and products themselves, the knowledge and common sense of those of ordinary skill in the art, the common field of technology of the references, the teachings in the references directed to solving

CWF00000036621

the same problem, and the common goal of addressing the same customer requirements for call processing features. These prior art references concern communications networks designed to provide telephony services and call features. Certain of the references cite and/or relate to the same technologies and technological references, particularly the same telecommunications protocols and standards (e.g., SS7, SIP), work performed by the same standards bodies (e.g., IETF), and the same concepts (e.g., call bridging, call forwarding, call forking, call transfer, call screening, voice screening, telephone subscriber profiles, Voice over IP, firewalls). Moreover, many of these references cross-reference and discuss one another, further illustrating the close technical relationship among this group of references.

In addition, the identified prior art references each teach a number of steps to facilitate telecommunications functions. To the extent that CallWave argues that any identified reference teaches the steps of an Asserted Claim in an alternate order, and therefore fails to anticipate that Asserted Claim, such a reference would still render the Asserted Claim obvious. In addition, a person of ordinary skill in the art would be aware that the steps of the prior art reference could be rearranged in the same manner as those of the Asserted Claim, and would have the knowledge necessary to rearrange these steps accordingly. Thus, to the extent that CallWave argues that any of the identified references fail to teach the steps of any Asserted Claim and therefore do not anticipate, such a claim would be obvious to a person of ordinary skill in the art.

The Asserted Claims also make use of telephony features and related technologies that were well known in the field of telephony at the time of alleged invention. As discussed above, a person of ordinary skill in the art would have thought to combine any of these technologies or techniques with existing telephony systems to achieve predictable results. A list of additional references, including art that teach these features, and that could be combined by a person of

CWF00000036622

ordinary skill in the art with any of the references in Section I above, is provided below.

Use of a Firewall

- Tanenbaum, Computer Networks (1996)

- Henning Schulzrinne, SIP - Signaling for Internet Telephony and Conferencing (1998)

Insertion of Phone Address

- U.S. Pat No. 6,366,659 ("Kopenen")

- U.S. Pat No. 6,603,846 ("Cannon")

Real-Time Screening / Voice Screening

- U.S. Pat No. 5,862,208 ("MeLampy")

- U.S. Pat No. 5,894,504 ("Alfred")

- U.S. Pat No. 6,031,896 ("Gardell")

- US 7,245,612 ("Petty")

Call Redirection Instruction

- Henning Schulzrinne, Signaling for Internet Telephony (1998)

- Dalgic et al., True Number Portability and Advanced Call-Screening in a SIP-Based IP Telephony System (1999)

- U.S. Pat. No. 5,502,762 ("Andrew")

- U.S. Pat. No. 6,243,398 ("Kahane")

- Kahane, Call Management Agent System Specification (1996)

Use of SS7 for Signaling

- Tarek N. Saadawi, Fundamentals of Telecommunication Networks (1994)

- M. Clark, Networks and Telecommunications – Design and Operation (1991)

Use of VoIP

CWF00000036623

- Intelligent Internet – Convergence of Internet and Intelligent Network (Telecordia Technologies)

- M.I.T. Lincoln Laboratory Network Speech Systems Technology Program, Annual Report to the Defense Communications Agency, February 1982

- M.I.T. Lincoln Laboratory Network Speech Systems Technology Program, Annual Report to the Defense Communications Agency, February 1984

- Clifford J. Weinstein et al., Experience with Speech Communication in Packet Networks (IEEE Journal on Selected Areas in Communication), December 1983

- NVP, NVP-II, ST, and ST-II protocols

- Schulzrinne, Henning. Voice communication across the Internet: A network voice terminal. University of Massachusetts at Amherst, Department of Computer and Information Science, 1992

- Witkowsky, IP Telephone Design and Implementation Issues (1998)

- Phone Doubler – A step towards integrated Internet and telephone communities (1997)

- Kahane, Call Management Agent System Specification (1996)

Use of Session Initiation Protocol (SIP)

- draft-ietf-mmusic-sip-01.txt (1997)

- RFC 2543, SIP: Session Initiation Protocol (1999)

- draft-rosenberg-sip-3pcc-03.txt (2001)

- http:// tools.ietf.org/html/draft-biggs-sip-replaces-01 (2001)

- https://tools.ietf.org/html/draft-ietf-sip-refer-00 (2001)

- U.S. Pat. No. 6,678,735 ("Orton")

- Schulzrinne, Henning G., and Jonathan D. Rosenberg. "The session initiation protocol: Providing advanced telephony services across the internet." Bell Labs Technical Journal 3.4 (1998): 144-160.

- Wedlund, Elin, and Henning Schulzrinne. "Mobility support using SIP." Proceedings of the 2nd ACM international workshop on Wireless mobile multimedia. ACM, 1999.

- Schulzrinne, Henning, and Jonathan Rosenberg. "Internet telephony: Architecture

-11-

CWF00000036624

and protocols–an IETF perspective." Computer Networks 31.3 (1999): 237-255

- Inmaculada Espigares del Pozo, "An Implementation of the Internet Call Waiting Service using SIP," Helsinki University of Technology, December 1999

Additional Prior Art

- U.S. Pat. No. 6,625,258 ("Ram")

- C. Rheinart, WEB-Based Enhanced Services, Intelligent Networks and Intelligence in Networks, Chapman & Hall 1997 ("Rheinart")

- U.S. Pat. No. 5,283,824 ("Shaw")

- U.S. Pat. No. 7,213,073 ("Slavin")

- U.S. Pat. No. 6,445,694 ("Swartz")

- U.S. Pat. No. 6,937,713 ("Kung")

- U.S. Pat. No. 6,430,289 ("Liffick")

- U.S. Pat. No. 7,526,076 ("Kosh")

- U.S. Pat. No. 4,723,273 ("Diesel")

- U.S. Pat. No. 5,703,930 ("Miska")

- U.S. Pat. No. 5,353,331 ("Emery")

- U.S. Pat. No. 4,901,340 ("Parker")

## III.    Additional References

In addition to the prior art listed above, additional prior art references may be used to show the state and evolution of technology at the time of the alleged inventions and may be relevant to the validity of the Asserted Claims depending on the claim construction, infringement, and other positions taken by CallWave.  Exemplary additional references included in Defendants' production are as follows:

- Bellamy, J., Digital Telephony (1991)

- Harju, J., Intelligent Networks, Proceedings on the IFIP on Intelligent Networks (1994)

CWF00000036625

- Stallings, W., ISDN and Broadband ISDN (1992)

- ETS 300 056, "Integrated Services Digital Network (ISDN); Call Waiting (CW) supplementary service description," European Telecommunications Standards Institute, October 1991.

- ETS 300 092-1, "Integrated Services Digital Network (ISDN); Calling Line Identification Presentation (CLIP) supplementary service; Digital Subscriber Signalling System No. one (DSS1) protocol; Part 1: Protocol specification," European Telecommunications Standards Institute, March 1992.

- ETS 300 102-1, "Integrated Services Digital Network (ISDN); User-network interface layer 3 Specifications for basic call control," European Telecommunications Standards Institute, December 1990.

- ETS 300 369-1, "Integrated Services Digital Network (ISDN); Explicit Call Transfer (ECT) supplementary service Digital Subscriber Signalling System No. one (DSS1) protocol Part 1: Protocol specification," European Telecommunications Standards Institute, May 1995.

## IV.   Invalidity under 35 U.S.C. §§ 112

Defendants disclose the following contentions of invalidity under 35 U.S.C. § 112[4]:

### A.    U.S. Patent No. 7,822,188

- Claim 1 of the '188 patent is invalid as indefinite, as the phrase "a plurality of phone addresses for the subscriber associated with at least one network selected from the group including wireline network, a wireless network, and/or an Internet network" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 1, 11, and 34 of the '188 patent are invalid as indefinite, as the phrase "computer readable memory" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

---

[4] For each basis of invalidity under 35 U.S.C. § 112 that Defendants identify with respect to an independent claim, Defendants contend that the same basis of invalidity extends to each claim depending from the independent claim as well.

CWF00000036626

- Claim 1 of the '188 patent is invalid as indefinite, as the term "the subscriber" lacks antecedent basis.

- Claim 1 of the '188 patent is invalid as indefinite, as the phrases "participating at the call processing system in a first call with the subscriber" and "participating at the call processing system in a second call with the subscriber" fail to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 1 of the '188 patent is invalid as indefinite, as the phrase "the first phone address" fail to inform a person of skill in the art about the scope of the invention with reasonable certainty, and lacks antecedent basis.

- Claim 1 of the '188 patent is invalid as indefinite, as the phrase "wherein the first call is associated with a second phone address" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 1 of the '188 patent is invalid as indefinite, as the terms "the first called party" and "the second called party" lack antecedent basis.

- Claims 1 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to "participating … in a second call," "placing a second outcall," and "bridging the second call and the second outcall."

- Claim 1 of the '188 patent is invalid as indefinite, as the phrases "placing a first outcall from a call processing system to the first called party" and "placing a second outcall from a call processing system to the second called party" fail to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 1 of the '188 patent is invalid as for lack of written description and enablement for failing to provide sufficient disclosure with respect to "placing a first outcall from a call

-14-

CWF00000036627

processing system to the first called party" and "placing a second outcall from a call processing system to the second called party."

- Claim 1 of the '188 patent is invalid as indefinite, as the phrases "wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall" and "wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall" fail to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 3 of the '188 patent is invalid as indefinite, and for lack of written description and enablement, as the "first call" of claim 3 cannot be the "first call" of claim 1.

- Claim 9 of the '188 patent is invalid as indefinite, as the phrase "wherein the first outcall is placed over a wireless network" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 9 of the '188 patent is invalid for lack of written description as the phrase "wherein the first outcall is placed over a wireless network" lacks adequate supporting disclosure.

- Claim 10 of the '188 patent is invalid as indefinite, as the phrase "placed over a switched circuit telephone network" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 11 and 34 of the '188 patent are invalid for lack of written description to the extent that CallWave contends that these claims require receiving an incoming call during the outgoing call recited in the associated independent claim.

CWF00000036628

- Claim 11 of the '188 patent is invalid as indefinite, as the phrase "at least one subscriber specified rule" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 12 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method by which "software [is] used to enable a firewall to be penetrated by a call-related communication."

- Claims 12 and 13 of the '188 patent are invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method for the phrases "providing the subscriber with software" and "providing software."

- Claims 12 and 13 of the '188 patent are invalid as indefinite, as the phrases "providing the subscriber with software" and "providing software" fail to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 13 of the '188 patent is invalid as indefinite, as the phrase "software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 13 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method by which "software … adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall."

- Claim 14 of the '188 patent is invalid as indefinite, to the extent that CallWave contends that "a call transfer request from the subscriber … associated with a transfer destination," relates to transfer to more than one phone number, as under such a reading, the plain language of the

CWF00000036629

claim would fail to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 14 of the '188 patent is invalid as indefinite, as the phrase "while the first outcall is in process" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 15 of the '188 patent is invalid for lack of written description as the phrase "wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address" lacks adequate supporting disclosure.

- Claim 16 of the '188 patent is invalid as indefinite, as the phrase "wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 16 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method by which "wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber."

- Claim 17 of the '188 patent is invalid as indefinite, as the phrase "the phone address of the call processing system" lacks antecedent basis.

- Claim 18, 19, and 20 of the '188 patent are invalid as indefinite, as the phrase "the user telephone" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty, and lacks antecedent basis.

CWF00000036630

- Claim 20 of the '188 patent is invalid as indefinite, as the phrase "Internet protocol phone" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 20 of the '188 patent is invalid for lack of written description as the phrase "the user telephone is an Internet protocol phone" lacks adequate supporting disclosure.

- Claim 25 of the '188 patent is invalid under §112 ¶4, and indefinite to the extent the "communication device" is broader than the "telephone" of claim 17 from which it depends.

- Claim 25 of the '188 patent is invalid for lack of written description to the extent CallWave contends that "receiving an indication from the user as to which communication device the first outcall is to be placed" requires an indication at the time of the first call request.

- Claim 26 of the '188 patent is invalid as indefinite, as the phrase "the plurality of phone addresses" lacks antecedent basis.

- Claim 26 of the '188 patent is invalid as indefinite, as the phrase "to be connected" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 26 of the '188 patent is invalid as indefinite, as the phrase "computer readable memory" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 27 of the '188 patent is invalid for lack of written description, as the phrase "second outcall" lacks adequate supporting disclosure.

- Claim 27 of the '188 patent is invalid as indefinite, as the phrase "causing, at least in part, a user communication device … to be connected" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

CWF00000036631

- Claims 27 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to "receiving … an indication that the user want[]s to establish a call with a second party," "placing a second outcall," and "causing … a user communication device … to be connected to the second outcall."

- Claim 29 of the '188 patent is invalid as indefinite, as term "the first communication device" lacks antecedent basis.

- Claim 32 of the '188 patent is invalid for lack of written description as the phrase "first outcall is placed over a wireless network" lacks adequate supporting disclosure.

- Claim 34 of the '188 patent is invalid as indefinite, as the phrase "the calling party call" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 34 of the '188 patent is invalid as indefinite, as the phrase "computer readable memory" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 37 of the '188 patent is invalid as indefinite, as the term "in process" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 40 of the '188 patent is invalid as indefinite, as the term "a subscriber" lacks antecedent basis, and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 40 of the '188 patent is invalid as indefinite, as the phrase "Internet protocol proxy" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

CWF00000036632

- Claim 40 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method by which "receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller."

- Claim 40 of the '188 patent is invalid as indefinite, as the phrase "receiving a call connect instruction from the subscriber" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 40 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method by which "receiving a call connect instruction from the subscriber."

- Claim 40 of the '188 patent is invalid as indefinite, as the phrase "instructing the call processing system to connect the first call to a third communication device" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 40 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method by which "instructing the call processing system to connect the first call to a third communication device."

- Claim 40 of the '188 patent is invalid as indefinite, as the phrase "using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 40 of the '188 patent is invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to the method by which "using two stage

CWF00000036633

calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension."

- Claim 41 of the '188 patent is invalid as indefinite, as the phrase "converts SS7 signal to SIP protocol" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 41 of the '188 patent is invalid for lack of written description and enablement, as the phrase "converts SS7 signal to SIP protocol" lacks adequate supporting disclosure.

- Claim 43 of the '188 patent is invalid for lack of written description and enablement to the extent that CallWave contends that the "DTMF tones" need not be directly received as DTMF tones at the call processing system.

        B.      U.S. Patent No. 8,351,591

- Claim 1 of the '591 patent is invalid as indefinite, as the phrase "computer readable memory" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 1, 9, and 17 of the '591 patent are invalid for lack of written description and enablement for failing to provide sufficient disclosure with respect to "participating … in a second call," "placing a second outcall," and "causing the second call and the second outcall … to be bridged"

- Claims 1, 9, and 17 of the '591 patent are invalid for lack of written description and enablement because the term "second outcall" lacks supporting disclosure.

- Claims 4 and 12 of the '591 patent are invalid for lack of written description and enablement because the phrase "first outcall is placed over a wireless network" lacks supporting disclosure.

CWF00000036634

- Claims 7 and 15 of the '591 patent is invalid for lack of written description as the phrase "wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address" lacks adequate supporting disclosure.

    C.    <u>U.S. Patent No. 8,064,588</u>

- Claims 1, 8, and 12 of the '588 patent are invalid for lack of written description and enablement to the extent that CallWave contends that "receiving a call redirection instruction" does not require redirection to a specific telephone or end device.

- Claims 1, 8 and 12 of the '588 patent are invalid as indefinite, as the term "a third call" lacks antecedent basis and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 1, 8, and 12 of the '588 patent is invalid as indefinite, as the phrase "receiving a call redirection instruction" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 3 of the '588 patent is invalid as indefinite, as the phrase "wherein the personal number assigned to the called party is a wireless telephone number" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 4 of the '588 patent is invalid as indefinite, as the phrase "is not a number associated with the telephonic destination" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 5 and 9 of the '588 patent are invalid as indefinite, as the phrase "[enabling, enable] the called party to audibly listen to the caller leave a message via the connected call" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

CWF00000036635

- Claims 6 and 10 of the '588 patent are invalid as indefinite, and for lacking written description and enablement, as the phrase "[enabling, enable] the caller to speak to the caller via the connected call" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty and lacks adequate supporting disclosure.

- Claims 7, 11, and 12 of the '588 patent are invalid as indefinite, and for lacking written description and enablement, to the extent CallWave contends that the phrase "third call" refers to a call placed to more than one telephone or endpoint.

- Claims 7 and 11 of the '588 patent are invalid as indefinite, as "the second call" lacks antecedent basis.

- Claim 8 of the '588 patent is invalid for lack of written description and enablement, to the extent CallWave contends that the phrase "place a third call from the computer system" refers to a call placed to more than one telephone or endpoint.

    D.    U.S. Patent No. 7,636,428

- Claim 1 of the '428 patent is invalid as indefinite, as the phrase "opening a channel over the Internet" lacks adequate supporting disclosure and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 1 of the '428 patent is invalid as indefinite, and for lack of written description and enablement, as the phrase "causing the caller to be connected to at least one of a plurality of potential destinations associated with the called party" lacks adequate supporting disclosure and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 1 of the '428 patent is invalid as indefinite, and for lack of written description and enablement, as the phrase "placing an outcall from the call processing system" lacks

CWF00000036636

adequate supporting disclosure and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 1, 6, and 56 of the '428 patent are invalid as indefinite, and for lacking written description and enablement, to the extent CallWave contends that the phrase "the Internet" is anything other than the public Internet.

- Claims 1 and 6 are invalid as indefinite, as the phrase "status information related to the bridged first call and outcall" lacks adequate supporting disclosure and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 6, 10, and 16 of the '428 patent are indefinite, as the phrase "signaling information having at least a selected portion of the phone number of the caller" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 1, 6, 22, 42, and 63 of the '428 patent are indefinite, as the phrases "transmitting the speech … in substantially real time," "transmitting in substantially real time . . . at least a first portion of the voice communication," and "streaming the voice message … in substantially real time" fail to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 6 is invalid as indefinite, and for lacking written description and enablement, as the phrase "transmitting the speech in substantially real time to the destination and/or over the Internet to the networked computer" lacks adequate supporting disclosure and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 6 and 10 of the '428 patent are invalid as indefinite, as the phrase "at least partly in response to the [received] instruction" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

CWF00000036637

- Claims 10 and 16 of the '428 patent are invalid as indefinite, as the term "the switched network" lacks antecedent basis and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 16 of the '428 patent is indefinite, as the term "the phone number" lacks antecedent basis and fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 22, 56, and 63 of the '428 patent are invalid as indefinite, as the phrase "at least partly in response to the receiving the call acceptance instruction" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 22, 56 and 63 of the '428 patent are invalid as indefinite, as the phrase "answering the first call at the call processing center" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 22, 56 and 63 of the '428 patent are invalid as indefinite, as the phrase "call acceptance instruction" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 22, 56, and 63 of the '428 patent are invalid as indefinite to the extent that CallWave contends that "automatically muting a return talk path to the caller" does not require an affirmative step of muting.

- Claims 28 and 63 of the '428 patent are invalid as indefinite, as the phrase "the caller call" lacks antecedent basis.

- Claim 42 of the '428 patent is invalid as indefinite, as the phrase "the call" lacks antecedent basis.

CWF00000036638

- Claim 42 of the '428 patent is invalid as indefinite, as the phrase "at least partly in response to the first command" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 51 of the '428 patent is invalid as indefinite, as the phrase "by selecting a telephone key" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 53 of the '428 patent is invalid for lack of written description to the extent CallWave contends that the phrase "switched network" is anything other than Public Switched Telephone Network (PSTN).

     E.    <u>U.S. Patent No. 7,555,110</u>

- Claims 19 of the '110 patent is invalid as indefinite, as the phrase "transmitting … in substantially real time" and fail to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 19 and 22 of the '110 patent are invalid as indefinite to the extent that CallWave contends that "a first alternate destination" / "the first alternate destination" does not refer to a specific telephone or endpoint.

- Claim 24 of the '110 patent is invalid as indefinite to the extent that CallWave contends that "a phone number assigned by the call processing system to the called party" extends to any number assigned to the called party, regardless of whether it has been assigned "by the call processing system."

- Claim 25 of the '110 patent is invalid as indefinite as the phrase "the first alternate destination is associated with a virtual phone number" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

CWF00000036639

- Claims 30 and 33 of the '110 patent are invalid as indefinite, and for lacking written description and enablement, to the extent CallWave contends that the phrase "POTs phone" is not a phone that connects directly to the telephone network through analog means.

    F.    <u>U.S. Patent No. 8,325,901</u>

- Claims 1 and 18 of the '901 patent are invalid as indefinite, as the phrase "transmitting, in substantially real-time" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 1 and 18 of the '901 patent are invalid as indefinite, as the phrase "transmitting . . . at least a portion of the voice communication" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 25 of the '901 patent is invalid as indefinite, as the phrase "at least a portion of the voice communication from the calling party to a telephonic device" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

    G.    <u>U.S. Patent No. 7,397,910</u>

- Claim 1 of the '910 patent is invalid as indefinite, and for lacking written description and enablement, to the extent CallWave contends that the phrase "the Internet" is anything other than the public Internet.

- Claim 1 of the '910 patent is invalid as indefinite, and lack of written description and enablement, to the extent CallWave contends "in response to the received instruction, causing the first entity call to be selectively connected to one of plurality of potential second entity terminal destinations" refers to an instruction to connect to more than one telephone or endpoint.

CWF00000036640

- Claim 1 of the '910 patent is invalid as indefinite, as the phrase "least partly in response to the received instruction" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 3 and 5 of the '910 patent is invalid as indefinite, and for lack of written description, to the extent that CallWave contends the phrase "local switch" is anything other than a "local exchange switch."

- Claim 1 and 18 of the '910 patent are invalid as indefinite, as the phrase "transmitting … at least a portion of the voice communication" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claim 7 of the '910 patent is invalid as indefinite, as the phrase "at least a portion of the signaling information" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

- Claims 7, 16, 24, 31, and 41 of the '910 patent are invalid for lacking written description and enablement of real-time call screening.

- Claims 7, 16, 24, 26, 31, 36, 37, and 38 of the '910 patent are invalid as indefinite, as the phrase "in substantially real-time" fails to inform a person of skill in the art about the scope of the invention with reasonable certainty.

CWF00000036641

Dated: June 23, 2014

MORRIS, NICHOLS, ARSHT &TUNNELL
LLP

/s/  K. Padmanabhan
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
*Attorneys for Defendant Google Inc.*

OF COUNSEL:

James F. Hurst
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601-5600
(312) 558-5600
jhurst@winston.com

Scott R. Samay
Peter Lambrianakos
Krishnan Padmanabhan
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
ssamay@winston.com
plambrianakos@winston.com
kpadmanabhan@winston.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/  E. Tennyson
Karen Jacobs (#2881)
Stephen J. Kraftschik (#5623)
Eleanor G. Tennyson (#5812)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
skraftschik@mnat.com
etennyson@mnat.com
*Attorneys for Sprint Spectrum L.P. and
Sprint Communications Company L.P.*

OF COUNSEL:

Kirk R. Ruthenberg
Mark L. Hogge
Shailendra K. Maheshwari
DENTONS US LLP
1301 K Street, N.W., Suite 600
Washington, DC  20005

CWF00000036642

SEITZ ROSS ARONSTAM & MORITZ LLP

/s/ R. Scheffel_____
Collins J. Seitz, Jr. (Bar No. 2237)
Benjamin J. Schladweiler (Bar No. 4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzross.com

*Counsel for Defendants Verizon
Communications, Inc. and Cellco
Partnership d/b/a Verizon Wireless*

*Of Counsel*:

Kevin P. Anderson
Karin A. Hessler
Robert Scheffel
Paul M. Kim
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
(202) 719-7000
kanderson@wileyrein.com
khessler@wileyrein.com
rscheffel@wileyrein.com
pkim@wileyrein.com

ASHBY & GEDDES, P.A.

/s/ A. Mayo_____
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Tel: (302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Counsel for Broadsoft, Inc.*:

*Of Counsel*:

Jonathan G. Graves
Stephen P. McBride
Kevin A. Lake
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000
jgraves@cooley.com
smcbride@cooley.com
klake@cooley.com

CWF00000036643

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2014 the foregoing **DEFENDANTS' PRELIMINARY INVALIDITY CONTENTIONS RELATING TO THE CALL PROCESSING TRACK** was served via e-mail on the following counsel of record.

Edmond D. Johnson
James G. McMillan, III
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
johnsone@pepperlaw.com
mcmillanj@pepperlaw.com
*Attorneys for Plaintiff*

William D. Belanger
Noah V. Malgeri
Lauren Reznick
Christopher Boundy
Leah R. McCoy
Suparna Datta
PEPPER HAMILTON LLP
125 High Street
19th Fl. High Street Tower
Boston, MA 02110
belangerw@pepperlaw.com
malgerin@pepperlaw.com
reznickl@pepperlaw.com
boundyc@pepperlaw.com
mccoyl@pepperlaw.com
dattas@pepperlaw.com

*Attorneys for Plaintiff*

/s/ _K. Padmanabhan_____
Krishnan Padmanabhan

-31-

CWF00000036644

Exhibit A-1

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,430,282 ("Bannister")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,430,282 ("Bannister") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Bannister was published on Aug. 6, 2002, from an application with a priority date of at least Sep. 29, 1995, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,282 ("Bannister") |
|---|---|
| 17. A method of processing calls, the method comprising: | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | Bannister discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>• "The operator of the Workstation 100 locates the listing Which interests him and executes the voice call request command associated With that listing. The Workstation 100 eXecutes HTML instructions corresponding to the voice call command to send the data service node 500 a call request message incorporating the directory number of his telephone 110." Bannister at 11:8-14. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Bannister discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user. |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,282 ("Bannister") |
|---|---|
| | • "The telecommunications sWitch 540 processes the call origination request to originate a voice call from the telecommunications switch 540 via the PSTN 200 to a telephone 120 corresponding to the directory number associated With the selected listing. The telecommunications switch 540 also originates a voice call from the telecommunications switch 540 to the telephone 110 of the person requesting the call." Bannister at 11:26-33. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Bannister discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user.<br><br>• "The telecommunications switch 540 processes the call origination request to originate a voice call from the telecommunications switch 540 via the PSTN 200 to a telephone 120 corresponding to the directory number associated With the selected listing. The telecommunications switch 540 also originates a voice call from the telecommunications switch 540 to the telephone 110 of the person requesting the call." Bannister at 11:26-33. |
| causing the first outcall and the second outcall to be connected. | Bannister discloses causing the first outcall and the second outcall to be connected.<br><br>• "The telecommunications switch 540 connects the two calls to connect the telephone 110 to the telephone 120 via the PSTN 200 and the switch 540." Bannister at 11:34-46. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,282 ("Bannister") |
| --- | --- |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Bannister discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br>*See* Bannister at Fig. 1. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,282 ("Bannister") |
|---|---|
| processing system after the first call request traverses a firewall. | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | Bannister discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. *See* claim 17 above. <br><br> • "The telecommunications sWitch 540 processes the call origination request to originate a voice call from the telecommunications switch 540 via the PSTN 200 to a telephone 120 corresponding to the directory number associated With the selected listing. The telecommunications switch 540 also originates a voice call from the telecommunications switch 540 to the telephone 110 of the person requesting the call." Bannister at 11:26-33. |

5

NY:1636549.2

Exhibit A-2

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 7,224,774 ("Brown")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 7,224,774 ("Brown") invalidates Claims 40-43, and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Brown was filed on March 23, 2001 and issued on May 29, 2007, before the alleged invention of the '188 Patent. Brown qualifies as prior art under at least 35 U.S.C. §§ 102(a) and (e).

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| [40.1] A method of processing calls, comprising: | Brown discloses a method of processing calls (e.g., "a system and method are provided for real-time call control"). *See, e.g.:* "A system and method are provided for real-time call control. When a call is received at a telephone server for a service subscriber, the server identifies the subscriber and retrieves information that will allow the server to contact the subscriber via instant messaging. An instant message is sent to the subscriber, and includes any number of options for controlling or handling the call. The options may be presented as hyperlinks, or the selected option may be returned in another instant message. The subscriber selects an option and communicates it to the server, which effects the selected option. The server may establish an audio connection between the server and the subscriber's computer or communication device (to allow the parties to talk), may transfer the call to another number, play a message for the caller (which may be pre-recorded or |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | recorded in real-time), record a voicemail (which the subscriber may screen), etc." Brown at Abstract.[1] |
| | "This invention relates to the fields of computer and communications. More particularly, a system and methods are provided for handling a telephone call in real-time." 1:5-7. |
| | "In one solution to the need for real-time call control, a presence server is configured to track the location of, or means of contacting, a user. The user employs a computer that communicates with the presence server and provides its location (e.g., network address). However, in this solution the user's computer must be configured with custom or specialized software for interfacing with the user and presence server and enabling call control. Thus, the specialized software must be installed on each of the user's computers and must be upgraded in order to provide different or additional functionality. And, the software only enables the user's computer to perform call control operations through the presence server." 1:22-34. |
| | "In one embodiment of the invention a system and methods are provided for enabling real-time call control without the use of specialized software. Existing communication methods are used to enable the real-time control, such as any of several varieties of instant messaging." 1:38-42. |
| | "In this embodiment, a call is received at a call server for a subscriber. The subscriber and/or caller are identified (e.g., by the original called number and caller ID fields) and a subscriber profile is consulted to determine what call handling options to offer the subscriber and how to offer them. Thus, the system may retrieve the subscriber's user names for one or more instant messaging systems and send one or more instant messages to notify the subscriber of the call and offer any number of call handling options. Illustrative call handling options include answering the call, taking a voicemail message (with or without screening the message), transferring or forwarding the call, playing a message |

[1] All references are to Brown, unless otherwise expressly noted.

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | for the caller, etc. If the subscriber does not respond in a predetermined period of time the call server may apply a default option." 1:43-57.<br><br>"If an instant messaging system that is used is hypertext-capable, the options may be presented as hyperlinks. In this case the subscriber selects a hyperlink option, is connected to the call server and may provide any additional information that is needed (e.g., a forward-to number, a message to play for the caller). Alternatively, the subscriber may respond with an instant message identifying his or her selected call handling option." 1:58-65.<br><br>"Upon receipt of the selected option, the call server takes the necessary action to handle the call: establish an audio connection with the user (e.g., through the instant messaging system, via voice over IP), connecting the caller to a voicemail module, transfer the call to another number, retrieve a message and play it for the caller, etc. Text/speech conversion may be performed as necessary, to convert a textual message specified by the subscriber into audio form for the caller, if the subscriber's computer/communication device is not equipped with both a microphone and speaker, etc." 1:66-2:9. |
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Brown discloses receiving at a call processing system (e.g., the second call control server that services the subscriber) a message from an Internet protocol proxy (e.g., a first call control server that distributes the incoming call to a second call control server) regarding a first call from a caller (e.g., the incoming call).<br><br>*See e.g.,*<br><br>"Because the subscriber is not present at the time of the call, his or her telephone line is busy, or because of the configuration of the telephone service for the called number (e.g., automatic forwarding), the call is forwarded to call control server 130. Illustratively, call control server 130 may be just one of multiple call control servers configured to enable real-time call control. Calls may be distributed among multiple call control servers for load balancing purposes, to apply different levels of service for different subscribers, etc. For example, |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | depending on the level of service requested by a particular subscriber, he or she may be offered different subsets of the available call control options, additional storage space for storing voicemail messages, the ability to record audio messages to be played for callers, etc." 4:3-17. |
| | "At call control server 130, the system identifies the subscriber that is being called, which may be accomplished by looking up the OCN (Original Called Number), which is received with the forwarded call, in a database of subscribers. The database may also identify the options that may be provided to the subscriber, a default option to be applied if he cannot be contacted, the type or version of instant messaging to be used to contact him, the subscriber's username, screen name or other instant messaging user identifier, etc. Further, call control server 130 may also identify the caller (e.g., via caller ID). The call control server may, for example, look up the caller's telephone number in a telephone directory, a reverse-lookup directory service (e.g., such as that offered at http://www.infospace.com), or some other data collection (e.g., the called subscriber's address book). Depending on whether the caller's name or other identifier (besides the caller ID number) can be found, the caller may be identified to the subscriber (in the initial instant message) with any suitable identifying information." 4:18-36. |
| | "Call control server 130 then initiates an instant message to the subscriber via network 140 or other communication connection. Network 140 may comprise the Internet or some other public or private network coupled to the call control server and the subscriber's device 150 (e.g., computer 150 a, hand-held computer/communication device 150 b). Illustratively, the initial instant message informs the subscriber that a call has been received for him, indicates who the call is from (e.g., by number and/or name), and offers any number of options for handling the call. Call control server 130 may initiate more than one message (sequentially or in parallel) if, for example, the subscriber uses more than one type of instant messaging, more than one instant messaging user identifier, more than one device (i.e., having more than one network address), etc. If the subscriber cannot be contacted within a pre-determined period of time (e.g., the |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | instant messages are rejected, the subscriber does not respond), the call control server may abort the call control process and apply a default call control option (e.g., take a voicemail message)." 4:37-56. "Call control server 130 then initiates an instant message to the subscriber via network 140 or other communication connection. Network 140 may comprise the Internet or some other public or private network coupled to the call control server and the subscriber's device 150 (e.g., computer 150 a, hand-held computer/communication device 150 b). Illustratively, the initial instant message informs the subscriber that a call has been received for him, indicates who the call is from (e.g., by number and/or name), and offers any number of options for handling the call. Call control server 130 may initiate more than one message (sequentially or in parallel) if, for example, the subscriber uses more than one type of instant messaging, more than one instant messaging user identifier, more than one device (i.e., having more than one network address), etc. If the subscriber cannot be contacted within a pre-determined period of time (e.g., the instant messages are rejected, the subscriber does not respond), the call control server may abort the call control process and apply a default call control option (e.g., take a voicemail message)." 4:37-56. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Brown discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system (e.g., the call control server identifies the subscriber in a database of subscribers), wherein at least partly in response to determining that the telephone address is that of a subscriber (e.g., the system identifies the subscriber by looking up the OCN in the subscriber database). See citations and discussion above in connection with claim limitation 40.2. |
| [40.4] accessing an account record associated with the subscriber, the account record including at | Brown discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction (e.g., the database |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| least one subscriber instruction; | record for the subscriber contains the options that may be provided to the subscriber, including default options if the subscriber cannot be located).<br><br>See citations and discussion above in connection with claim limitation 40.2 |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Brown discloses based at least in part on the subscriber instruction (e.g., determining the default type of instant messaging service to contact the subscriber on, and/or determining the default subscriber device to contact the subscriber through), placing a first outcall to a first communication device associated with the subscriber (e.g., sending an instant message to the subscriber at the subscriber's device).<br><br>See citations and discussion above in connection with claim limitation 40.2 |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | Brown discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber (e.g., if the subscriber cannot be contacted within a pre-determined period of time a default option may be applied, the default option may include initiating a message to a different type of instant messaging and/or different subscriber device).<br><br>*See e.g.*,<br><br>"In this embodiment, a call is received at a call server for a subscriber. The subscriber and/or caller are identified (e.g., by the original called number and caller ID fields) and a subscriber profile is consulted to determine what call handling options to offer the subscriber and how to offer them. Thus, the system may retrieve the subscriber's user names for one or more instant messaging systems and send one or more instant messages to notify the subscriber of the call and offer any number of call handling options. Illustrative call handling options include answering the call, taking a voicemail message (with or without screening the message), transferring or forwarding the call, playing a message |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | for the caller, etc. If the subscriber does not respond in a predetermined period of time the call server may apply a default option." 1:43-57.

"Call control server 130 then initiates an instant message to the subscriber via network 140 or other communication connection. Network 140 may comprise the Internet or some other public or private network coupled to the call control server and the subscriber's device 150 (e.g., computer 150 a, hand-held computer/communication device 150 b). Illustratively, the initial instant message informs the subscriber that a call has been received for him, indicates who the call is from (e.g., by number and/or name), and offers any number of options for handling the call. Call control server 130 may initiate more than one message (sequentially or in parallel) if, for example, the subscriber uses more than one type of instant messaging, more than one instant messaging user identifier, more than one device (i.e., having more than one network address), etc. If the subscriber cannot be contacted within a pre-determined period of time (e.g., the instant messages are rejected, the subscriber does not respond), the call control server may abort the call control process and apply a default call control option (e.g., take a voicemail message)." 4:37-56.

"In one embodiment of the invention, if the process of contacting the subscriber, receiving a call control option and implementing the option takes more than a threshold amount of time (e.g., thirty seconds), or if the process is expected to take a threshold amount of time, a recording or other message may be played for the caller to let him or her know that the subscriber is being located, is being informed of the call, etc." 5:21-28.

"In state 308 the system determines whether a response (e.g., an option selection) is received within a threshold period of time. If not, the system applies a default control option in state 310 and then exits. Otherwise, if an option selection is received, the call control server (and/or a web server) that receives the selection, or another system module, will take the necessary action to handle the call as directed." 7:29-36.

"1. A method of controlling a telephone call to an instant messaging user, |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | comprising the steps of: |
| | (a) receiving at a call server a call directed to the user; |
| | (b) identifying an instant messaging service used by the user; |
| | (c) sending an instant message to the user through the instant messaging service to offer the user one or more options for responding to the call, wherein said options are based on a profile of the user; |
| | (d) if no response is received from the user within a predetermined period of time, controlling the call as specified in a default option; and |
| | otherwise: |
| | (e) receiving an option selection from the user over the instant messaging service; and |
| | (f) controlling the call as specified in said selected option; |
| | wherein when the user selects an option to answer the call over the instant messaging service, the controlling step further comprises the steps of: |
| | (f1) if the instant messaging service is communicatively coupled to both a microphone and a speaker at the user's side, establishing an audio connection between the user and the caller; |
| | (f2) if the instant messaging service is not communicatively coupled to a speaker at the users side, establishing verbal-textual communication between the caller and the user by enabling speech-to-text software conversion; and |
| | (f3) if the instant messaging service is not communicatively coupled to both a microphone and a speaker at the user's side, establishing verbal-textual communication between the caller and the user by enabling speech-to-text and/or text-to-speech software conversion." Claim 1; see also, Claims 10 and 26 of Brown. |
| [40.7] receiving a call connect instruction from the | Brown discloses receiving a call connect instruction from the subscriber (e.g., |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| subscriber; and | the subscriber may answer the incoming call). |
| | *See, e.g.*: |
| | "In this embodiment, a call is received at a call server for a subscriber. The subscriber and/or caller are identified (e.g., by the original called number and caller ID fields) and a subscriber profile is consulted to determine what call handling options to offer the subscriber and how to offer them. Thus, the system may retrieve the subscriber's user names for one or more instant messaging systems and send one or more instant messages to notify the subscriber of the call and offer any number of call handling options. Illustrative call handling options include answering the call, taking a voicemail message (with or without screening the message), transferring or forwarding the call, playing a message for the caller, etc. If the subscriber does not respond in a predetermined period of time the call server may apply a default option." 1:43-57. |
| | "In one embodiment of the invention, a system and methods are provided for enabling real-time control of a telephone call. In this embodiment, a call made to a subscriber's telephone (e.g., home, work or mobile telephone) is forwarded to a call control server when there is no answer. In another embodiment, the subscriber's telephone service may be configured to forward all or a subset of all calls to the call control server (e.g., all calls from a specified number or area code)." 2:59-67. |
| | "The call control server is configured with one or more types of instant messaging systems or services, such as those provided by AOL (America OnLine), Microsoft, Yahoo, or some other provider. When the call is received at the call control server and the server identifies the called subscriber (e.g., by OCN—Original Called Number), the call control server sends an instant messaging message to the subscriber's device (e.g., computer, two-way pager, smart telephone), which provides the subscriber with a number of options for handling the call. The options may depend upon the type of device the user is operating and/or the type of instant messaging with which the user and the call control server communicate, and may include any of the following as well as |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | others: answer the call, forward or transfer the call to another number, take a message, respond to the caller with a message (which may be pre-configured or configured when the user is notified of the call), etc. Default methods may be specified for handling calls when a subscriber is not available or does not respond." 3:1-19. |
| | "At call control server 130, the system identifies the subscriber that is being called, which may be accomplished by looking up the OCN (Original Called Number), which is received with the forwarded call, in a database of subscribers. The database may also identify the options that may be provided to the subscriber, a default option to be applied if he cannot be contacted, the type or version of instant messaging to be used to contact him, the subscriber's username, screen name or other instant messaging user identifier, etc. Further, call control server 130 may also identify the caller (e.g., via caller ID). The call control server may, for example, look up the caller's telephone number in a telephone directory, a reverse-lookup directory service (e.g., such as that offered at http://www.infospace.com), or some other data collection (e.g., the called subscriber's address book). Depending on whether the caller's name or other identifier (besides the caller ID number) can be found, the caller may be identified to the subscriber (in the initial instant message) with any suitable identifying information." 4:18-36. |
| | "In another embodiment of the invention, a subscriber may be offered the option of screening a call (e.g., while the caller leaves a voicemail message). If this option is selected, the caller is connected to a voicemail module or system (e.g., an IVR) and a VOoIP connection is established between the call control server (or IVR) and the subscriber's device. As the caller records his or her message, the message is also played on the device for the subscriber to hear. If the device is not equipped with a speaker, speech-to-text conversion may be applied to provide the message to the subscriber. The subscriber may or may not be provided with the opportunity to break into the call while the caller's message is being recorded" 6:44-56. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | "FIG. 3 illustrates a method of providing real-time call control according to one embodiment of the invention. In this embodiment, the instant messaging system used to notify a subscriber of an incoming call is hypertext-enabled, which may allow the subscriber to be provided with more call control options than may be offered via a non-hypertext-enabled instant messaging system." 6:57-63. |
| | "In state 302, the call control server identifies the subscriber. Illustratively, this may be done by examining the OCN (Original Called Number) received with the call." 7:7-9. |
| | "In state 304 the server retrieves necessary data concerning the subscriber and/or caller. This information may identify the type(s) and/or version(s) of instant messaging used by the subscriber, screen names or user names for the subscriber, network or other addresses associated with the subscriber's computer or communication device, the caller's name, etc. The subscriber's device may be configured such that, when the device is online, it connects to notifies the call control server of its address." 7:10-18. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
|  |  See Fig. 2 and associated text. "In state 328, the system determines whether the subscriber wishes to screen the voicemail message as it is recorded. If not, the illustrated procedure advances to state 332. Otherwise, in state 330 the call control system establishes an audio (e.g., voice over IP) connection with the subscriber's device and interconnects the caller and the necessary voicemail module. In state 332, the voicemail module records the caller's message and, if call screening was selected, the message is simultaneously passed to the subscriber's device and played for the subscriber. If the subscriber is screening the voicemail message and chooses to pick up the call, in optional state 334 audio input from the subscriber is enabled and the voicemail module may stop recording. After state 334 the illustrated procedure ends." 7:63-8:9. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| |  FIG. 3B<br><br>See Fig. 3B and associated text. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | Brown discloses instructing the call processing system to connect the first call to a third communication device (e.g., the subscriber may answer the incoming call). |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | See citations and discussion above in connection with claim limitation 40.7. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | Brown discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol (e.g., a first call control server that distributes the incoming call to a second call control server). |
| | *See* claim 40 above. |
| | See citations and discussion above in connection with claim limitation 40.2. |
| | *Furthermore, see e.g.,* |
| | "In this embodiment, a call is received at a call server for a subscriber. The subscriber and/or caller are identified (e.g., by the original called number and caller ID fields) and a subscriber profile is consulted to determine what call handling options to offer the subscriber and how to offer them. Thus, the system may retrieve the subscriber's user names for one or more instant messaging systems and send one or more instant messages to notify the subscriber of the call and offer any number of call handling options. Illustrative call handling options include answering the call, taking a voicemail message (with or without screening the message), transferring or forwarding the call, playing a message for the caller, etc. If the subscriber does not respond in a predetermined period of time the call server may apply a default option." 1:43-57. |
| | "The call control server is configured with one or more types of instant messaging systems or services, such as those provided by AOL (America OnLine), Microsoft, Yahoo, or some other provider. When the call is received at the call control server and the server identifies the called subscriber (e.g., by OCN—Original Called Number), the call control server sends an instant messaging message to the subscriber's device (e.g., computer, two-way pager, |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | smart telephone), which provides the subscriber with a number of options for handling the call. The options may depend upon the type of device the user is operating and/or the type of instant messaging with which the user and the call control server communicate, and may include any of the following as well as others: answer the call, forward or transfer the call to another number, take a message, respond to the caller with a message (which may be pre-configured or configured when the user is notified of the call), etc. Default methods may be specified for handling calls when a subscriber is not available or does not respond." 3:1-19.<br><br>"As described above, in one embodiment of the invention the subscriber may choose to accept the call from the caller (e.g., the 'TALK NOW' option in FIG. 2). Illustratively, if the instant messaging system offers VOIP service, the call control system may bridge the caller into a VOIP instant messaging connection at the call control server. Otherwise, the call control server is configured to establish a VOIP connection to the subscriber's device and bridge the caller into this connection. Yet further, if subscriber device **150** is not equipped with a microphone or speaker, the call control server and/or the subscriber's device may be configured to employ text/speech conversion to allow the caller and subscriber to communicate." 6:18-30.<br><br>"In state 308 the system determines whether a response (e.g., an option selection) is received within a threshold period of time. If not, the system applies a default control option in state 310 and then exits. Otherwise, if an option selection is received, the call control server (and/or a web server) that receives the selection, or another system module, will take the necessary action to handle the call as directed." 7:29-36.<br><br>"In state 312, if the selected option is to talk with the caller, the call control server establishes an audio (e.g., voice over IP) connection with the subscriber's device and interconnects the caller in state 314. If the subscriber's device is not capable of two-way audio, text/speech conversion software may be executed as necessary. After state 314, the illustrated method ends. If the selected option was |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | to do something other than answer the call, the method proceeds to state 316." 7:37-44.



FIG. 3A

See Fig. 3A and associated text. |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | Brown discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension (e.g., the called number may be the subscriber's office telephone). |
| | *See* claim 40 above. |
| | See citations and discussion above in connection with claim limitation 40.5. |
| | *Furthermore, see e.g.,* |
| | "FIG. 1 depicts an illustrative embodiment of a real-time call control system according to one embodiment of the invention. In the illustrated embodiment, caller 110 calls a subscriber from any type of telephonically equipped device. The call is initially received at called number 120, which may be the subscriber's house, office, mobile telephone, etc." 3:64-4:2. |
| | "In the embodiment of FIG. 3, a call to a subscriber is received at a call control server in state 300. The call may have been forwarded to the call control server from a residential, office, mobile or other telephone of the subscriber. Or, the caller may have dialed another number that is associated with the subscriber but which is answered by the call control server. For example, a subscriber may subscribe to a call control service that allows callers to dial a central number that the call control server answers for the subscriber." 6:64-7:6. |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | Brown discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., the subscriber may answer the incoming call). *See* claim 40 above. Furthermore, see citations and discussion above in connection with claim limitation 40.7. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | Brown discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., a first call control server that distributes the incoming call to a second call control server). *See* claim 40 above. Furthermore, see citations and discussion above in connection with claim limitation 40.2. |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,224,774 ("Brown") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | Brown discloses the method of claim 40, further comprising wherein the first communication device is connected to a private branch exchange system (e.g., the called number may be the subscriber's office telephone).

*See* claim 40 above.

Furthermore, see citations and discussion above in connection with claim 42.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

20

Exhibit A-3

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on "A Proposal for Internet Call Waiting Service using

SIP" ("Brusilovsky")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), A. Brusilovsky, et al., "A Proposal for Internet Call Waiting Service using SIP," Internet Engineering Task Force, PINT Working Group, November 1998, available at http://tools.ietf.org/html/draft-ietf-pint-icw-00 ("Brusilovsky") invalidates Claims 40-43, and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Brusilovsky was published in November 1998, before the alleged invention of the '188 Patent. Brusilovsky qualifies as prior art under at least 35 U.S.C. §§ 102(a) and (b).

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| [40.1] A method of processing calls, comprising: | Brusilovsky discloses a method of processing calls (e.g., the Internet Call Waiting Service).<br><br>See e.g.,<br><br>"The purpose of this Internet Draft is to start discussion on the issues involved in Internet Call Waiting Service (ICW), as part of interconnecting IP and Global Switched Telephone Network (GSTN) with the intent of providing ICW service that is much needed by numerous dial-up Internet users. Interworking of the IP network and GSTN, based on open well-defined protocols, will promote interoperability of both the networks and systems built by different vendors. This Internet Draft is submitted with the goal of becoming an informational RFC." Brusilovsky at Abstract.[1]<br><br>"It is a well-known problem that call waiting tone interferes with the operation |

2

---

[1] All references are to Brusilovsky, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | of a modem. Anyone using the telephone for a modem connection to a host computer cannot gracefully deal with incoming call waiting calls. Internet Call Waiting is the capability to provide incoming call notification and completion options when the Subscriber is on a dial-up IP connection. When a call comes in the Subscriber is presented with a pop-up dialog box, that presents the caller's number and, optionally, his or her name. Internet Call Waiting solution provides a simple, graphical-oriented way to notify subscribers while connected to the Internet, of incoming calls. It allows the subscriber to accept or reject the call. |
| | "Benefits |
| | "Service providers can achieve the following important benefits through the use of Internet Call Waiting Service: |
| | o More calls completed. Call completion is an important aspect of the service provided by telecommunication operators. Calls that end in busy or no- answer, consume network resources.   Solution like Internet Call Waiting contributes to greater call completion which lowers expense and provides value to both the consumer and service provider. |
| | o  The ICW platform is the foundation to offer services: The service provider has the opportunity to enhance Internet Call Waiting with other services like Internet Follow-me, personalized call management, unified messaging service, click to return (dial) an important call, and other call management functions which integrate voice and data services. |
| | o  Service provider can offer the following important benefits to the subscribers through the use Internet Call Waiting Service: |
| | · Simple way to manage voice and data calls over a single telephone line. |
| | · Ability to track all incoming calls while the service is active |
| | · PC Graphical Subscriber Interface provides a simple intuitive Subscriber interface and also allows easy customization." pp. 2-3. |

3

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Brusilovsky discloses receiving at a call processing system (e.g., the ICW system) a message from an Internet protocol proxy (e.g., the ICW server is a SIP proxy server) regarding a first call from a caller (e.g., the SCP sends a SIP 'INVITE' message with Calling Number and optional Calling Name that are determined from the incoming call).<br><br>See citations and discussion above in connection with claim limitation 40.1.<br><br>*Furthermore, see, e.g.:*<br><br>"Figure A illustrates the hardware architecture that will support ICW Service. The lines indicate the control and/or voice paths. Control paths are labeled by the protocol that will be used over them. IN elements (SCP, SMS, SSP) are specialized servers, connected to switches and other network elements. They handle data queries and updates, specialized call routing and other advanced telecom services. For more information on Intelligent Network please see our IN Tutorial in the Appendix of this Internet Draft." p. 3. |

4

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|



See Fig. A and associated text.

"When the Calling Party dials the ICW Subscriber's Destination Number, the Calling Party experiences the standard Call Waiting treatment, ringing, until Calling Party abandons or the Subscriber specifies treatment: Subscriber treatment options and Calling Party experience are:

o   Refuse Call: Calling Party hears ringing until Calling Party abandons. In SIP terms, this results in the SIP UAS sending a "603 Decline" message to the

5

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | ICW server. |
| | o Hold Call: Calling Party hears [optional] announcement to hold while "other" call in progress is completed. The intent is that the Subscriber will accept the call momentarily. (Another possibility would be to tell the Calling Party that you'll call them back in a few minutes, etc) In SIP terms, this results in the SIP UAS sending a "182 Queued" message to the ICW server. |
| | o Send to Voice Mail (assuming Subscriber has a Voice Mail service): |
| | Calling Party hears voice mail system announcements. (This redirection to voice mail could, as well, have been redirection to some other DN, e.g. cell phone, second line, secretary, etc) In SIP terms, this results in the SIP UAS sending a "380 Alternative Service" to the ICW server. |
| | o Accept Call: Calling Party hears ringing until is is connected to Subscriber. In SIP terms, this results in the SIP UAS sending a "200 OK" to the ICW server. |
| | Note: Optional treatment options can include taking call via VoIP and route call to a third party number." p. 4. |
| | "In the proposed Architecture, the Subscriber is assumed to have PPP service through their ISP. They are surfing the Internet or working at home, connected to a corporate intranet. Two components of ICW reside on their PC; an H.323 client for VoIP and an ICW UAS to drive the presentation to the Subscriber of Setup and Notification. Controlling the ICW service is the ICW server for Internet related control and the combination of the SCP and SSP via AIN functionality providing PSTN control via SS7. There is an ICW control session between the PC and the ICW server. Controlling the VoIP aspect is the H.323 client at the PC and the H.323 gateway with H.323 packets going between them via the internet. The SCP controls the IP via Bellcore's GR-1129. The SCP and ICW server have a TCP/IP connection. The call path of the accepted call consists of the Calling Party being routed to the IP (intelligent peripheral) and bridged to the ICW Subscriber from the H.323 gateway. Firewall appliances are placed on all IP connections of the service provider. A call scenario below walks through |

6

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | this architecture. Integration of the H.323 GW and IP as well as the SCP and ICW server is a possibility for future enhancements." pp. 4-5. |
| | "Call Scenario |
| | Subscription to the service. |
| | o Subscriber signs up for the service. |
| | o Subscriber downloads and installs the ICW UAS software. |
| | o Subscriber Information is provisioned in the SMS (and SCP). |
| | "Activation of the service and coordination with the ICW Server (Transparent for the ICW User) |
| | o ICW UAS establishes TCP connection. |
| | o Subscriber authenticates himself/herself and Register with ICW Server using the encrypted password and phone number. |
| | o ICW Server stores information in database. |
| | "Call Arrival |
| | o Calling Party initiates call to Subscriber. |
| | o SSP (Switch) encounters TAT. |
| | o SCP query launched. |
| | o SCP determines if call is for an ICW subscriber (if not then other service logic applies). |
| | o SCP sends a SIP 'INVITE' message with Calling Number, optional Calling Name and Called Number (and receives a SIP acknowledgement from |

7

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | the ICW Server) |
| | o If ICW is activated for the called subscriber, ICW Server returns "TRYING" to SCP. The SCP instructs SSP to play an announcement, e.g. ringing. ICW Server determines, based on the Called Number and the IP Address of the ICW UAS and sends the SIP INVITE message to the ICW UAS. |
| | o If ICW is not activated ICW Server returns "NOT FOUND" to SCP. SCP returns an Authorize Term message to the SSP so call proceeds as normal. |
| | "Communicating subscriber's choice to the SCP. |
| | o ICW UAS returns a SIP "DECLINE" (for normal SSP treatment) or "OK" (for connecting the call). |
| | o ICW Server passes along the SIP message to the SCP |
| | "Choice: Drop Modem, take call. |
| | o ICW UAS causes Modem to drop. |
| | o SCP instructs switch to continue with the call (Authorize Term). |
| | o Switch connects Calling Party to Subscriber line causing the phone to ring. |
| | "Choice: Send to Voice Mail. |
| | o SCP sends Authorize Term message to switch to deliver the call to the subscriber's line. |
| | o SSP detects Busy and uses standard Call Forwarding on Busy to send to Voice Mail"   pp. 5-6. |

8

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
|  | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Brusilovsky discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system (e.g., the SCP determines if the incoming call is for an ICW subscriber), wherein at least partly in response to determining that the telephone address is that of a subscriber. See citations and discussion above in connection with claim limitation 40.2. |
| [40.4] accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Brusilovsky discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction (e.g., determining if the subscriber is authorized for service, and if so, which services). See citations and discussion above in connection with claim limitation 40.2. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Brusilovsky discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber (e.g., the Switch connects the calling party to the subscriber line). See citations and discussion above in connection with claim limitation 40.3. *Furthermore, see e.g.,* |

9

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | "The following software components make up the ICW architecture. |
| | o   ICW UAS - The ICW UAS and server communicate via the SIP protocol over TCP/IP. The ICW UAS can start up automatically as soon as a PPP connection is established. It also responds to the incoming request for call treatment by popping up the dialog box to the subscriber presenting information about the Calling Party and asking for an Accept or Reject decision. The UAS sends the resulting choice back to the ICW server. In the case of a accepted call, the UAS drops the modem connection to the ISP to allow the incoming call to complete. |
| | o   ICW server - a SIP proxy server that perform the following functions. The SCP is not being used as a general-purpose database host. Thus, SIP-related database dips are envisioned to be in the domain of a generic ICW server which can interface with any commercial-grade database engine or any LDAP-enabled database.   The SCP is free to provide telecommunication intensive tasks that it was designed for. |
| | - Listening for incoming messages from the application running on SCP |
| | - Providing a data store mechanism for ICW applications |
| | - Handling Web-based GUI (Applet) requests for subscriber provisioning on the ICW server |
| | o SCP platform software - The ICW APPLICATION runs on SCP |
| | - ICW Application runs on SCP - The AIN 0.1 Terminating Attempt Trigger (TAT) is used to enable PSTN call handling. Thus, the Application responds to an AIN message for every call to the subscriber. For each call, the Application either returns a request for normal routing, if the subscriber is no longer active, or sends a message to the ICW server passing along the calling number. Based upon the reply from the ICW server, which may be Accepted or Rejected, the SCP sends the appropriate instructions back to the SSP. |
| | "Various alternatives exist for firewall support. The ICW UAS-to-ICW server |

10

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | firewall could be standard corporate security firewall.   However, the security policy would need to allow TCP-based SIP messages to flow between the ICW UAS and server over the standard SIP port 5060. The ICW server-to-SCP firewall is optional and could be used to provide an extra level of protection for the SCP by restricting Intranet access or by enforcing a more restrictive security policy than the outer firewall. General and ICW specific security considerations are covered in Section 4. |
| | "Other components in the diagram are part of the standard Internet and PSTN and include the Internet Service Provider (ISP), ISP modems and web servers, the Service Switching Point (SSP) and the Signal Transfer Point (STP). The SSPs must be provisioned with the necessary trigger for the ICW service, the AIN 0.1 Terminating Attempt Trigger." pp. 3-4. |
| | "In PSTNs, user's telephone terminals and fax machines are connected to telephone switches. The switches (which can be Central Offices--for wireline communications and Mobile Switching Centers (MSCs)--for wireless communications) are specialized computers engineered for provision of services to the users. The switches themselves are interconnected in two ways: 1) through trunks on which the voice is carried and 2) through a specialized fault-tolerant data communications network, which is (principally) used for call setup and maintenance. This network is called (after the ITU-T standard protocol suite that it uses) Signalling System No. 7 (SS7). In addition, the switches are connected to general purpose computers that support specialized applications (called Operations Systems) whose role includes network management, administrative functions (e.g., billing), maintenance, etc. Operation systems are not connected to the switches through the SS7 network, which is, again, engineered only for set-up and real time maintenance of calls. In most cases, X.25 protocol is used for communications between operations systems and switches. Even a simple two-party call in most cases involves several switches, which may also be located in different PSTNs. To this end, the switches alone comprise a complex distributed processing environment. As far as the end users are concerned, the switches are ultimately responsible for delivering telecommunications services. |

11

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | Certain elementary services (such as provision of the dial tone, ringing the called line, and establishing a connection between two users) are called basic services, and all switches can presently cooperate in delivering them to end users." p. 10. |
| | "In addition, a multitude of services (such as Freephone [a.k.a. 800 number in North America], Conference Calling, Call Forwarding, and many others) require much more than basic call processing. Such services are called Supplementary Services, and their implementation requires that specialized applications (called Service Logic) be developed. Developing switch-based service logic for each supplementary service would be an extremely expensive (if at all possible) task, which--in the presence of multiple switch vendors--would also require an extensive standardization effort." p. 10. |
| | "Physically, the SCF may be located in either stand-alone general purpose computers called Service Control Points (SCPs) or specialized pieces of equipment called Service Nodes (SNs). In addition to executing service logic, a service node can perform certain switching functions (such as bridging of calls) as well as a set of specialized functions (such as playing announcements, voice recognition and text-to-speech conversion). An important distinction between an SCP and SN is that the former is connected to switches via the SS7 network while the latter communicates with the switch via Integrated Services Digital Network (ISDN) Primary or Basic Rate Interfaces (PRI or BRI), which combine both the signaling and voice paths. With the present state of IN standardization, in principle, either an SCP or SN could be connected to an Internet server in order to support the services outlined in section two. To further narrow the scope of work so as to produce tangible results as soon as possible, the proposed project specifically addresses only interconnection between a server and SN. |
| | "Within the IN architecture, the relevant administration of the network entities (i.e., setting the triggers in the switches, transferring externally developed service logic to SCPs and SNs, and maintaining the network databases with the customer-related data) is performed by a specialize Operation System called |

12

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | Service Management System (SMS)." pp. 10-11. |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | Brusilovsky discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber (e.g., the ICW platform may be combined with Internet Follow-me). |
| | See citations and discussion above in connection with claim limitation 40.5. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.7] receiving a call connect instruction from the subscriber; and | Brusilovsky discloses receiving a call connect instruction from the subscriber (e.g., the subscriber may accept the incoming call). |
| | See citations and discussion above in connection with claim limitation 40.5. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | Brusilovsky discloses instructing the call processing system to connect the first call to a third communication device (e.g., the subscriber may accept the incoming call). |
| | See citations and discussion above in connection with claim limitation 40.5. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling | Brusilovsky discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol (e.g., the ICW server is a SIP proxy server and |

13

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| to SIP protocol. | also provides PSTN control via SS7).<br><br>*See* claim 40 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim limitation 40.5. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | Brusilovsky discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension (e.g., the subscriber may take the call while connected to a corporate intranet).<br><br>*See* claim 40 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim limitation 40.5.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | Brusilovsky discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., the subscriber may accept the incoming call).<br><br>*See* claim 40 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim |

14

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | limitation 40.5.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | Brusilovsky discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., the subscriber's computer may reside behind a firewall).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 40.5.<br><br>*See also,*<br><br>"The following software components make up the ICW architecture.<br><br>o  ICW UAS - The ICW UAS and server communicate via the SIP protocol over TCP/IP. The ICW UAS can start up automatically as soon as a PPP connection is established. It also responds to the incoming request for call treatment by popping up the dialog box to the subscriber presenting information about the Calling Party and asking for an Accept or Reject decision. The UAS sends the resulting choice back to the ICW server. In the case of a accepted call, the UAS drops the modem connection to the ISP to allow the incoming call to complete.<br><br>o  ICW server - a SIP proxy server that perform the following functions. The SCP is not being used as a general-purpose database host. Thus, SIP-related |

15

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | database dips are envisioned to be in the domain of a generic ICW server which can interface with any commercial-grade database engine or any LDAP-enabled database.   The SCP is free to provide telecommunication intensive tasks that it was designed for. |
| | - Listening for incoming messages from the application running on SCP |
| | - Providing a data store mechanism for ICW applications |
| | - Handling Web-based GUI (Applet) requests for subscriber provisioning on the ICW server |
| | o SCP platform software - The ICW APPLICATION runs on SCP |
| | - ICW Application runs on SCP - The AIN 0.1 Terminating Attempt Trigger (TAT) is used to enable PSTN call handling. Thus, the Application responds to an AIN message for every call to the subscriber. For each call, the Application either returns a request for normal routing, if the subscriber is no longer active, or sends a message to the ICW server passing along the calling number. Based upon the reply from the ICW server, which may be Accepted or Rejected, the SCP sends the appropriate instructions back to the SSP. |
| | "Various alternatives exist for firewall support. The ICW UAS-to-ICW server firewall could be standard corporate security firewall.   However, the security policy would need to allow TCP-based SIP messages to flow between the ICW UAS and server over the standard SIP port 5060. The ICW server-to-SCP firewall is optional and could be used to provide an extra level of protection for the SCP by restricting Intranet access or by enforcing a more restrictive security policy than the outer firewall. General and ICW specific security considerations are covered in Section 4. |
| | "Other components in the diagram are part of the standard Internet and PSTN and include the Internet Service Provider (ISP), ISP modems and web servers, the Service Switching Point (SSP) and the Signal Transfer Point (STP). The SSPs must be provisioned with the necessary trigger for the ICW service, the |

16

| U.S. Patent No. 7,822,188 | "A Proposal for Internet Call Waiting Service using SIP" ("Brusilovsky") |
|---|---|
| | AIN 0.1 Terminating Attempt Trigger." pp. 3-4. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | Brusilovsky discloses the method of claim 40, further comprising wherein the first communication device is connected to a private branch exchange system (e.g., the subscriber may accept the incoming call).

*See* claim 40 above.

*Furthermore*, see citations and discussion above in connection with claim limitation 40.5.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

17

Exhibit A-4

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 5,432,845 ("Burd")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,432,845 ("Burd") invalidates Claims 40-43, and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Burd was filed on December 21, 1992 and issued on July 11, 1995, before the alleged invention of the '188 Patent. Burd qualifies as prior art under at least 35 U.S.C. §§ 102(a), (b) and (e).

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| [40.1] A method of processing calls, comprising: | Burd discloses a method of processing calls (e.g., post answer telephone call redirection or rerouting). <br><br> *See, e.g.*: <br><br> "Calls made to an 800 service subscriber are routed to the subscriber's primary location via a telephone network switch operating in conjunction with a specially configured adjunct processor. The adjunct processor is arranged to monitor the call even after it is answered by an attendant or other subscriber personnel at the primary location. If the call is to be redirected from the primary location to an alternate location, the adjunct is signaled, typically by a DTMF sequence. The adjunct responds by putting the calling party on hold and by initiating a call to the alternate location on an outgoing trunk of the network switch, in such a way that it emulates or imitates both the routing (call treatment) and billing the characteristics of a call made from the original customer location. Redirection can then be completed in one of three ways: blind transfer, consultation, or conference. Billing for the call is arranged so that the subscriber of the 800 number originally dialed by the calling party at the customer location pays only |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
|  | for the portion of the call in which the primary location is actively involved in communications with the calling party. The subscriber providing the 800 number for the alternate location pays for the portion of the call in which the alternate location is involved, as though the call originated from the customer's location and proceeded directly to the alternate location, without having been rerouted at the network switch. Thus, the subscriber is not charged for any period of time which is not 'used' by that subscriber."   Burd at Abstract.[1]

"This invention relates to processing of telephone calls, and, in particular, to redirecting or rerouting a call after the call has been answered in such a way that the redirected or rerouted call is completed as though it originated from the location at which the original call was placed." 1:6-11.

"The foregoing need is met and a technical advance is achieved in accordance with the invention by routing calls made by callers that are customers of a subscriber (typically an 800 or other intelligent network service subscriber) to a primary location via a telephone network switch operating in conjunction with a specially configured adjunct processor. The adjunct processor, which provides a feature referred to below as 'post answer call redirection (PACR)', is arranged to monitor the call even after it is answered by an attendant or other subscriber personnel at the primary location. If the call is to be redirected from the primary location to an alternate location, the adjunct is signaled typically by inband signaling, for example, a dual tone multi-frequency (DTMF) sequence, or out of band signaling. The adjunct responds by putting the calling party on hold and by initiating a call to the alternate location on an outgoing trunk of the network switch. The second call is initiated in such a way that it emulates or imitates both the routing (call treatment) and billing characteristics of a call made from the original customer location. Redirection can then be completed in one of three ways: blind transfer, consultation, or conference. With blind transfer, the primary location disconnects before or while the second call is being established, and when the second call has been established, the second call is interconnected |

[1] All references are to Burd, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
|  | to or bridged with the original call, thereby completing a path from the customer location to the alternate location which bypasses the primary location. With consultation, a voice path is established between the primary location and the alternate location, while the calling party remains on hold. The attendant at the primary location can then disconnect, at which time the calling party is removed from hold and enabled to converse with the personnel at the alternate location, or the personnel at the alternate location can disconnect, enabling the primary location to initiate another call redirection. (If the calling party disconnects the entire call is terminated). If a conference is desired, the primary location can request interconnection or bridging of the calling party with the primary and alternate locations." 2:43-3:16.

"In accordance with another aspect of the invention, the system keeps track of the number of times a particular call is redirected, and/or the number of times consultation is requested with respect to a particular call, so as to avoid the possibility that network capacity will be improperly allocated or the system will become subject to fraud or abuse. This can also be useful for the purpose of billing the redirecting party for using the redirection feature." 3:30-38. |
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Burd discloses receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller (e.g., the adjunct processor receives the call made by the calling party for the primary location).

*See e.g.,*

"The foregoing need is met and a technical advance is achieved in accordance with the invention by routing calls made by callers that are customers of a subscriber (typically an 800 or other intelligent network service subscriber) to a primary location via a telephone network switch operating in conjunction with a specially configured adjunct processor. The adjunct processor, which provides a feature referred to below as 'post answer call redirection (PACR)', is arranged to monitor the call even after it is answered by an attendant or other subscriber personnel at the primary location. If the call is to be redirected from the primary |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | location to an alternate location, the adjunct is signaled typically by inband signaling, for example, a dual tone multi-frequency (DTMF) sequence, or out of band signaling. The adjunct responds by putting the calling party on hold and by initiating a call to the alternate location on an outgoing trunk of the network switch. The second call is initiated in such a way that it emulates or imitates both the routing (call treatment) and billing characteristics of a call made from the original customer location. Redirection can then be completed in one of three ways: blind transfer, consultation, or conference. With blind transfer, the primary location disconnects before or while the second call is being established, and when the second call has been established, the second call is interconnected to or bridged with the original call, thereby completing a path from the customer location to the alternate location which bypasses the primary location. With consultation, a voice path is established between the primary location and the alternate location, while the calling party remains on hold. The attendant at the primary location can then disconnect, at which time the calling party is removed from hold and enabled to converse with the personnel at the alternate location, or the personnel at the alternate location can disconnect, enabling the primary location to initiate another call redirection. (If the calling party disconnects the entire call is terminated.) If a conference is desired, the primary location can request interconnection or bridging of the calling party with the primary and alternate locations." 2:43-3:16.

"In accordance with another aspect of the invention, the system keeps track of the number of times a particular call is redirected, and/or the number of times consultation is requested with respect to a particular call, so as to avoid the possibility that network capacity will be improperly allocated or the system will become subject to fraud or abuse. This can also be useful for the purpose of billing the redirecting party for using the redirection feature." 3:30-38.

"Referring first to FIG. 1, there is shown a block diagram of a system arranged in accordance with the present invention to route a telephone call originated by a calling party at a customer location 101 to a primary location 120 and for monitoring the call for a signal indicative of a desire to redirect the call to an |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | alternate location 130. In the following description relating to FIG. 1, the attendant or other subscriber personnel at primary location 120 is referred to as the 'redirecting party', and the attendant or other personnel at alternate location 130 is referred to as the 'target party'. The organization, arrangement and functionality of the different components of the system will be better appreciated by reading the following description of FIG. 1 in conjunction with FIGS. 2 and 3, which together contain a flow diagram illustrating the steps performed in the processing of a toll-free or 800 type call originated from customer location 101. However, it is to be understood that the invention may also be used in the context of other types of calls. It should also be recognized that designations of 'customer' and 'attendant' that are used are descriptive only, and that there is no requirement that the person placing the call from location 101 actually purchase any goods or services from the person receiving the call, nor is there any requirement the call received at locations 120 or 130 be handled by a live attendant as opposed to an interactive voice response unit or other automated device." 3:64-4:24. |

6

| U.S. Patent No. 5,432,845 ("Burd") | U.S. Patent No. 7,822,188 |
|---|---|
|  See Fig. 1 and associated text. "When an 800 call is originated (step 201) by the calling party at customer 7 | |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | location 101 to a subscriber using the present invention, by dialing that subscriber's 800 number, the call is routed conventionally via a local exchange switch 103 (which may be a 5ESS® electronic switching system available from AT&T) to an 'originating' switch 105 (which may be a 4ESS™ electronic switching system available from AT&T) that services calls to that 800 number. Switch 105 launches a query in step 203 to a network control point (NCP) 110, which, as those skilled in the art are aware, is a centralized data base that is part of the SS7 signaling system. The query includes the dialed number and information identifying customer location 101, such as the automatic number identification (ANI) for the line serving that location. The query is made in the form of a data message transmitted to NCP 110 via a signaling link 107 (shown dotted for differentiation)." 4:24-41. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | *FIG.2* |

ADJUNCT PROCESSOR 125

RECEIVE SETUP MESSAGE 209

ACCESS SUBSCRIBER RECORD IN DATABASE 127 211

SUBSCRIBER RECORD FOUND ? 212 — NO → EXIT 214

YES

REDIRECTION FEATURE SUBSCRIBED ? 213 — NO → OTHER FEATURES OR EXIT 215

YES

PERFORM ROUTING TRANSLATION 217

SEND ROUTING NUMBER FOR RP TO SWITCH 115; BRIDGE CALLS 219

SEND BILLING UPDATE MESSAGE TO SWITCH 105 221

CUSTOMER LOCATION 101
800 CALL DIALED 201

ORIGINATING SWITCH 105
LAUNCH QUERY TO NCP 110 CONTAINING DIALED # AND ANI OR NPA OF CUSTOMER LOCATION 101 203

RECEIVE ADJUNCT ROUTING NUMBER (ARN) FROM NCP 110; OPEN BILLING RECORD; ROUTE CALL TO SWITCH 115 SERVING AP 125; SEND SETUP MESSAGE 205

NETWORK SWITCH 115
RECEIVE SETUP MESSAGE FROM SWITCH 105; CONNECT CALL TO AP 125; SEND SETUP MESSAGE 207

See Fig. 2 and associated text.

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | "Adjunct processor 125, which is described in more detail below, may be based upon and include several automatic voice response units (VRU's) that are each capable of performing numerous call processing and logical functions, such as detecting and validating redirection requests, initiating outgoing calls, originating out of band signaling messages such as those required for network billing purposes, bridging calls, creating three way conferences, maintaining counters, and playing generic voice announcements. The steps performed by adjunct processor 125 are differentiated in FIGS. 2 and 3 by being included within a dotted rectangle labeled 275." 5:60-6:4. |
| | "As shown in FIG. 1, adjunct processor 125 may include several VRU's 150, 151 interconnected by a local area network 155. Each VRU, includes a microprocessor 160 that operates under the control of programs which could be stored in a database 162. Database 162 is also arranged, in accordance with the invention, to store records that contain information describing the redirection features to are to be provided to each subscriber. The VRU also includes signal and speech generators 164 and 166, respectively, and a DTMF receiver 168 arranged to detect various touch tone sequences that signal a desire to invoke features provided by adjunct processor 125. The individual elements in VRU 150 are interconnected by a common bus 170. Switch and LAN interfaces 171 and 172, respectively, are provided to interface the VRU with the network switch to which it is interconnected, and to the local area network or other network from which data, maintenance and/or program updates may be received from an external support and maintenance system 140. Note that support and maintenance system 140 may be connected to NCP 110, so that information contained therein can be appropriately updated." 6:5-28. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
|  | Defendants' Invalidity Contentions, that contain this functionality. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Burd discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber (e.g., the NCP retrieves the subscriber record associated with the received dialed number and determines where to route the call and the calling features associated with the subscriber's account).

*See e.g.,*

"When originating switch 105 receives the ARN from NCP 110, it generates a call setup message for the appropriate destination, in this case, network switch 115. The setup message typically includes the ARN as well as information identifying the calling party and the dialed number. As described in more detail below in conjunction with FIG. 6, an Automatic Message Accounting (AMA) billing record is opened in originating switch 105 at this time for the purpose of billing the subscriber for the call." 5:40-49.

"NCP 110 retrieves or 'executes' the subscriber record associated with the received dialed number, in order to obtain a routing number used to direct originating switch 105 as to where to route the call. As described below, the records for subscribers who desire to obtain the post answer call redirection feature in accordance with the present invention, or related features, described in more detail below, are marked to indicate that calls should be forwarded to certain network switches, such as network switch 115, having an adjunct processor 125 that is arranged in accordance with the present invention. Thus, the routing number provided to switch 105 in step 205 is a special routing number that is designated hereinafter as an 'adjunct routing number' or ARN. As will be understood by those skilled in the art, the routing number obtained from NCP 110 (sometimes referred to as 'call treatment') can be made to be sensitive to the call origination location. This allows a subscriber to formulate a routing plan whereby, for example, calls from customers in the western region that are |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | placed to the subscriber's 800 number are routed to a first service center in California, while calls from customers in the eastern region that are placed to the same 800 number are routed to a second service center in New Jersey." 4:42-66.

"It is to be noted here that NCP may provide other available features when it is queried in step 205. These features include, for example, call treatment that is sensitive not only to the location of the calling party, as described above, but also to the time of day and/or day of week that the call is made. Also, a 'call prompter' service may be provided, whereby a calling party is connected to a network services complex 135 in FIG. 1, which is arranged to interact with the calling party using stored voice scripts, so as to play announcements to the calling party and/or collect information from the calling party. The collected information can then be used in further processing of the call." 5:11-23.

"Another aspect of the invention is that the routing number provided to the switch generating the query, in this case originating switch 105, contains a code that can be interpreted by the switch as providing multiple, sequential routing choices. Thus, when the switch receives the code, it can retrieve a table containing information defining the first choice routing, which is used, if available. The table also contains information defining a second choice routing, which is used, however, in the event that the first choice is busy, out of service, or otherwise unavailable. The table may include information defining additional routing choices. This arrangement is particularly useful in order to provide backup capability in the event that a particular network element, such as adjunct processor 125, may be temporarily inoperative." 5:24-39.

"In step 209, adjunct processor 125 receives the setup message and uses the information contained therein, in step 211, to retrieve stored information from database 162, indicative of the features to be provided to the subscriber whose 800 number was dialed. If it is determined, in step 212, that a subscriber record exists in database 162, the process continues with step 213. If no subscriber record can be found, an announcement is played by adjunct processor 125 to the calling party, and the process is terminated in step 214. In lieu of an |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | announcement, the calling party may receive a 're-order' tone or fast busy signal." 6:29-40. |
| | "Once a subscriber record has been retrieved, a determination is made in step 213 as to whether the call redirection feature of the present invention is to be provided with respect to this call, as opposed to another feature. If a positive result is obtained in step 213, the process continues with step 217. If it is determined in step 213 that the subscriber is to be provided with other features known as recurrent call prompter (RCP) or advanced information service, which features can also be provided by the arrangement shown in FIG. 1, then certain modifications of the process of FIGS. 2 and 3 will occur in step 215. These modifications are described in more detail below." 6:41-53. |
| [40.4] accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Burd discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction (e.g., determining the subscriber's call treatment settings). |
| | See citations and discussion above in connection with claim limitation 40.3. |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Burd discloses based at least in part on the subscriber instruction (e.g., the subscriber's sequential routing choices), placing a first outcall to a first communication device associated with the subscriber (e.g., place a call to the first choice routing). |
| | See citations and discussion above in connection with claim limitation 40.3. |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | Burd discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber (e.g., the second choice routing is used if the first choice is busy, out of service, or otherwise unavailable). |
| | See citations and discussion above in connection with claim limitation 40.3. |
| [40.7] receiving a call connect instruction from the | Burd discloses receiving a call connect instruction from the subscriber (e.g., the |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| subscriber; and | adjunct processor initiates a second call to the alternate location). |
| | *See, e.g.:* |
| | "Once the call setup message is sent from adjunct processor 125 to terminating switch 117, adjunct processor 125, in step 219, connects (bridges) the incoming call from customer location 101 to the reserved outgoing trunk 118. At the same time, in step 221, adjunct processor 125 sends billing information to originating switch 105, as described more fully below. Also at this time, in step 223, adjunct processor 125 connects DTMF receiver 168 to the outgoing trunk 118 directed to primary location 120, in order to monitor the call for an indication from the redirecting party that the call is to be redirected. This indication, as stated previously, is typically signaled through application by redirecting party of one or more touch-tone sequences, illustratively the sequence '∗T'." 7:3-17. |
| | "Returning to a description of the process illustrated in FIG. 3, when a redirecting party at primary location 120 identifies a need to either transfer, consult or setup a three way conference, a touch-tone sequence '∗T' is generated by the redirecting party and detected by DTMF receiver 168 within adjunct processor 125, in step 225. Adjunct processor 125, in step 227, checks several counters for permission to proceed, as more fully described below, to assure that a predetermined limit has not been exceeded and that call redirection is therefore permissible at this time. If the limit has been exceeded, a negative permission result is obtained, an announcement may be played to the terminating party in step 229, indicating that redirection is not permitted." 8:1-14. |

14

| U.S. Patent No. 5,432,845 ("Burd") | U.S. Patent No. 7,822,188 |
|---|---|

**U.S. Patent No. 5,432,845 ("Burd")**



FIG. 3

See Fig. 3 and associated text.

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | "If a positive result is obtained in step 227, indicating that redirection is permitted, adjunct processor 125 places the incoming call from customer location 101 on hold in step 231, and plays an announcement to the calling party, advising that party that they have been placed on hold. In step 233, adjunct processor 125 sends an update bill message to originating switch 105, in order to update the billing record to include the cost of the redirection, if a cost is indeed imposed on the redirecting party. Adjunct processor 125, in step 234, then plays a dial tone to the redirecting party and the redirecting party enters a redirection number for the target party at alternate location 130, via touch tone signals. In response, adjunct processor 125 validates the redirection number format, increments its counters, and generates a setup message in step 235 to initiate a second call, via trunk 122, to alternate location 130. This call setup message, which is transmitted to network switch 115, is arranged, in accordance with the present invention, to identify the call with the telephone number of customer location 101, rather than the number of primary location 120. As a result, in step 237, network switch 115 formulates and transmits a query to NCP 110 that includes the telephone number of customer location 101, rather than the number of primary location 120. This query also includes the redirection number (the number of the target party at alternate location 130) supplied by the redirecting party in step 234." 8:15-42. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | Burd discloses instructing the call processing system to connect the first call to a third communication device (e.g., the adjunct processor initiates a second call to the alternate location).<br><br>See citations and discussion above in connection with claim limitation 40.7. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling | Burd discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol (e.g., the adjunct processor receives the call made by |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| to SIP protocol. | the calling party for the primary location).<br><br>*See* claim 40 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim limitation 40.2.<br><br>*See also*,<br><br>"When an 800 call is originated (step 201) by the calling party at customer location 101 to a subscriber using the present invention, by dialing that subscriber's 800 number, the call is routed conventionally via a local exchange switch 103 (which may be a 5ESS® electronic switching system available from AT&T) to an 'originating' switch 105 (which may be a 4ESS™ electronic switching system available from AT&T) that services calls to that 800 number. Switch 105 launches a query in step 203 to a network control point (NCP) 110, which, as those skilled in the art are aware, is a centralized data base that is part of the SS7 signaling system. The query includes the dialed number and information identifying customer location 101, such as the automatic number identification (ANI) for the line serving that location. The query is made in the form of a data message transmitted to NCP 110 via a signaling link 107 (shown dotted for differentiation)." 4:24-41.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during | Burd discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | dialing a private branch exchange extension (e.g., the primary subscriber location may be served by a PBX).<br><br>*See* claim 40 above.<br><br>*Furthermore, see e.g.,*<br><br>"If the primary subscriber location is served by a private branch exchange (PBX), the transfer of an incoming call arriving via a first trunk, to an alternate subscriber location not served by the PBX, is presently accommodated by placing a second call to the alternate location using another, outgoing, trunk, and then bridging the incoming and outgoing calls. This type of call transfer arrangement incurs additional billed cost for the subscriber, since the subscriber continues to be billed for the call because the call continues to be routed through the PBX at the primary subscriber location. This charge may not benefit the subscriber, because the attendant at the primary location may no longer be 'on the call' or talking. Also, the communications service provided to the calling party while the call continues to be routed through the PBX at the primary subscriber location can be sub-optimum, due to the 'hair-pinning' of two subscriber grade trunks through the PBX to complete the transfer, effectively reducing the capacity of the PBX to handle other calls. In addition, the second call is treated as though it originated from the primary subscriber location, creating certain other routing problems described below." 1:34-56.<br><br>"In the realm of 800 and other intelligent call processing services, one can easily see that a call redirection feature is needed that allows a call made to a primary location that is answered and determined to be better served by personnel at another location, to be rerouted to an alternate location, and yet to retain the original caller's identity, so that the appropriate routing or feature logic is invoked. This rerouting should be accomplished without utilizing superfluous network and PBX resources, without adding unnecessary subscriber loops to the talk path, and without charging the 800 subscriber for any portion of the redirected call which the subscriber is not actually 'using'." 2:28-40. |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | Burd discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., the redirecting party applies a touch-tone sequence to indicate a desire to redirect and/or conference the incoming call).

*See* claim 40 above.

*Furthermore, see e.g.,*

"The foregoing need is met and a technical advance is achieved in accordance with the invention by routing calls made by callers that are customers of a subscriber (typically an 800 or other intelligent network service subscriber) to a primary location via a telephone network switch operating in conjunction with a specially configured adjunct processor. The adjunct processor, which provides a feature referred to below as 'post answer call redirection (PACR)', is arranged to monitor the call even after it is answered by an attendant or other subscriber personnel at the primary location. If the call is to be redirected from the primary location to an alternate location, the adjunct is signaled typically by inband signaling, for example, a dual tone multi-frequency (DTMF) sequence, or out of band signaling. The adjunct responds by putting the calling party on hold and by initiating a call to the alternate location on an outgoing trunk of the network switch. The second call is initiated in such a way that it emulates or imitates both the routing (call treatment) and billing characteristics of a call made from the original customer location. Redirection can then be completed in one of three ways: blind transfer, consultation, or conference. With blind transfer, the primary location disconnects before or while the second call is being established, and when the second call has been established, the second call is interconnected to or bridged with the original call, thereby completing a path from the customer location to the alternate location which bypasses the primary location. With consultation, a voice path is established between the primary location and the alternate location, while the calling party remains on hold. The attendant at the |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | primary location can then disconnect, at which time the calling party is removed from hold and enabled to converse with the personnel at the alternate location, or the personnel at the alternate location can disconnect, enabling the primary location to initiate another call redirection. (If the calling party disconnects the entire call is terminated). If a conference is desired, the primary location can request interconnection or bridging of the calling party with the primary and alternate locations." 2:43-3:16. |
| | "As shown in FIG. 1, adjunct processor 125 may include several VRU's 150, 151 interconnected by a local area network 155. Each VRU, includes a microprocessor 160 that operates under the control of programs which could be stored in a database 162. Database 162 is also arranged, in accordance with the invention, to store records that contain information describing the redirection features to are to be provided to each subscriber. The VRU also includes signal and speech generators 164 and 166, respectively, and a DTMF receiver 168 arranged to detect various touch tone sequences that signal a desire to invoke features provided by adjunct processor 125. The individual elements in VRU 150 are interconnected by a common bus 170. Switch and LAN interfaces 171 and 172, respectively, are provided to interface the VRU with the network switch to which it is interconnected, and to the local area network or other network from which data, maintenance and/or program updates may be received from an external support and maintenance system 140. Note that support and maintenance system 140 may be connected to NCP 110, so that information contained therein can be appropriately updated." 6:5-28. |
| | "Once the call setup message is sent from adjunct processor 125 to terminating switch 117, adjunct processor 125, in step 219, connects (bridges) the incoming call from customer location 101 to the reserved outgoing trunk 118. At the same time, in step 221, adjunct processor 125 sends billing information to originating switch 105, as described more fully below. Also at this time, in step 223, adjunct processor 125 connects DTMF receiver 168 to the outgoing trunk 118 directed to primary location 120, in order to monitor the call for an indication from the redirecting party that the call is to be redirected. This indication, as stated |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | previously, is typically signaled through application by redirecting party of one or more touch-tone sequences, illustratively the sequence "T"." 7:3-17.<br><br>"If a positive result is obtained in step 227, indicating that redirection is permitted, adjunct processor 125 places the incoming call from customer location 101 on hold in step 231, and plays an announcement to the calling party, advising that party that they have been placed on hold. In step 233, adjunct processor 125 sends an update bill message to originating switch 105, in order to update the billing record to include the cost of the redirection, if a cost is indeed imposed on the redirecting party. Adjunct processor 125, in step 234, then plays a dial tone to the redirecting party and the redirecting party enters a redirection number for the target party at alternate location 130, via touch tone signals. In response, adjunct processor 125 validates the redirection number format, increments its counters, and generates a setup message in step 235 to initiate a second call, via trunk 122, to alternate location 130. This call setup message, which is transmitted to network switch 115, is arranged, in accordance with the present invention, to identify the call with the telephone number of customer location 101, rather than the number of primary location 120. As a result, in step 237, network switch 115 formulates and transmits a query to NCP 110 that includes the telephone number of customer location 101, rather than the number of primary location 120. This query also includes the redirection number (the number of the target party at alternate location 130) supplied by the redirecting party in step 234." 8:15-42. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | Burd discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., the adjunct processor receives the call made by the calling party for the primary location).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim 41. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,432,845 ("Burd") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | Burd discloses the method of claim 40, further comprising wherein the first communication device is connected to a private branch exchange system (e.g., the primary subscriber location may be served by a PBX). *See* claim 40 above. Furthermore, see citations and discussion above in connection with claim 42. |

22

NY:1636788.2

Exhibit A-5

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on U.S. Patent App. 2002/0067816 ("Bushnell")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent App. No. 2002/0067816 by William Jackson Bushnell ("Bushnell") invalidates Claims 1-16 and 26-37 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Bushnell was filed on December 1, 2000 and was published on June 6, 2002, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| 1. A method of processing calls, the method comprising: | **Bushnell** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "A Caller Profile system and service enables a caller to establish a caller profile which is to be selectably delivered to called parties contemporaneous with the delivery of a call." Bushnell Abstract.<br><br>• "This invention relates to telecommunication systems, and more particular to facilities within telecommunications systems for delivering to a called party information about a calling party." *Id.* at ¶ 1.<br><br>• Fig. 1: |

2

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | <br><br>FIG. 1 |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | **Bushnell** discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber.<br><br>*See, e.g.:*<br><br>• "The caller profile information may be stored in a database operated by a service provider, but may also be stored in a corporate or user-operated database." *Id.* at ¶ 9.<br><br>• "the caller profile information could be stored on a Web server operated by the telecommunications service provider (on the Internet or on a private network) such as CPAS 112, or on a web server operated by another provider or the caller." *Id.* at ¶ 34. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | **Bushnell** discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network. <br><br> *See, e.g.:* <br><br> • "The caller profile information may be ***stored in a database operated by a service provider***, but may also be stored in a corporate or user-operated database." *Id.* at ¶ 9. <br><br> • "Prior to making a call, the caller may select ***one of several profiles*** to be delivered with subsequent calls. When using a telecommunications service other than a service to which the caller normally subscribes—such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset—the caller may request that the caller's own profile be delivered, rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9. <br><br> • "For example, terminals 120 and 124 may be ordinary analog telephone sets, ISDN telephones, IP telephones, wireless handsets, telephony-enabled personal computers, and the like, with facilities to display a caller profile." *Id.* at ¶ 24. <br><br> • "Thus, lines 150 and 156 may be, for example, analog telephone lines, ISDN lines, appropriate resources of a wireless telecommunications system, and the like." *Id.* at ¶ 25. <br><br> • "In step 312, the user enters one or more caller profiles which may be delivered to other subscriber." *Id.* at ¶ 58. <br><br> • Fig. 1: |

4

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | <br><br>*FIG. 1* |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | **Bushnell** discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address.<br><br>*See, e.g.:*<br><br>• "Method 500 begins in step 510 in which the subscriber dials the called number from a remote line, service, or handset." *Id.* at ¶ 66.<br><br>• "When using a telecommunications service other than a service to which the caller normally subscribes—*such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset*—the caller may request that the caller's own profile be delivered, rather than caller identification or profile information corresponding to the 'borrowed' line, |

5

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | subscription, or handset." *Id.* at ¶ 9.<br><br>• ". . . allows the caller to remotely enable caller profile delivery for *calls made from a line, terminal, or handset other than those to which the caller subscribers.*" *Id.* at ¶ 10. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | **Bushnell** discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address.<br><br>*See, e.g.:*<br><br>• "The server selects an appropriate profile according to subscriber-defined rules or policies and delivers it to the switch. The switch transmits the profile information to the subscriber terminal." Abstract.<br><br>• "Prior to making a call, the caller may select one of several profiles to be delivered with subsequent calls. *When using a telecommunications service other than a service to which the caller normally subscribes—such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset—the caller may request that the caller's own profile be delivered*, rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9.<br><br>• ". . . allows the caller to remotely enable caller profile delivery for calls made from a line, terminal, or handset other than those to which the caller subscribers." *Id.* at ¶ 10.<br><br>• "The caller profile may include text information, images, sound, or other multimedia content." *Id.* at ¶ 9.<br><br>• "For example, for analog telephones, limited caller profile information may be transmitted using voice-band FSK over subscriber loop, *as is now done for the Caller ID service.*" *Id.* at ¶ 32.<br><br>• "For example, for calls received on conventional analog telephone lines, |

6

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | services available under the names "Calling Line Identification (CLID)", "Calling Number Identification (CNID)", and "Caller ID" *identify the directory number of the telephone line or handset from which the call was placed."* *Id.* at ¶ 2. |
| | • "The service of providing different caller profile information depending on the called party, the time of day, or other distinguishing factors, could still be provided through CPDS/SCP 110 by delivering one of a set of different available caller profile URLs selected, e.g., according to rules established by the caller profile subscriber." *Id.* at ¶ 34. |
| | • "According to an aspect of the invention, the IVR system 114 allows a caller profile subscriber to remotely control the selection and delivery of his or her profile, *both from the subscriber's normal line, service, or handset, and from a 'borrowed' line, service, or handset.* Among other functions, the IVR system 114 preferably allows the subscriber to request that the subscriber's profile be delivered with the next call made from a 'borrowed' line, service, or handset." *Id.* at ¶ 39. |
| | • "By way of example, but not limitation, the user may specify that a first profile be transmitted when calling a number within the subscriber's company or organization, and a second profile (or no profile) be transmitted when calling an outside number." *Id.* at ¶ 58. |
| | • "Further, in this step, the subscriber may specify that upon the origination of certain calls, the subscriber is to be prompted to select the caller profile to be delivered to called party. The rules determining for which calls the subscriber will be prompted may depend on various characteristics of the time of day, called party, called number, and the like." *Id.* at ¶ 58. |
| | • "FIG. 5 is a block diagram showing a method 500 for use with the preferred embodiments 100, 200 of FIGS. 1-2 for delivering caller profile information to a called party when the caller is using a line, service, or handset to which the caller does not subscribe, such as when visiting another location or borrowing another subscriber's handset. The line, service, or handset which is to be used, and to which the caller does not subscribe, is referred to herein as |

7

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | the 'remote' line, service, or handset." *Id.* at ¶ 65. |
| | • Fig. 4: |
| |  |
| bridging the first call and the first outcall; | **Bushnell** discloses bridging the first call and the first outcall. |
| | *See, e.g.:* |
| | • "In step 526, the switch or GFSG extends the call to the called or terminating switch 122 or GFSG 222." *Id.* at ¶ 68. |
| | • Fig. 1: |
| |  |

FIG. 1

8

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | **Bushnell** discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address.<br><br>*See, e.g.:*<br><br>• "Method 500 begins in step 510 in which the subscriber dials the called number from a remote line, service, or handset." *Id.* at ¶ 66.<br>• "When using a telecommunications service other than a service to which the caller normally subscribes—*such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset*—the caller may request that the caller's own profile be delivered, rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9.<br>• ". . . allows the caller to remotely enable caller profile delivery for *calls made from a line, terminal, or handset other than those to which the caller subscribers.*" *Id.* at ¶ 10. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | **Bushnell** discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address.<br><br>*See, e.g.:*<br><br>• "The server selects an appropriate profile according to subscriber-defined rules or policies and delivers it to the switch. The switch transmits the profile information to the subscriber terminal." Abstract.<br>• "Prior to making a call, the caller may select one of several profiles to be delivered with subsequent calls. *When using a telecommunications service other than a service to which the caller normally subscribes—such as when making calls while traveling, visiting another office, or borrowing another* |

9

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | *subscriber's handset—the caller may request that the caller's own profile be delivered,* rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9. |
| | • ". . . allows the caller to remotely enable caller profile delivery for calls made from a line, terminal, or handset other than those to which the caller subscribers." *Id.* at ¶ 10. |
| | • "The caller profile may include text information, images, sound, or other multimedia content." *Id.* at ¶ 9. |
| | • "For example, for analog telephones, limited caller profile information may be transmitted using voice-band FSK over subscriber loop, *as is now done for the Caller ID service.*" *Id.* at ¶ 32. |
| | • "For example, for calls received on conventional analog telephone lines, services available under the names "Calling Line Identification (CLID)", "Calling Number Identification (CNID)", and "Caller ID" *identify the directory number of the telephone line or handset from which the call was placed.*"  *Id.* at ¶ 2. |
| | • "The service of providing different caller profile information depending on the called party, the time of day, or other distinguishing factors, could still be provided through CPDS/SCP 110 by delivering one of a set of different available caller profile URLs selected, e.g., according to rules established by the caller profile subscriber." *Id.* at ¶ 34. |
| | • "According to an aspect of the invention, the IVR system 114 allows a caller profile subscriber to remotely control the selection and delivery of his or her profile, *both from the subscriber's normal line, service, or handset, and from a 'borrowed' line, service, or handset.* Among other functions, the IVR system 114 preferably allows the subscriber to request that the subscriber's profile be delivered with the next call made from a 'borrowed' line, service, or handset." *Id.* at ¶ 39. |
| | • "By way of example, but not limitation, the user may specify that a first profile be transmitted when calling a number within the subscriber's company or organization, and a second profile (or no profile) be transmitted |

10

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | when calling an outside number." *Id.* at ¶ 58. |
| | • "Further, in this step, the subscriber may specify that upon the origination of certain calls, the subscriber is to be prompted to select the caller profile to be delivered to called party. The rules determining for which calls the subscriber will be prompted may depend on various characteristics of the time of day, called party, called number, and the like." *Id.* at ¶ 58. |
| | • "FIG. 5 is a block diagram showing a method 500 for use with the preferred embodiments 100, 200 of FIGS. 1-2 for delivering caller profile information to a called party when the caller is using a line, service, or handset to which the caller does not subscribe, such as when visiting another location or borrowing another subscriber's handset. The line, service, or handset which is to be used, and to which the caller does not subscribe, is referred to herein as the 'remote' line, service, or handset." *Id.* at ¶ 65. |
| |  |
| | • Fig. 4: |
| bridging the second call and the second outcall. | **Bushnell** discloses bridging the second call and the second outcall. |
| | *See, e.g.:* |
| | • "In step 526, the switch or GFSG extends the call to the called or terminating switch 122 or GFSG 222." *Id.* at ¶ 68. |
| | • Fig. 1: |

11

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | 

FIG. 1 |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | **Bushnell** discloses the method of claim 1, wherein the first call is initiated by the subscriber.

*See* claim 1 above.

• "Method 500 begins in step 510 in which the subscriber dials the called number from a remote line, service, or handset." *Id.* at ¶ 66. |

12

| U.S. Patent No. 7,822,188 | | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|---|
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | | |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | | |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | | **Bushnell** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 1 above.<br><br>• "In conventional telecommunications networks providing circuit-switched voice services, the transactions between the switch and the external database typically employ the 'Common Channel Signaling System No. 7' (CCS7) signaling protocol." *Id.* at ¶ 3.<br>• "As is known, the SCP is connected to switching systems and other nodes having call processing functions using the CCS7 network." *Id.* at ¶ 10. |
| | | |

13

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | **Bushnell** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SIP signaling. <br><br> *See* claim 1 above. <br><br> • "The term 'call' is intended to refer broadly to any type of call, service, connection, session, packet, or datagram, or any related group or stream thereof, regardless of media or content, and regardless of whether or not the communication is circuit, connection, or session oriented." *Id.* at ¶ 20. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | **Bushnell** discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network. <br><br> *See* claim 1 above. <br><br> • "Subscriber terminals 220 and 224 may be any suitable packet-telephony-enabled terminal, such as an IP telephone set or a personal computer with IP telephone software." *Id.* at ¶ 46. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | **Bushnell** discloses the method of claim 1, wherein the first outcall is placed over a wireless network. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | *See* claim 1 above.<br><br>• "Lines 150 and 156 are intended to represent a compatible connection between terminals 120, 124 and switches 118, 122 without regard to the physical media or infrastructure used to implement the connection. Thus, lines 150 and 156 may be, for example, analog telephone lines, ISDN lines, appropriate resources of a wireless telecommunications system, and the like. In this instance, the term 'line' is used with a meaning more expansive than that ordinarily applied in the telecommunications arts." *Id.* at ¶25.<br><br>• Fig. 1:<br><br>FIG. 1 |

15

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | **Bushnell** discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 1 above.<br><br>• "As best seen in FIG. 1, the first embodiment 100 includes a calling subscriber terminal 120 coupled via a suitable line 150 to an originating switching system 118. Originating switching system 118 is connected via suitable trunks or carrier facilities 152 to a telecommunications network 116, such as the Public Switched Telecommunications Network (PSTN)." *Id.* at ¶ 23.<br><br>• "Lines 150 and 156 are intended to represent a compatible connection between terminals 120, 124 and switches 118, 122 without regard to the physical media or infrastructure used to implement the connection. Thus, lines 150 and 156 may be, for example, analog telephone lines, ISDN lines, appropriate resources of a wireless telecommunications system, and the like. In this instance, the term 'line' is used with a meaning more expansive than that ordinarily applied in the telecommunications arts." *Id.* at ¶ 25.<br><br>• Fig. 1: |

16

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| |  FIG. 1 |
| 11. The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone address; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

17

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| reading at least one subscriber specified rule from computer readable memory; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 14. The method as defined in claim 1, the method | **Bushnell** discloses method as defined in claim 1. |

18

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| further comprising: | *See* claim 1 above. |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a third outcall to the transfer destination; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| connecting the first outcall with the third outcall. | **Bushnell** discloses connecting the first outcall with the third outcall.<br><br>*See* claim 1 above.<br><br>• "In step 526, the switch or GFSG extends the call to the called or terminating switch 122 or GFSG 222." *Id.* at ¶ 68.<br>• Fig. 1: |

19

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| |  FIG. 1 |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

20

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| mobile phone address. | Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 26. A method of processing calls, the method comprising: | **Bushnell** discloses a method of processing calls, the method comprising. |
| | *See, e.g.:* |
| | • "A Caller Profile system and service enables a caller to establish a caller profile which is to be selectably delivered to called parties contemporaneous with the delivery of a call." Abstract. |
| | • "This invention relates to telecommunication systems, and more particular to facilities within telecommunications systems for delivering to a called party information about a calling party." *Id.* at ¶ 1. |
| | • Fig. 1: |

21

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
|  |  FIG. 1 |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | **Bushnell** discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system. *See, e.g.:* <br><br> • "The caller profile information may be stored in a database operated by a service provider, but may also be stored in a corporate or user-operated database." *Id.* at ¶ 9. <br><br> • "the caller profile information could be stored on a Web server operated by the telecommunications service provider (on the Internet or on a private network) such as CPAS 112, or on a web server operated by another provider or the caller." *Id.* at ¶ 34. |

22

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | • "The caller profile may include text information, images, sound, or other multimedia content." *Id.* at ¶ 9.<br>• "For example, for analog telephones, limited caller profile information may be transmitted using voice-band FSK over subscriber loop, *as is now done for the Caller ID service.*" *Id.* at ¶ 32.<br>• "For example, for calls received on conventional analog telephone lines, services available under the names 'Calling Line Identification (CLID)', 'Calling Number Identification (CNID)', and 'Caller ID' *identify the directory number of the telephone line or handset from which the call was placed.*" *Id.* at ¶ 2. |
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | **Bushnell** discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network.<br><br>*See, e.g.:*<br><br>• "The caller profile information may be *stored in a database operated by a service provider*, but may also be stored in a corporate or user-operated database." *Id.* at ¶ 9.<br>• "Prior to making a call, the caller may select *one of several profiles* to be delivered with subsequent calls. *When using a telecommunications service other than a service to which the caller normally subscribes—such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset—the caller may request that the caller's own profile be delivered*, rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9.<br>• "According to an aspect of the invention, the IVR system 114 allows a caller profile subscriber to remotely control the selection and delivery of his or her profile, *both from the subscriber's normal line, service, or handset, and from a "borrowed" line, service, or handset.* Among other functions, the IVR system 114 preferably allows the subscriber to request that the |

23

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | subscriber's profile be delivered with the next call made from a 'borrowed' line, service, or handset." *Id.* at ¶ 39. |
| | • "For example, terminals 120 and 124 may be ordinary analog telephone sets, ISDN telephones, IP telephones, wireless handsets, telephony-enabled personal computers, and the like, with facilities to display a caller profile." *Id.* at ¶ 24. |
| | • "Thus, lines 150 and 156 may be, for example, analog telephone lines, ISDN lines, appropriate resources of a wireless telecommunications system, and the like." *Id.* at ¶ 25. |
| | • "In step 312, the user enters one or more caller profiles which may be delivered to other subscriber." *Id.* at ¶ 58. |
| storing the plurality of user phone addresses in computer readable memory; | **Bushnell** discloses storing the plurality of user phone addresses in computer readable memory. *See, e.g.:* <br><br> • "The caller profile information may be ***stored in a database operated by a service provider***, but may also be stored in a corporate or user-operated database." *Id.* at ¶ 9. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | **Bushnell** discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses. *See, e.g.:* <br><br> • "When a call is made and extended to a terminating switch, the switch consults the Caller Profile Database server. The server selects an appropriate profile according to subscriber-defined rules or policies and delivers it to the switch. The switch transmits the profile information to the subscriber terminal." *Id.* at Abstract. <br><br> • "Method 500 begins in step 510 in which the subscriber dials the called |

24

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | number from a remote line, service, or handset." *Id.* at ¶ 66. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | **Bushnell** discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.

*See, e.g.*:

- "The server selects an appropriate profile according to subscriber-defined rules or policies and delivers it to the switch. The switch transmits the profile information to the subscriber terminal." Abstract.
- "Prior to making a call, the caller may select one of several profiles to be delivered with subsequent calls. *When using a telecommunications service other than a service to which the caller normally subscribes—such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset—the caller may request that the caller's own profile be delivered*, rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9.
- ". . . allows the caller to remotely enable caller profile delivery for calls made from a line, terminal, or handset other than those to which the caller subscribers." *Id.* at ¶ 10.
- "The caller profile may include text information, images, sound, or other multimedia content." *Id.* at ¶ 9.
- "For example, for analog telephones, limited caller profile information may be transmitted using voice-band FSK over subscriber loop, *as is now done for the Caller ID service.*" *Id.* at ¶ 32.
- "For example, for calls received on conventional analog telephone lines, services available under the names "Calling Line Identification (CLID)", "Calling Number Identification (CNID)", and "Caller ID" *identify the directory number of the telephone line or handset from which the call was placed.*"    *Id.* at ¶ 2. |

25

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | • "The service of providing different caller profile information depending on the called party, the time of day, or other distinguishing factors, could still be provided through CPDS/SCP 110 by delivering one of a set of different available caller profile URLs selected, e.g., according to rules established by the caller profile subscriber." *Id.* at ¶ 34. |
| | • "According to an aspect of the invention, the IVR system 114 allows a caller profile subscriber to remotely control the selection and delivery of his or her profile, *both from the subscriber's normal line, service, or handset, and from a 'borrowed' line, service, or handset.* Among other functions, the IVR system 114 preferably allows the subscriber to request that the subscriber's profile be delivered with the next call made from a 'borrowed' line, service, or handset." *Id.* at ¶ 39. |
| | • "By way of example, but not limitation, the user may specify that a first profile be transmitted when calling a number within the subscriber's company or organization, and a second profile (or no profile) be transmitted when calling an outside number." *Id.* at ¶ 58. |
| | • "Further, in this step, the subscriber may specify that upon the origination of certain calls, the subscriber is to be prompted to select the caller profile to be delivered to called party. The rules determining for which calls the subscriber will be prompted may depend on various characteristics of the time of day, called party, called number, and the like." *Id.* at ¶ 58. |
| | • "FIG. 5 is a block diagram showing a method 500 for use with the preferred embodiments 100, 200 of FIGS. 1-2 for delivering caller profile information to a called party when the caller is using a line, service, or handset to which the caller does not subscribe, such as when visiting another location or borrowing another subscriber's handset. The line, service, or handset which is to be used, and to which the caller does not subscribe, is referred to herein as the 'remote' line, service, or handset." *Id.* at ¶ 65. |

26

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | \n\n- Fig. 4:\n\n**Bushnell** discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.\n\n*See, e.g.:*\n\n- "In step 526, the switch or GFSG extends the call to the called or terminating switch 122 or GFSG 222." *Id.* at ¶ 68.\n- Fig. 1:\n\n |

27

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| 27. The method as defined in claim 26, the method further comprising; | **Bushnell** discloses the method as defined in claim 26.<br><br>*See* claim 26 above. |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | **Bushnell** discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses.<br><br>*See* claim 26 above.<br><br>• "When a call is made and extended to a terminating switch, the switch consults the Caller Profile Database server. The server selects an appropriate profile according to subscriber-defined rules or policies and delivers it to the switch. The switch transmits the profile information to the subscriber terminal." *Id.* at Abstract.<br>• "Method 500 begins in step 510 in which the subscriber dials the called number from a remote line, service, or handset." *Id.* at ¶ 66.<br>• "Prior to making a call, the caller may select one of several profiles to be delivered with subsequent calls. *When using a telecommunications service other than a service to which the caller normally subscribes—such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset—the caller may request that the caller's own profile be delivered*, rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a | **Bushnell** discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first |

28

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | phone address associated with the call processing system is different than the second user phone address. *See* claim 26 above. <br><br> • "The server selects an appropriate profile according to subscriber-defined rules or policies and delivers it to the switch. The switch transmits the profile information to the subscriber terminal." Abstract. <br><br> • "Prior to making a call, the caller may select one of several profiles to be delivered with subsequent calls. *When using a telecommunications service other than a service to which the caller normally subscribes—such as when making calls while traveling, visiting another office, or borrowing another subscriber's handset—the caller may request that the caller's own profile be delivered*, rather than caller identification or profile information corresponding to the 'borrowed' line, subscription, or handset." *Id.* at ¶ 9. <br><br> • ". . . allows the caller to remotely enable caller profile delivery for calls made from a line, terminal, or handset other than those to which the caller subscribers." *Id.* at ¶ 10. <br><br> • "The caller profile may include text information, images, sound, or other multimedia content." *Id.* at ¶ 9. <br><br> • "For example, for analog telephones, limited caller profile information may be transmitted using voice-band FSK over subscriber loop, *as is now done for the Caller ID service.*" *Id.* at ¶ 32. <br><br> • "For example, for calls received on conventional analog telephone lines, services available under the names "Calling Line Identification (CLID)", "Calling Number Identification (CNID)", and "Caller ID" *identify the directory number of the telephone line or handset from which the call was placed.*" *Id.* at ¶ 2. <br><br> • "The service of providing different caller profile information depending on the called party, the time of day, or other distinguishing factors, could still be provided through CPDS/SCP 110 by delivering one of a set of different available caller profile URLs selected, e.g., according to rules established by |

29

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | the caller profile subscriber." *Id.* at ¶ 34. |
| | • "According to an aspect of the invention, the IVR system 114 allows a caller profile subscriber to remotely control the selection and delivery of his or her profile, *both from the subscriber's normal line, service, or handset, and from a 'borrowed' line, service, or handset.* Among other functions, the IVR system 114 preferably allows the subscriber to request that the subscriber's profile be delivered with the next call made from a 'borrowed' line, service, or handset." *Id.* at ¶ 39. |
| | • "By way of example, but not limitation, the user may specify that a first profile be transmitted when calling a number within the subscriber's company or organization, and a second profile (or no profile) be transmitted when calling an outside number." *Id.* at ¶ 58. |
| | • "Further, in this step, the subscriber may specify that upon the origination of certain calls, the subscriber is to be prompted to select the caller profile to be delivered to called party. The rules determining for which calls the subscriber will be prompted may depend on various characteristics of the time of day, called party, called number, and the like." *Id.* at ¶ 58. |
| | • "FIG. 5 is a block diagram showing a method 500 for use with the preferred embodiments 100, 200 of FIGS. 1-2 for delivering caller profile information to a called party when the caller is using a line, service, or handset to which the caller does not subscribe, such as when visiting another location or borrowing another subscriber's handset. The line, service, or handset which is to be used, and to which the caller does not subscribe, is referred to herein as the 'remote' line, service, or handset." *Id.* at ¶ 65. |
| | • Fig. 4: |
| | ┌─────────────────────────────┐ |
| | │  SWITCH SENDS APPROPRIATE CALLER │ |
| | │  PROFILE INFORMATION TO CALLED PARTY │ |
| | └─────────────────────────────┘ |
| | 436 / 438 |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | **Bushnell** discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. |

30

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | *See* claim 26 above. |
| | • "In step 526, the switch or GFSG extends the call to the called or terminating switch 122 or GFSG 222." *Id.* at ¶ 68. |
| | • Fig. 1: |
| | |
| | *FIG. 1* |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | **Bushnell** discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. |
| | *See* claim 26 above. |

31

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | • "In conventional telecommunications networks providing circuit-switched voice services, the transactions between the switch and the external database typically employ the 'Common Channel Signaling System No. 7' (CCS7) signaling protocol." *Id.* at ¶ 3.<br>• "As is known, the SCP is connected to switching systems and other nodes having call processing functions using the CCS7 network." *Id.* at ¶ 10. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | **Bushnell** discloses the method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software.<br><br>*See* claim 26 above.<br><br>• "For example, terminals 120 and 124 may be ordinary analog telephone sets, ISDN telephones, IP telephones, wireless handsets, *telephony-enabled personal computers*, and the like, with facilities to display a caller profile." *Id.* at ¶ 24.<br>• "Subscriber terminals 220 and 224 may be any suitable packet-telephony-enabled terminal, such as an IP telephone set or *a personal computer with IP telephone software*." *Id.* at ¶ 46. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | **Bushnell** discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling.<br><br>*See* claim 26 above.<br><br>• "The term 'call' is intended to refer broadly to any type of call, service, connection, session, packet, or datagram, or any related group or stream thereof, regardless of media or content, and regardless of whether or not the communication is circuit, connection, or session oriented." *Id.* at ¶ 20. |

32

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | **Bushnell** discloses the method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network.<br><br>*See* claim 26 above.<br><br>• "A calling party subscriber terminal 220 is preferably connected via link 250 to the originating GFSG 218. The originating GFSG 218 is connected via a link 252 to a network 216, which may be a public packet network such as the Internet. Network 216 could also be a private packet network. Unless otherwise specified, all links shown in FIG. 2 may be implemented using any suitable packet- or cell based networking technology, including TCP/IP, ATM, HDLC, and the like, and may be carried over any suitable media." *Id.* at ¶ 46.<br><br>• "Subscriber terminals 220 and 224 may be any suitable packet-telephony-enabled terminal, such as an IP telephone set or a personal computer with IP telephone software." *Id.* at ¶ 46. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | **Bushnell** discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 26 above.<br><br>• "Lines 150 and 156 are intended to represent a compatible connection between terminals 120, 124 and switches 118, 122 without regard to the physical media or infrastructure used to implement the connection. Thus, lines 150 and 156 may be, for example, analog telephone lines, ISDN lines, appropriate resources of a wireless telecommunications system, and the like. In this instance, the term 'line' is used with a meaning more expansive than that ordinarily applied in the telecommunications arts." *Id.* at ¶ 25. |

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | • Fig. 1: |
| |  |
| | FIG. 1 |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | **Bushnell** discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. |
| | *See* claim 26 above. |
| | • "As best seen in FIG. 1, the first embodiment 100 includes a calling subscriber terminal 120 coupled via a suitable line 150 to an originating switching system 118. Originating switching system 118 is connected via suitable trunks or carrier facilities 152 to a telecommunications network 116. |

34

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | such as the Public Switched Telecommunications Network (PSTN)." *Id.* at ¶ 23. |
| | • "Lines 150 and 156 are intended to represent a compatible connection between terminals 120, 124 and switches 118, 122 without regard to the physical media or infrastructure used to implement the connection. Thus, lines 150 and 156 may be, for example, analog telephone lines, ISDN lines, appropriate resources of a wireless telecommunications system, and the like. In this instance, the term 'line' is used with a meaning more expansive than that ordinarily applied in the telecommunications arts." *Id.* at ¶ 25. |
| | • Fig. 1: |
| |  |
| | *FIG. 1* |

35

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| 34. The method as defined in claim 26, the method further comprising; | **Bushnell** discloses the method as defined in claim 26, the method further comprising. *See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| reading at least one user specified rule from computer readable memory; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

36

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising: | **Bushnell** discloses the method as defined in claim 26, the method further comprising. *See* claim 26 above. |
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing an outcall to the connect destination; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| connecting the first outcall with the outcall to the connect destination. | **Bushnell** discloses connecting the first outcall with the outcall to the connect destination. |

37

| U.S. Patent No. 7,822,188 | U.S. Patent App. No. 2002/0067816 ("Bushnell") |
|---|---|
| | *See* claim 26 above. |
| | • "In step 526, the switch or GFSG extends the call to the called or terminating switch 122 or GFSG 222." *Id.* at ¶ 68. |
| | • Fig. 1: |
| |  |
| | *FIG. 1* |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

38

NY:1636657.2

Exhibit A-6

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 7,190,773 ("D'Silva")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 7,190,773 ("D'Silva") invalidates Claims 40-43, and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. D'Silva was filed on February 27, 2002, claims a priority date of at least February 27, 2001, and issued on March 13, 2007, before the alleged invention of the '188 Patent. D'Silva qualifies as prior art under at least 35 U.S.C. §§ 102(a) and (e).

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| [40.1] A method of processing calls, comprising: | D'Silva discloses a method of processing calls (e.g., methods and systems for supplying calling party information to a called party via a network comprising a telephone network, a data network, and at least one gateway device). |
| | *See, e.g.,* |
| | "Methods and systems are disclosed for supplying calling party information to a called party via a network comprising a telephone network, a data network, and at least one gateway device. The gateway device is connected to both the telephone network and the data network. The gateway device receives, via the telephone network, signaling information representing a telephone call from the calling party to the called party. The signaling information includes called party information. Calling party information is obtained based on the signaling information. The calling party information is provided to the called party via the data network." D'Silva at Abstract.[1] |

2

---

[1] All references are to D'Silva, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | "The present invention relates to systems and methods for controlling telephony systems using data processing systems and, more particularly, to providing information regarding the origin of telephone calls." 1:48-51. |
| | "Telephone service providers typically offer caller identification ('Caller-ID') as a service to report the telephone number and, optionally, a name of a calling party. Caller-ID provides the called party an opportunity to learn the identity of a calling party before answering a call. This allows a called party to screen calls from particular calling parties. Alternatively, it may alert a called party to answer the current call from a particular person. The Caller-ID service may also allow historical logging of calls. For example, a person may attempt to contact one of her friends and may not leave a voice mail message. With Caller-ID, the called friend may refer to a record of the time and telephone number of the calling friend, and may then return the call, even though the calling friend did not leave a voice mail message. Alternatively, a person may use the historical logging feature to aid in remembering when telephone calls were received or when telephone calls were accepted and the date and time of a particular call took place." 1:55-2:5. |
| | "Caller-ID information is delivered to a device coupled to the Public Switched Telephone Network ('PSTN'). For example, a dedicated Caller-ID device can be connected to a PSTN line that is shared with a telephone. More complex systems, such as those deployed in business environments may use a local Private Branch Exchange ('PBX') connected to the PSTN and have Caller-ID displays integrated into the telephone units. Additionally, many wireless telephone service providers use wireless handsets which have integrated Caller-ID display functionality." 2:6-16. |
| | "Consistent with the principles of the present invention, calling party information is supplied to a called party over a telephone network, or a data network using at least one server connected to both the telephone network and the data network. The server receives, through the telephone network, signaling information representing a telephone call from a calling party to a called party. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | The signaling information comprises called party information. The server obtains the calling party information based on the signaling information, and provides the calling party information to the called party information via the data network." 2:34-44. |
| | "Consistent with the principles of the present invention, caller identification information is supplied from a calling party to a called party via a public telephone network, using a caller identification gateway by which the calling party places a telephone call by transmitting signaling information corresponding to a telephone number of the called party over the public telephone network. The server accepts the signaling information corresponding to the telephone number associated with the called party. A path through the public telephone network based on the signaling information is established. A telephone switch corresponding to a destination telephone terminal corresponding to the telephone number associated with the called party is selected. Caller identification information corresponding to the calling party is retrieved by the caller identification gateway from the telephone switch. The caller identification information is transmitted to a user service center server using an internet protocol. The caller identification information is transmitted by the user service center server to an instant messaging server over an internet protocol data network. The caller identification information to the called party is presented by displaying an instant message provided by the instant messaging server on a computer screen of a called party." 2:45-3:4. |
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | D'Silva discloses receiving at a call processing system a message (e.g., the unified communications service) from an Internet protocol proxy (e.g., the proxy) regarding a first call from a caller (e.g., the telephone call from the calling party to the called party). |
| | *See e.g.*, |
| | "Consistent with the principles of the present invention, calling party information from a telephone network, such as Caller-ID information, is |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
|  | provided to a called party via a data network using a unified communications service. The unified communications service receives, from the telephone network, signaling information representing a telephone call from a calling party to a called party. The unified communications service determines the calling party information based on the signaling information, and provides the calling party information to the called party via the data network." 3:39-48. |
|  | "In accordance with the principles of the present invention, information indicating a voice mail from a telephone network, is provided to a called party via a data network using a unified communications service. The unified communications service receives, from the telephone network, information representing a voice mail intended for a called party. The unified communications service then provides the voice mail information to the called party via the data network." 3:49-56. |
|  | "FIG. 1 is a block diagram of a data processing and telecommunications environment, in accordance with methods and apparatus consistent with the principles of the present invention. The data processing and telecommunications environment 100 may include a data network 102, a voice network 104, a service center 106, and a service center database 108. As shown, a user 110 may use a data terminal 112 to interface data network 102. In addition, user 110 may use phones 114, 116, and 118 to interface with voice network 104. For example, calling party 120 may use phone 122 to call user 110 at any one of phones 114, 116, and 118." 3:62-4:5. |
|  | "Data network 102 provides communications between the various entities depicted in environment 100 of FIG. 1, such as data terminal 112 and service center 106. Data network 102 may be a shared, public, or private network and encompass a wide area or local area. For example, data network 102 may be implemented on a network, such as the Internet." 4:6-11. |
|  | "Voice network 104 provides telephony services, for example, to allow calling party 120 to place a telephone call to user 110. For example, voice network 104 may be implemented using a network, such as the Public Switched Telephone |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | Network ("PSTN"). Alternatively, voice network 104 may be implemented using voice-over Internet Protocol ("VoIP") technology. In addition, voice network 104 may be implemented using both the PSTN and VoIP technology consistent with the principles of the present invention. Voice network 104 is described in further detail with reference to FIG. 6." 4:12-22.<br><br>"Service center 106 provides a platform for managing communications over data network 102 and voice network 104. In addition, service center 106 provides gateway functions, such as code and protocol conversions, to transfer communications between data network 102 and voice network 104. Service center 106 may be implemented using a combination of hardware and software. For example, service center 106 may be implemented using a plurality of a general purpose computers or servers coupled by a network (not shown). Although service center 106 is shown with direct connections to data network 102 and voice network 104, any number and type of network elements may be interposed between service center 106, data network 102, and voice network 104. Service center 106 is described in further detail with reference to FIG. 4." 4:23-67.<br><br>"Service center database 108 contains information regarding user 110. For example, service center database 108 may contain information including: an identifier for user 110, a password, one or more email addresses for user 110, one or more instant messaging identifiers for user 110, and one or more telephone numbers, such as for phones 114, 116, and 118. Additionally, service center database 108 may contain configuration information that indicate rules for how and when communications, such as telephone calls over voice network 104, are forwarded. Service center database 108 may be implemented as an Oracle™ database using a combination of known hardware and software, such as Proliant™ servers and EMC storage devices." 4:38-50. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | 
See Fig. 1 and associated text.

"Data terminal 112 may communicate directly with service center 106. For example, a client application may be installed on data terminal 112, which directly communicates with service center 106. Alternatively, data terminal 112 may communicate with service center 106 via proxy 124. Data terminal 112 is described in further detail with reference to FIG. 2." 5:13-19.

"Proxy 124 provides an intermediate communications service for data terminal 112 and service center 106. Proxy 124 may act on behalf of user 110 to interface service center 106 and provides functions, such as authentication services, and protocol translation services. For example, user 110 may be a MSNMS subscriber and proxy 124 may be a MSNMS server. User 110 may then use |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | MSNMS IM services to indirectly interface service center 106. As another example, proxy 124 may be a web site. User 110 may provide information, such as information for call forwarding patterns, to proxy 124 via web pages and secured using secured sockets layer ('SSL'). Proxy 124 may then establish an SSL session with service 106 and provide the information from user 110." 5:20-33. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | D'Silva discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system (e.g., the caller ID notification server determines whether the called party identifier corresponds to a subscriber), wherein at least partly in response to determining that the telephone address is that of a subscriber.<br><br>*See e.g.,*<br><br>"Consistent with the principles of the present invention, caller identification information is supplied from a calling party to a called party via a public telephone network, using a caller identification gateway by which the calling party places a telephone call by transmitting signaling information corresponding to a telephone number of the called party over the public telephone network. The server accepts the signaling information corresponding to the telephone number associated with the called party. A path through the public telephone network based on the signaling information is established. A telephone switch corresponding to a destination telephone terminal corresponding to the telephone number associated with the called party is selected. Caller identification information corresponding to the calling party is retrieved by the caller identification gateway from the telephone switch. The caller identification information is transmitted to a user service center server using an internet protocol. The caller identification information is transmitted by the user service center server to an instant messaging server over an internet protocol data network. The caller identification information to the called party is presented by displaying an instant message provided by the instant messaging |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | server on a computer screen of a called party." 2:45-3:4. |
| | "Consistent with the principles of the present invention, calling party information from a telephone network, such as Caller-ID information, is provided to a called party via a data network using a unified communications service. The unified communications service receives, from the telephone network, signaling information representing a telephone call from a calling party to a called party. The unified communications service determines the calling party information based on the signaling information, and provides the calling party information to the called party via the data network." 3:39-48. |
| | "Service center database 108 contains information regarding user 110. For example, service center database 108 may contain information including: an identifier for user 110, a password, one or more email addresses for user 110, one or more instant messaging identifiers for user 110, and one or more telephone numbers, such as for phones 114, 116, and 118. Additionally, service center database 108 may contain configuration information that indicate rules for how and when communications, such as telephone calls over voice network 104, are forwarded. Service center database 108 may be implemented as an Oracle™ database using a combination of known hardware and software, such as Proliant™ servers and EMC storage devices." 4:38-50. |
| | "FIG. 7 is a flow diagram illustrating a method of supplying Caller-ID information over a data network consistent with the present invention. A call attempt from a calling party 120 is detected by a switch (step 710). When calling party 120 attempts to make a call to called party, e.g. user 110, by dialing the phone number of phone 114, SSP 612 detects the call attempt and generates signaling information. The signaling information contains an identifier of called party 110, e.g., the called party's telephone number, and an identifier of calling party 120." 11:16-25. |
| | "SSP 612 sends the signaling information, in the form of an alert, to SCP 600. Upon receiving the alert, SCP 600 queries configuration database 614 to determine the calling party's Caller-ID information (step 720). From the query of |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | configuration database 614, SCP 600 receives the Caller-ID information of calling party 120." 11:26-40.

"SCP 600 then provides the calling party Caller-ID information and called party identifier to caller ID notification server 420 in service center 106 (step 730). In response to receiving information from SCP 600, caller ID notification server 420 queries service center database 108 based upon the called party identifier (step 740). From querying service center database 108, caller ID notification server 420 determines whether the called party identifier corresponds to a subscriber, e.g., called party 110 (step 750)." 11:32-40.

"If the called party identifier corresponds to called party 110, then caller ID notification server 420 may determine where to forward the Caller-ID information, e.g., to user terminal 112 (step 760). For example, caller ID notification server 420 may transmit the Caller-ID information to data interface server 404 using IM. Subsequently, data interface server 404 forwards the Caller-ID information within an IM message to user terminal 112 where it may be displayed or otherwise presented to called party 110. Accordingly, user 110 may receive Caller-ID information independently of phone 114 via data network 102 and user terminal 112." 11:41-51.

"If the called party identifier does not correspond to a subscriber within service center database 108, then the process may end. Alternatively, if user 110 was not currently online, then caller ID notification server 420 may archive the Caller-ID information within service center database 108 for later delivery." 11:52-57. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| |  |
| | See Fig. 7 and associated text. |
| [40.4] accessing an account record associated with | D'Silva discloses accessing an account record associated with the subscriber, the |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| the subscriber, the account record including at least one subscriber instruction; | account record including at least one subscriber instruction (e.g., the caller ID notification server determines the called party's preferences, including where to forward Caller-ID information).<br><br>See citations and discussion above in connection with claim limitation 40.3. |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | D'Silva discloses based at least in part on the subscriber instruction (e.g., the called party's preferences), placing a first outcall to a first communication device associated with the subscriber (e.g., a call alert instant message is sent to the user's terminal).<br><br>*See e.g.,*<br><br>"Consistent with the principles of the present invention, calling party information from a telephone network, such as Caller-ID information, is provided to a called party via a data network using a unified communications service. The unified communications service receives, from the telephone network, signaling information representing a telephone call from a calling party to a called party. The unified communications service determines the calling party information based on the signaling information, and provides the calling party information to the called party via the data network." 3:39-48.<br><br>"In accordance with the principles of the present invention, information indicating a voice mail from a telephone network, is provided to a called party via a data network using a unified communications service. The unified communications service receives, from the telephone network, information representing a voice mail intended for a called party. The unified communications service then provides the voice mail information to the called party via the data network." 3:49-56.<br><br>"FIG. 1 is a block diagram of a data processing and telecommunications environment, in accordance with methods and apparatus consistent with the principles of the present invention. The data processing and telecommunications |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | environment 100 may include a data network 102, a voice network 104, a service center 106, and a service center database 108. As shown, a user 110 may use a data terminal 112 to interface data network 102. In addition, user 110 may use phones 114, 116, and 118 to interface with voice network 104. For example, calling party 120 may use phone 122 to call user 110 at any one of phones 114, 116, and 118." 3:62-4:5.

"Data network 102 provides communications between the various entities depicted in environment 100 of FIG. 1, such as data terminal 112 and service center 106. Data network 102 may be a shared, public, or private network and encompass a wide area or local area. For example, data network 102 may be implemented on a network, such as the Internet." 4:6-11.

"Voice network 104 provides telephony services, for example, to allow calling party 120 to place a telephone call to user 110. For example, voice network 104 may be implemented using a network, such as the Public Switched Telephone Network ('PSTN'). Alternatively, voice network 104 may be implemented using voice-over Internet Protocol ('VoIP') technology. In addition, voice network 104 may be implemented using both the PSTN and VoIP technology consistent with the principles of the present invention. Voice network 104 is described in further detail with reference to FIG. 6." 4:12-22.

"Service center 106 provides a platform for managing communications over data network 102 and voice network 104. In addition, service center 106 provides gateway functions, such as code and protocol conversions, to transfer communications between data network 102 and voice network 104. Service center 106 may be implemented using a combination of hardware and software. For example, service center 106 may be implemented using a plurality of a general purpose computers or servers coupled by a network (not shown). Although service center 106 is shown with direct connections to data network 102 and voice network 104, any number and type of network elements may be interposed between service center 106, data network 102, and voice network 104. Service center 106 is described in further detail with reference to FIG. 4." |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | 4:23-67.<br><br>"Service center database 108 contains information regarding user 110. For example, service center database 108 may contain information including: an identifier for user 110, a password, one or more email addresses for user 110, one or more instant messaging identifiers for user 110, and one or more telephone numbers, such as for phones 114, 116, and 118. Additionally, service center database 108 may contain configuration information that indicate rules for how and when communications, such as telephone calls over voice network 104, are forwarded. Service center database 108 may be implemented as an Oracle™ database using a combination of known hardware and software, such as Proliant™ servers and EMC storage devices." 4:38-50.<br><br>Fig. 1 |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | See Fig. 1 and associated text. |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | D'Silva discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber (e.g., the user may configure the number of times to ring a device and may configure the call sequence for the devices). <br><br> *See e.g.,* <br><br> "FIG. 3*h* shows a screen shot of a message center panel having a message summary list portion 350 that lists a summary of messages received. The screen shot also shows a message detail portion 352 that displays detail of a message. FIG. 3*i* shows a screen shot of a user interface having a device summary portion 355 that lists the devices in use by the user and a device detail portion 357 that allows the user to configure a particular device. For example, the user may configure the number of times to ring the 'HOME 1' or 'CELL PHONE' device." 8:18-27. <br><br> "FIG. 3 j shows a screen shot of the user interface of FIG. 3 i having a pop-up window 360 for adding a device. The screen shot also shows a detail portion 362, which is similar to detail portion 357 of FIG. 3 i. FIG. 3 k shows a screen shot of the user interface of FIG. 3 i having a pop-window 370 that provides an 'UPDATE RECORD' option for a user to modify the sequence of devices being called." 8:28-34. <br><br> See Figs. 3h-3k and associated text. |
| [40.7] receiving a call connect instruction from the subscriber; and | D'Silva discloses receiving a call connect instruction from the subscriber (e.g., caller-ID alerts a called party to answer a current incoming call). <br><br> See citations and discussion above in connection with claim limitation 40.5. <br><br> *Furthermore, see, e.g.:* <br><br> "Telephone service providers typically offer caller identification ('Caller-ID') as |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | a service to report the telephone number and, optionally, a name of a calling party. Caller-ID provides the called party an opportunity to learn the identity of a calling party before answering a call. This allows a called party to screen calls from particular calling parties. Alternatively, it may alert a called party to answer the current call from a particular person. The Caller-ID service may also allow historical logging of calls. For example, a person may attempt to contact one of her friends and may not leave a voice mail message. With Caller-ID, the called friend may refer to a record of the time and telephone number of the calling friend, and may then return the call, even though the calling friend did not leave a voice mail message. Alternatively, a person may use the historical logging feature to aid in remembering when telephone calls were received or when telephone calls were accepted and the date and time of a particular call took place." 1:55-2:5. |
| | "Caller-ID information is delivered to a device coupled to the Public Switched Telephone Network ('PSTN'). For example, a dedicated Caller-ID device can be connected to a PSTN line that is shared with a telephone. More complex systems, such as those deployed in business environments may use a local Private Branch Exchange ('PBX') connected to the PSTN and have Caller-ID displays integrated into the telephone units. Additionally, many wireless telephone service providers use wireless handsets which have integrated Caller-ID display functionality." 2:6-16. |
| | "Data terminal 112 provides user 110 an interface to data network 102. For example, data terminal 112 may be implemented using any device capable of accessing the Internet, such as a general purpose computer or personal computer equipped with a modem. Data terminal 112 may also be implemented in other devices, such as the Blackberry™, and Ergo Audrey™. Furthermore, data terminal 112 may be implemented in wireless devices, such as pagers, mobile phones (with data access functions), and Personal Digital Assistants ('PDA') with network connections." 4:51-60. |
| | "Data terminal 112 also allows user 110 to communicate with service center |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | 106. For example, user 110 may use instant messaging ('IM') to communicate with service center 106. IM is a communications service implemented over the Transmission Control Protocol and Internet Protocol ('TCP/IP') suite to create a private communication channel. Although there is no accepted universal IM standard, an appropriate IM model may be found in RFC 2778, M. Day et al., The Internet Society (2000), titled 'A Model for Presence and Instant Messaging,' which describes, inter alia, a model for providing instant messaging services. There are several known IM systems including America OnLine Instant Messenger ('AIM') and Microsoft Network Messenger Service ('MSNMS'). In addition to IM services, data terminal 112 may use other aspects of TCP/IP including the hypertext transfer protocol ('HTTP'); the user datagram protocol ('UDP'); the file transfer protocol ('FTP'); the hypertext markup language ('HTML'); and the extensible markup language ('XML')." 4:61-5:12. |
| | "Data terminal 112 may communicate directly with service center 106. For example, a client application may be installed on data terminal 112, which directly communicates with service center 106. Alternatively, data terminal 112 may communicate with service center 106 via proxy 124. Data terminal 112 is described in further detail with reference to FIG. 2." 5:13-19. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | D'Silva discloses instructing the call processing system to connect the first call to a third communication device (e.g., caller-ID alerts a called party to answer a current incoming call). |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | See citations and discussion above in connection with claim limitation 40.7. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | D'Silva discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol (e.g., the voice interface server may provide information to the voice network using one or more protocols, including TCP/IP, and SS7). |
| | *See* claim 40 above. |
| | *Furthermore, see e.g.,* |
| | "Voice network 104 provides telephony services, for example, to allow calling party 120 to place a telephone call to user 110. For example, voice network 104 may be implemented using a network, such as the Public Switched Telephone Network ('PSTN'). Alternatively, voice network 104 may be implemented using voice-over Internet Protocol ('VoIP') technology. In addition, voice network 104 may be implemented using both the PSTN and VoIP technology consistent with the principles of the present invention. Voice network 104 is described in further detail with reference to FIG. 6." 4:12-22. |
| | "Proxy 124 provides an intermediate communications service for data terminal 112 and service center 106. Proxy 124 may act on behalf of user 110 to interface service center 106 and provides functions, such as authentication services, and protocol translation services. For example, user 110 may be a MSNMS subscriber and proxy 124 may be a MSNMS server. User 110 may then use MSNMS IM services to indirectly interface service center 106. As another example, proxy 124 may be a web site. User 110 may provide information, such as information for call forwarding patterns, to proxy 124 via web pages and secured using secured sockets layer ('SSL'). Proxy 124 may then establish an SSL session with service 106 and provide the information from user 110." |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | 5:20-33. |
| | "Data interface server 404 provides interface services between service center 106 and data terminal 112. For example, data interface server 404 may exchange TCP/IP communications, such as IM communications or XML information which include call forwarding patterns from user 110. Data interface server 404 may also interface proxy 124 to indirectly exchange communications with data terminal 112." 9:15-22. |
| | "Voice interface server 408 provides interface services between service center 106 and voice network 104. For example, voice interface server 408 may exchange information, such as call forwarding patterns, between service center database 108 and voice network 104. Voice interface server 408 may provide the information to voice network 104 using one or more protocols. For example, voice interface server 408 may use TCP/IP, or the Signaling System 7 ('SS7') protocol." 9:31-39. |
| | "SS7 is a telecommunications protocol defined by the International Telecommunication Union ('ITU'). SS7 is an 'out-of-band' signaling protocol using a system of nodes called Service Switching Points ('SSP'), Signal Transfer Points ('STP'), and Service Control Points ('SCP'). 'Out-of-band signaling' is signaling that does not take place over the same path between switching elements as the connection, and instead uses separate digital channels between SS7 nodes. SS7 allows voice network 104 to provide enhanced functions, such as call forwarding; caller-ID; three-way calling; wireless services such as roaming and mobile subscriber authentication; local number portability; and toll-free/toll services." 9:44-56. |
| | "Voice network 104 may be implemented using the PSTN and SS7 as a signaling protocol. As noted above, the SS7 protocols allows voice network 104 to provide features, such as call forwarding; caller-ID; three-way calling; wireless services such as roaming and mobile subscriber authentication; local number portability; and toll-free/toll services. The SS7 protocol provides various types of messages to support the features of voice network 104. For example, |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | these SS7 messages may include Transaction Capabilities Applications Part ("TCAP") messages to support event 'triggers,' and queries and responses between SCP 600 and SSPs 606, 608, 610, and 612." 10:22-33. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | D'Silva discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension (e.g., the user's "reach me" number may be his or her office phone number which may be connected to a PBX extension). |
| | *See* claim 40 above. |
| | *Furthermore, see e.g.,* |
| | "Caller-ID information is delivered to a device coupled to the Public Switched Telephone Network ('PSTN'). For example, a dedicated Caller-ID device can be connected to a PSTN line that is shared with a telephone. More complex systems, such as those deployed in business environments may use a local Private Branch Exchange ('PBX') connected to the PSTN and have Caller-ID displays integrated into the telephone units. Additionally, many wireless telephone service providers use wireless handsets which have integrated Caller-ID display functionality." 2:6-16. |
| | "Phones 114, 116, 118, and 122 interface with voice network 104. Phones 114, 116, 118, and 122 may be implemented using known devices, including wireline |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | phones and mobile phones, such as wireless phones. Although phones 114, 116, 118, and 122 are shown directly connected to voice network 104, any number of intervening elements, such as a private branch exchange ('PBX'), may be interposed between phones 114, 116, 118, and 122 and voice network 104." 5:34-42. |
| | "FIGS. 3a–3m illustrate exemplary screen shots of user interfaces to implement for the device independent caller ID. As shown in FIG. 3a, the screen shot provides a current location portion 300 for indicating that communications should be directed to the 'AT HOME' location. Current location 300 may also indicate other locations, such as, for example, 'AT WORK', 'IN CAR', and 'ON TRAVEL.' Such locations can be based on predetermined choices or user configurable choices. The screen shot also provides a new message portion 302 that lists the number and type of new messages. In particular, new message portion 302 shows that there is '1 New EMAIL', '2 NEW VOICE MAILS', '2 NEW NOTIFICATIONS', and '3 NEW CALLS RECEIVED'. New message portion 302 can also provide the last phone numbers dialed and the date they were dialed." 6:44-59. |
| | "The screen shot also provides a search portion 304 that allows a user to search for contact information regarding a particular person. For example, search portion 304 provides 'FIRST NAME', 'LAST NAME', 'CITY', and 'STATE' search inputs to find contact information of a particular person. The screen shot also provides a tools portion 306 that gives a user options to modify various aspects of the communications service. These options may include 'REACH ME', 'ACCOUNT MANAGEMENT', and 'PROFILE' options. The 'REACH ME' option allows a user to change where a user is to be contacted shown in the current location portion 300. The 'ACCOUNT MANAGEMENT' option allows a user to modify information such as billing information associated with a called party. The 'PROFILE' option allows a user to modify how communications are forwarded." 6:60-7:8. |
| | "As shown in FIG. 3b, the screen shot shows a user interface for a device |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| | manager. The screen shot shows a device manager portion 310 that allows a user to view and to change phone number settings. For example, the user can change at 'WORK' and at 'HOME' phone number settings. Device manage portion 310 also provides a 'CURRENT FEATURES' option that lists features being used. Such features include 'CALL FORWARDING', '*69', and 'CALL WAITING'. The user also has the option to 'ADD FEATURES' or 'ADD NUMBERS'. The screen shot also provides an other devices portion 312 that allows a user to manage devices which are not associated with a particular location. Other devices portion 310 lists 'CELL PHONE', 'PAGER', and 'HANDHELD' devices as other devices in which a user can manage. For each device, a user can view the number for the other device and associated 'CURRENT FEATURES' for the other device. Other devices portion 312 also provides a 'SYNCHRONIZE' option and 'ADD DEVICE' option for the user." 7:9-27.

See Fig. 3k and associated text. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | D'Silva discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., caller-ID alerts a called party to answer a current incoming call).

*See* claim 40 above.

*Furthermore,* see citations and discussion above in connection with claim limitation 40.7.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | D'Silva discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., the user device resides behind the firewalls).

*See* claim 40 above.

Furthermore, see citations and discussion above in connection with claim 12.

"FIG. 4 is a block diagram of a service center, in accordance with methods and apparatus consistent with the principles of the present invention. Service center 106 is a gateway device, connecting voice network 104 to data network 102. As shown, service center 106 includes firewalls 400 and 402, a data interface server 404, a management server 406, a voice interface server 408, a calendar server 410, and a caller ID notification server 420." 8:60-67.

"Firewalls 400 and 402 provide security services for communications between service center 106 and data network 102, and between service center 106 and voice network 104, respectively. For example, firewalls 400 and 402 may restrict communications between data terminal 112 and one or more servers within service center 106. Any security policy may be implemented in firewalls 400 and 402 consistent with the principles of the present invention. Firewalls 400 and 402 may be implemented using a combination of known hardware and software, such as the Raptor Firewall provided by the Axent Corporation. Furthermore, firewalls 400 and 402 may be implemented as separate machines within service center 106, or implemented on one or more machines external to service center 106." 9:1-14. |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,190,773 ("D'Silva") |
|---|---|
| |  See Fig. 4 and associated text. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | D'Silva discloses the method of claim 40, further comprising wherein the first communication device is connected to a private branch exchange system (e.g., the user's "reach me" number may be his or her office phone number which may be connected to a PBX extension).. <br><br> *See* claim 40 above. <br><br> Furthermore, see citations and discussion above in connection with claim 42. |

24

Exhibit A-7

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on U.S. Patent No. 6,366,661 ("Devillier")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,366,661 ("Devillier") invalidates Claims 40-43, and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Devillier was filed on October 25, 1999 and issued on April 2, 2002, before the alleged invention of the '188 Patent. Devillier qualifies as prior art under at least 35 U.S.C. §§ 102(a) and (e).

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| [40.1] A method of processing calls, comprising: | Devillier discloses a method of processing calls (e.g., a method and system for routing telephone calls through use of an advanced intelligent network (AIN) telephone system). |
| | *See, e.g.*: |
| | "A telephone routing system which provides notification to subscribers that an incoming telephone call has been received. In particular, the system is directed toward subscribers who employ their telephone line in order to establish a connection over the Internet. In the situation where an incoming call is received during an Internet session, the routing system provides notification to the subscriber that the call has been received. In particular, when the incoming call is received, an interactive screen display may appear on the subscriber's computer through use of the subscriber's PC software. The subscriber may be provided a selection of options on how the call should be routed. Once the |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | instructions are received from the subscriber, the system routes the call accordingly."   Devillier at Abstract.[1] |
| | "The invention described herein relates to a system for routing telephone calls and more particularly to an advanced intelligent network system which provides for routing of telephone calls to a particular line when that line is otherwise occupied." 1:6-9. |
| | "It has been recognized that a system may be developed which provides notification of incoming calls to a subscriber of a service while the subscriber is online. It has been further recognized that messages notifying a subscriber of services of the incoming call may be transmitted from a location on the Internet to the subscriber's computer, and through use of a display graphic, the subscriber may be provided with a choice of routing methods." 1:34-41. |
| | "Described herein is a method and system for routing telephone calls through use of an advanced intelligent network (AIN) telephone system. Included in the system is a local switching point, which is part of the AIN telephone system, through which calls for a subscriber are received and then routed to identified destinations." 1:42-48. |
| | "The SCP may be adapted to establish a connection with a designated server on the Internet. The designated server may be configured to provide the SCP with subscriber status with regards to connections established to the Internet. In order to provide this status information, the subscriber may notify the server when a connection is first established over the Internet. This server may further include functionality for providing interactive display graphics to the subscriber's computer through which a subscriber may then provide information as to the routing of detected incoming calls." 1:56-65. |
| | "With regards to the routing of calls, a number of destinations may be provided. Destinations may include a voice messaging or a forwarded number. In one |

[1] All references are to Devillier, unless otherwise expressly noted.

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | instance the AIN network may include an intelligent peripheral device through which an incoming call may be temporarily routed in order to have audio messages played. Further, connected to the local switching point in the AIN may be a network interface device which provides for the establishments of lines of communication over the Internet using Internet protocol(IP) telephony methods." 1:66-2:8. |
| | "Disclosed in FIG. 1 is a general system diagram which includes a number of the elements employed in the system described herein. Lines of communications for employing the system are included in telephony network 10. In the preferred embodiment, the telephony network 10 is an advanced intelligent network (AIN) which provides a number of advanced functions for routing calls. A subscriber 14 who employs the routing system described herein, establishes a connection with the telephony network through use of a telephone or a computer with a modem connection. The subscriber may establish a connection to a data network, such as the Internet 18, over the telephony network 10. This connection may be provided through an Internet Service Provider (ISP) 15 which has a connection to the telephony network and the Internet." 3:51-65. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | FIG.1<br><br>See Fig. 1 and associated text. |
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Devillier discloses receiving at a call processing system (e.g., the AIN telephone system) a message from an Internet protocol proxy regarding a first call from a caller (e.g., the caller may establish a line of communication to the subscriber through the use of IP telephony through a gateway).<br><br>*See e.g.,*<br><br>"A caller 12 who wishes to establish a line of communication with the subscriber |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | 14 does this through the telephony network 10. The telephone connection to the subscriber may either be made entirely through the telephony network, or the connection may be made through the use of IP telephony through a gateway 34 connected between the telephony network and the Internet 18." 3:66-4:5. |
| | "Described herein is a method and system for routing telephone calls through use of an advanced intelligent network (AIN) telephone system. Included in the system is a local switching point, which is part of the AIN telephone system, through which calls for a subscriber are received and then routed to identified destinations." 1:42-48. |
| | "The SCP may be adapted to establish a connection with a designated server on the Internet. The designated server may be configured to provide the SCP with subscriber status with regards to connections established to the Internet. In order to provide this status information, the subscriber may notify the server when a connection is first established over the Internet. This server may further include functionality for providing interactive display graphics to the subscriber's computer through which a subscriber may then provide information as to the routing of detected incoming calls." 1:56-65. |
| | "With regards to the routing of calls, a number of destinations may be provided. Destinations may include a voice messaging or a forwarded number. In one instance the AIN network may include an intelligent peripheral device through which an incoming call may be temporarily routed in order to have audio messages played. Further, connected to the local switching point in the AIN may be a network interface device which provides for the establishments of lines of communication over the Internet using Internet protocol(IP) telephony methods." 1:66-2:8. |
| | "Once the subscriber is online, an incoming call for the subscriber may be detected at the switching point associated with the subscriber. Once the call is received, the switching point may send notification to the SCP. In response the SCP may then establish a connection over the Internet to the designated server to make an inquiry as to the current status of the subscriber. This status information |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | is transmitted back to the SCP and analysis is performed to determine the next step." 2:18-26.

"In operation, when a subscriber uses the home telephone line to log onto the Internet, a procedure may take place where the designated server is contacted and status information for the subscriber is updated. In the situations where a logon is occurring, the server receives information that the subscriber is currently online. When a particular session ends, notification may again be sent to the server providing an indication that the subscriber has terminated its Internet connection." 2:9-17.

"Once the subscriber is online, an incoming call for the subscriber may be detected at the switching point associated with the subscriber. Once the call is received, the switching point may send notification to the SCP. In response the SCP may then establish a connection over the Internet to the designated server to make an inquiry as to the current status of the subscriber. This status information is transmitted back to the SCP and analysis is performed to determine the next step." 2:18-26.

"If it is determined that the subscriber is not currently logged onto the Internet, the SCP may instruct the local switching point to route the call to the subscriber's line as normal. This may include directing the call to the subscriber's home phone. If the server returns a message indicating that the subscriber is currently online, the SCP may then perform a search of the LIDB to locate identification information for the incoming caller. This identification information is then transmitted over the Internet to the server. The server may then perform the necessary steps to notify the subscriber that an incoming call is waiting." 2:27-38.

"Once the notification is received of an incoming call, the server may generate notification information which may be used to populate a display to appear on the subscriber's home computer. This display may be viewable using the web browsing software currently employed by the computer. Through the interactive graphical display, the subscriber may be provided certain options as to the |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | disposition of the incoming call, which may included answering the call, directing the incoming call to voicemail, forwarding the call to another telephone number, or ignoring the call altogether." 2:39-48. |
| | "One node on the Internet is the communications server 16. Through the server, the status of the subscriber's line may be updated, and this information may be accessed by the telephone network. Further, this server may also be employed to transmit information which may populate an interactive display graphic viewable by the subscriber. This display graphic may be employed to provide and receive information with regards to the routing of incoming telephone calls." 4:6-14. |
| | "Disclosed in FIG. 2 is a detailed system diagram of the telephony network 10. Calls received and transmitted through the telephony network are initially processed at various service switching points (SSP's). Disclosed in the network shown in FIG. 2, are a minimal number of SSP's which are presented to provide an example of the operation of the system. One skilled in the art would realize that in an entire telephony network, there are a great number of switching points." 4:15-23. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| |  FIG.2<br><br>See Fig. 2 and associated text.<br><br>"Incoming calls from caller 12 are initially received at SSP 20. At SSP 20, identifying information extracted from the incoming call provides for the routing of same call to SSP 22. SSP 22 is the local switching point for the subscriber through which all incoming calls (except those received via IP telephony) are routed. SSP 24 provides for the routing incoming calls to AIN IP 26 where pre-recorded audio messages may be played to the caller." 4:24-31.<br><br>"Upon the ultimate disposition of the call, the incoming call may be routed to a number of destinations. One destination includes the subscriber's home phone. Another destination may be the subscriber's computer which is equipped to handle IP telephony. The SSP 22 will route the telephone call to router 34." |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
|  | 4:33-38. |
|  | "Also included as part of the telephony network is the STP 28 which provides for routing of signals to the remotely located line identification database (LIDB) 30. Also connected to the STP is the service control point (SCP) 32. The SCP 32 includes the programming information for routing telephone calls as well as a connection to the Internet 18." 4:46-51. |
|  | "When an incoming call is received at one of the SSPs, the destination information is extracted and the call is routed to the appropriate SSP for the subscriber. Once the call is received at the service control point for the subscriber, the SCP is notified that a caller is trying to establish a connection with this subscriber. The functions performed by the SCP in response to this notification is described in detail in FIGS. 5a-c." 6:10-17. |
|  | "If the server returns a logged-in signal for the subscriber, the SCP then submits a name query to the LIDB in order to get caller identification information for the caller. Once this information is retrieved from the LIDB, it is then transmitted to the communications server over the Internet. The use of this information by the communications server in order to provide the subscriber an interactive display graphic is described in greater detail below." 6:40-47. |
|  | "Returning to FIG. 5b, while the SCP is waiting to receive instructions from the communications server with regards to the routing of the incoming call, the SCP directs the switching point to direct the incoming call to a designated AIN IP. Once the call is received, the AIN IP is directed by the SCP to play an audio message. This audio message may provide information to the caller with regards to the current status of the routing process, or it may play continuous ring of a telephone. The AIN IP will provide notification to the SCP when the playing of the audio message is complete. A decision is then made as to whether the routing information has been received from the communications server. If it has not, another decision is made with regards to whether the time-out period has expired. If the time-out period has not expired, the AIN IP is instructed to play the audio message again. Once the time-out period does expire and routing |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
|  | information has not been received from the communications server, the SCP will direct the SSP to route the call in a default manner such as to a voicemail or a forwarding number." 6:48-67.

"If, during the above-described period of time, routing information is received from the communications server, the SCP will direct the SSP accordingly. If the subscriber wishes to ignore the telephone call, the call may be routed to the same or another AIN IP where an audio message will be played informing the caller that the subscriber is currently online and is not taking telephone calls." 7:1-7.

"Disclosed in FIGS. 6a and b are a flow chart which describes in detail some of the operations performed by the communications server. As was described above, initially the communications server receives an automated login notification from the PC of the subscriber when a connection to the Internet is established. At this point, the communications server changes the status of the particular subscriber to "logged in". Once an incoming call is received by the telephony network, a request status message is received from the SCP. At this point, the server checks the database with the subscriber's status information and determines whether the particular subscriber for which the SCP is requesting information is active and is logged in. The results of this search are then transmitted to the SCP." 7:35-48. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|



FIG. 6B

See Fig. 6B and associated text.

"If the subscriber is currently logged in, the server transmits this status information to the SCP, and waits to receive identification information for the

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | caller. Once this information is received, the server transmits a message to the subscriber's PC which results in the interactive graphic being displayed to the subscriber. The identification information for the caller is inserted in the display graphic. Through use of the PC software the subscriber is employing, the display graphic may be viewed and the subscriber may make a selection for routing the information. As described above, the display graphic may include choices such as ignoring the telephone call, taking the telephone call, or routing the telephone call to either a forwarding number or a voicemail account. Once the communications server receives a reply from the subscriber with routing information, this information is transmitted over the Internet to the SCP." 7:49-65. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Devillier discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system (e.g., extracting the destination of the incoming call and determining whether the incoming call is intended for the subscriber), wherein at least partly in response to determining that the telephone address is that of a subscriber.

See citations and discussion above in connection with claim limitation 40.2. |
| [40.4] accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Devillier discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction (e.g., the subscriber may have pre-programmed settings, such as forwarding numbers or transfer numbers, that are stored in the call processing system).

*See, e.g.:*

"If the subscriber selects to route the incoming call to voicemail, this selection may then be provided from the server to the SCP, which in turn provides these instructions to the switching point. At this point, the call is directed through the switching point to voicemail." 3:1-5.

"If the subscriber wishes to forward the incoming call to a particular number, this selection is made and the instructions may then be provided from the server |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | to the SCP. In one aspect of the invention, the subscriber may enter through the screen display a forwarding number to which the call will be routed. Also, the forwarding number may be pre-programed in the system. Once the forwarding instructions are received, the SCP will provide the forwarding number to the switch and the incoming call will be routed to that location." 3:6-14. |
| | "If the subscriber chooses the ignore function, the incoming call may then be routed to a destination such as the AIN IP in which an audio message will he played which may include the continuous ringing of a telephone or such messages as 'The party you are calling is not taking calls at this time' or" 3:15-20. |
| | "In another aspect of the invention, while the display graphic is being transmitted to the subscriber, the incoming call may be routed to a temporary location in which an audio message is played for the incoming caller. This audio message may be the continuous ringing of a telephone or a message informing the incoming caller that the subscriber is currently online and that notification is being provided to that party." 3:21-28. |
| | "Returning to FIG. 5b, while the SCP is waiting to receive instructions from the communications server with regards to the routing of the incoming call, the SCP directs the switching point to direct the incoming call to a designated AIN IP. Once the call is received, the AIN IP is directed by the SCP to play an audio message. This audio message may provide information to the caller with regards to the current status of the routing process, or it may play continuous ring of a telephone. The AIN IP will provide notification to the SCP when the playing of the audio message is complete. A decision is then made as to whether the routing information has been received from the communications server. If it has not, another decision is made with regards to whether the time-out period has expired. If the time-out period has not expired, the AIN IP is instructed to play the audio message again. Once the time-out period does expire and routing information has not been received from the communications server, the SCP will direct the SSP to route the call in a default manner such as to a voicemail or a |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
|  | forwarding number." 6:48-67.<br><br>"Alternately, the subscriber may wish to receive incoming calls while maintaining the Internet connection. This may be done through commercially available IP telephony software, which may be installed on the subscriber's computer. If the subscriber chooses to receive the telephone call in this manner, the communications server will connect with the IP telephony gateway. The IP address for the subscriber currently logged on will be provided to the gateway. At this point the SSP directs the incoming call to the gateway, which in turn provides the conversion for the incoming telephone call to be transmitted over the Internet." 7:23-34. |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Devillier discloses based at least in part on the subscriber instruction (e.g., the SCP will route the incoming call according to the subscriber's "normal manner"), placing a first outcall to a first communication device associated with the subscriber (e.g., the incoming call may be routed to the subscriber's home phone, voicemail or forwarded number or to a location where an audio message can be played, etc., according to the subscriber's rules).<br><br>*See e.g.,:*<br><br>"If the subscriber selects to route the incoming call to voicemail, this selection may then be provided from the server to the SCP, which in turn provides these instructions to the switching point. At this point, the call is directed through the switching point to voicemail." 3:1-5.<br><br>"If the subscriber wishes to forward the incoming call to a particular number, this selection is made and the instructions may then be provided from the server to the SCP. In one aspect of the invention, the subscriber may enter through the screen display a forwarding number to which the call will be routed. Also, the forwarding number may be pre-programed in the system. Once the forwarding instructions are received, the SCP will provide the forwarding number to the |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | switch and the incoming call will be routed to that location." 3:6-14. |
| | "If the subscriber chooses the ignore function, the incoming call may then be routed to a destination such as the AIN IP in which an audio message will he played which may include the continuous ringing of a telephone or such messages as 'The party you are calling is not taking calls at this time' or" 3:15-20. |
| | "Initially, when the incoming call request is received, the SCP transmits a query to the communications server over the Internet requesting a current online status for the subscriber. The first query made is with regards to whether the subscriber is an active user of the service. If the server indicates that the subscriber is not currently an active user of the service, the SCP directs the switching point to route the call to the subscriber's line in a normal manner. The normal manner may include routing the call directly to the subscriber's home line or directing the call to a voicemail or forwarded number or to a location where an audio message can be played. If a subscriber is "inactive" with regards to the services being provided, default routing may mean routing the call to the subscriber's number in a regular fashion." 6:18-33. |
| | "Returning to FIG. 5b, while the SCP is waiting to receive instructions from the communications server with regards to the routing of the incoming call, the SCP directs the switching point to direct the incoming call to a designated AIN IP. Once the call is received, the AIN IP is directed by the SCP to play an audio message. This audio message may provide information to the caller with regards to the current status of the routing process, or it may play continuous ring of a telephone. The AIN IP will provide notification to the SCP when the playing of the audio message is complete. A decision is then made as to whether the routing information has been received from the communications server. If it has not, another decision is made with regards to whether the time-out period has expired. If the time-out period has not expired, the AIN IP is instructed to play the audio message again. Once the time-out period does expire and routing information has not been received from the communications server, the SCP will |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | direct the SSP to route the call in a default manner such as to a voicemail or a forwarding number." 6:48-67. |
| | "If, during the above-described period of time, routing information is received from the communications server, the SCP will direct the SSP accordingly. If the subscriber wishes to ignore the telephone call, the call may be routed to the same or another AIN IP where an audio message will be played informing the caller that the subscriber is currently online and is not taking telephone calls." 7:1-7. |
| | "An additional feature provided by the system described herein is the ability of a subscriber to monitor a particular line from a remote location. For example, the system provides the capability for a subscriber to monitor incoming calls to a subscriber's home from work wherein the subscriber has a computer with an Internet connection. Disclosed in FIG. 7 is a system diagram for the remote monitoring configuration of the call routing system described herein." 7:66-8:7. |
| | "When an incoming call for the subscriber's home is received, it is routed to the local switching point, which in turn informs the SCP of the call. At this point, the SCP establishes a connection with the communications server and requests on-line status information for the subscriber. The server informs the SCP that the subscriber is currently online then SCP then requests the identification information from the LIDB. Once the identification information is retrieved, it is included in an interactive graphical screen display, which is presented on the subscriber's PC. Through use of software incorporated into the work PC, the display graphic is presented to the subscriber who then may make a selection as to the routing of the incoming call." 8:18-30. |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | Devillier discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber (e.g., if the subscriber does not answer the incoming call within the allocated timeout period, the incoming call will be routed to a voicemail or forwarding number). |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | See citations and discussion above in connection with claim limitation 40.5. |
| [40.7] receiving a call connect instruction from the subscriber; and | Devillier discloses receiving a call connect instruction from the subscriber (e.g., the subscriber instructs the SCP and SSP to forward the incoming call to the subscriber's phone, to an alternate phone number, or to a voice mail service, etc.). |
| | *See, e.g.,*: |
| | "In operation, the system described herein provides for the routing of incoming telephone calls to a subscriber who may or may not currently have established an Internet connection over their line. A designated server is provided on the Internet in which the status of a subscriber may be updated with regards to whether or not a connection is currently established by the subscriber over the Internet. When an incoming call is received by the telephony network, an inquiry may be made of the server as to the status of the subscriber. If it is determined that the subscriber is not currently online, the telephone call may be further routed by the switching point to the subscriber's home. If it is determined that the subscriber is indeed online, the server may be informed that an incoming call has been received and the server may in turn then provide notification to the subscriber through a display graphic which may appear on the subscriber's PC display." 5:30-45. |
| | "The display graphic is interactive in nature and a subscriber may make a selection as to how to route a particular call. Once this selection is made, the switching point is directed to carry out the instructions which may include routing the call to the subscriber once the Internet connection is terminated, routing an audio connection to the subscriber through a router connected to the Internet such that a conversation may be had employing IP telephony, or the call may be routed to a different location such as voicemail, a forwarding number, or a location in which the caller will hear an audio message." 5:46-57. |
| | "If the subscriber chooses to route the message to voicemail, the SCP directs the SSP to route the telephone call accordingly. At this point the caller may then |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | leave a message for the subscriber. Another option provided to the subscriber is to forward the incoming call to a destination (a/k/a phone number). If the subscriber makes the selection to forward the call, the SCP will retrieve the forwarding number from the server's response and direct the SSP to route the call accordingly." 7:8-16.

"If the subscriber wishes to take the incoming call, at least two options are provided for directing the call. In the situation where the subscriber wishes to take the incoming call at a home telephone, the Internet connection is terminated, and the SSP routes the incoming call to the subscriber's home line." 7:17-22.

"Alternately, the subscriber may wish to receive incoming calls while maintaining the Internet connection. This may be done through commercially available IP telephony software, which may be installed on the subscriber's computer. If the subscriber chooses to receive the telephone call in this manner, the communications server will connect with the IP telephony gateway. The IP address for the subscriber currently logged on will be provided to the gateway. At this point the SSP directs the incoming call to the gateway, which in turn provides the conversion for the incoming telephone call to be transmitted over the Internet." 7:23-34. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | Devillier discloses instructing the call processing system to connect the first call to a third communication device (e.g., the incoming call is forwarded to the destination specified by the subscriber).

See citations and discussion above in connection with claim limitation 40.7. |
| | |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet | Devillier discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | SS7 signaling to SIP protocol (e.g., the caller may establish a line of communication to the subscriber through the use of IP telephony through a gateway).<br><br>*See* claim 40 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim limitation 40.2.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | Devillier discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension (e.g., the incoming call may be routed to the subscriber's home phone, voicemail or forwarded number or to a location where an audio message can be played, etc., according to the subscriber's rules).<br><br>*See* claim 40 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim limitation 40.5.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | Devillier discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., the subscriber instructs the SCP and SSP to forward the incoming call to the subscriber's phone, to an alternate phone number, or to a voice mail service, etc.). *See* claim 40 above. Furthermore, see citations and discussion above in connection with claim limitation 40.7. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | Devillier discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., the caller may establish a line of communication to the subscriber through the use of IP telephony through a gateway). *See* claim 40 above. Furthermore, see citations and discussion above in connection with claim limitation 40.2. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,366,661 ("Devillier") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | Devillier discloses the method of claim 40, further comprising wherein the first communication device is connected to a private branch exchange system (e.g., the incoming call may be routed to the subscriber's home phone, voicemail or forwarded number or to a location where an audio message can be played, etc., according to the subscriber's rules). *See* claim 40 above. Furthermore, see citations and discussion above in connection with claim 42. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

22

NY:1636680.3

Exhibit A-8

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 5,991,394 ("Dezonno")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,991,394 ("Dezonno") invalidates Claims 17-21 and 24-25 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Dezonno was filed on February 5, 1998 and issued on November 23, 1999, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| [17.1] A method of processing calls, the method comprising: | Dezonno discloses a method of processing calls (e.g., a method and system for establishing voice communications between a computer user and a business). <br><br> *See, e.g.,* <br><br> "A method and system (100) establishes voice communications between a computer user (102) and an agent (104) of a business over a computer network, such as the Internet (108). Using a user computer (106), the computer user (102) views advertisements of the business' products or services on the Internet (108) via customized home pages (200). When the user (102) wishes to order a product or ask additional questions about a product, the user (102) activates a 'call me' button (210). A return call screen (300) is then presented to the user (102) with areas to insert a name (302), a telephone number (304) and a time to call (306). This information is packetized in a call request which is transmitted over the Internet (108) to a telephone switching system (112) associated with the business. The telephone switching system (112) subsequently dials the telephone number (304) at the time to call (306). When the user (102) answers a computer |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | user telephone (120), the telephone switching system (112) connects the user (102) wuth the agent (104) via an agent telephone (118). The telephone switching system (112) may be comprised of a telephone computer (114) and an automatic call distributor (116)." Dezonno at Abstract.[1] |
| | "The present invention relates generally to a method and system for establishing voice communications between a computer user and a business and, more particularly a method and system for establishing voice communications between a computer user and an agent of a business via a computer network, such as the Internet, wherein the computer user transmits a call request over the computer network to a telephone switching system associated with the agent and, in response to the call request, the telephone switching system calls the computer user and connects the agent to the computer user when the computer user answers the call." 1:8-20. |
| | "Accordingly, there is a need in the art for a method and system for establishing voice communications between a computer user and an agent of a business wherein the computer user instructs a telephone switching system located at the business to call the computer user over the telephone. When the computer user answers the call, the telephone switching system automatically connects the agent to the computer user." 2:7-14. |
| | "This need is met by the method and system of the present invention for establishing voice communications between a computer user and an agent wherein the computer user sends a call request over a computer network, such as the Internet, to a telephone switching network associated with the agent. The call request preferably includes a name of the computer user, a telephone number of a telephone associated with the computer user and a time to call. The telephone switching network detects the information contained in the call request and dials the computer user telephone at the designated time to call. When the computer user answers the computer user telephone, the telephone switching system |

3

---

[1] All references are to Dezonno, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | connects an agent telephone associated with the agent to the computer user telephone." 2:17-30. |
| [17.2] receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | Dezonno discloses receiving at a call processing system (e.g., the communications system) a first call request from a client telecommunications application hosted on a user computer (e.g., the computer user may enter a call request using his or her computer), wherein the first call request identifies a first party to be called (e.g., the computer user).

See, e.g.,

"In accordance with one aspect of the present invention, a method for establishing voice communications between a computer user which is associated with a computer and a telephone and an agent is provided. The method comprises the steps of: entering a call request by the computer user in the computer for the agent to call the computer user; transmitting the call request from the computer over a computer network to a telephone switching system; and establishing voice communications between the agent and the computer user through the telephone switching system." 2:31-40.

"In accordance with another aspect of the present invention, a communications system for establishing voice communications between a computer user and an agent is provided. The computer user being associated with a computer user telephone and entering a call request into a computer. The communications system comprise an agent telephone associated with the agent and telephone switching for receiving the call request from the computer, for dialing the computer user telephone and for interconnecting the agent telephone and the computer user telephone." 2:41-50.

"If the computer user 102 wants to establish voice communications with the business to order a product or to ask a question, the computer user 102 activates a 'call me' button 210. In response, the computer user 102 is transferred to a |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | return call screen 300 shown in FIG. 3. The computer user 102 then enters a name 302, a telephone number to call 304 and a time to call 306 in their respective fields. Alternatively, the computer user'3 name and telephone number may be kept on file and be automatically entered in the appropriate fields in a well known manner." 4:7-16.<br><br><br><br>See Fig. 1 and associated text. |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | FIG. 3  See Fig. 3 and associated text. |
| [17.3] at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Dezonno discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user (e.g., the telephone switching network detects the information contained in the call request and dials the computer user telephone at the designated time to call). See citations and discussion above in connection with claim limitation 17.2. *Furthermore, see, e.g.*, "In accordance with another aspect of the present invention, a communications system for establishing voice communications between a computer user and an agent is provided. The computer user being associated with a computer user telephone and entering a call request into a computer. The communications system comprise an agent telephone associated with the agent and telephone switching for receiving the call request from the computer, for dialing the computer user telephone and for interconnecting the agent telephone and the computer user telephone." 2:41-50. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | "Preferably, the telephone switching system comprises a telephone computer for receiving the call request from the computer. An automatic call distributor for automatically dialing the computer user telephone in response to the telephone computer and for interconnecting the agent telephone and the computer user telephone. The automatic call distributor preferably comprises anser means for detecting when the computer user answers the computer user telephone, and wherein the automatic call distributor connects the agent to the computer user telephone when the computer user answers the computer user telephone. The call request may comprise a time to call the computer user and the telephone computer may comprise time means for detecting the time to call the computer user from the call request; and dial means responsive to the time means for promoting the automatic call distributor to call the computer user telephone at the time to call." 2:51-67. |
| | "Modern businesses usually have an automated system, generally referenced by numeral 110, for handling inbound and outband telephone calls. For example, a business may be connected to the Internet 108 via a telephone switching system 112. The telephone switching system 112 comprises a telephone computer 114 connected to an automatic call distributor (ACD) 116, preferably Rockwell International's SPECTRUM Automatic Call Distribution System. The ACD 116, or alternatively a private branch exchange (PBX), operates in a well known manner to connect an agent telephone 118 associated with the agent 104 to external telephonic units, such as a computer user telephone 120 associated with the computer user 102. Although only one agent 104 is shown, businesses typically have a plurality of agents for answering tlephone calls. As will be readily apparent to those skilled in the art, the present invention may be advantageously employed with a business having more than one agent. The ACD 116 is connected to the computer user telephone 120 through a telephone network 122. A conventional answering machine 121 is connected to the computer user telephone 120." 3:33-53. |
| | "The telephone computer 114 of the telephone switching system 112 receives the call request, detects the time to call 306 and converts the call request into a |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | predictive dial request command, which is formatted for proper receipt by the ACD 116. The telephone computer 114 may detect the time to call 306 in the call request and delay transmitting the call request to the ACD 116 until the time to call. The telephone computer 114 comprises timer 124, for detecting the time to call 306 in the call request. The timer 124 may be implemented by software. The ACD 116 would then attempt to dial the telephone number 304 substantially immediately upon receipt of the dial request command." 4:51-62. |
| | "Alternatively, the telephone computer 114 may transmit the dial request command, which includes the time to call 306 information, substantially immediately upon receipt of the call request. The ACD 116 would then detect the time to call 306 and delay the outbound dialing of the telephone number 304 until that time. Either the ACD 116 or the telephone computer 114 may therefore control when the telephone number 304 is dialed based on the time to call 306." 4:63-5:3. |
| | "Preferably, the ACD 116 uses predictive outbound dialing to call the computer user telephone 120. Systems for providing predictive outbound dialing from the ACD 116 are well known in the art. One such system is described in commonly assigned U.S. Pat. No. 4,881,261, the disclosure of which is hereby incorporated by reference." 5:4-9. |
| [17.4] placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Dezonno discloses placing a second outcall from the call processing system to a telephone associated with the first party (e.g., the automatic call distributor connects to the agent's telephone and/or the telephone computer dials the number for the agent's telephone), wherein the second outcall is associated with signaling information (e.g., the call request), the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user (e.g., the call request includes the computer user's telephone number). |
| | See citations and discussion above in connection with claim limitation 17.3. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | *Furthermore, see e.g.,* |
| | "The telephone computer 114 sends the dial request command to the ACD 116 for call processing. A dialer 126 in the ACD 116, which is preferably software based, then places an outbound telephone call to the computer user telephone 120 in a well known manner. Answer detector 128 in FIG. 1 in the ACD 116 detects when the computer user 102 answers the call, as distinguished from an automated answering machine, a busy signal or no answer. One such means for detecting whether a human answers a telephone call is disclosed in commonly assigned U.S. Pat. No. 4,809,272, the disclosure of which is hereby incorporated by reference." 5:10-20. |
| | "When the computer user 102 answers the telephone, the ACD 116 connects the computer user telephone 120 to the agent 104 through the agent telephone 118. Various methods are well known in the art for selecting an agent to connect the the telephone call. Since the philosophy of such methods are not important to the present invention beyond connecting the telephone call to the agent 104, details will not be further given herein. Those desiring additional information regarding methods and systems for selecting agents are referred to U.S. Pat. No. 5,206,903 which is incorporated herein by reference." 5:21-31. |
| | "Alternatively, the telephone computer 114 may dial the computer user telephone 120 directly and connect the agent telephone 118 to the computer user telephone 120 when the computer user 102 answers the call. As is well known in the art, commercial telephone cards are available for personal computers for dialing external telephones. After the computer user 102 answers the call, the telephone computer 114 then dials a telephone number, or extension, to access the agent telephone 118 and thereafter connect the agent 104 to the computer user 102." 5:33-42. |
| | "In addition, the ACD 116 may transmit information to the agent 104 prior to, or simultaneously with, connecting the agent 104 to the computer user 102. This information may comprise the computer user's name or other information. The information may be displayed on the display of the agent 104 or provided to the |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| | agent 104 in any other appropriate manner. Those skilled in the art will likely be able to readily design numerous telephone switching systems using commercially available components for receiving the call request and automatically dialing the computer user telephone 120. Any telephone switching system which can establish voice communications between the computer user 102 and the agent 104 can be advantageously employed in the present invention." 5:43-56.<br><br>"The step of automatically dialing the telephone may comprise the steps of sending a dial request command from a telephone computer 114 to an automatic call distributor 116 associated with the agent 104 and automatically dialing the telephone 120 by the automatic call distributor 116 in response to the dial request command. Further, the step of automatically connecting the agent 104 comprises the steps of: determining when the computer user 102 answers the telephone 120 and automatically connecting the agent 104 to the telephone 120 when the computer user 102 answers the telephone 120." 6:16-26. |
| [17.5] causing the first outcall and the second outcall to be connected. | Dezonno discloses causing the first outcall and the second outcall to be connected (e.g., the call to the computer user is connected to the agent's telephone).<br><br>See citations and discussion above in connection to claim limitation 17.4. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Dezonno discloses the method of claim 17, wherein the user telephone is a landline phone (e.g., the computer user's telephone).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim limitation 17.3. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | Dezonno discloses the method of claim 17, wherein the user telephone is a mobile phone (e.g., the computer user's telephone). |
| | *See* claim 17 above. |
| | *Furthermore*, see citations and discussion above in connection with claim limitation 17.3. |
| | *See also,* |
| | "In addition, the ACD 116 may transmit information to the agent 104 prior to, or simultaneously with, connecting the agent 104 to the computer user 102. This information may comprise the computer user's name or other information. The information may be displayed on the display of the agent 104 or provided to the agent 104 in any other appropriate manner. Those skilled in the art will likely be able to readily design numerous telephone switching systems using commercially available components for receiving the call request and automatically dialing the computer user telephone 120. Any telephone switching system which can establish voice communications between the computer user 102 and the agent 104 can be advantageously employed in the present invention." 5:43-56. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | Dezonno discloses the method of claim 17, wherein the user telephone is an Internet protocol phone (e.g., the computer user's telephone). |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | *See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 19.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log | Dezonno discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall (e.g., the computer user's telephone).<br><br>*See* claim 17 above.<br><br>*Furthermore*, citations and discussion above in connection with claim 19.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | Dezonno discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry (e.g., the computer user may enter a call request using his or her computer). |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,991,394 ("Dezonno") |
|---|---|
| entry. | *See* claim 17 above.<br><br>*Furthermore,* citations and discussion above in connection with claim limitation 17.2.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | Dezonno discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed (e.g., the computer user may enter a call request using his or her computer indicating the phone number that the user is to be called back on).<br><br>*See* claim 17 above.<br><br>*Furthermore,* citations and discussion above in connection with claim limitation 17.2. |

13

Exhibit A-9

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,144,667 ("Doshi")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,144,667 by Rejech R. Doshi et al. ("Doshi") invalidates Claims 17-21, 24 and 25 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Doshi was published on November 7, 2000, from an application with a priority date of at least August 7, 1997, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| 17. A method of processing calls, the method comprising: | **Doshi** discloses a method of processing calls.<br><br>• "Network-based method and apparatus for initiating and completing a telephone call via the internet."  Title.<br><br>• "A network-based method for Initiating and completing a voice telephony call via the Internet comprises the steps of receiving call completion data at a voice/data network gateway of the public switched telephone network from an Internet application web server, which may comprise an Internet service provider or other entity serving Internet users via an Internet application web server, and transmitting cll completion data to telecommunications switches for connecting an Internet user to a telephone of an application agent associated with the Internet server." Abstract.<br><br>• Fig. 1A: |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| |  FIG. 1A |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Doshi** discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>• "Network-based method and apparatus for initiating and completing a telephone call via the internet." Title.<br><br>• "By *clicking on a call request icon*, appropriate information is forwarded via, for example, a telecommunications data link to the messaging interface to complete the call including caller telephone number, application telephone |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| | number and any call charge information." Col.2;ll.63-67. |
| | • "Web surfer location 10 comprises *a personal computer* 1 having a modem for connecting via access link 5, which may be telephony, radio frequency, hybrid fiber/cable, local area network (LAN) or other facility, to Internet 50." Doshi at Col.4, ll56-60. |
| | • "The user 10 then, for example, *clicks on the call request icon* or otherwise signals and selects the initiation of the present automatic voice telephony dial service." Doshi at Col.8, ll.19-22. |
| | • "Briefly, transactions for initiating a voice telephony call comprise at least the calling party telephone number for telephone 2, *the customer's identity or the telephone number of telephone 12* and call charge information, if necessary, for charging the user 10 or the customer 20, depending on the service provided." Doshi at Col.8, ll.32-37. |
| | • "Fig. 1a comprises a system block diagram useful for describing the call process for initiating and completing a telephone call from an Internet Web page" Doshi at Col.3,l.67 – col.4, l.3. |
| | • Doshi at Fig. 1A: |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| |  |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Doshi** discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br>• "The web server 15 transmits the appropriate messaging data to the gateway 120 which controls the establishment of a voice call to the user telephone 2 via a link 6 and then (or in reverse order) a voice call to the customer telephone 12 via local link 8." Doshi at Col.8, ll.37–41.<br>• Doshi at Fig. 2: |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| | BASED ON THE USER ENTERED DATA, THE WEB SERVER INITIATES A TRANSACTION WITH THE GATEWAY. THE TRANSACTION IS BASED ON A PREDETERMINED MESSAGING INTERFACE. WEB SERVER TRANSMITS THE APPROPRIATE MESSAGING TO ESTABLISH A VOICE CALL TO THE USER, AND THEN A VOICE CALL TO THE CUSTOMER. SEE V/D NG MESSAGING PROTOCOL DATA FOR DETAILS. ⌐230

• Doshi at Fig. 1A: |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
|  |  |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned | **Doshi** discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user. <br><br> • "*By clicking on a call request icon, appropriate information is forwarded via, for example, a telecommunications data link to the messaging interface to* |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| to or specified by the user; and | complete the call *including caller telephone number*, application telephone number and any call charge information." Col.2;ll.63-67. |
| | • "The application agent, moreover, typically will not have any information about the call or caller *except caller identity (such as calling telephone number and associated user data look-up)* provided by caller identification services." Doshi at Col.5, ll.39-43. |
| | • "As Will be further described herein with reference to FIG. 3, all necessary information is forwarded via data links 30 and 35 for completing the call, including but not limited to caller telephone number, application agent telephone number and call charge information, to voice/data network gateway 120 and on to the voice telephone network 100." Doshi at Col. 6, ll.25-31. |
| | • "Briefly, transactions for initiating a voice telephony call *comprise at least the calling party telephone number for telephone 2*, the customer's identity or the telephone number of telephone 12 and call charge information, if necessary, for charging the user 10 or the customer 20, depending on the service provided." Doshi at Col.8, ll.32-37. |
| | • "The web server 15 transmits the appropriate messaging data to the gateway 120 which controls the establishment of a voice call to the user telephone 2 via a link 6 and then (or in reverse order) a voice call to the customer telephone 12 via local link 8." Doshi at Col.8, ll.37-41. |
| | • Doshi at Fig. 2: |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| | BASED ON THE USER ENTERED DATA, THE WEB SERVER INITIATES A TRANSACTION WITH THE GATEWAY. THE TRANSACTION IS BASED ON A PREDETERMINED MESSAGING INTERFACE. WEB SERVER TRANSMITS THE APPROPRIATE MESSAGING TO ESTABLISH A VOICE CALL TO THE USER, AND THEN A VOICE CALL TO THE CUSTOMER. SEE V/D NG MESSAGING PROTOCOL DATA FOR DETAILS. ⟋230 • Doshi at Fig. 1A: |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| causing the first outcall and the second outcall to be connected. | 

**Doshi** discloses causing the first outcall and the second outcall to be connected.

- "[A] voice telephone call is established between a user and an application agent . . . ." Abstract.
- "According to the present invention, a customer 20 and a Web surfer 10 may share the same link to the same server 15 and consequently view the same Internet data via links 5 and 7 *while speaking together via voice telephony links 6 and 8*." Doshi at Col.9, ll.52-55.
- "Also, *once the user and an application agent are connected*, one or the |

10

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|---|
| | | other party may bridge in to a conference call a plurality of, for example, up to eight parties by calling and linking a known conferencing bridge into the call and adding the new parties to that bridge." Col.9, ll.60-64.<br><br>• "establishing by the voice/data network gateway at least a first link and a second link, said first and second links being connected to complete said voice telephony call . . ." Doshi at Col.13, ll.39-42. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | | **Doshi** discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br><br>• Doshi at Fig. 1A: |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| |  |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | **Doshi** discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. *See* claim 17 above. • "By *clicking on a call request icon*, appropriate information is forwarded via, for example, a telecommunications data link to the messaging interface to complete the call including caller telephone number, application telephone number and any call charge information." Doshi at Col.2;ll.63-67. • "The user need not dial the agent and the agent need not dial the user." Doshi at Col.3, ll.13-14. • "The customer 20 may provide on the web page via associated server 15 one or more call request icons for the air carrier or other call request customer |

13

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,144,667 ("Doshi") |
|---|---|---|
| | | location 20 and reach a live agent. Each call request icon may refer to a 1-8YY toll-free or other national or international telephone number for an application agent." Doshi at Col.7, l.65 – col.8, l.3. |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

14

Exhibit A-10

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 7,242,680 ("Gallant")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 7,242,680 ("Gallant") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Gallant was filed on March 15, 2002, before the alleged invention of the '188 Patent, and claims the benefit of U.S. Provisional Application Nos. 60/276,923, 60/276,953, 60/276,954, and 60/276,955, each filed on March 20, 2001.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| 40. A method of processing calls, comprising: | Gallant discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "The present invention relates to communications systems, and is more particularly related to controlling the action of features in communications systems." Gallant at 1:20-22. |
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Gallant discloses receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller.<br><br>*See, e.g.:* |

2

| U.S. Patent No. 7,242,680 ("Gallant") | U.S. Patent No. 7,822,188 |
|---|---|



Gallant at Fig. 1.

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
|  | Gallant at Fig. 2.<br><br>START - RECEIVE ROUTING REQUEST ⟶ 702<br><br>Gallant at Fig. 7.<br><br>• "Businesses that have been accustomed to having telephony traffic and data traffic separately supported over different systems and networks are now moving towards so-called 'converged networks' wherein telephone voice traffic and other forms of real-time media are converted into digital form and carried by a packet data network along with other forms of data. Now that the technologies are feasible to support it, voice over data transport offers many advantages in terms of reduced capital and operating costs, resource efficiency and flexibility." Gallant at 1:29-38.<br><br>• "For example, although the present invention is discussed in the context of the Session Initiation Protocol (SIP) and an Internet Protocol (IP)–based network, one of ordinary skill in the art will recognize that the present invention may be generally applicable to other equivalent or analogous communication protocols (ITU H.323) or other communications networks (ATM, frame relay, etc.)." Gallant at 3:64-4:3.<br><br>• "It should be understood throughout this disclosure that, although SIP-type messages are shown for convenience, any type of protocol or a mixture of such protocols may be applied in various parts of the overall system. In particular, the routing requests and responses between the proxy server and location server may strictly or loosely conform to SIP or some other standardized protocol, or may be proprietary in nature." Gallant at 4:4-11. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | • "FIG. 1 shows a diagram of a data communications system capable of supporting telephony or other real-time communications services, in accordance with an exemplary embodiment of the present invention. The communication system 100 includes a packet data transport network 101, which in an exemplary embodiment is an Internet Protocol (IP) based network."    Gallant at 4:12-18. |
| | • "In particular, system 100 comprises the important elements of a proxy server 113 (also known as a network server (NS)) and a location server (LS) 115."    Gallant at 4:43-46. |
| | • "Through system 100, communications may be established among the voice stations 125 that are serviced through the PSTN 123 and personal computers (e.g., PC 111) that are attached to packet data network 101. Keeping in mind the similar nature of PC soft clients and standalone IP telephones, it maybe said that four possible scenarios exist with the placement of a voice over IP call: (1) phone-to-phone, (2) phone-to-PC, (3) PC-to-phone, and (4) PC-to-PC. In the first scenario of phone-to-phone call establishment, a call from the phone 125 is switched through PSTN 123 by a switch to the network gateway 107, which forwards the call through the IP backbone network 101." Gallant at 5:5-17. |
| | • "Under the second scenario, the phone 125 places a call to a PC through a switch to the PSTN 123. This voice call is then switched by the PSTN 123 to the SIP network gateway 107, which forwards the voice call to a PC 111 via the network 101."    Gallant at 5:21-25. |
| | • "Because of the dynamic nature of user location and of call handling features, each request to establish a session is first routed to a proxy server so that user permissions may be verified, destination addresses may be found, and special features related to a user or a business may be applied to the call." Gallant at 6:39-44. |
| | • "A proxy interprets, and, if necessary, rewrites a request message before |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | forwarding it."    Gallant at 6:45-47. |
| | • "The proxy server first receives a request, such as a SIP 'INVITE' message, typically from a calling station where a first user desires to contact a second user."    Gallant at 7:61-64. |
| | • "To initiate contact, User A 210 accesses a terminal, calling station 212, and specifies User B as the destination to be reached. This expression of the specific desired destination may take the form of dialing of digits or of selecting a user name or URL-style address from a list. In some cases, User A may also be able to express what type of session is desired (video, high quality, messaging, etc.) or specify a desired quality level for the session. Once the request is specified at station 212, a SIP 'INVITE' message describing the request is composed and sent to proxy server 230."    Gallant at 8:40-49. |
| | • "In step 501, a SIP 'INVITE' message indicating User A's intent to reach User B is sent from User A's terminal to the proxy, NS1."    Gallant at 10:50-52. |
| | • "User A subsequently repeats the INVITE request in step 507, but this time includes an authentication header in response to the challenge of step 503. If the authentication of User A is satisfactory, then, in step 509, the INVITE is forwarded to the location server."    Gallant at 10:57-61. |
| | • "Process 700 commences in step 702 upon the receipt of a routing request from a proxy server or the like. The routing request is submitted to the location server, perhaps in response to a session request initiated by an originating user."    Gallant at 13:21-25. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Gallant discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | *See, e.g.:*  Gallant at Fig. 7.<br><br>Gallant at Fig. 7.<br><br>• "User profile information associated with a party controls the invocation of features for the party and controls the screening of redirect contacts resulting from feature invocation."    Gallant at Abstract.<br><br>• "Because of the dynamic nature of user location and of call handling features, each request to establish a session is first routed to a proxy server so that user permissions may be verified, destination addresses may be found, and special features related to a user or a business may be applied to the call."    Gallant at 6:39-44.<br><br>• "In general, location server 115 accepts a routing request, such as from a proxy server, and determines addresses or 'contacts' corresponding to the destination party expressed in the routing request."    Gallant at 6:48-51.<br><br>• "The second user may be identified by telephone number, IP address, or |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | uniform resource locator (URL), for example. The proxy server may then relay a routing request to the location server for such purposes as verifying the privileges of the first user to reach the second user, finding one or more locations for the second user and performing any call handling features provisioned for the first or second users."   Gallant at 7:64-8:4. |
| | ● "Proxy server 230 typically forwards a request to location server 240 to retrieve one or more contacts at which User B might be reached."   Gallant at 8:50-52. |
| | ● "The location server begins examining the request and determining whether User B has a profile and what features are currently active."   Gallant at 10:61-63. |
| | ● "In step 704, the routing request is interpreted or parsed to identify the origin of the call and the intended destination party or termination for the call."   Gallant at 13:26-28. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Gallant discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction.

*See, e.g.:* |

8

U.S. Patent No. 7,242,680 ("Gallant")

LOCATION SERVER

PROXY SERVER

Address Set

Request

240

230

Gallant at Fig. 2.

U.S. Patent No. 7,822,188

9

U.S. Patent No. 7,242,680 ("Gallant")



610

| USER PROFILE TABLE | | | | |
|---|---|---|---|---|
| SUBID | (PROFILE FIELDS) | | | |
| 614 | 616 | 617 | 618 | |
| | | | | |
| 1393:7662152 | | | 56123 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

612

Gallant at Fig. 6.

U.S. Patent No. 7,822,188

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
|  | 706<br><br>FIND PROFILES FOR ORIGIN AND TERMINATION AND APPLY SCREENING PROCESSES<br><br>Gallant at Fig. 7.<br><br>● "User profile information associated with a party controls the invocation of features for the party and controls the screening of redirect contacts resulting from feature invocation."    Gallant at Abstract.<br><br>● "Various architectures have been proposed in conjunction with these protocols with a common theme of having an address resolution function, referred to as a 'location server,' somewhere in the network to maintain current information on how to reach any destination and to control features on behalf of users."    Gallant at 1:65-2:3.<br><br>● "Location server 115 serves as a repository for end user information to enable address validation, feature status, and real-time subscriber feature configuration. Additionally, LS 115 may store configuration information." Gallant at 4:46-50.<br><br>● "Furthermore, a user may have both personal and group-wise profile settings that affect the activation of features, such as call blocking, even as a function of the time of day."    Gallant at 6:36-38.<br><br>● "Because of the dynamic nature of user location and of call handling features, each request to establish a session is first routed to a proxy server so that user permissions may be verified, destination addresses may be found, and special features related to a user or a business may be applied to the call." Gallant at 6:39-44. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | "In general, location server 115 accepts a routing request, such as from a proxy server, and determines addresses or 'contacts' corresponding to the destination party expressed in the routing request. In response to the request, the location server may return a redirect response comprising contact information for the party."   Gallant at 6:48-53. |
| | ● "One feature that may be configured involves the so-called 'Find-Me' service. A Find-Me schedule provides a mechanism to route calls using a list of possible destinations, wherein each destination is tried in turn. A Find-Me list may be specified to apply during a time-of-day or day-of-week or may be associated with different categories of calling numbers. Furthermore, a default Find-Me list might be provisioned to determine general handling when the more specific Find-Me lists are not in effect."   Gallant at 7:4-12. |
| | ● "For a SIP phone profile, the Find-Me list can contain specific destination addresses provisioned in the user profile, and/or a reference to current registered addresses."   Gallant at 7:20-22. |
| | ● "The proxy server may then relay a routing request to the location server for such purposes as verifying the privileges of the first user to reach the second user, finding one or more locations for the second user and performing any call handling features provisioned for the first or second users. Generally, the location server responds to the proxy's request by returning to the proxy server one or more addresses of terminals where the second user may be contacted." Gallant at 7:65-8:4. |
| | ● "Multiple addresses may be returned by the location server if, for example, a given user profile indicates a 'Find-Me' list, that is, a set of contacts that should be tried for reaching the second user being called. By provisioning of their profile maintained by the location server, a user may specify, for example, that incoming calls go to an IP telephone first, then another phone, then a mobile phone and, if there is still no answer at those locations, then into a voice mail system."   Gallant at 8:13-20. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
|  | • "The current information about User B's contact information is typically maintained in location server 240 or in a presence registry of some type not shown here."    Gallant at 8:36-39. |
|  | • "Proxy server 230 typically forwards a request to location server 240 to retrieve one or more contacts at which User B might be reached. As described earlier, proxy server 230 consults location server 240 for a variety of purposes, such as invoking profile-controlled feature behavior and obtaining the latest known location information pertaining to User B. Location server 240 analyzes the request and responds to proxy server 230 in one of several possible ways." Gallant at 8:50-58. |
|  | • "Location server 240 may determine that User A is allowed to contact User B and may even find multiple addresses at which User B may be reachable. If this is the case, location server 240 returns a SIP '300 Multiple Choices' message containing a list of the contacts to be tried."    Gallant at 8:63-67. |
|  | • "Now recognizing a valid response to the previous authorization challenge, NS1 commences with processing the INVITE request by sending routing request, in the form of INVITE request 409, to a location server (LS)." Gallant at 9:31-34. |
|  | • "Soon after, the LS responds to the proxy with a set contacts of represented by a SIP '300 Multiple Choices' message in step 413. These contacts refer to the User B terminal and User C terminal."   Gallant at 9:37-40. |
|  | • "It is noted that, in general, any number of terminations (i.e., destination clients) may be specified in the Find-Me list of User B."   Gallant at 10:34-36. |
|  | • "Soon thereafter, the location server responds in step 313 with a SIP '300 Multiple Choices' message indicating that it has found the Find-Me list for User B. This response comprises a list of contacts at which communication with User B should be attempted, in this case Terminals 1, 2 and 3."    Gallant at 10:66-11:4. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | • "The call flows of FIG. 4 and FIG. 5 show typical situations wherein the location server performs feature processing and returns to the proxy, NS1, a resulting set of contacts for the destination party being sought."   Gallant at 11:45-48. |
| | • "User Profile Table 610 is shown to comprise user profile records 612. Each user profile record provides a set of values that control service processing. Various ones of these values may be set by provisioning activities through OSS 121 or may be user-configurable through a web-based interface or a SIP phone, for example. Some values may provide indices to yet other tables, such as a listing of currently registered locations for the user."   Gallant at 11:60-67. |
| | • "In the course of handling a session request in system 100, location server 115 will consult the user profile table to determine how to act upon the request based upon user settings in the table."   Gallant at 12:58-61. |
| | • "In step 706, user profiles, if any, for both the origin and termination are obtained from a database of some sort accessible to the location server. As mentioned before, a principle role of the location server is to retrieve and apply information about users that affects service processing. Part of the information available from such profiles describes outbound calling permissions for the originating party and acceptable inbound calls for the terminating party. In the context of a particular routing request received in step 702, both of these factors affect whether or not the session request is permissible."   Gallant at 13:29-39. |
| | • "For example, the terminating user'ss profile may indicate that a find-me feature is enabled and may provide a list of contacts to be tried."   Gallant at 13:59-62. |
| | • "When it is determined in step 720 that all contacts have been screened, then the final set of contacts, if any, resulting from feature processing and feature-related screening are returned to the proxy in step 718 in answer to the routing request that was received in step 702."   Gallant at 14:54-58. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Gallant discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber. |

*See, e.g.:*



Gallant at Fig. 2.

15

U.S. Patent No. 7,242,680 ("Gallant")

620

**SCREENING TABLE**

| LIST_NUM | ALLOW | NOA | CRITERION |
|----------|-------|-----|-----------|
| 56123 | 0 | E.164 | 976000000-976999999 |
| | | | |
| 56123 | 0 | PRV | 4730000-4732999 |
| | | | |
| | | | |
| 624 | 625 | 626 | 627 |

622

Gallant at Fig. 6.

• "Various architectures have been proposed in conjunction with these

U.S. Patent No. 7,822,188

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
|  | protocols with a common theme of having an address resolution function, referred to as a 'location server,' somewhere in the network to maintain current information on how to reach any destination and to control features on behalf of users."   Gallant at 1:65-2:3. |
|  | ● "One feature that may be configured involves the so-called 'Find-Me' service. A Find-Me schedule provides a mechanism to route calls using a list of possible destinations, wherein each destination is tried in turn."   Gallant at 7:4-7. |
|  | ● "The possible destinations in a Find-Me list can be specific addresses associated with an account's profile. For instance, a specific cell-phone number or wire-line phone number can be a possible destination address."   Gallant at 7:13-16. |
|  | ● "For a SIP phone profile, the Find-Me list can contain specific destination addresses provisioned in the user profile, and/or a reference to current registered addresses."   Gallant at 7:20-22. |
|  | ● "Generally, the location server responds to the proxy's request by returning to the proxy server one or more addresses of terminals where the second user may be contacted. Upon receipt of the address information from the location server, the proxy server commences to send an 'INVITE' message, or the like, to each address. Thus, the proxy server attempts to reach the second user by trying the addresses either serially or in parallel. Multiple addresses may be returned by the location server if, for example, a given user profile indicates a 'Find-Me' list, that is, a set of contacts that should be tried for reaching the second user being called. By provisioning of their profile maintained by the location server, a user may specify, for example, that incoming calls go to an IP telephone first, then another phone, then a mobile phone and, if there is still no answer at those locations, then into a voice mail system."   Gallant at 8:4-20. |
|  | ● "Upon receiving such a response, proxy server 230 then commences trying the contacts to see if User B can successfully be reached at any of the |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | corresponding terminals 222. This 'Find-Me' functionality is usually carried out in sequence starting with the most recent registered location or following a specific order as provisioned for User B (phone then pager). In some configurations, it is conceivable that proxy server 230 may attempt all contacts in parallel. An attempt to establish contact with a terminal 222 involves sending a SIP 'INVITE' to the terminal and waiting for a reply indicative of success or failure."    Gallant at 9:1-11. |
| | • "In step 415, proxy NS1 acts upon the first contact by sending an INVITE message to User B."    Gallant at 9:44-45. |
| | • "Based on this, NS1 responds to User A's request to reach User B by sending INVITE messages first to Terminal 1, then Terminal 2, then Terminal 3, where the call finally completes."    Gallant at 10:42-45. |
| | • "The proxy NS1 then begins trying the contacts sequentially. In step 515, NS1 sends an INVITE message to Terminal 1, whereupon Terminal 1 responds in step 517 with a '404 Not Found' message."    Gallant at 11:5-8. |
| | • "Each record in Screening Table 620 describes outbound origination and inbound termination permissions in the communications system."    Gallant at 12:32-34. |
| | • "In the course of handling a session request in system 100, location server 115 will consult the user profile table to determine how to act upon the request based upon user settings in the table."    Gallant at 12:58-61. |
| | • "Step 706 further entails applying these originating and terminating screening criteria."    Gallant at 13:39-40. |
| | • "Returning to step 714, if it is determined that a user profile for the terminating party is available, step 712 is performed to apply feature processing based upon the profile."    Gallant at 13:57-62. |
| | • "In accordance with the prior art, this list of contacts will normally be |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | returned to the proxy so that the proxy may then try to reach the terminating party using these contacts."    Gallant at 13:62-65. |
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | Gallant discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber.

*See, e.g.:*

- "In a SIP-controlled network, a variety of features and services may be implemented via a SIP server. These features include Centrex-type calling features (call forwarding) as well as advanced features such as SIP presence support, location management, and Find-Me capability."    Gallant at 2:4-8.

- "For instance, call forwarding, call transfer, and other features, can result in an outgoing call indirectly."    Gallant at 2:17-19.

- "One feature that may be configured involves the so-called 'Find-Me' service. A Find-Me schedule provides a mechanism to route calls using a list of possible destinations, wherein each destination is tried in turn."    Gallant at 7:4-7.

- "A 'Do Not Disturb' feature may be available at a terminal so that incoming calls are declined and, in the case of telephones and pagers for example, no ringing occurs to disturb users nearby. When 'Do Not Disturb' is invoked on a SIP phone 109, the SIP phone 109 returns a Busy message if contacted by NS 113. For example, the phone returns a busy signal instead of ringing when an incoming call arrives. When the SIP phone 109 returns a '486 Busy' message, the Network Server 113 and Location Server 115 can make intelligent routing decisions based on a user profile, such as whether a Call Forwarding On Busy feature has been provisioned."    Gallant at 7:46-57.

- "Thus, the proxy server attempts to reach the second user by trying the |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | addresses either serially or in parallel. Multiple addresses may be returned by the location server if, for example, a given user profile indicates a 'Find-Me' list, that is, a set of contacts that should be tried for reaching the second user being called. By provisioning of their profile maintained by the location server, a user may specify, for example, that incoming calls go to an IP telephone first, then another phone, then a mobile phone and, if there is still no answer at those locations, then into a voice mail system."    Gallant at 8:10-20. |
| | • "User B might be listed as a contact in the usual sense, whereas User C may be designated as a 'cfb' contact address to be used for forwarding if the first address is busy."    Gallant at 9:40-43. |
| | • "In step 417, the User B terminal sends back a '486 Busy Here' response indicating that the terminal is busy, perhaps already involved in a different session or set to a 'Do Not Disturb' mode as described earlier. NS1 acknowledges receipt of the busy indication in step 419 and then proceeds to try the 'cfb' contact address, namely User C. The INVITE message goes to User C in step 421 and a '180 Ringing' response is returned in step 423."    Gallant at 9:45-53. |
| | • "Based on this, NS1 responds to User A's request to reach User B by sending INVITE messages first to Terminal 1, then Terminal 2, then Terminal 3, where the call finally completes."    Gallant at 10:42-45. |
| | • "The proxy NS1 then begins trying the contacts sequentially. In step 515, NS1 sends an INVITE message to Terminal 1, whereupon Terminal 1 responds in step 517 with a '404 Not Found' message. This indicates that User B will not be reachable at Terminal 1. NS1 acknowledges the '404' message by sending back an 'ACK' message in step 519. Without this acknowledgement, Terminal 1 would repeat the '404' response at intervals to make sure its response had been received. In step 521, proxy NS1 attempts contact via Terminal 2 by sending an INVITE message."    Gallant at 11:5-15. |
| | • "For example, the terminating user'ss profile may indicate that a find-me |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | feature is enabled and may provide a list of contacts to be tried."   Gallant at 13:59-62. |
| | • " |
| receiving a call connect instruction from the subscriber; and | Gallant discloses receiving a call connect instruction from the subscriber. |
| | *See, e.g.:* |
| | • "As shown in FIG. 3B, a problem arises when Party B activates a call forwarding feature, or any other feature that triggers outbound calls. A call from Party A may be forwarded or redirected to Party C, resulting in a call that would have normally been blocked otherwise."   Gallant at 2:47-51. |
| | • "The user may move from one terminal to another and, at each terminal, may register as being present so that inbound calls are directed to the most recently registered location."   Gallant at 6:33-35. |
| | • "Furthermore, as a user registers their presence at a terminal, such as a SIP phone, the address of the terminal may be temporarily added to the Find-Me list."   Gallant at 7:16-19. |
| | • "By logging in, incoming calls to the visitor's profile are directed to the phone. When a visitor logs in, SIP phones 109 register the visitor with the Network Server 113 and Location Server 115. Any incoming call to any of the profiles registered by the phone can be directed to the phone."   Gallant at 7:37-42. |
| | • "By provisioning of their profile maintained by the location server, a user may specify, for example, that incoming calls go to an IP telephone first, then another phone, then a mobile phone and, if there is still no answer at those locations, then into a voice mail system."   Gallant at 8:16-20. |
| | • "User A calls while User B is busy, and User B has the 'Call Forward on |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | Busy' featured configured to send such calls to User C."    Gallant at 9:15-17. |
| | • "When User C answers the call, a '200 OK' message is returned by User C in step 427 and is propagated back to User A in step 429. In some cases, the OK response may comprise a session descriptor describing parameters for the session to be established between User A and User C."    Gallant at 9:60-64. |
| | • "Based on this, NS1 responds to User A's request to reach User B by sending INVITE messages first to Terminal 1, then Terminal 2, then Terminal 3, where the call finally completes."    Gallant at 10:42-45. |
| | • "Terminal 3 sends a '200 OK' message indicating that the call has been accepted at this terminal. The '200 OK' is sent back to the User A terminal as well in step 543. Acknowledgement of the viable connection is returned in steps 545 and 547. At this point, User A's terminal and Terminal 3 are now mutually aware of each other's addresses and a two-way RTP media connection may be established through the network between User A and User B."    Gallant at 11:38-44. |
| instructing the call processing system to connect the first call to a third communication device. | Gallant discloses instructing the call processing system to connect the first call to a third communication device. |
| | *See, e.g.:* |
| | VOICE MAIL SYSTEM    129 |
| | Gallant at Fig. 1. |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | • "As shown in FIG. 3B, a problem arises when Party B activates a call forwarding feature, or any other feature that triggers outbound calls. A call from Party A may be forwarded or redirected to Party C, resulting in a call that would have normally been blocked otherwise."    Gallant at 2:47-51. |
| | • "The user may move from one terminal to another and, at each terminal, may register as being present so that inbound calls are directed to the most recently registered location."    Gallant at 6:33-35. |
| | • "Furthermore, as a user registers their presence at a terminal, such as a SIP phone, the address of the terminal may be temporarily added to the Find-Me list."    Gallant at 7:16-19. |
| | • "By logging in, incoming calls to the visitor's profile are directed to the phone. When a visitor logs in, SIP phones 109 register the visitor with the Network Server 113 and Location Server 115. Any incoming call to any of the profiles registered by the phone can be directed to the phone."    Gallant at 7:37-42. |
| | • "By provisioning of their profile maintained by the location server, a user may specify, for example, that incoming calls go to an IP telephone first, then another phone, then a mobile phone and, if there is still no answer at those locations, then into a voice mail system."    Gallant at 8:16-20. |
| | • "User A calls while User B is busy, and User B has the 'Call Forward on Busy' featured configured to send such calls to User C."    Gallant at 9:15-17. |
| | • "Based on this, NS1 responds to User A's request to reach User B by sending INVITE messages first to Terminal 1, then Terminal 2, then Terminal 3, where the call finally completes."    Gallant at 10:42-45. |
| | • "Eventually, after Terminal 2 has been ringing for awhile without being answered, a timeout is declared and NS1 issues a 'CANCEL' message in step 527 so that Terminal 2 will stop ringing. Proxy NS1 then tries to reach User B via Terminal 3 and sends an INVITE message to Terminal 3 in step 529." |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | Gallant at 11:20-26. |
| | • "Terminal 3 sends a '200 OK' message indicating that the call has been accepted at this terminal. The '200 OK' is sent back to the User A terminal as well in step 543. Acknowledgement of the viable connection is returned in steps 545 and 547. At this point, User A's terminal and Terminal 3 are now mutually aware of each other's addresses and a two-way RTP media connection may be established through the network between User A and User B."   Gallant at 11:38-44. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | Gallant discloses the method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. |
| | *See* claim 40 above: |
| |  |
| | Gallant at Fig. 1. |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | 

Gallant at Fig. 1.

● "Businesses that have been accustomed to having telephony traffic and data traffic separately supported over different systems and networks are now moving towards so-called 'converged networks' wherein telephone voice traffic and other forms of real-time media are converted into digital form and carried by a packet data network along with other forms of data. Now that the technologies are feasible to support it, voice over data transport offers many advantages in terms of reduced capital and operating costs, resource efficiency and flexibility." Gallant at 1:29-38.

● "Both the ITU H.323 standard and the IETF's Session Initiation Protocol (SIP) are examples of protocols which may be used for establishing a communications session among terminals connected to a network. The SIP protocol is described in IETF document RFC 2543 and its successors."    Gallant at 1:60-64.

● "In a SIP-controlled network, a variety of features and services may be implemented via a SIP server. These features include Centrex-type calling features (call forwarding) as well as advanced features such as SIP presence support, location management, and Find-Me capability."    Gallant at 2:4-8.

● "For example, although the present invention is discussed in the context of the Session Initiation Protocol (SIP) and an Internet Protocol (IP)-based network, one of ordinary skill in the art will recognize that the present invention |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | may be generally applicable to other equivalent or analogous communication protocols (ITU H.323) or other communications networks (ATM, frame relay, etc.)."   Gallant at 3:64-4:3. |
| | • "It should be understood throughout this disclosure that, although SIP-type messages are shown for convenience, any type of protocol or a mixture of such protocols may be applied in various parts of the overall system. In particular, the routing requests and responses between the proxy server and location server may strictly or loosely conform to SIP or some other standardized protocol, or may be proprietary in nature."   Gallant at 4:4-11. |
| | • "System 100 provides the ability to establish communications among various terminal equipment coupled thereto, such as telephone 125, PBX phone 118 and SIP phone 109."   Gallant at 4:18-21. |
| | • "As used herein, the term 'SIP phone' refers to any client (e.g., a personal computer, a web-appliance, etc.) that is configured to provide SIP phone functionalities. The SIP phones 109 may take the form of standalone devices—e.g., a SIP phone may be designed and configured to function and appear like a Plain Old Telephone Service (POTS) telephone station. A SIP client 111, however, is a software client and may that run, for example, on a conventional personal computer (PC) or laptop computer. From a signaling perspective, these devices 109, 111 may operate quite similarly, with the main differences relating to the user interface. Unless otherwise stated, it is recognized that the functionalities of both the SIP phones 109 and the SIP client 111 are comparable and that the network operates similarly with either type of device." Gallant at 4:24-39. |
| | • "Through system 100, communications may be established among the voice stations 125 that are serviced through the PSTN 123 and personal computers (e.g., PC 111) that are attached to packet data network 101." Gallant at 5:5-8. |
| | • "Under the second scenario, the phone 125 places a call to a PC through |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") | |
|---|---|---|
| | a switch to the PSTN 123. This voice call is then switched by the PSTN 123 to the SIP network gateway 107, which forwards the voice call to a PC 111 via the network 101." Gallant at 5:21-25. | |
| | • " | |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | Gallant discloses the method of claim 42, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension.

*See* claim 40 above. | |
| | 117 〜 | PBX |
| | Gallant at Fig. 1. | |
| | • "For example, at commercial installations, customer premise equipment investments are substantially reduced as most of the enhanced functions, such as PBX and automatic call distribution functions, may reside in a service provider's network. Various types of gateways allow for sessions to be established even among diverse systems such as IP phones, conventional analog phones and PBXs as well as with networked desktop computers." Gallant at 1:39-46. | |
| | • "System 100 provides the ability to establish communications among various terminal equipment coupled thereto, such as telephone 125, PBX phone 118 and SIP phone 109." Gallant at 4:18-21. | |
| | • "As shown, enterprise gateway 103 provides connectivity from a PBX | |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| | 117, which contains trunks or lines often for a single business customer or location (e. g., PBX phones 118). Signaling for calls from PBX 117 into the IP network comprises information which uniquely identifies the customer, trunk group, or carrier. This allows private numbers to be interpreted in their correct context. To interface to PBX 117, enterprise gateway 103 may use Integrated Digital Services Network (ISDN), Circuit Associated Signaling (CAS), or other PBX interfaces (e.g., European Telecommunications Standards Institute (ETSI) PRI, R2)."   Gallant at 4:57-67. |
| | • "For a traditional phone behind an enterprise gateway profile, the Find-Me list can contain specific destination addresses provisioned in the user profile and/or a reference to the user's PBX-phone."   Gallant at 7:22-26. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein | Gallant discloses The method as defined in claim 40, wherein the first |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
| the first communication device is connected to a private branch exchange system. | communication device is connected to a private branch exchange system. |
| | See claim 40 above: |
| |  |
| | Gallant at Fig. 1. |
| | • "For example, at commercial installations, customer premise equipment investments are substantially reduced as most of the enhanced functions, such as PBX and automatic call distribution functions, may reside in a service provider's network. Various types of gateways allow for sessions to be established even among diverse systems such as IP phones, conventional analog phones and PBXs as well as with networked desktop computers."    Gallant at 1:39-46. |
| | • "System 100 provides the ability to establish communications among various terminal equipment coupled thereto, such as telephone 125, PBX phone 118 and SIP phone 109."    Gallant at 4:18-21. |
| | • "As shown, enterprise gateway 103 provides connectivity from a PBX 117, which contains trunks or lines often for a single business customer or location (e. g., PBX phones 118). Signaling for calls from PBX 117 into the IP network comprises information which uniquely identifies the customer, trunk group, or carrier. This allows private numbers to be interpreted in their correct context. To interface to PBX 117, enterprise gateway 103 may use Integrated Digital Services Network (ISDN), Circuit Associated Signaling (CAS), or other PBX interfaces (e.g., European Telecommunications Standards Institute (ETSI) PRI, R2)."    Gallant at 4:57-67. |
| | • "For a traditional phone behind an enterprise gateway profile, the |

29

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,242,680 ("Gallant") |
|---|---|
|  | Find-Me list can contain specific destination addresses provisioned in the user profile and/or a reference to the user's PBX-phone."    Gallant at 7:22-26. |

30

NY:1636644.2

Exhibit A-11

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent Application Publication No.
2002/0176404 ("Girard")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent Application Publication No. 2002/0176404 ("Girard") invalidates Claims 1-3, 5-13,15-21, 24-25, 40-43, and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Girard was filed on April 15, 2002, claims priority to a provisional application filed on April 13, 2001, and was published on November 28, 2002, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| [1.1] A method of processing calls, the method comprising: | Girard discloses a method of processing calls (e.g., detecting network signaling events in a telephone call and invoking call processing application in response to the signaling events).<br><br>*See, e.g.:*<br><br>"A network device including a plurality of communication interfaces, including a telephone line interface, a computer data interface, and a broadband network interface; a processor; a machine-readable storage medium which during use stores a call processing application and service profiles, and which stores executable instructions to mediate communications between the plurality of communication interfaces, the instructions causing the network device to detect network signaling events or trigger points in a telephone call and invoke the call processing application in response to the detected network signaling events or |

2

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | trigger points, the call processing application operating according to parameters defined in the service profiles." Girard at Abstract.[1] |
| | "Interactive calling services were originally envisioned that would provide the NGN subscriber with the ability to select or customize call processing logic, perhaps even to enable interoperability between network features and application programs running on the subscriber's personal computer (e.g. active browser sessions, instant messaging clients) or to access subscriber-specific data objects (e.g. contact lists, call logs, content subscriptions). Implementation of these types of interactive calling services using only AIN-style APIs was eventually perceived as largely impractical in the NGN because the MEDIA GATEWAY CONTROLLER (supporting the APIs) would be required to access, manage, and execute unique, complex service logic for very large number of subscribers at the same time. The following points illustrate other significant limitations of the NGN with respect to supporting new services: ... |
| | "Calling services that perform call control operations require a full knowledge of subscriber Class of Service parameters and service delivery preferences. This information governs not only the subscriber's ability to invoke the calling service in the first place, but the unique behavior of the service when invoked by that particular subscriber. Most of the information that interactive calling services (e.g. call log functions, programmable call-blocking and call-forwarding) require is buried somewhere deep inside the NGN infrastructure in much the same way that it was buried inside the CENTRAL OFFICE SWITCH in the PSTN. This factor imposes substantial constraints on the variety of network services the NGN can deliver because call log entries and related subscriber-specific network usage data are largely unavailable for real-time access by third-party applications." ¶¶ 0058-0060. |
| | "FIG. 3 depicts an ESN architecture principally comprised of "connectivity elements." A connectivity element is a particular type of network element that is |

3

[1] All references are to Girard, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | capable of participating in call sessions using SIP network signaling and RTP bearer transmission. Communities of connectivity elements communicate in a peer-to-peer fashion without necessarily requiring assistance from the network beyond IP connectivity. The three connectivity element types defined for the ESN are as follows: |
| | "EDGE SWITCH |
| | "APPLICATION SERVER |
| | "PSTN GATEWAY |
| | "All three connectivity elements share a similar network interface design that combines support for SIP network signaling, RTP bearer transport, media encoding/decoding, and event-driven call processing into a single intelligent endpoint device. From a conceptual standpoint, each connectivity element collapses functionality from each major NGN network element into a self-contained whole capable of 'intelligent participation' in call sessions. Intelligent participation refers to the ability of a connectivity element to operate both as SIP network signaling endpoint and as a call control agent capable complex call control operations. Complex call control operations might involve supervising call sessions that contain multiple call legs extending to other connectivity elements. Connectivity elements may leverage network-based SIP proxy servers to support these and other complex operations." ¶¶ 0078 – 0082. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| |  FIGURE 3 <br><br> See Fig. 3 and associated text. <br><br> "Ultimately, all subscriber terminals plugged into the EDGE SWITCH communicate with the PACKET TRANSPORT NETWORK through QoS |

5

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | routing capabilities built into the EDGE SWITCH. EDGE SWITCH routing capabilities enable QoS arbitration at the exact point where subscriber terminals interface the broadband access network. Video streaming services deployed within the network are made accessible to SIP media streaming devices connected to the EDGE SWITCH (such as SIP-enabled set-top boxes). Data transmission capacity not used for voice telephone communications or media streaming is made accessible to data terminals for data communications. The EDGE SWITCH operates as a MEDIA GATEWAY to the extent that it is able to present POTS or other types of non-SIP telephones (connected through its LINE interface) to the network as SIP network signaling endpoints. The EDGE SWITCH provides necessary terminal adaptation as necessary for the conversion of device signaling and bearer channel content at the LINE interface to/from SIP network signaling and RTP voice transmission conventions required by the ESN." ¶ 0085. <br><br> "The EDGE SWITCH executes locally stored call processing applications in response to detecting network trigger events. In this way, voice telephone features and related calling services are provided by the EDGE SWITCH to the subscriber through legacy POTS and/or IP telephones, without the participation of centralized network control elements." ¶ 0086. |
| [1.2] storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Girard discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber (e.g., the memory of the EDGE Switch component of the ESN stores call processing applications and the subscriber's profile which includes the subscriber's dialing number). <br><br> *See, e.g.:* <br><br> "Interactive calling services were originally envisioned that would provide the NGN subscriber with the ability to select or customize call processing logic, perhaps even to enable interoperability between network features and application programs running on the subscriber's personal computer (e.g. active browser |

6

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | sessions, instant messaging clients) or to access subscriber-specific data objects (e.g. contact lists, call logs, content subscriptions). Implementation of these types of interactive calling services using only AIN-style APIs was eventually perceived as largely impractical in the NGN because the MEDIA GATEWAY CONTROLLER (supporting the APIs) would be required to access, manage, and execute unique, complex service logic for very large number of subscribers at the same time. The following points illustrate other significant limitations of the NGN with respect to supporting new services:" ¶ 0058. |
| | "An Edge Switched Network (ESN) architecture is introduced as an innovation whose implementation is dependent upon the Distributed Edge Switch (the 'invention' that is the subject of this disclosure). The general operating principles of the ESN are described below as a pretext to a detailed description of the Distributed Edge Switch (DES) found in the OVERVIEW section. It will be shown that the ESN resolves many of limitations inherent to the NGN." ¶ 0077. |
| | "FIG. 3 depicts an ESN architecture principally comprised of 'connectivity elements.' A connectivity element is a particular type of network element that is capable of participating in call sessions using SIP network signaling and RTP bearer transmission. Communities of connectivity elements communicate in a peer-to-peer fashion without necessarily requiring assistance from the network beyond IP connectivity. The three connectivity element types defined for the ESN are as follows: |
| | "EDGE SWITCH |
| | "APPLICATION SERVER |
| | "PSTN GATEWAY |
| | "All three connectivity elements share a similar network interface design that combines support for SIP network signaling, RTP bearer transport, media encoding/decoding, and event-driven call processing into a single intelligent endpoint device. From a conceptual standpoint, each connectivity element |

7

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | collapses functionality from each major NGN network element into a self-contained whole capable of 'intelligent participation' in call sessions. Intelligent participation refers to the ability of a connectivity element to operate both as SIP network signaling endpoint and as a call control agent capable complex call control operations. Complex call control operations might involve supervising call sessions that contain multiple call legs extending to other connectivity elements. Connectivity elements may leverage network-based SIP proxy servers to support these and other complex operations." ¶¶ 0078-0082. |
| | "Role of the Edge Switch in the ESN |
| | "The EDGE SWITCH is an ESN connectivity element whose principal function is to support the delivery of voice, video (multimedia) and data services—multi-service delivery—to the subscriber premise through a shared IP data path. It aggregates several functions together into a single, cost-effective device that is deployed by the carrier as a premise-based network element." ¶ 0083. |
| | "FIG. 3 shows that the EDGE SWITCH functions as a broadband access network termination device (e.g. DSL modem, cable modem, T1 terminator, passive optical terminator) at the subscriber premise, providing an IP data path from the premise to the PACKET TRANSPORT NETWORK. It also provides a means by which voice, video and data terminals at the subscriber premise may connect to other network endpoints in the PACKET TRANSPORT NETWORK, each creating connections through a shared, routed IP data interface." ¶ 0084. |
| | "Ultimately, all subscriber terminals plugged into the EDGE SWITCH communicate with the PACKET TRANSPORT NETWORK through QoS routing capabilities built into the EDGE SWITCH. EDGE SWITCH routing capabilities enable QoS arbitration at the exact point where subscriber terminals interface the broadband access network. Video streaming services deployed within the network are made accessible to SIP media streaming devices connected to the EDGE SWITCH (such as SIP-enabled set-top boxes). Data transmission capacity not used for voice telephone communications or media |

8

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | streaming is made accessible to data terminals for data communications. The EDGE SWITCH operates as a MEDIA GATEWAY to the extent that it is able to present POTS or other types of non-SIP telephones (connected through its LINE interface) to the network as SIP network signaling endpoints. The EDGE SWITCH provides necessary terminal adaptation as necessary for the conversion of device signaling and bearer channel content at the LINE interface to/from SIP network signaling and RTP voice transmission conventions required by the ESN." ¶0085.

"The EDGE SWITCH executes locally stored call processing applications in response to detecting network trigger events. In this way, voice telephone features and related calling services are provided by the EDGE SWITCH to the subscriber through legacy POTS and/or IP telephones, without the participation of centralized network control elements." ¶0086.

"CENTRAL PROCESSING UNIT [1.10]

"Hardware subsystem of the EDGE SWITCH [1] consisting of various subcomponents that include a main processor, peripheral controllers and memory cache devices necessary for it to function as a stand-alone computer running a real-time, preemptive, multi-tasking operating system. The CENTRAL PROCESSING UNIT provides supervisory control, directly or indirectly, for all EDGE SWITCH [1] features and functions. It interfaces RANDOM ACCESS MEMORY [1.11], utilizing it to provide memory needed to run the operating system and various application programs; it interfaces NON-VOLATILE MEMORY [1.11], utilizing it to store vital system configuration parameters and as a FILE SYSTEM [1.23]; it interfaces both the MEDIA STREAM CONTROLLER [1.7] and the IP ROUTING MODULE [1.2] through a system bus or similar means, utilizing each as a dedicated peripheral computing resource (under software control) to implement media connectivity and IP routing operations respectively." ¶0291.

"RANDOM ACCESS MEMORY [1.11] |

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | "Hardware subsystem of the EDGE SWITCH [1] consisting of any array of solid-state storage devices configured to provide randomly addressable memory directly accessible to the CENTRAL PROCESSING UNIT [1.10]. The storage devices that comprise this subsystem provide volatile memory whose contents are considered to be undefined after a system reset cycle and must be initialized prior to use." ¶ 0292. "NON-VOLATILE MEMORY [1.12] "Hardware subsystem of the EDGE SWITCH [1] consisting of any array of solid-state storage devices configured to provide block addressable memory accessible to the CENTRAL PROCESSING UNIT [1.10] using direct memory access (DMA) or equivalent means. The storage devices that comprise this subsystem user non-volatile memory whose contents are retained between system reset cycles." ¶ 0293. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | <br><br>FIGURE 5<br><br>See Fig. 5 and associated text.<br><br>"Upon detecting a SIP call session initiation, the APPLICATION SERVER |

11

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | examines SIP signaling information and compares it with what it knows internally about the calling party so that it may automatically determine the feature, function, or service that it should render to the calling party. For example, if the calling party is a SIP network signaling endpoint (SIP User Agent) used by an EDGE SWITCH to represent a POTS telephone at the subscriber premise, the APPLICATION SERVER will receive the dialing number of the calling party (i.e. the dialing number assigned to the POTS telephone originating the call). It may then use this dialing number to access an internal database for the purpose of retrieving the Class of Service parameters associated with this dialing number. Class of Service parameters will inform the APPLICATION SERVER as to whether or not it should render its service to the calling party." ¶ 0102.<br><br>"The PSTN GATEWAY is an ESN connectivity element whose principal function is to (a) make it possible for the EDGE SWITCH to connect to PSTN endpoints using SIP network signaling and (b) to make it possible for PSTN endpoints to connect to the EDGE SWITCH using PSTN network signaling. The PSTN GATEWAY combines the functions of the NGN architecture's SIGNALING GATEWAY, TRUNK GATEWAY, and MEDIA GATEWAY CONTROLLER so as to enable SIP call sessions connecting to it to be bridged to PSTN endpoints. It provides necessary signaling gateway functions as required to interface the PSTN using SS#7 protocols. It also provides necessary media gateway functions to convert bearer channel encoding formats at the TRUNK interface to/from SIP and RTP voice transmission conventions required by the ESN." ¶ 0105.<br><br>"A connection attempt that originates in the ESN and that is intended to ultimately connect to a PSTN endpoint, will be directed to a SIP network signaling endpoint on a PSTN GATEWAY. The PSTN GATEWAY will initiate essentially the same workflow sequence used by the APPLICATION SERVER to execute internally stored call processing applications. Consistent with its specialized role in the ESN, the PSTN GATEWAY will execute a call processing application that will connect the incoming SIP call session through to |

12

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | the specified PSTN endpoint. Thus, an incoming SIP call from the ESN to the PSTN GATEWAY will initiate a corresponding PSTN call set-up to a PSTN endpoint through the TRUNK interface. In the reverse direction, an incoming PSTN call through the TRUNK interface will result in a SIP call set-up to a SIP network signaling endpoint in the PACKET TRANSPORT NETWORK." ¶ 0106. |
|  | "Because all of the EDGE SWITCHES [1] are connected to an IP CARRIER NETWORK [6], and because each EDGE SWITCH [1] supports call sessions using SIP network signaling, the communications between EDGE SWITCHES [1] is for the most part peer-to-peer. Excepting the circumstance in which a call session has one of its endpoints in a network other than the IP CARRIER NETWORK [6] (i.e. PSTN), a SIP network signaling endpoint at one EDGE SWITCH [1] simply 'invites' a SIP network signaling endpoint at another EDGE SWITCH [1] to joint it in a call session. Usually, the participating endpoints negotiate to create voice or video (multimedia) streams between them." ¶ 0174. |
|  | "Communications between TELEPHONE STATIONS [3] are usually based on E.164 dialing number addressing. The EDGE SWITCHES [1] perform the necessary conversion (using network-based resources) to dynamically associate a dialing number with an IP address, as required to set-up the SIP call session. Communications between SET-TOP BOXES [4] may be based on E.164 dialing number addressing or some other carrier-specific naming or addressing convention. SET-TOP BOXES [4] typically connect to a SIP APPLICATION SERVER and thus may use a different scheme." ¶ 0175. |
|  | "Communications between COMPUTER WORKSTATIONS [5] are based on IP-based data communication protocols. The EDGE SWITCH [1] takes an active role in non-SIP data communications initiated by COMPUTER WORKSTATIONS [5] plugged into the COMPUTER DATA INTERFACE [1.4]. Data communications through the EDGE SWITCH [1] are filtered through a programmable firewall feature set internal to the EDGE SWITCH [1] and |

13

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | Network Address Translation (NAT) services may also be applied. In addition, the EDGE SWITCH [1] performs QoS arbitration between all terminals competing for broadband access network transmission capacity, and as a result may attenuate the flow of IP packets available for data communications as transmission capacity is dynamically reserved for voice and video transmission." ¶ 0176. |
| [1.3] storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | Girard discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network (e.g., the EDGE Switch stores in memory the telephone station's E.164 dialing number addressing and/or the IP address).<br><br>*See, e.g.:*<br><br>"A connection attempt that originates in the ESN and that is intended to ultimately connect to a PSTN endpoint, will be directed to a SIP network signaling endpoint on a PSTN GATEWAY. The PSTN GATEWAY will initiate essentially the same workflow sequence used by the APPLICATION SERVER to execute internally stored call processing applications. Consistent with its specialized role in the ESN, the PSTN GATEWAY will execute a call processing application that will connect the incoming SIP call session through to the specified PSTN endpoint. Thus, an incoming SIP call from the ESN to the PSTN GATEWAY will initiate a corresponding PSTN call set-up to a PSTN endpoint through the TRUNK interface. In the reverse direction, an incoming PSTN call through the TRUNK interface will result in a SIP call set-up to a SIP network signaling endpoint in the PACKET TRANSPORT NETWORK." ¶ 0106.<br><br>"Because all of the EDGE SWITCHES [1] are connected to an IP CARRIER NETWORK [6], and because each EDGE SWITCH [1] supports call sessions using SIP network signaling, the communications between EDGE SWITCHES [1] is for the most part peer-to-peer. Excepting the circumstance in which a call |

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | session has one of its endpoints in a network other than the IP CARRIER NETWORK [6] (i.e. PSTN), a SIP network signaling endpoint at one EDGE SWITCH [1] simply 'invites' a SIP network signaling endpoint at another EDGE SWITCH [1] to joint it in a call session. Usually, the participating endpoints negotiate to create voice or video (multimedia) streams between them." ¶ 0174.<br><br>"Communications between TELEPHONE STATIONS [3] are usually based on E.164 dialing number addressing. The EDGE SWITCHES [1] perform the necessary conversion (using network-based resources) to dynamically associate a dialing number with an IP address, as required to set-up the SIP call session. Communications between SET-TOP BOXES [4] may be based on E.164 dialing number addressing or some other carrier-specific naming or addressing convention. SET-TOP BOXES [4] typically connect to a SIP APPLICATION SERVER and thus may use a different scheme." ¶ 0175.<br><br>"Communications between COMPUTER WORKSTATIONS [5] are based on IP-based data communication protocols. The EDGE SWITCH [1] takes an active role in non-SIP data communications iniated by COMPUTER WORKSTATIONS [5] plugged into the COMPUTER DATA INTERFACE [1.4]. Data communications through the EDGE SWITCH [1] are filtered through a programmable firewall feature set internal to the EDGE SWITCH [1] and Network Address Translation (NAT) services may also be applied. In addition, the EDGE SWITCH [1] performs QoS arbitration between all terminals competing for broadband access network transmission capacity, and as a result may attenuate the flow of IP packets available for data communications as transmission capacity is dynamically reserved for voice and video transmission." ¶ 0176. |
| [1.4] participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | Girard discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address (e.g., the subscriber may use multiple telephones, and may use the second telephone to |

15

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | dial the first telephone). |
| | See citations and discussion above in connection with claim limitation 1.3. |
| [1.5] placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with the first outcall, wherein the first phone address is different than the second phone address; | Girard discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address (e.g., the subscriber may originate on-network and off-network calls).<br><br>*See, e.g.:*<br><br>"EDGE SWITCH call control operations can be used to transparently access network-based features provided by APPLICATION SERVERS. As a result, combinations of call control features internal to the EDGE SWITCH and network-based features that are external to the EDGE SWITCH can be dynamically configured and presented together to end users as a unified service or capability—that is, presented in such a way that the source of the feature (internal to the EDGE SWITCH or network-based) is entirely transparent to the end users. Thus, beyond its ability to support programmable internal feature sets via software upgrades and configurable call processing applications, the EDGE SWITCH feature set may be further extended through transparent integration with network-based features. As an example, an EDGE SWITCH feature may be created to override basic dial-tone service: when an EDGE SWITCH detects that a telephone plugged into it went off-hook, the override feature would forgo the basic dial-tone service and instead transparently connect to a network-based voice-activated dialing application." ¶ 0139.<br><br>"The EDGE SWITCH [1] supports basic dial-tone, enabling the subscriber to originate (or receive) both on-network calls and off-network calls. Call-blocking features (A.K.A. 'call-diverting features') enable the EDGE SWITCH [1] to block the origination of a call (outbound voice call) by a particular TELEPHONE STATION [3] based on the called party dialing number, or to block answering of a call (inbound voice calls) by a particular TELEPHONE |

16

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | STATION [3] based on the calling party dialing number. The EDGE SWITCH [1] supports configurable call blocking of this type, wherein the subscriber may selectively block inbound and/or outbound calls by specifying area codes, exchanges, and line numbers (or various combinations of the three)." ¶ 0378. |
| | "Call-forwarding features enable the EDGE SWITCH [1] to automatically transfer (redirect) an inbound call based on a number of considerations. Call-forwarding features are often activated to automatically or conditionally transfers inbound calls to application servers for further processing or to provide access to NETWORK-BASED ENHANCED SERVICES [18]. Examples of NETWORK-BASED ENHANCED SERVICES [18] that may be accessed via call-forwarding include an auto attendant (used to answer calls directed to a main office number), voice mail, automatic call distribution, group conferencing bridge, or a personal call screening service. The EDGE SWITCH [1] supports configurable call-forwarding, wherein the subscriber may program it to redirect inbound calls based on: |
| | "Point of origination (determined by calling party dialing number); |
| | "Determination of a busy or 'ring-no-answer' condition existing for the called party dialing number; |
| | "Determination that the incoming call is a fax or modem call; |
| | "Date, day of week, or time of day." ¶¶ 0379-0383. |
| | "Direct-connect features (A.K.A. 'direct-connect originating') enable the EDGE SWITCH [1] to automatically originate a call to a pre-programmed dialing number when a TELEPHONE STATION [3] goes off-hook, or upon the detection of some other event, such as a particular TELEPHONE STATION [3] function key sequence. Direct-connect features are often used for security telephones outside of a building, or at kiosks to provide immediate access to a call center help desk; they may also be used by the EDGE SWITCH [1] to implement speed-dialing by associating certain TELEPHONE STATION [3] key sequences with subscriber-programmed speed-dialing numbers stored in |

17

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | LOCAL CALL ROUTING TABLES [1.23.3]." ¶ 0384.

"Customer Local Access Signaling Services (A.K.A. "CLASS features) comprise an additional layer of features that make TELEPHONE STATIONS [3] more generally useful in both residential and office settings. Depending upon one's point of reference, there is a significant overlap between what some may consider 'CLASS features' and 'office telephone features.' Many of the features mentioned above, such as Distinctive Ringing and Audible message-waiting indication are considered by most local exchange carriers as CLASS features. For the purposes of this disclosure, CLASS features are not viewed as a distinct feature set and are instead subsumed by the broader category of TELEPHONE STATION FEATURES." ¶ 0386.

"Office telephone features (A.K.A. 'Centrex' or 'PBX features') comprise an additional layer of specialized features that make TELEPHONE STATIONS [3] more useful in an office environment. Certain office telephone features make it possible for a user at a TELEPHONE STATION [3] to transfer calls between TELEPHONE STATIONS [3] that may not necessarily be plugged into the same EDGE SWITCH [1]. In the case where TELEPHONE STATIONS [3] are not plugged into the same EDGE SWITCH [1], implementation of certain features may require special communication between EDGE SWITCHES [1] in which a SIP call session is initiated from one to another, not to set-up a new call, but to request that a call in progress be managed in a particular way (e.g. transferred to a different SIP signaling endpoint residing on a different EDGE SWITCH [1]). The following list summarizes common office telephone features that are 'primarily applicable to an office environment.'

"Private telephone network (private dialing plan)

"Speed dialing

"Multiple line appearances

"Three-way calling |

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | "Call-hold |
| | "Call-transfer |
| | "Call-pickup |
| | "Call-park |
| | "Call-waiting with display |
| | "Call log |
| | "Calling reason display |
| | "Do not disturb |
| | "Executive busy override |
| | "Feature button support |
| | "Make busy key" ¶¶ 0387-0402. |
| | "The DES as a system supports the ability to create a virtually unlimited number of private telephone networks (A.K.A. 'virtual private telephone network' or 'virtual telephone network') that are implemented by programming private dialing plans into participating EDGE SWITCHES [1]. Generally speaking, a private telephone network is a collection of telephone endpoints that may address each other as specific community of users, thus enabling the carrier to offer special configuration options and rate plans to participating subscribers. Often, on-network calls made between participating subscribers are billed at a flat rate. The private dialing plan is managed by the subscriber and supports abbreviated dialing number formats that seamlessly integrate with existing dialing plans (e.g. the North American Dialing Plan)." ¶ 0403. |
| | "Private telephone networks may operate within a single IP CARRIER NETWORK [6] or within a wider area through a more expansive IP network infrastructure that consists of interconnected IP CARRIER NETWORKS [6]. Since EDGE SWITCH [1] support for private telephone networks is based on |

19

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | dialing numbers, a private telephone network can include both SIP network signaling endpoints within the IP CARRIER NEWORKS [6] and PSTN [7] endpoints accessible through a PSTN GATEWAY [8]." ¶ 0404. |
| | "TELEPHONE STATION [3] |
| | "Terminal device that is plugged into the TELEPHONE LINE INTERFACE [1.9] and used for voice communications. The term 'voice communications' refers to the ability of a terminal device to participate directly or indirectly as an endpoint in a 'voice call session.' A voice call session is defined as a SIP call session in which at least one bearer connection is transporting voice media content. A TELEPHONE STATION does not support SIP network signaling and cannot present itself to the IP CARRIER NETWORK [6] as a SIP network signaling endpoint; therefore it cannot participate directly in a voice call session and relies upon the EDGE SWITCH [1] to perform the necessary conversions." ¶ 0437. |
| | "A TELEPHONE STATION communicates with the EDGE SWITCH [1] directly through the TELEPHONE LINE INTERFACE [1.9] using analog electrical (or potentially digital) device-level telephone signaling (i.e. not network signaling). Beyond support for basic telephone line signaling (e.g. on-hook, off-hook, DTMF tone generation), device-level telephone signaling is used by the TELEPHONE LINE INTERFACE [1.9] to activate and control special features supported by the TELEPHONE STATION, such as illuminating message-waiting indication lamps or to detect feature key presses by the user. Ultimately, it becomes the task of the EDGE SWITCH [1] (through the TELEPHONE LINE INTERFACE [1.9] and other internal components) to convert the TELEPHONE STATION'S analog or digital device-level telephone signaling and voice transmission conventions to and from IP packets containing SIP network signaling information and digitally-encoded voice, respectively." ¶ 0438. |
| | "TELEPHONE STATIONS [3] work best with EDGE SWITCH [1] features when they support function keys that the EDGE SWITCH [1] can convert to an |

20

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | appropriate user interface convention. EDGE SWITCH [1] CALL PROCESSING APPLICATIONS [1.23.2] and NETWORK-BASED ENHANCED SERVICES [18] are implemented with the highest possible degree of device-independence, and therefore rely upon user input (feature key presses) that comply to a known user interface convention." ¶ 0439.<br><br>"A POTS telephone with programmable speed-dial keys or a PBX telephone with dedicated functions keys can both be used as TELEPHONE STATIONS [3]. In the case of supporting a POTS telephone, the TELEPHONE LINE INTERFACE [1.9] must embody 'SLIC' (Subscriber Line Interface Circuit) functionality whereas in the case of supporting a digital PBX telephone, the TELEPHONE LINE INTERFACE [1.9] must support a particular, vendor-specific line-level interface for that device." ¶ 0440.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [1.6] bridging the first call and the first outcall; | Girard discloses bridging the first call and the first outcall (e.g., the outgoing call is connected to the called party).<br><br>*See, e.g.:*<br><br>"In general, in one aspect, the invention features a network device including a plurality of communication interfaces, among which there is a telephone line interface, a computer data interface, and a broadband network interface. The network device also includes a processor; a machine-readable storage medium which during use stores a call processing application and service profiles, and which stores executable instructions to mediate communications between the plurality of communication interfaces, the instructions causing the network |

21

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | device to detect network signaling events or trigger points in a telephone call and invoke the call processing application in response to the detected network signaling events or trigger points, the call processing application operating according to parameters defined in the service profiles." ¶ 0140.

"Preferred embodiments include one or more of the following features. The plurality of communication interfaces further includes a video streaming device interface. The broadband network interface terminates a broadband network link that joins a customer premises to a packet carrier network. The instructions further cause the network device to route IP data between the computer data interface and the broadband network interface. The network device is contained in a single physical enclosure. The instructions further cause the network device to provide a first SIP proxy agent to represent a telephone that uses the telephone line interface, and provide a second SIP proxy agent to represent a computer that uses the computer data interface. The storage medium stores call routing tables, and the instructions further cause the network device to perform call routing for telephone calls that use the telephone line interface. The storage medium also stores call routing tables, and the instructions cause the network device to perform call routing for telephone calls according to the call routing tables, the telephone calls using the telephone line interface." ¶ 0141.

"In general, in another aspect, the invention features a network device including a plurality of communication interfaces among which there is a telephone line interface, a computer data interface, and a broadband network interface. The network device also includes a processor; a machine-readable storage medium which during use stores call routing tables, and which stores executable instructions to mediate communications between the plurality of interfaces, the instructions causing the network device to perform call routing according to the call routing tables, the telephone calls using the telephone line interface." ¶ 0142.

"Preferred embodiments include one or more of the following features. The call routing includes peer-to-peer call signaling between customer premises over a |

22

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | shared IP network. The call signaling is performed without requiring stateful elements of the shared IP network above the IP infrastructure. The broadband network interface terminates a link that joins the network device to the shared IP network. The call routing includes call signaling to a PSTN endpoint via a PSTN gateway that is reachable over the broadband network interface. The instructions further cause the network device to route IP data between the computer data interface and the broadband network interface. And the plurality of communication interfaces further includes a video streaming device interface." ¶ 0143. |
| | "Any call originated or received by a terminal plugged into the EDGE SWITCH [1] will the trigger the execution of particular service logic (i.e. CALL PROCESSING APPLICATIONS [1.23.2]). The execution of which particular service logic depends upon the subscriber's Class of Service capabilities, settings, and preferences; some settings will change the logic to a completely different type of service logic altogether whereas other settings may simply alter some aspect of the service logic. In some cases, the service logic of EDGE SWITCH BASIC FEATURES [1.24], such as 'call-forwarding' for example, may as a matter of course redirect calls to NETWORK-BASED ENHANCED SERVICES [18]. NETWORK-BASED ENHANCED SERVICES [18] may be accessible to the EDGE SWITCH [1] as network signaling endpoints residing in either the PSTN [7], as indicated by [4], or the IP CARRIER NETWORK [6], as indicated by [5]." ¶ 0246. |
| | "The EDGE SWITCH [1] supports basic dial-tone, enabling the subscriber to originate (or receive) both on-network calls and off-network calls. Call-blocking features (A.K.A. 'call-diverting features') enable the EDGE SWITCH [1] to block the origination of a call (outbound voice call) by a particular TELEPHONE STATION [3] based on the called party dialing number, or to block answering of a call (inbound voice calls) by a particular TELEPHONE STATION [3] based on the calling party dialing number. The EDGE SWITCH [1] supports configurable call blocking of this type, wherein the subscriber may selectively block inbound and/or outbound calls by specifying area codes, |

23

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | exchanges, and line numbers (or various combinations of the three)." ¶ 0378. |
| [1.7] participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | Girard discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address. (e.g., the subscriber may use multiple telephones, and the subscriber may place a second call to the first telephone number using a third telephone).<br><br>See citations and discussion above in connection with claim limitation 1.4.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [1.8] placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | Girard discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address (e.g., the subscriber may originate on-network and off-network calls).<br><br>See citations and discussion above in connection to claim limitation 1.5.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

24

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| [1.9] bridging the second call and the second outcall. | Girard discloses bridging the second call and the second outcall (e.g., the outgoing call is connected to the called party). |
| | See citations and discussion above in connection with claim limitation 1.6. |
| | |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | Girard discloses the method of claim 1, wherein the first call is initiated by the subscriber (e.g., the subscriber places an outgoing call). |
| | *See* claim 1 above. |
| | See citations and discussion above in connection with claim limitation 1.5. |
| | |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or a forward-on-busy condition. | Girard discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition (e.g., the EDGE Switch supports call-forwarding on ring-no-answer, call-forwarding all calls, or call-forwarding on busy). |
| | *See* claim 1 above. |
| | *Furthermore, see, e.g.,* |
| | "The EDGE SWITCH [1] supports basic dial-tone, enabling the subscriber to originate (or receive) both on-network calls and off-network calls. Call-blocking features (A.K.A. 'call-diverting features') enable the EDGE SWITCH [1] to block the origination of a call (outbound voice call) by a particular |

25

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | TELEPHONE STATION [3] based on the called party dialing number, or to block answering of a call (inbound voice calls) by a particular TELEPHONE STATION [3] based on the calling party dialing number. The EDGE SWITCH [1] supports configurable call blocking of this type, wherein the subscriber may selectively block inbound and/or outbound calls by specifying area codes, exchanges, and line numbers (or various combinations of the three)." ¶ 0378. |
| | "Call-forwarding features enable the EDGE SWITCH [1] to automatically transfer (redirect) an inbound call based on a number of considerations. Call-forwarding features are often activated to automatically or conditionally transfers inbound calls to application servers for further processing or to provide access to NETWORK-BASED ENHANCED SERVICES [18], Examples of NETWORK-BASED ENHANCED SERVICES [18] that may be accessed via call-forwarding include an auto attendant (used to answer calls directed to a main office number), voice mail, automatic call distribution, group conferencing bridge, or a personal call screening service. The EDGE SWITCH [1] supports configurable call-forwarding, wherein the subscriber may program it to redirect inbound calls based on: |
| | "Point of origination (determined by calling party dialing number); |
| | "Determination of a busy or 'ring-no-answer' condition existing for the called party dialing number; |
| | "Determination that the incoming call is a fax or modem call; |
| | "Date, day of week, or time of day." ¶¶ 0379-0383. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | Girard discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling (e.g., the PSTN Gateway provides the necessary signaling gateway functions to interface the SIP call sessions to the PSTN network using SS#7 protocols). |

26

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | *See* claim 1 above.<br><br>*Furthermore, see, e.g.,*<br><br>"As an example, when a subscriber dials an 800 number, an SSP detects that the call requires AIN service logic processing. The SSP directs a query to an SCP which in turn executes service logic that returns a valid dialing number to the SSP. The SSP then asks the Signaling System #7 (SS#7) network to set-up a call to that telephone number. SS#7 sets up signaling and bearer paths necessary to support a call to that dialing number. The CENTRAL OFFICE SWITCH serving the called party applies a ringing tone to the called party's telephone. Once the called party answers, the call is established and both the parties can now have a telephone conversation." ¶0007.<br><br>"The LINE module functions include detecting on-hook/off-hook, applying dial tone and ringing tone, collecting dialed digits, and communicating internally with the call-processing module. The CALL PROCESSING module analyzes the digits collected by the LINE module, and asks the SIGNALING module to perform appropriate actions. The SIGNALING module interfaces with the SS#7 TRANSPORT NETWORK for the purpose of setting up a bearer channel between the calling and the called CENTRAL OFFICE SWITCHES. The TRUNK module transforms analog voice to a Time Division Multiplexed (TDM) format for transmission over PSTN trunks. The TRUNK module of the CENTRAL OFFICE SWITCH serving the called party converts the TDM trunk format back to analog for transmission over the local loop." ¶0013.<br><br>"The PSTN GATEWAY is an ESN connectivity element whose principal function is to (a) make it possible for the EDGE SWITCH to connect to PSTN endpoints using SIP network signaling and (b) to make it possible for PSTN endpoints to connect to the EDGE SWITCH using PSTN network signaling. The PSTN GATEWAY combines the functions of the NGN architecture's SIGNALING GATEWAY, TRUNK GATEWAY, and MEDIA GATEWAY CONTROLLER so as to enable SIP call sessions connecting to it to be bridged to PSTN endpoints. It provides necessary signaling gateway functions as |

27

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | required to interface the PSTN using SS#7 protocols. It also provides necessary media gateway functions to convert bearer channel encoding formats at the TRUNK interface to/from SIP and RTP voice transmission conventions required by the ESN." ¶0105.<br><br>See Fig. 3 and associated text. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | Girard discloses the method of claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber (e.g., the subscriber may use a PC-based SIP client to place outgoing calls with the ESN).<br><br>*See* claim 1 above.<br><br>*Furthermore, see, e.g.,*<br><br>See Fig. 3 and associated text.<br><br>"In most scenarios, network services or features supported by an APPLICATION SERVER are rendered directly to SIP network signaling endpoints that connect to it. For reasons of security and protocol compatibility, the APPLICATION SERVER may implement secure connection policies that prohibit access to SIP network signaling endpoints that are not directly managed or mediated by another ESN connectivity element. For example, a PC-based SIP client attempting to connect to the APPLICATION SERVER through the public internet may be prohibited from doing so; however, a PC-based SIP client attempting to connect to the APPLICATION SERVER through an EDGE SWITCH will have its SIP signaling mediated by that EDGE SWITCH—perhaps encrypted according to an internal carrier network standard—and as a result may be allowed to connect to the APPLICATION |

28

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | SERVER in this way." ¶ 0101. |
| | "A direct call occurs when a TELEPHONE STATION [3] or SET-TOP BOX [4] calls another TELEPHONE STATION [3] or SET-TOP BOX [4] that is not plugged into the same EDGE SWITCH [1] and without using an intermediate, centrally-located SIP PROXY SERVER [10] in the IP CARRIER NETWORK [6]. As depicted in FIG. 10 for the EDGE SWITCH [1] labeled A (originating the call in this case), SIP call signaling occurs directly to the EDGE SWITCH [1] labeled B (as indicated by {3}). In this case, the SIP Proxy Server capability of the SIP PROTOCOL STACK [1.16], as depicted in FIG. 11, is able to perform a DNS SERVER [2] look-up to convert the far-end dialing number to an IP endpoint address as indicated by {2}. Thus, the SIP PROTOCOL STACK [1.16] within the EDGE SWITCH [1] is fully capable of performing all operations necessary to establish a SIP call session based on E.164 dialing number addressing without assistance from a centrally-located SIP PROXY SERVER [10]. Class of Service information that would determine whether or not a subscriber should be allowed to place the call in the first place is all stored internally by the EDGE SWITCH [1] and updated as required by the SYSTEM MANGEMENT PLATFORM [2]. As a result, there is no need for the SIP PROTOCOL STACK [1] to query the POLICY SERVER [10] for additional information necessary to set-up the call. RTP bearer transmission occurs point-to-point through the IP CARRIER NETWORK [6] in the usual way for SIP call sessions." ¶ 0239. |
| | "Indirect Call |
| | "An indirect call occurs when a TELEPHONE STATION [3] or SET-TOP BOX [4] uses an intermediate SIP PROXY SERVER [10] to call another TELEPHONE STATION [3] or SET-TOP BOX [4]. This type of call occurs when the service logic used to set-up the call explicitly uses the IP address (or name) of the network-based SIP PROXY SERVER [10] as the SIP Proxy Server that should set-up the call." ¶ 0240. |
| | "As depicted in FIG. 10 for the EDGE SWITCH [1] labeled A (originating the |

29

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | call in this case), SIP call signaling occurs through the SIP PROXY SERVER [12], as indicated by [4]. The SIP PROXY SERVER [12] will access the POLICY SERVER [14] for network call routing information, as indicated by [5], and a DNS SERVER [2] to convert the far-end dialing number to an IP endpoint address, as indicated by [6]. The SIP PROXY SERVER [12] then functions as a SIP message router to shuttle SIP network signaling to and from the far-end EDGE SWITCH [1] labeled B, as indicated by [7]. RTP bearer transmission occurs point-to-point through the IP CARRIER NETWORK [6]." ¶ 0241. |
| | "In the DES, this type of indirect call usually occurs when the dialed number is an endpoint that can only be reached through a PSTN GATEWAY [8], or when the dialed number is a SIP APPLICATION SERVER [13], as indicated by [8] and [9]. In these cases, the carrier will often deploy a SIP PROXY SERVER [10] as a means to implement a load-balancing function; that is, the carrier will configure the SIP PROXY SERVER [10] to route large numbers of incoming calls to an available PSTN GATEWAY [8] or SIP APPLICATION SERVER [13]. In the reverse direction, incoming calls from the PSTN GATEWAY [8] to EDGE SWITCHES [1], for example, must be routed through the SIP PROXY SERVER [10] so that it can be directed to the correct EDGE SWITCH [1] in the IP CARRIER NETWORK [6]." ¶ 0242. |
| | "All direct or indirect SIP call sessions that occur between endpoints that lie within the ESN (i.e. entirely within the IP CARRIER NETWORK [6]), end-to-end, are termed 'on-network' calls. An 'off-network' call occurs whenever one end of a call session is an endpoint that lies outside of the IP CARRIER NETWORK [6] (such as the PSTN [7]), regardless of which endpoint originated the call." ¶ 0243. |
| | "Off-network calls to the PSTN [7] utilize a PTSN GATEWAY [8] to complete the call path for both signaling and bearer connections. Because the PSTN GATEWAY [8] is a shared resource, potentially located only in selected network segments and accessed by many network users at the same time, it |

30

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | requires some degree of expanded access control. The carrier may wish to partition the IP CARRIER NETWORK [6] with respect to PSTN GATEWAY [8] access, perhaps for the purposes of load balancing and ensuring redundancy. The PSTN GATEWAY [8] will require assistance in routing calls inbound from the PSTN [7] to specific IP CARRIER NETWORK [6] endpoints. For all these purposes, a SIP PROXY SERVER [12] is most often used as an intermediary; thus as a practical matter, an off-network call is virtually always an indirect call. An example of an off-network call is depicted in FIG. 10 where the EDGE SWITCH [1] labeled A connects to a PSTN [7] endpoint through the PSTN GATEWAY [8], as indicated by [10] and [11]." ¶ 0244. |
|  | "Any call originated or received by a terminal plugged into the EDGE SWITCH [1] will the trigger the execution of particular service logic (i.e. CALL PROCESSING APPLICATIONS [1.23.2]). The execution of which particular service logic depends upon the subscriber's Class of Service capabilities, settings, and preferences; some settings will change the logic to a completely different type of service logic altogether whereas other settings may simply alter some aspect of the service logic. In some cases, the service logic of EDGE SWITCH BASIC FEATURES [1.24], such as 'call-forwarding' for example, may as a matter of course redirect calls to NETWORK-BASED ENHANCED SERVICES [18]. NETWORK-BASED ENHANCED SERVICES [18] may be accessible to the EDGE SWITCH [1] as network signaling endpoints residing in either the PSTN [7], as indicated by [4], or the IP CARRIER NETWORK [6], as indicated by [5]." ¶ 0246. |
|  | "Interactive calling services were originally envisioned that would provide the NGN subscriber with the ability to select or customize call processing logic, perhaps even to enable interoperability between network features and application programs running on the subscriber's personal computer (e.g. active browser sessions, instant messaging clients) or to access subscriber-specific data objects (e.g. contact lists, call logs, content subscriptions). Implementation of these types of interactive calling services using only AIN-style APIs was eventually perceived as largely impractical in the NGN because the MEDIA GATEWAY |

31

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | CONTROLLER (supporting the APIs) would be required to access, manage, and execute unique, complex service logic for very large number of subscribers at the same time. The following points illustrate other significant limitations of the NGN with respect to supporting new services." ¶ 0058. |
| | "The ESN subscriber may interact with the EDGE SWITCH to select features and program them to behave according to subscriber-specific parameters, potentially to interoperate with a variety of third-party applications, application programs running on the subscriber's PC, or to securely access data objects stored in network servers or on the subscriber's PC. As an example, an application could use instant messaging to inform the end user as to the identity of a calling party." ¶ 0136. |
| | "To provide an example of {3} (i.e. adds functionality to EDGE SWITCH BASIC FEATURE [1.24]) the previous example of voice call-answering can be expanded to offer a Class of Service setting that would send an instant message to inform the subscriber that they were receiving a voice message. In this case, a simple instant messaging client in the EDGE SWITCH [1] would perform the messaging operation after the caller was forwarded to the voice call-answering application. The original functionality of basic call-answering remains unchanged." ¶ 0249. |
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | Girard discloses the method of claim 1, wherein the signaling information associated with the first outcall is SIP signaling (e.g., the subscriber may use a SIP client to place outgoing calls, with the EDGE Switch using SIP call signaling). |
| | *See* claim 1 above. |
| | *Furthermore*, see citations and discussion above in connection with claim |

32

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | limitation 6. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | Girard discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network (e.g., the EDGE Switch places SIP calls over the IP Carrier Network). *See* claim 1 above. *Furthermore, see, e.g.,,* "NGN voice services offered through an IAD using VoIP are virtually identical to voice services offered directly through a POTS line connected to a CENTRAL OFFICE SWITCH. Typically, the IAD is used to connect telephones and computers to a broadband data service provided to the premise. Through the gateway facilities of the IAD, voice and data are transported as distinct packet flows over a common IP data path that is contiguous (from an IP connectivity standpoint) with the PACKET TRANSPORT NETWORK. In the NGN, the feature set of the CENTRAL OFFICE SWITCH is emulated by the MEDIA GATEWAY CONTROLLER in concert with a number of other network elements such as a "feature server." Conceptually, in the NGN the IAD functions exactly as any other RESIDENTIAL GATEWAY." ¶ 0074. "The subscriber side of the EDGE SWITCH connects to TELEPHONE STATIONS [3], SET-TOP BOXES [4], and COMPUTER WORKSTATIONS [5] installed at the subscriber premise. It provides telephone services to the TELEPHONE STATIONS [3], video (multimedia) services to the SET-TOP BOXES [4], and data communication services to the COMPUTER WORKSTATIONS [5]. In the case of TELEPHONE STATIONS [3], the EDGE SWITCH converts analog electrical (and potentially digital) telephone device-level signaling and voice transmission conventions to and from IP |

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | packets containing SIP network signaling information and digitally-encoded voice. In the case of SET-TOP BOXES [4], it is assumed that device signaling information and media content are already digitally-encoded in IP packets and that SET-TOP BOXES [4] natively support SIP network signaling. The subscriber side supports admission control features that enable it to deny voice and/or video calling service delivery to TELEPHONE STATIONS [3] or SET-TOP BOXES, or attenuate data service delivery to COMPUTER WORKSTATIONS [5]." ¶ 0268.

"Support for voice-over-IP or video-over-IP call sessions on the subscriber side requires that the EDGE SWITCH perform a prioritized IP routing function to ensure the timely transport of IP packet flows bi-directionally between the TELEPHONE STATIONS [3] (and SET-TOP BOXES [4]) and the IP CARRIER NETWORK [6]. As TELEPHONE STATIONS [3] (and SET-TOP BOXES [4]) answer incoming SIP call sessions or originate outgoing SIP call sessions, the EDGE SWITCH dynamically reserves the requisite network side bandwidth on demand—effectively removing it from the pool of bandwidth available to COMPUTER WORKSTATIONS [5]—and discreetly reassigns it to media transmission. IP packets needed for real-time voice and streaming video transmission are isolated into labeled IP packet flows. The labeled voice and video packet flows are then routed by the IP ROUTING MODULE [1.2] through the BROADBAND ACCESS NETWORK [6.1] at a higher priority than common data packets, thus enabling them to be routed preferentially through other elements of the IP CARRIER NETWORK [6], according to a higher quality of service then necessary to support common data transmission." ¶ 0269.

"IP CARRIER NETWORK [6]

"Large-scale, routed internet protocol (IP) network designed to support the delivery of voice, video, and data communications services to a subscriber base made up of potentially millions of subscribers. The IP CARRIER NETWORK is a private network offering controlled access to a public subscriber base. It is owned and operated by a telecommunications carrier (A.K.A. "facilities-based |

34

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | network service provider"). It consists of a backbone network that is used to interconnect a number of access networks, and all transmission paths through both the backbone network and the access network are engineered to ensure that both signaling and bearer channel connections can be maintained with a Quality of Service (QoS)." ¶ 0449. |
| | "QoS generally refers to the ability of the network to honor certain quality guarantees (i.e. minimum bit transfer rates, maximum allowable latency, maximum allowable jitter, maximum rate of packet loss, etc.) as necessary to support real-time, full-duplex voice and video calls in addition to providing "best effort" data communications at specified minimum bitrates." ¶ 0450. |
| | "An IP CARRIER NETWORK is fully managed such that its performance (QoS transmission and service delivery) is monitored at all times. In addition, such a network supports the capability to be securely partitioned so as to logically or physically segregate subscriber data, and subscriber data types, from each other into Virtual Private (data) Networks. The IP CARRIER NETWORK in most cases is implemented as a hybrid network in that IP connectivity in the network layer (OSI Layer 3) may be transported over an ATM packet-switched infrastructure in the data link layer (OSI Layer 2)." ¶ 0451. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | Girard discloses the method of claim 1, wherein the first outcall is placed over a wireless network (e.g., the subscriber may originate on-network and off-network calls).

*See* claim 1 above.

Furthermore, see citations and discussion above in connection with claim limitation 1.5.

To the extent that Plaintiff contends this prior art reference does not specifically |

35

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | Girard discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network (e.g., outgoing calls may be directed to the PSTN network). |
| | *See* claim 1 above. |
| | *Furthermore, see, e.g.,* |
| | "In general, in one aspect, the invention features a network device including a plurality of communication interfaces, among which there is a telephone line interface, a computer data interface, and a broadband network interface. The network device also includes a processor; a machine-readable storage medium which during use stores a call processing application and service profiles, and which stores executable instructions to mediate communications between the plurality of communication interfaces, the instructions causing the network device to detect network signaling events or trigger points in a telephone call and invoke the call processing application in response to the detected network signaling events or trigger points, the call processing application operating according to parameters defined in the service profiles." ¶ 0140. |
| | "Preferred embodiments include one or more of the following features. The plurality of communication interfaces further includes a video streaming device interface. The broadband network interface terminates a broadband network link that joins a customer premises to a packet carrier network. The instructions further cause the network device to route IP data between the computer data interface and the broadband network interface. The network device is contained |

36

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | in a single physical enclosure. The instructions further cause the network device to provide a first SIP proxy agent to represent a telephone that uses the telephone line interface, and provide a second SIP proxy agent to represent a computer that uses the computer data interface. The storage medium stores call routing tables, and the instructions further cause the network device to perform call routing for telephone calls that use the telephone line interface. The storage medium also stores call routing tables, and the instructions cause the network device to perform call routing for telephone calls according to the call routing tables, the telephone calls using the telephone line interface." ¶ 0141. |
| | "In general, in another aspect, the invention features a network device including a plurality of communication interfaces among which there is a telephone line interface, a computer data interface, and a broadband network interface. The network device also includes a processor; a machine-readable storage medium which during use stores call routing tables, and which stores executable instructions to mediate communications between the plurality of interfaces, the instructions causing the network device to perform call routing according to the call routing tables, the telephone calls using the telephone line interface." ¶ 0142. |
| | "Preferred embodiments include one or more of the following features. The call routing includes peer-to-peer call signaling between customer premises over a shared IP network. The call signaling is performed without requiring stateful elements of the shared IP network above the IP infrastructure. The broadband network interface terminates a link that joins the network device to the shared IP network. The call routing includes call signaling to a PSTN endpoint via a PSTN gateway that is reachable over the broadband network interface. The instructions further cause the network device to route IP data between the computer data interface and the broadband network interface. And the plurality of communication interfaces further includes a video streaming device interface." ¶ 0143. |
| | "Any call originated or received by a terminal plugged into the EDGE SWITCH |

37

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | [1] will the trigger the execution of particular service logic (i.e. CALL PROCESSING APPLICATIONS [1.23.2]). The execution of which particular service logic depends upon the subscriber's Class of Service capabilities, settings, and preferences; some settings will change the logic to a completely different type of service logic altogether whereas other settings may simply alter some aspect of the service logic. In some cases, the service logic of EDGE SWITCH BASIC FEATURES [1.24], such as 'call-forwarding' for example, may as a matter of course redirect calls to NETWORK-BASED ENHANCED SERVICES [18]. NETWORK-BASED ENHANCED SERVICES [18] may be accessible to the EDGE SWITCH [1] as network signaling endpoints residing in either the PSTN [7], as indicated by [4], or the IP CARRIER NETWORK [6], as indicated by [5]." ¶0246.  See Fig. 3 and associated text. |
| | |
| [11.1] The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| [11.2] receiving at the call processing system a third call from a calling party directed to the first phone address; | Girard discloses receiving at the call processing system (e.g., the ESN system) a third call from a calling party directed to the first phone address (e.g., an incoming call from a calling party to the subscriber's phone number).  *See* claim 1 above.  *Furthermore, see, e.g.,*  "FIG. 3 depicts an ESN architecture principally comprised of 'connectivity elements.' A connectivity element is a particular type of network element that is capable of participating in call sessions using SIP network signaling and RTP bearer transmission. Communities of connectivity elements communicate in a peer-to-peer fashion without necessarily requiring assistance from the network beyond IP connectivity. The three connectivity element types defined for the |

38

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | ESN are as follows: |
| | "EDGE SWITCH |
| | "APPLICATION SERVER |
| | "PSTN GATEWAY |
| | "All three connectivity elements share a similar network interface design that combines support for SIP network signaling, RTP bearer transport, media encoding/decoding, and event-driven call processing into a single intelligent endpoint device. From a conceptual standpoint, each connectivity element collapses functionality from each major NGN network element into a self-contained whole capable of 'intelligent participation' in call sessions. Intelligent participation refers to the ability of a connectivity element to operate both as SIP network signaling endpoint and as a call control agent capable complex call control operations. Complex call control operations might involve supervising call sessions that contain multiple call legs extending to other connectivity elements. Connectivity elements may leverage network-based SIP proxy servers to support these and other complex operations." ¶¶ 0078 – 0082. |
| | See Fig. 3 and associated text. |
| | "Ultimately, all subscriber terminals plugged into the EDGE SWITCH communicate with the PACKET TRANSPORT NETWORK through QoS routing capabilities built into the EDGE SWITCH. EDGE SWITCH routing capabilities enable QoS arbitration at the exact point where subscriber terminals interface the broadband access network. Video streaming services deployed within the network are made accessible to SIP media streaming devices connected to the EDGE SWITCH (such as SIP-enabled set-top boxes). Data transmission capacity not used for voice telephone communications or media streaming is made accessible to data terminals for data communications. The EDGE SWITCH operates as a MEDIA GATEWAY to the extent that it is able to present POTS or other types of non-SIP telephones (connected through its LINE interface) to the network as SIP network signaling endpoints. The EDGE |

39

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | SWITCH provides necessary terminal adaptation as necessary for the conversion of device signaling and bearer channel content at the LINE interface to/from SIP network signaling and RTP voice transmission conventions required by the ESN." ¶ 0085. |
|  | "The EDGE SWITCH executes locally stored call processing applications in response to detecting network trigger events. In this way, voice telephone features and related calling services are provided by the EDGE SWITCH to the subscriber through legacy POTS and/or IP telephones, without the participation of centralized network control elements." ¶ 0086. |
|  | "Upon detecting a SIP call session initiation, the APPLICATION SERVER examines SIP signaling information and compares it with what it knows internally about the calling party so that it may automatically determine the feature, function, or service that it should render to the calling party. For example, if the calling party is a SIP network signaling endpoint (SIP User Agent) used by an EDGE SWITCH to represent a POTS telephone at the subscriber premise, the APPLICATION SERVER will receive the dialing number of the calling party (i.e. the dialing number assigned to the POTS telephone originating the call). It may then use this dialing number to access an internal database for the purpose of retrieving the Class of Service parameters associated with this dialing number. Class of Service parameters will inform the APPLICATION SERVER as to whether or not it should render its service to the calling party." ¶ 0102. |
|  | "Aside from the number of simultaneous SIP call sessions it can potentially support—a function of its hardware form-factor—there is a fundamental difference between the APPLICATION SERVER and the EDGE SWITCH: whereas the APPLICATION SERVER renders network services and features to a calling party, the EDGE SWITCH renders network services and features to terminal devices plugged into it at the subscriber premise." ¶ 0103. |
|  | "In rendering network services and features to a calling party, the APPLICATION SERVER exploits the capabilities of various system resources. |

40

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | Call processing applications executing on the APPLICATION SERVER may perform database queries, media store-and-forward operations, support group conferencing, convert text to speech, recognize voice commands, or any one of a number of operations that might be beyond the scope of what an EDGE SWITCH could perform without assistance from the network. By simply connecting to an APPLICATION SERVER, an EDGE SWITCH or PSTN GATEWAY may request and receive the intelligent participation of the APPLICATION SERVER when they require such assistance." ¶ 0104. |
| | "EDGE SWITCH call control operations can be used to transparently access network-based features provided by APPLICATION SERVERS. As a result, combinations of call control features internal to the EDGE SWITCH and network-based features that are external to the EDGE SWITCH can be dynamically configured and presented together to end users as a unified service or capability—that is, presented in such a way that the source of the feature (internal to the EDGE SWITCH or network-based) is entirely transparent to the end users. Thus, beyond its ability to support programmable internal feature sets via software upgrades and configurable call processing applications, the EDGE SWITCH feature set may be further extended through transparent integration with network-based features. As an example, an EDGE SWITCH feature may be created to override basic dial-tone service: when an EDGE SWITCH detects that a telephone plugged into it went off-hook, the override feature would forgo the basic dial-tone service and instead transparently connect to a network-based voice-activated dialing application." ¶ 0139. |
| | "A direct call occurs when a TELEPHONE STATION [3] or SET-TOP BOX [4] calls another TELEPHONE STATION [3] or SET-TOP BOX [4] that is not plugged into the same EDGE SWITCH [1] and without using an intermediate, centrally-located SIP PROXY SERVER [10] in the IP CARRIER NETWORK [6]. As depicted in FIG. 10 for the EDGE SWITCH [1] labeled A (originating the call in this case), SIP call signaling occurs directly to the EDGE SWITCH [1] labeled B (as indicated by {3}). In this case, the SIP Proxy Server capability of the SIP PROTOCOL STACK [1.16], as depicted in FIG. 11, is able to |

41

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | perform a DNS SERVER [2] look-up to convert the far-end dialing number to an IP endpoint address as indicated by [2]. Thus, the SIP PROTOCOL STACK [1.16] within the EDGE SWITCH [1] is fully capable of performing all operations necessary to establish a SIP call session based on E.164 dialing number addressing without assistance from a centrally-located SIP PROXY SERVER [10]. Class of Service information that would determine whether or not a subscriber should be allowed to place the call in the first place is all stored internally by the EDGE SWITCH [1] and updated as required by the SYSTEM MANGEMENT PLATFORM [2]. As a result, there is no need for the SIP PROTOCOL STACK [1] to query the POLICY SERVER [10] for additional information necessary to set-up the call. RTP bearer transmission occurs point-to-point through the IP CARRIER NETWORK [6] in the usual way for SIP call sessions." ¶ 0239. |
| | "All direct or indirect SIP call sessions that occur between endpoints that lie within the ESN (i.e. entirely within the IP CARRIER NETWORK [6]), end-to-end, are termed 'on-network' calls. An 'off-network' call occurs whenever one end of a call session is an endpoint that lies outside of the IP CARRIER NETWORK [6] (such as the PSTN [7]), regardless of which endpoint originated the call." ¶ 0243. |
| | "Off-network calls to the PSTN [7] utilize a PTSN GATEWAY [8] to complete the call path for both signaling and bearer connections. Because the PSTN GATEWAY [8] is a shared resource, potentially located only in selected network segments and accessed by many network users at the same time, it requires some degree of expanded access control. The carrier may wish to partition the IP CARRIER NETWORK [6] with respect to PSTN GATEWAY [8] access, perhaps for the purposes of load balancing and ensuring redundancy. The PSTN GATEWAY [8] will require assistance in routing calls inbound from the PSTN [7] to specific IP CARRIER NETWORK [6] endpoints. For all these purposes, a SIP PROXY SERVER [12] is most often used as an intermediary; thus as a practical matter, an off-network call is virtually always an indirect call. An example of an off-network call is depicted in FIG. 10 where the EDGE |

42

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | SWITCH [1] labeled A connects to a PSTN [7] endpoint through the PSTN GATEWAY [8], as indicated by {10} and {11}." ¶0244. |
| | "Any call originated or received by a terminal plugged into the EDGE SWITCH [1] will the trigger the execution of particular service logic (i.e. CALL PROCESSING APPLICATIONS [1.23.2]). The execution of which particular service logic depends upon the subscriber's Class of Service capabilities, settings, and preferences; some settings will change the logic to a completely different type of service logic altogether whereas other settings may simply alter some aspect of the service logic. In some cases, the service logic of EDGE SWITCH BASIC FEATURES [1.24], such as 'call-forwarding' for example, may as a matter of course redirect calls to NETWORK-BASED ENHANCED SERVICES [18]. NETWORK-BASED ENHANCED SERVICES [18] may be accessible to the EDGE SWITCH [1] as network signaling endpoints residing in either the PSTN [7], as indicated by {4}, or the IP CARRIER NETWORK [6], as indicated by {5}." ¶0246. |
| | "CALL PROCESSING APPLICATIONS [1.23.2] define how the EDGE SWITCH [1] responds to certain events—they define the EDGE SWITCH [1] workflow in response to network signaling events and device-level telephone events—and consequently they in effect define the network services that are provided to the subscriber through TELEPHONE STATIONS [3] and SET-TOP BOXES [4]." ¶0315. |
| | "For TELEPHONE STATIONS [3] to participate in call sessions using SIP network signaling, the ABSTRACT CALL MODEL [1.20] performs a Telephone Gateway Function in which it actively converts vendor-specific, device-level telephone signaling (through its interface to the ABSTRACT TELEPHONE CONTROLLER [1.19]) into SIP network signaling operations. As depicted in FIG. 7, the ABSTRACT CALL MODEL maintains an instance of a SIP User Agent for each TELEPHONE STATION [3] plugged into the EDGE SWITCH [1]. This SIP User Agent is registered with the SIP PROTOCOL STACK [1.16], using it as its default SIP Proxy Server. The SIP PROTOCOL |

43

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | STACK [1.16] knows which registered SIP User Agent instance corresponds to which dialing number, thus it can direct SIP network signaling to it based on dialing number addressing." ¶0323.

"Certain 'TELEPHONE EVENTS' received from the ABSTRACT TELEPHONE CONTROLLER [1.19], and/or SIP network signaling events from the SIP PROTOCOL STACK [1.16], trigger the ABSTRACT CALL MODEL to invoke a CALL PROCESSING APPLICATION [1.23.2] to apply service logic to the call session. This service logic will respond to the received event with some programmed action." ¶0324.

"Ultimately, Calling Services take effect by active participation of CALL PROCESSING APPLICATION [1.23.2] in SIP call sessions; they perform telephone control operations, call control operations and make use of signaling information directly, such as the dialing numbers of the calling and called party." ¶0334. |
| [11.3] reading at least one subscriber specified rule from computer readable memory; and | Girard discloses reading at least one subscriber specified rule from computer readable memory (e.g., the subscriber's call-diverting and/or call-forwarding rules are stored in memory).

*See* claim 1 above.

*Furthermore, see e.g.,*

See citations and discussion above in connection with claim 3. |
| [11.4] based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | Girard discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule (e.g., the incoming call to the subscriber may be automatically forwarded to another destination, such as an auto attendant, voice mail, automatic call distribution, group conferencing bridge, or a personal call screening service). |

44

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | *See* claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 11.3. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | Girard discloses the method of claim 1, further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication (e.g., the IP routing table enables calls from and to the subscriber to filter through the firewall).<br><br>*See* claim 1 above.<br><br>*Furthermore, see, e.g.,*<br><br>"Communications between COMPUTER WORKSTATIONS [5] are based on IP-based data communication protocols. The EDGE SWITCH [1] takes an active role in non-SIP data communications initiated by COMPUTER WORKSTATIONS [5] plugged into the COMPUTER DATA INTERFACE [1.4]. Data communications through the EDGE SWITCH [1] are filtered through a programmable firewall feature set internal to the EDGE SWITCH [1] and Network Address Translation (NAT) services may also be applied. In addition, the EDGE SWITCH [1] performs QoS arbitration between all terminals competing for broadband access network transmission capacity, and as a result may attenuate the flow of IP packets available for data communications as transmission capacity is dynamically reserved for voice and video transmission." ¶ 0176.<br><br>"QoS IP Routing Functions<br><br>"The NETWORK ADAPATION LAYER [1.13] represents programmable logic, |

45

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | firmware, or software subcomponents required to enable the BROADBAND NETWORK INTERFACE [1.1] to present IP connectivity to the IP ROUTING MODULE [1.2] in OSI Layer 3. The NETWORK ADAPATION LAYER [1.13] is designed to be maintained as a discreet subsystem apart from the IP ROUTING SYSTEM [1.14] so that it may be changed to support different OSI Layer 2 technologies without requiring commensurate changes to the IP ROUTING SYTEM [1.14]." ¶ 0182.

"The IP ROUTING SYSTEM [1.14] is the control software required to enable the IP ROUTING MODULE [1.2] to operate. This software incorporates the IP protocol stack and is responsible for supporting all IP routing functions for the EDGE SWITCH [1], including QoS arbitration necessary to support sharing transmission capacity between real-time voice/video communications and common data transmission. Certain software or firmware subcomponents of the IP ROUTING SYTEM [1.14] may be responsible for packet labeling (or re-labeling), traffic shaping, flow control, and other QoS arbitration functions related to managing IP packet exchange between the IP ROUTING MODULE [1.2] and the routed terminal interfaces (i.e. COMPUTER DATA INTERFACE [1.4] and VIDEO STREAMING DEVICE INTERFACE [1.5])." ¶ 0183.

"Certain software or firmware subcomponents in of the IP ROUTING SYSTEM [1.14] system may run on the IP ROUTING MODULE [1.2] (i.e. downloaded firmware or programmable logic) while others may run on the CENTRAL PROCESSING UNIT [1.10], communicating with the IP ROUTING MODULE [1.2] in a device control capacity." ¶ 0184.

"The IP ROUTING SYSTEM [1.14] incorporates a software abstraction of the IP ROUTING MODULE [1.2], supporting internal APIs necessary to enable IP communications by the RTP PROTOCOL STACK [1.15], the SIP PROTOCOL STACK [1.16], the HTTP PROTOCOL STACK [1.17], and the SNMP PROTOCOL STACK [1.18]. Routing services such as Network Address Translation and programmable firewall features are also supported through this abstraction." ¶ 0185. |

46

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | "Software subsystem of the EDGE SWITCH [1] consisting of software components and related applications necessary to control the IP ROUTING MODULE [1.2]; this software subsystem incorporates an IP protocol stack and implements IP routing services necessary to support voice, video, and data communications through the IP CARRIER NETWORK [6]. Software modules within the IP ROUTING SYSTEM support a programmable firewall, Network Address Translation (NAT), Dynamic Host Configuration Protocol (DHCP), and Virtual Private (data) Networking (VPN)." ¶ 0295. |
| | "The term EDGE SWITCH BASIC FEATURES refers to a specific collection of end-user features and functions that: (a) have become well-established in common use; (b) are likely to be highly-utilized on a day-to-day basis by the target subscriber group; and (c) are unlikely to change over time. The vast majority of voice, video, and data communications functions fall into this category, with features that include Customer Local Access Signaling Services (A.K.A. "CLASS features"), Centrex features, office telephone features, basic video channel selection, data firewall features, and Virtual Private (data) Networking, to name a few. EDGE SWITCH BASIC FEATURES are sorted into three broad categories according to the terminal type used to present them to the subscriber." ¶ 0359. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | Girard discloses the method of claim 1, further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall (e.g., the IP routing table enables calls from and to the subscriber to filter through the firewall).

*See* claim 1 above. |

47

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | Furthermore, see citations and discussion above in connection with claim 12. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | Girard discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address (e.g., the system may be used with residential or business telephone services).

*See* claim 1 above.

Furthermore, see citations and discussion above in connection with claim limitation 1.3.

*See also,*

"As an example of this approach, companies such as Cisco, Broadsoft, LongBoard, and Sylantro have built application systems that provide optimized combinations of business telephone services that include PBX and Centrex features. While some of these solutions are designed for enterprise deployment, those intended for carrier deployment are often referred to using the moniker 'IP Centrex.' IP Centrex solutions provide calling services and telephone features using various brands of office telephones and web browser-based graphical user interfaces. Generically, IP Centrex solutions equate to a network-based software PBX application that replaces much of the functionality of the MEDIATE GATEWAY CONTROLLER." ¶ 0063.

"IP Centrex solutions are often referred to in the industry as 'point solutions.' Point solutions enable the carrier to provide a very particular set of new services for isolated populations of subscribers. They are a work-around bourne out of necessity and introduce additional 'non-standard' intermediary network elements into the NGN. Adding new network elements of this type brings with it significant scaling implications associated with carrier deployment of a service |

48

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | that cannot scale as the network itself scales. Point solutions are operationally unfeasible for carriers serving tens of millions of subscribers because the feature set of the point solution cannot be managed as a standard network feature set that may be enabled or disabled for any subscriber at will. If such a service became popular, the carrier would have to replicate many instances of the system—potentially thousands of them—each to serve a certain critical mass of subscribers, and then to manage these systems as independent islands of service delivery capability." ¶ 0064.  To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | Girard discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber (e.g., the system uses the SIP protocol, with the SIP protocol necessarily requiring the use of a SIP address).  *See* claim 1 above.  Furthermore, see citations and discussion above in connection with claim 6. |
| [17.1] A method of processing calls, the method comprising: | *See* claim 1 above. |
| [17.2] receiving at a call processing system a first | Girard discloses receiving at a call processing system (e.g., the ESN system) a |

49

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | first call request from a client telecommunications application hosted on a user computer (e.g., the subscriber may originate a call from a PC-based SIP client), wherein the first call request identifies a first party to be called (e.g., the outgoing call contains the called party dialing number).<br><br>*See, e.g.,*<br><br>See citations and discussion above in connection with claim limitation 1.5. |
| [17.3] at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Girard discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user (e.g., the subscriber may originate on-network and off-network calls).<br><br>See citations and discussion above in connection with claim limitation 1.5.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [17.4] placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Girard discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user (e.g., the subscriber may originate on-network and off-network calls).<br><br>See citations and discussion above in connection with claim limitation 1.8. |

50

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [17.5] causing the first outcall and the second outcall to be connected. | Girard discloses causing the first outcall and the second outcall to be connected (e.g., the outgoing call is connected to the called party).<br><br>See citations and discussion above in connection with claim limitation 1.6. |
| | |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Girard discloses the method of claim 17, wherein the user telephone is a landline phone (e.g., the calling party may use a POTS telephone).<br><br>*See* claim 17 above.<br><br>*Furthermore, see, e.g.,*<br><br>"Ultimately, all subscriber terminals plugged into the EDGE SWITCH communicate with the PACKET TRANSPORT NETWORK through QoS routing capabilities built into the EDGE SWITCH. EDGE SWITCH routing capabilities enable QoS arbitration at the exact point where subscriber terminals interface the broadband access network. Video streaming services deployed within the network are made accessible to SIP media streaming devices connected to the EDGE SWITCH (such as SIP-enabled set-top boxes). Data transmission capacity not used for voice telephone communications or media streaming is made accessible to data terminals for data communications. The EDGE SWITCH operates as a MEDIA GATEWAY to the extent that it is able to present POTS or other types of non-SIP telephones (connected through its LINE interface) to the network as SIP network signaling endpoints. The EDGE SWITCH provides necessary terminal adaptation as necessary for the conversion of device signaling and bearer channel content at the LINE interface to/from SIP |

51

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | network signaling and RTP voice transmission conventions required by the ESN." ¶ 0085.

"The EDGE SWITCH executes locally stored call processing applications in response to detecting network trigger events. In this way, voice telephone features and related calling services are provided by the EDGE SWITCH to the subscriber through legacy POTS and/or IP telephones, without the participation of centralized network control elements." ¶ 0086.

"Upon detecting a SIP call session initiation, the APPLICATION SERVER examines SIP signaling information and compares it with what it knows internally about the calling party so that it may automatically determine the feature, function, or service that it should render to the calling party. For example, if the calling party is a SIP network signaling endpoint (SIP User Agent) used by an EDGE SWITCH to represent a POTS telephone at the subscriber premise, the APPLICATION SERVER will receive the dialing number of the calling party (i.e. the dialing number assigned to the POTS telephone originating the call). It may then use this dialing number to access an internal database for the purpose of retrieving the Class of Service parameters associated with this dialing number. Class of Service parameters will inform the APPLICATION SERVER as to whether or not it should render its service to the calling party." ¶ 0102.

"The TELEPHONE LINE INTERFACE [1.9] converts device-level telephone signals (e.g. POTS telephone signals) to/from digitally encoded audio streams and digitally encoded device states (e.g. off-hook, on-hook, DTMF digits). The MEDIA STREAM CONTROLLER [1.7] interfaces the TELEPHONE LINE INTERFACE [1.9] and is responsible for routing these media streams to/from the PACKETIZATION COPROCESSOR [1.6], performing media format transcoding (as required) by applying digital signal processing algorithms to them. Digital signal processing algorithms run on the DIGITAL SIGNAL PROCESSOR [1.8]. The PACKETIZATION COPROCESSOR [1.6] takes responsibility for media stream transmission through the IP ROUTING |

52

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | MODULE [1.2] using RTP." ¶ 0179.

"Edge Switch Physical Form Factor

"The EDGE SWITCH [1] supports four individual POTS lines and four SET-TOP BOXES [4] using an ETHERNET SWITCH [20] plugged into the VIDEO STREAMING DEVICE INTERFACE [1.5]. 10Base-T ethernet technology is used for the cable connections. An ETHERNET HUB [9] plugged into the COMPUTER DATA INTERFACE [1.4] also uses 10Base-T ethernet technology. The ETHERNET HUB [9] enables four COMPUTER WORKSTATIONS [5] to share a single data service.

"The EDGE SWITCH [1] is deployed on the network-side of the SUBSCRIBER NETWORK INTERFACE [21] at the Telco Entrance Facility where the inside wiring is accessible through a POTS channel bank mounted on the outside of the subscriber premise. It is powered by current from the copper wire plant supporting the VDSL broadband network service." ¶¶ 0253-0254.

"EDGE SWITCH [1] electronics and connectors are contained within an environmentally protected plastic housing that incorporates a hinged cover panel used to provide service access. The physical dimensions of the plastic housing mirror the form factor of the Telco Entrance Facility ($10''$ height $\times 9''$ width $\times 3''$ depth). Using the existing Telco Entrance Facility (originally used for POTS service), the EDGE SWITCH [1] gains the electrical and environment protection provided for the existing entrance device; additional protection capabilities within the housing are incorporated in the design to further protect the electronic components." ¶ 0255.

"Bandwidth Utilization

"Each of the four POTS interfaces support three-way calling features accessible to the TELEPHONE STATIONS [3]. Internally, they support four-way calling so as to enable an additional call leg in a three-way call as would occur if the call was to be intercepted for law enforcement assistance. Voice communications nominally utilize the G.729a codec (vocoder type), which consumes 8 |

53

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | kilobytes/second per voice bearer channel (media stream) connection. With four simultaneous POTS sessions, each involved in three-way intercepted call, the total bandwidth consumed for voice transmission is approximately 100 kilobits/second (not including signaling and packetization overhead). In the event that the EDGE SWITCH [1] detects modem tones on a line, such as from a fax machine, it will automatically change the codec from G.729 a to G.711 so as to enable modem-based data communications over the voice bearer channel." ¶ 0256.

"If used to connect POTS telephones, the TELEPHONE LINE INTERFACE supports many of the BORSCHT functions, including: (B) Battery feed to power the subscriber's telephone, (R) Ringing signal to the subscribers telephone, (S) Supervision to detect caller off-hook, calls in progress, calls terminated, (C) Coding of analog voice signals into PCM digital format, (H) Hybrid transformer for conversion from two-wire to four-wire, and filtering to provide impedance match to remove or minimize echoes, and (T) Testing of the local loop and circuits of the switching equipment to detect faults and provide maintenance. Each POTS service interface provided by the TELEPHONE LINE INTERFACE [1.9] is a basic two-wire 'Tip and Ring' interface that is translated into the four-wire (balanced pair) at the point where it interfaces the MEDIA STREAM CONTROLLER [1.7]." ¶ 0290.

"As an example of terminal adaptation, a speed-dial feature key on a POTS telephone may be programmed to generate a DTMF tone sequence such as '#45' when pressed. A CONFIGURATION PROFILE [1.23.5] on the EDGE SWITCH [1] contains a telephone function key profile specifying that any time the DTMF digit sequence '#45' is detected from that particular POTS telephone, a virtual function key code called 'TRANSER' is generated and passed as a virtual function key event to the CALL PROCESSING APPLICATION [1.23.2] currently executing. Upon receiving the 'TRANSFER' virtual function key event, the CALL PROCESSING APPLICATION [1.23.2] will interpret the next series of DTMF digits as the dialing number to which the current call session should be transferred. From the user's perspective, the programmed speed-dial |

54

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | key functions as a dedicated 'TRANSFER' key." ¶ 0327. |
| | "A POTS telephone with programmable speed-dial keys or a PBX telephone with dedicated functions keys can both be used as TELEPHONE STATIONS [3]. In the case of supporting a POTS telephone, the TELEPHONE LINE INTERFACE [1.9] must embody 'SLIC' (Subscriber Line Interface Circuit) functionality whereas in the case of supporting a digital PBX telephone, the TELEPHONE LINE INTERFACE [1.9] must support a particular, vendor-specific line-level interface for that device." ¶ 0440. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | Girard discloses the method of claim 17, wherein the user telephone is a mobile phone (e.g., the subscriber may originate on-network and off-network calls). *See* claim 17 above. Furthermore, see citations and discussion above in connection with claim limitation 17.3. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | Girard discloses the method of claim 17, wherein the user telephone is an Internet protocol phone (e.g., the caller may use an IP enabled telephone and/or SIP-enabled telephone). |

55

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | *See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 18. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | Girard discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall (e.g., the IP routing table enables calls from and to the subscriber to filter through the firewall). |
| | *See* claim 17 above.<br><br>Furthermore, see citations and discussion above in connection with claim 12. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | Girard discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry (e.g. the subscriber may "contact dial" a number).<br><br>*See* claim 17 above.<br><br>*Furthermore, see e.g.*,<br><br>"Interactive calling services were originally envisioned that would provide the NGN subscriber with the ability to select or customize call processing logic, perhaps even to enable interoperability between network features and application programs running on the subscriber's personal computer (e.g. active browser sessions, instant messaging clients) or to access subscriber-specific data objects (e.g. contact lists, call logs, content subscriptions). Implementation of these types of interactive calling services using only AIN-style APIs was eventually |

56

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | perceived as largely impractical in the NGN because the MEDIA GATEWAY CONTROLLER (supporting the APIs) would be required to access, manage, and execute unique, complex service logic for very large number of subscribers at the same time. The following points illustrate other significant limitations of the NGN with respect to supporting new services." ¶ 0058. |
|  | "In some cases, the desired EDGE SWITCH OVERRIDE FEATURE [1.25] is too complex for the EDGE SWITCH [1] to implement internally. As indicated by {6}, the EDGE SWITCH BASIC FEATURE [1.24] is replaced with a NETWORK-BASED OVERRIDE FEATURE [19]. An example of {6} would be a 'contact dialing' feature in which the standard dial-tone provided as an EDGE SWITCH BASIC FEATURES [1.24] is completely replaced with replaced with a NETWORK-BASED OVERRIDE FEATURE [19] that supports multiple dialing modalities depending on subscriber whim. The new dial-tone feature would interoperate with the subscribers contact list, enabling them to 'click to dial' from the COMPUTER WORKSTATION [5] desktop, or simply speak the name of the contact they wish to dial, or allow them to dial the telephone in the usual manner." ¶ 0251. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | Girard discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed (e.g. the subscriber may "contact dial" a number). <br><br> *See* claim 17 above. <br><br> *Furthermore*, see citations and discussion above in connection with claims 2 and 24. <br><br> To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

57

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.1] A method of processing calls, comprising: | *See* claim 1 above. |
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Girard discloses receiving at a call processing system (e.g., the ESN) a message from an Internet protocol proxy regarding a first call from a caller (e.g., receives call signaling from the SIP Proxy Server regarding routing for inbound calls from the PSTN to an endpoint within the ESN, such as the subscriber's telephone). |
| | See citations and discussion above in connection with claim limitation 11.2. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Girard discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system (e.g, determining if the inbound call is directed to a subscriber of the ESN), wherein at least partly in response to determining that the telephone address is that of a subscriber (e.g., e.g., the inbound call's destination is to the subscriber). |
| | See citations and discussion above in connection with claim limitation 11.2. |
| [40.4] accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Girard discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction (e.g., the EDGE Switch accesses the subscriber's service profile store subscriber-specific information used by call processing applications, such as the call-forwarding |

58

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | service). |
| | *See, e.g.,*: |
| | "Any call originated or received by a terminal plugged into the EDGE SWITCH [1] will the trigger the execution of particular service logic (i.e. CALL PROCESSING APPLICATIONS [1.23.2]). The execution of which particular service logic depends upon the subscriber's Class of Service capabilities, settings, and preferences; some settings will change the logic to a completely different type of service logic altogether whereas other settings may simply alter some aspect of the service logic. In some cases, the service logic of EDGE SWITCH BASIC FEATURES [1.24], such as 'call-forwarding' for example, may as a matter of course redirect calls to NETWORK-BASED ENHANCED SERVICES [18]. NETWORK-BASED ENHANCED SERVICES [18] may be accessible to the EDGE SWITCH [1] as network signaling endpoints residing in either the PSTN [7], as indicated by [4], or the IP CARRIER NETWORK [6], as indicated by [5]." ¶ 0246. |
| | "The EDGE SWITCH [1] supports basic dial-tone, enabling the subscriber to originate (or receive) both on-network calls and off-network calls. Call-blocking features (A.K.A. 'call-diverting features') enable the EDGE SWITCH [1] to block the origination of a call (outbound voice call) by a particular TELEPHONE STATION [3] based on the called party dialing number, or to block answering of a call (inbound voice calls) by a particular TELEPHONE STATION [3] based on the calling party dialing number. The EDGE SWITCH [1] supports configurable call blocking of this type, wherein the subscriber may selectively block inbound and/or outbound calls by specifying area codes, exchanges, and line numbers (or various combinations of the three)." ¶ 0378. |
| | "The ABSTRACT CALL MODEL will recognize certain signaling events (such as an incoming call from the network side) that will trigger it to respond by executing a CALL PROCESSING APPLICATION [1.23.2] that is currently loaded in memory. Or alternately, certain events might trigger the ABSTRACT CALL MODEL to retrieve a new CALL PROCESSING APPLICATION |

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | [1.23.2] and execute it anew. Certain CALL PROCESSING APPLICATIONS [1.23.2] will actively query SUBSCRIBER SERVICE PROFILES [1.23.4] to determine the Class of Service for the TELEPHONE STATION [3] involved in the call." ¶ 0333. |
| | "Collection of software program files (applications) stored on the FILE SYSTEM [1.23] that are used by the EDGE SWITCH [1] to support network service delivery to users. CALL PROCESSING APPLICATIONS are invoked by the ABSTRACT CALL MODEL [1.20]. They define the service logic for all network services delivered to subscribers through TELEPHONE STATIONS [3] and SET-TOP BOXES [4]. They may function as call control agents that determine the progression of the call session, and/or they may function as device control agents that perform various telephone gateway and feature delivery functions." ¶ 0346. |
| | "They can reference other CALL PROCESSING APPLICATIONS [1.23.2], enabling the implementation of call control services (calling services) that impose no upper limit on the complexity of service logic that may be supported. The CALL PROCESSING APPLICATIONS are responsible for generating call-related event histories and storing them in the EVENT RECORD REPOSITORY [1.23.1] as the call session proceeds. In creating connections, the CALL PROCESSING APPLICATIONS rely upon call routing information stored in the LOCAL CALL ROUTING TABLES [1.23.3]. In rendering calling services, the CALL PROCESSING APPLICATIONS rely upon subscriber capabilities and personal preferences stored along with Class of Service information in the SUBSCRIBER SERVICE PROFILES [1.23.4]" ¶ 0347. |
| | "SUBSCRIBER SERVICE PROFILES [1.23.4] |
| | "Database stored on FILE SYSTEM [1.23] that contains subscriber-specific information used by the EDGE SWITCH [1] for all network service delivery to the subscriber. In the DES administrative model, each subscriber is associated with one more EDGE SWITCHES [1] that are installed at the subscriber premise for the purpose of network service delivery. A residence or single-location |

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | business entity may be viewed as a single subscriber, or in the case of a business with multiple locations (i.e. branch offices), a collection of subscribers." ¶ 0352. |
| | "Each subscriber enables a set of Class of Service 'capabilities' (i.e. the subscriber purchases 'capabilities' in the form of network services) that describes the collection of features, functions, and services that they would like to be able to access. These capabilities will determine which network services their particular EDGE SWITCH [1] will be capable of delivering." ¶ 0353. |
| | "The subscriber may then activate or deactivate selected Class of Service capabilities at their discretion. The collection of Class of Service capabilities that the subscriber has activated or deactivated is called their Class of Service 'settings.' A subscriber cannot activate any capability not previously enabled. The EDGE SWITCH [1] will not render any enabled capability that is not shown in the settings to be activated." ¶ 0354. |
| | "Once activated, a setting may require additional information from the subscriber in order for the corresponding feature, function, or service to operate correctly. For those settings, the subscriber configures 'preferences' that further describe details as to exactly how the Class of Service settings should be interpreted. Preferences usually take the form of parameters that must be selected or typed in by the subscriber through a configuration application (e.g. telephone numbers, screen names, service options)." ¶ 0355. |
| | "EDGE SWITCH [1] service delivery requires that subscriber Class of Service capabilities, settings, and preferences are stored locally in the FILE SYSTEM [1.23.4], each in the form of a machine-readable data object called a 'service profile.' Service profiles may be created to store subscriber-specific information required by a variety of applications. CALL PROCESSING APPLICATIONS [1.23.2] require service profiles as a means to store subscriber-specific parameters that effect their control flow. In some cases, service profiles may be created on the EDGE SWITCH [1] by certain network-based applications to function as 'cookies,' storing application-specific information required for |

61

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | service delivery." ¶ 0356. |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Girard discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber (e.g., the incoming call to the subscriber may be automatically forwarded to another destination, such as an auto attendant, voice mail, automatic call distribution, group conferencing bridge, or a personal call screening service).

See citations and discussion above in connection with claim limitation 11.4. |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | Girard discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber (e.g., the subscriber may subscribe to the "voice call-answering" service).

*See e.g.,*

"Any call originated or received by a terminal plugged into the EDGE SWITCH [1] will the trigger the execution of particular service logic (i.e. CALL PROCESSING APPLICATIONS [1.23.2]). The execution of which particular service logic depends upon the subscriber's Class of Service capabilities, settings, and preferences; some settings will change the logic to a completely different type of service logic altogether whereas other settings may simply alter some aspect of the service logic. In some cases, the service logic of EDGE SWITCH BASIC FEATURES [1.24], such as 'call-forwarding' for example, may as a matter of course redirect calls to NETWORK-BASED ENHANCED SERVICES [18]. NETWORK-BASED ENHANCED SERVICES [18] may be accessible to the EDGE SWITCH [1] as network signaling endpoints residing in either the PSTN [7], as indicated by [4], or the IP CARRIER NETWORK [6], as indicated by [5]." ¶ 0246.

"An ready example of [5] exists in a popular network service called 'voice |

62

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | call-answering.' To implement voice call-answering, A conditional call-forwarding feature (EDGE SWITCH BASIC FEATURE [1.24]) is programmed to forward a call to a voice call-answering application (NETWORK-BASED ENHANCED SERVICE [18]) if the TELEPHONE STATION [3] rings three times without being answered or is busy." ¶ 0247. |
| [40.7] receiving a call connect instruction from the subscriber; and | Girard discloses receiving a call connect instruction from the subscriber (e.g., the redirected incoming call may be answered at the new destination). |
| | *See, e.g.:* |
| | "Call-forwarding features enable the EDGE SWITCH [1] to automatically transfer (redirect) an inbound call based on a number of considerations. Call-forwarding features are often activated to automatically or conditionally transfers inbound calls to application servers for further processing or to provide access to NETWORK-BASED ENHANCED SERVICES [18]. Examples of NETWORK-BASED ENHANCED SERVICES [18] that may be accessed via call-forwarding include an auto attendant (used to answer calls directed to a main office number), voice mail, automatic call distribution, group conferencing bridge, or a personal call screening service. The EDGE SWITCH [1] supports configurable call-forwarding, wherein the subscriber may program it to redirect inbound calls based on:" ¶ 0379. |
| | "Office telephone features (A.K.A. 'Centrex' or 'PBX features') comprise an additional layer of specialized features that make TELEPHONE STATIONS [3] more useful in an office environment. Certain office telephone features make it possible for a user at a TELEPHONE STATION [3] to transfer calls between TELEPHONE STATIONS [3] that may not necessarily be plugged into the same EDGE SWITCH [1]. In the case where TELEPHONE STATIONS [3] are not plugged into the same EDGE SWITCH [1], implementation of certain features may require special communication between EDGE SWITCHES [1] in which a SIP call session is initiated from one to another, not to set-up a new call, but to request that a call in progress be managed in a particular way (e.g. transferred to |

63

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | a different SIP signaling endpoint residing on a different EDGE SWITCH [1]). The following list summarizes common office telephone features that are 'primarily applicable to an office environment:'" ¶ 0387. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | Girard discloses instructing the call processing system to connect the first call to a third communication device (e.g., the redirected incoming call may be answered at the new destination). |
| | See citations and discussion above in connection with claim limitation 40.7. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | Girard discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol (e.g., the PSTN Gateway provides the necessary signaling gateway functions to interface the SIP call sessions to the PSTN network using SS#7 protocols).

*See* claim 40 above.

*Furthermore,* see citations and discussion above in connection with claim 5 and claim limitation 40.2. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two | Girard discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension (e.g., two-tiered signaling may be |

64

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| stages includes dialing a private branch exchange extension. | used during calls, with one of the tiers involving invoking PBX features).<br><br>*See* claim 40 above.<br><br>*Furthermore, see e.g.,*<br><br>"Among other things, the two-tiered signaling model complicates the integration of APPLICATION SERVERS (and potentially PBXs) that typically require more signaling information than can be conveyed by MEGACO (e.g. calling and called party dialing numbers). As a result, network signaling using SIP must be extended directly to the APPLICATION SERVER as if it were another MEDIA GATEWAY CONTROLLER i.e. another 'control zone.' Thus, for the NGN to enable network-based enhanced services such as voice mail or group conferencing, it must interface APPLICATION SERVERS using a different method than the way it interfaces telephones. From an operational perspective, the two-tiered signaling model means that the MEDIA GATEWAY CONTROLLER becomes a lynch pin, and must now actively mediate all telephone access to the APPLICATION SERVERS." ¶ 0048.<br><br>"The EDGE SWITCH has sufficient storage and processing capabilities to implement an optimized subset of subscriber telephone features and services that are today provided by the CENTRAL OFFICE SWITCH [7.1], including certain Customer Local Access Signaling Services (CLASS) and selected PBX/Centrex features usually provided to businesses. Telephone services and features are provided by each EDGE SWITCH to the TELEPHONE STATIONS [3] plugged into it without any requirement to interface a CENTRAL OFFICE SWITCH [7.1], and without any requirement to interface network elements such as 'IP Centrex' feature servers. Inasmuch as telephone features are implemented internally by the EDGE SWITCH, so too is the ability to generate and internally store event histories for subscriber access to these services. The internally stored event histories are sorted by the EDGE SWITCH such that billable events may |

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
|  | be periodically transmitted to a SYSTEM MANAGEMEMENT PLATFORM [2] for further processing. The SYSTEM MANAGEMEMENT PLATFORM [2] positively identifies the end user that generated the billable events by matching the physical device address of the EDGE SWITCH that generated the billable events with the physical device address of an EDGE SWITCH registered to an end user." ¶ 0273.<br><br>"Office telephone features (A.K.A. 'Centrex' or 'PBX features') comprise an additional layer of specialized features that make TELEPHONE STATIONS [3] more useful in an office environment. Certain office telephone features make it possible for a user at a TELEPHONE STATION [3] to transfer calls between TELEPHONE STATIONS [3] that may not necessarily be plugged into the same EDGE SWITCH [1]. In the case where TELEPHONE STATIONS [3] are not plugged into the same EDGE SWITCH [1], implementation of certain features may require special communication between EDGE SWITCHES [1] in which a SIP call session is initiated from one to another, not to set-up a new call, but to request that a call in progress be managed in a particular way (e.g. transferred to a different SIP signaling endpoint residing on a different EDGE SWITCH [1]). The following list summarizes common office telephone features that are 'primarily applicable to an office environment.'" ¶ 0387.<br><br>"A POTS telephone with programmable speed-dial keys or a PBX telephone with dedicated functions keys can both be used as TELEPHONE STATIONS [3]. In the case of supporting a POTS telephone, the TELEPHONE LINE INTERFACE [1.9] must embody 'SLIC' (Subscriber Line Interface Circuit) functionality whereas in the case of supporting a digital PBX telephone, the TELEPHONE LINE INTERFACE [1.9] must support a particular, vendor-specific line-level interface for that device." ¶ 0440. |

66

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | Girard discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., telephone station speed-dial keys may be programmed to support DTMF digit sequences, including sequences for direct-connection). |
| | *See claim 40 above.* |
| | *Furthermore, see e.g.,* |
| | "A default terminal function key profile is configured so as to enable subscribers to access TELEPHONE STATION FEATURES by entering DTMF digit sequences through the TELEPHONE STATIONS [3]. TELEPHONE STATION [3] speed-dial keys may be programmed to support these DTMF digit sequences so that they can be used as dedicated feature keys." ¶ 0259. |
| | "Hardware subcomponent of the EDGE SWITCH [1] that is a dedicated peripheral computing resource used to provide signal processing functions to the MEDIA STREAM CONTROLLER [1]. It may be implemented as an independent device or its capabilities may be integrated directly into the MEDIA STREAM CONTROLLER [1.7]. This subcomponent supports running various digital signal processing algorithms that may include DTMF digit detection, DTMF digit generation, network tone detection, network tone generation, noise cancellation, comfort noise generation, echo cancellation, voice onset detection, voice offset detection, modem (fax) tone detection, and media stream encoding/decoding/transcoding." ¶ 0287. |
| | "As an example of terminal adaptation, a speed-dial feature key on a POTS telephone may be programmed to generate a DTMF tone sequence such as '#45' when pressed. A CONFIGURATION PROFILE [1.23.5] on the EDGE SWITCH [1] contains a telephone function key profile specifying that any time the DTMF digit sequence '#45' is detected from that particular POTS telephone, a virtual function key code called 'TRANSER' is generated and passed as a |

67

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| | virtual function key event to the CALL PROCESSING APPLICATION [1.23.2] currently executing. Upon receiving the 'TRANSFER' virtual function key event, the CALL PROCESSING APPLICATION [1.23.2] will interpret the next series of DTMF digits as the dialing number to which the current call session should be transferred. From the user's perspective, the programmed speed-dial key functions as a dedicated 'TRANSFER' key." ¶0327.

"Direct-connect features (A.K.A. 'direct-connect originating') enable the EDGE SWITCH [1] to automatically originate a call to a pre-programmed dialing number when a TELEPHONE STATION [3] goes off-hook, or upon the detection of some other event, such as a particular TELEPHONE STATION [3] function key sequence. Direct-connect features are often used for security telephones outside of a building, or at kiosks to provide immediate access to a call center help desk; they may also be used by the EDGE SWITCH [1] to implement speed-dialing by associating certain TELEPHONE STATION [3] key sequences with subscriber-programmed speed-dialing numbers stored in LOCAL CALL ROUTING TABLES [1.23.3]." ¶0384. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | Girard discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., the subscriber's telephone resides behind the firewall in the EDGE Switch).

*See claim 40 above.*

Furthermore, see citations and discussion above in connection with claim 12. |
| 50. The method as defined in claim 40, wherein the first | Girard discloses the method of claim 40, further comprising wherein the first |

68

| U.S. Patent No. 7,822,188 | U.S. Patent Application Publication No. 2002/0176404 ("Girard") |
|---|---|
| the first communication device is connected to a private branch exchange system. | communication device is connected to a private branch exchange system (e.g., the subscriber's telephone station may be connected to a PBX system). *See* claim 40 above. Furthermore, see citations and discussion above in connection with claim 42. |

69

Exhibit A-12

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,389,117 ("Gross")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,389,117 ("Gross") invalidates Claims 40-43 and 49–50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Gross was issued on May 14, 2002, a divisional of an application with a priority date of at least September 8, 1997, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| 40. A method of processing calls, comprising: | **Gross** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>**1.** In a telecommunications network having a data pro- 15 cessing system that provides multiple telecommunications service options including voicemail and faxmail for a party, a method performed by the data processing system com- prising the steps of:<br><br>**Gross** at Claim 1.<br><br>also includes an automated call processor (ACP) **24**. The ACP **20** provides intelligent call processing functions for the ARU **20**. The ARU **20** is responsible for handling all initial 25<br><br>**Gross** at 5:23–25. |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | **Gross** discloses receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller.<br><br>*See, e.g.:*<br><br>60    The call originator **12** depicted in FIG. **1A** represents the origination of a call to the platform **10**. This call may be from a subscriber or a caller that is seeking to reach the telephone number that is assigned to a subscriber. Moreover, the call may originate from a facsimile machine or a<br>65    computer. The call reaches the switch network **14** of the<br><br>**Gross** at 6:59–64.<br><br>    FIG. **2** provides an overview of the steps that are performed when a call is placed to a phone number that is assigned to a subscriber. Initially, the call originator **12**<br>35    places a call to the phone number that is assigned to a subscriber, and this call is switched via the switch network **14** to the ACD **18** within the platform **10** (step **50** in FIG. **2**).<br><br>**Gross** at 7:32–37. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | **Gross** discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber.<br><br>*See, e.g.:* |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| | In the preferred embodiment of the present invention, the subscriber is assigned a single telephone number, such as a toll free 800 number, private network number, toll number or 888 number. This single telephone number may be used 5 by other parties ("guests") to reach the subscriber at any destination telephone number programmed by the subscriber. In addition, the single phone number may be used to<br><br>**Gross** at 4:1–7.<br><br>assigned to a subscriber. Initially, the call originator **12** places a call to the phone number that is assigned to a 35 subscriber, and this call is switched via the switch network **14** to the ACD **18** within the platform **10** (step **50** in FIG. **2**).<br><br>**Gross** at 7:34–37. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Gross discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction.<br><br>*See, e.g.*:<br><br>15 NIDS **27** to obtain data on the subscriber profile. The subscriber profile is used to determine what scripts to play for a caller, to determine what communications services can be offered to a caller, and to determine what destination telephone numbers and mailbox identifiers to use. The VFP<br><br>**Gross** at 6:15–19. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| | **2**). In addition, the AP **46** sends a message to the ACP **24** of the ARU **20** that includes call context information (step **60** in FIG. **2**). The call context information may include the subscriber phone number, ANI, PIN, and other information. When a PIN is used, the ARU may prompt the user to provide the caller with the PIN when the ARU initially receives the call. The ACP **24** uses this call context information to retrieve a subscriber profile from the NIDS **27** (FIG. **1A**) to determine what script to execute (step **62** in FIG. **2**). The profiles are described in more detail below. |
| | **Gross** at 7:51–60. |
| | The subscriber profile **82** may also hold status information **88** regarding the respective services. The profile may also hold service-specific information **90**. The information **90** may include information such as forwarding phone numbers to be used in routing phone calls, telephone numbers to be used in paging, the type of facsimile messaging to facilitate, and so forth. |
| | **Gross** at 8:32–38. |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| | **92** in FIG. **5**). The ARU **20** then determines what routing is to be applied based upon routing options chosen by the subscriber (step **94** in FIG. **5**). The appropriate routing is then applied (step **96** in FIG. **5**). The routing may include 30 Findme routing and scheduled routing.<br><br>With Findme routing, a subscriber may specify multiple terminating telephone numbers that the platform **10** can call to reach the subscriber. For example, the subscriber may specify up to three phone numbers that are attempted in 35 sequence. A subscriber might specify his office number first, his cellular number second and his home number third. When such Findme routing is applied, the ARU **20** places the caller on hold while it places calls to these numbers in sequence. FIG. **6A** is a flowchart illustrating the steps that 40 <br><br>**Gross** at 9:28–41. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | **Gross** discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber.<br><br>*See, e.g.*: |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| | **92** in FIG. **5**). The ARU **20** then determines what routing is to be applied based upon routing options chosen by the subscriber (step **94** in FIG. **5**). The appropriate routing is then applied (step **96** in FIG. **5**). The routing may include Findme routing and scheduled routing. 30

With Findme routing, a subscriber may specify multiple terminating telephone numbers that the platform **10** can call to reach the subscriber. For example, the subscriber may specify up to three phone numbers that are attempted in 35 sequence. A subscriber might specify his office number first, his cellular number second and his home number third. When such Findme routing is applied, the ARU **20** places the caller on hold while it places calls to these numbers in sequence. FIG. **6A** is a flowchart illustrating the steps that 40

**Gross** at 9:28-41. |

7

| U.S. Patent No. 6,389,117 ("Gross") | U.S. Patent No. 7,822,188 |
|---|---|



FIG. 6A

Gross at Fig. 6A.

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | **Gross** discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber. |
| | *See, e.g.:* |
| | When such Findme routing is applied, the ARU **20** places the caller on hold while it places calls to these numbers in sequence. FIG. 6A is a flowchart illustrating the steps that are performed in such an instance. The ARU **20** tries the next phone number in the find me sequence (step **98** is FIG. 6A). The ARU then determines whether it gets a live answer or not (i.e., whether a person answers the phone call) (step **100** in FIG. 6A). If the call results in a ring no answer (RNA) after a specified number of rings, or if the call is picked up by an answering machine, the call is terminated, and the ARU attempts to place a call to the next number in the sequence (see step **98** in FIG. 6A) provided that all of the numbers have not been exhausted (see step **164**). When all |
| | **Gross** at 9:39–51. |

9

| U.S. Patent No. 6,389,117 ("Gross") | U.S. Patent No. 7,822,188 |
|---|---|
|  Gross at Fig. 6A. | |

FIG. 6A

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| receiving a call connect instruction from the subscriber; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| instructing the call processing system to connect the first call to a third communication device. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | *See* claim 40 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | *See* claim 40 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | *See* claim 40 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | *See* claim 40 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | *See* claim 40 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,389,117 ("Gross") |
|---|---|
|  | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

NY:1636665.2

13

Exhibit A-13

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 7,020,255 ("Gruchala")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 7,020,255 ("Gruchala") invalidates Claims 1–37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103.    Gruchala was filed on April 25, 2001, before the priority date of the '591 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| 1. A method of processing calls, the method comprising; | Gruchala discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "In carrying out the above objects, the present invention provides a method of providing a work-at-home telecommunication service. The method includes a step of receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. After receiving the vertical feature code and the dialed number, a step of suspending the call and sending a query to a service control point is performed. The query includes the dialed number and a calling party identification number."    Gruchala at 2:9-17. |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Gruchala discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber.<br><br>*See, e.g.:*<br><br>• "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UserID), a local access transport area parameter |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | (LATA), a calling party identification parameter (CallingPartyiD), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."   Gruchala at 5:22-32.<br><br>• "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."   Gruchala at 7:6-9.<br><br>TABLE II<br><br>Gruchala at Table II. |

TABLE II

| Parameter | Description | |
|---|---|---|
| ChargeNumber | ANI of the calling party (replaced by the Business/Billing number for the service). | |
| | Expected Range: | AIN Digits format |
| | odd/even indicator | 0 = even |
| | nature of number | 3 = national |
| | numbering plan | 1 = ISDN |
| | digits | 10 = digits |
| CallingPartyID | DN of the calling party (replaced by the Business/Billing number for the service). | |
| | Expected Range: | AIN Digits format |
| | odd/even indicator | 0 = even |
| | nature of number | 3 = national |
| | numbering plan | 1 = ISDN |
| | screening indicator | 3 = network |
| | presentation restricted ind | 0 = allowed |
| | | 1 = restricted |
| | digits | 10 digits |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | Gruchala discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network.

*See, e.g.:*

- "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UserID), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyID), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."    Gruchala at 5:22–32.

- "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."    Gruchala at 7:6–9.

| CallingPartyID | DN of the calling party<br>Expected Range:<br>odd/even indicator<br>nature of number<br>numbering plan<br>screening indicator<br>presentation restricted<br>ind<br>digits | AIN Digits format<br>0 = even<br>3 = national<br>1 = ISDN<br>3 = network<br>0 = allowed<br>1 = restricted<br>10 digits |
| UserID | DN of the originating facility<br>Expected Range:<br>DN | 10 digits |

Gruchala at Table I. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | **TABLE II** <br><br> **Parameter** / **Description** <br><br> ChargeNumber — ANI of the calling party (replaced by the Business/Billing number for the service). <br> Expected Range: AIN Digits format <br> odd/even indicator — 0 = even <br> nature of number — 3 = national <br> numbering plan — 1 = ISDN <br> digits — 10 = digits <br><br> CallingPartyID — DN of the calling party (replaced by the Business/Billing number for the service). <br> Expected Range: AIN Digits format <br> odd/even indicator — 0 = even <br> nature of number — 3 = national <br> numbering plan — 1 = ISDN <br> screening indicator — 3 = network <br> presentation restricted — 0 = allowed <br> intl — 1 = restricted <br> digits — 10 digits <br><br> Gruchala at Table II. <br><br> Gruchala discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address. <br><br> *See, e.g.:* <br><br> • "A Work-at-home telecommunication service is provided in response to receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. The call is suspended and a query is sent to a service control number. The query includes the dialed number and a calling party identification number. A response to the query is formed using the service control point by translating the dialed number to a called party identification number, and by modifying the calling party identification number to an identification number of a group associated with the calling party." Gruchala at |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | Abstract. |
| | • "The SSP receives the service-specific code and the private virtual network number from the first member, and identifies the call as an AIN network call. The SSP suspends the call after receiving both the service-specific code and the private virtual network number, and sends a query to the SCP. The query includes the private virtual network number and a calling party identification number which identifies the first member. In one embodiment, the calling party identification number includes the ANI of the first member, i.e., the calling party."   Gruchala at 3:53-62. |
| | • "As indicated by block 50, a step of receiving a service-specific code and a private virtual network number from a calling party initiating a call is performed. The service-specific code and the private virtual network number are received by the SSP at the end office via a public telephone line of the calling party."   Gruchala at 5:13-18. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | Gruchala discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address.

*See, e.g.:*

• "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14.<br><br>• "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47.<br><br>74 ⟶ ┌─────────────────────────────┐<br>│ ROUTE CALL TO CALLED PARTY │<br>└─────────────────────────────┘<br><br>Gruchala at Fig 2. |
| bridging the first call and the first outcall; | Gruchala discloses bridging the first call and the first outcall.<br><br>*See, e.g.:*<br><br>• "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14.<br><br>• "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | 74 ↓ <br><br> ROUTE CALL TO CALLED PARTY <br><br> Gruchala at Fig 2. |
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | Gruchala discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address. <br><br> *See, e.g.:* <br><br> ● "For the purpose of illustration, the telephone lines 16, 18, 20, 26, 28, and 29 are members of a group which subscribes to the telecommunication service. The telephone lines 16, 18, 20, 26, 28, and 29 can be the home telephone lines of fellow employees of a business, for example, which subscribes to the work-at-home telecommunication service. Associated with the group are an identification number used for billing the group's telecommunication calls and a carrier identification code to identify a telecommunication carrier to carry the group's telecommunication calls." Gruchala at 3:26-35. <br><br> ● "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UseriD), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyiD), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)." Gruchala at 5:22-32. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | • "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."   Gruchala at 7:6-9. |



Gruchala at Table I.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | TABLE II |
| | | Parameter | Description | | |
| | ChargeNumber | ANI of the calling party (replaced by the Business/Billing number for the service). | | |
| | | Expected Range: | AIN Digits format | |
| | | odd/even indicator | 0 = even | |
| | | nature of number | 3 = national | |
| | | numbering plan | 1 = ISDN | |
| | | digits | 10 = digits | |
| | CallingPartyID | DN of the calling party (replaced by the Business/Billing number for the service). | | |
| | | Expected Range: | AIN Digits format | |
| | | odd/even indicator | 0 = even | |
| | | nature of number | 3 = national | |
| | | numbering plan | 1 = ISDN | |
| | | screening indicator | 3 = network | |
| | | presentation restricted ind | 0 = allowed / 1 = restricted | |
| | | digits | 10 digits | |
| | Gruchala at Table II. | | | |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | Gruchala discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address. <br><br> *See, e.g.:* <br><br> • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. |
| | 74 → [ ROUTE CALL TO CALLED PARTY ] |
| | Gruchala at Fig 2. |
| bridging the second call and the second outcall. | Gruchala discloses bridging the second call and the second outcall. |
| | *See, e.g.:* |
| | • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") | |
|---|---|---|
| | block 74, using the telecommunication carrier identified by the carrier identification code."    Gruchala at 6:42-47. | |
| |  | |
| | Gruchala at Fig 2. | |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | Gruchala discloses the method of claim 1, wherein the first call is initiated by the subscriber.<br><br>*See* claim 1 above.<br><br>• "A Work-at-home telecommunication service is provided in response to receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. The call is suspended and a query is sent to a service control number. The query includes the dialed number and a calling party identification number. A response to the query is formed using the service control point by translating the dialed number to a called party identification number, and by modifying the calling party identification number to an identification number of a group associated with the calling party."    Gruchala at Abstract. | |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system | *See* claim 1 above. | |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or a forward-on-busy condition. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | Gruchala discloses the method of claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system.

*See* claim 1 above.

● "A Work-at-home telecommunication service is provided in response to receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. The call is suspended and a query is sent to a service control number. The query includes the dialed number and a calling party identification number. A response to the query is formed using the service control point by translating the dialed number to a called party identification number, and by modifying the calling party identification number to an identification number of a group associated with the calling party." Gruchala at Abstract.

● "The response message is sent to the SSP in a step indicated by block 72. The SSP receives the service-specific code and the private virtual network number from the first member, and identifies the call as an AIN network call. The SSP suspends the call after receiving both the service-specific code and the private virtual network number, and sends a query to the SCP. The query |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | includes the private virtual network number and a calling party identification number which identifies the first member. In one embodiment, the calling party identification number includes the ANI of the first member, i.e., the calling party."   Gruchala at 3:53-62. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 11. The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone address; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| reading at least one subscriber specified rule from computer readable memory; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| different than the first phone address. | Defendants' Invalidity Contentions, that contain this functionality. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 14. The method as defined in claim 1, the method further comprising: | Gruchala discloses method as defined in claim 1.<br><br>*See* claim 1 above. |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a third outcall to the transfer destination; and | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| connecting the first outcall with the third outcall. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a | *See* claim 1 above. |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| mobile phone address. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | Gruchala discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. *See* claim 1 above. <br><br> • "To allow for private virtual network numbers having a variable number of digits, a "#" can be dialed after the private virtual network number to indicate the end of dialing. Otherwise, the first member can wait for a predetermined time out condition to signal an end-of-dialing. Alternatively, an end-of-dialing condition is detected if the seven-digit 15 NXX-XXXX has a valid number in the translation using the SSP." Gruchala at 4:9-16. <br><br> • "The response formed by the SCP includes the translated private virtual network number, the modified calling party identification number, and the carrier identification code which identifies the telecommunication carrier for the group. Based on whether the privacy services access code was dialed, the response can include a calling party identification presentation parameter set by the SCP. The SCP communicates the response back to the SSP." Gruchala at 4:23-30. |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| 17. A method of processing calls, the method comprising; | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Gruchala discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user. |
| | *See, e.g.:* |
| | • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| |   74 ↓ ROUTE CALL TO CALLED PARTY<br><br>Gruchala at Fig 2. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Gruchala discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user.<br><br>*See, e.g.:*<br><br>• "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."  Gruchala at 6:5-14.<br><br>• "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."  Gruchala at 6:42-47. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| causing the first outcall and the second outcall to be connected. | 74 → ROUTE CALL TO CALLED PARTY<br><br>Gruchala at Fig 2.<br><br>Gruchala discloses causing the first outcall and the second outcall to be connected.<br><br>*See, e.g.*:<br><br>• "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14.<br><br>• "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47.<br><br>74 → ROUTE CALL TO CALLED PARTY |

22

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|---|
| | | Gruchala at Fig 2. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | | Gruchala discloses the method of claim 17, wherein the user telephone is a landline phone.

*See* claim 17 above.

*See* claim 10 above.

*See, e.g.*:

- "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UseriD), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyID), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."    Gruchala at 5:22-32.

- "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."    Gruchala at 7:6-9. |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | **TABLE II** |
| | **Parameter** — **Description** |
| | ChargeNumber — ANI of the calling party (replaced by the Business/Billing number for the service). Expected Range: AIN Digits format; odd/even indicator 0 = even; nature of number 3 = national; numbering plan 1 = ISDN; digits 10 = digits |
| | CallingPartyID — DN of the calling party (replaced by the Business/Billing number for the service). Expected Range: AIN Digits format; odd/even indicator 0 = even; nature of number 3 = national; numbering plan 1 = ISDN; screening indicator 3 = network; presentation restricted 0 = allowed; ind 1 = restricted; digits 10 digits |
| | Gruchala at Table II. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | *See* claim 17 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 26. A method of processing calls, the method comprising; | Gruchala discloses a method of processing calls, the method comprising.<br><br>*See, e.g.:*<br><br>• "In carrying out the above objects, the present invention provides a method of providing a work-at-home telecommunication service. The method includes a step of receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. After receiving the vertical feature code and the dialed number, a step of suspending the call and sending a query to a service control point is performed. The query includes the dialed number and a calling party identification number."    Gruchala at 2:9-17. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | Gruchala discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system.<br><br>*See, e.g.:*<br><br>• "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UseriD), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyiD), a charge |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."   Gruchala at 5:22-32.<br><br>• "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."   Gruchala at 7:6-9.<br><br>TABLE II<br><br>_Table II detail:_<br><br>**ChargeNumber** — ANI of the calling party (replaced by the Business/Billing number for the service). Expected Range: AIN Digits format; odd/even indicator 0 = even; nature of number 3 = national; numbering plan 1 = ISDN; digits 10 = digits<br><br>**CallingPartyID** — DN of the calling party (replaced by the Business/Billing number for the service). Expected Range: AIN Digits format; odd/even indicator 0 = even; nature of number 3 = national; numbering plan 1 = ISDN; screening indicator 3 = network; presentation restricted ind 0 = allowed / 1 = restricted; digits 10 digits<br><br>Gruchala at Table II. |
| receiving from the user a plurality of user phone | Gruchala discloses receiving from the user a plurality of user phone addresses |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | associated with at least one network selected from the group including wireline network, wireless network, and Internet network.<br><br>*See, e.g.:*<br><br>• "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UserID), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyID), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."    Gruchala at 5:22-32.<br><br>• "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."    Gruchala at 7:6-9.<br><br>CallingPartyID   DN of the calling party   2 = customized access<br>   Expected Range:   AIN Digits format<br>   odd/even indicator   0 = even<br>   nature of number   3 = national<br>   numbering plan   1 = ISDN<br>   screening indicator   3 = network<br>   presentation restricted   0 = allowed<br>   ind   1 = restricted<br>   digits   10 digits<br><br>UserID   DN of the originating facility<br>   Expected Range:<br>   DN   10 digits<br><br>Gruchala at Table I. |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| storing the plurality of user phone addresses in computer readable memory; | **TABLE II** |

TABLE II content:

| Parameter | Description | |
|---|---|---|
| ChargeNumber | ANI of the calling party (replaced by the Business/Billing number for the service). | |
| | Expected Range: | AIN Digits format |
| | odd/even indicator | 0 = even |
| | nature of number | 3 = national |
| | numbering plan | 1 = ISDN |
| | digits | 10 = digits |
| CallingPartyID | DN of the calling party (replaced by the Business/Billing number for the service). | |
| | Expected Range: | AIN Digits format |
| | odd/even indicator | 0 = even |
| | nature of number | 3 = national |
| | numbering plan | 1 = ISDN |
| | screening indicator | 3 = network |
| | presentation restricted | 0 = allowed |
| | intl | 1 = restricted |
| | digits | 10 digits |

Gruchala at Table II.

Gruchala discloses storing the plurality of user phone addresses in computer readable memory.

*See, e.g.*:

- "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UseriD), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyiD), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."   Gruchala at 5:22-32.

29

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | • "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."  Gruchala at 7:6-9. |
| | CallingPartyID |
| | DN of the calling party |
| | Expected Range:   AIN Digits format |
| | odd/even indicator   0 = even |
| | nature of number   3 = national |
| | numbering plan   1 = ISDN |
| | screening indicator   3 = network |
| | presentation restricted   0 = allowed |
| | ind   1 = restricted |
| | digits   10 digits |
| | 2 = customizedAccess |
| | UserID |
| | DN of the originating facility |
| | Expected Range: |
| | DN   10 digits |
| | Gruchala at Table I. |

30

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | **TABLE II**<br><br>| Parameter | Description |<br>| ChargeNumber | ANI of the calling party (replaced by the Business/Billing number for the service).<br>Expected Range:    AIN Digits format<br>odd/even indicator    0 = even<br>nature of number    3 = national<br>numbering plan    1 = ISDN<br>digits    10 = digits |<br>| CallingPartyID | DN of the calling party (replaced by the Business/Billing number for the service).<br>Expected Range:    AIN Digits format<br>odd/even indicator    0 = even<br>nature of number    3 = national<br>numbering plan    1 = ISDN<br>screening indicator    3 = network<br>presentation restricted    0 = allowed<br>ind    1 = restricted<br>digits    10 digits |<br><br>Gruchala at Table II.<br><br>Gruchala discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses.<br><br>*See, e.g.:*<br><br>● "A Work-at-home telecommunication service is provided in response to receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. The call is suspended and a query is sent to a service control number. The query includes the dialed number and a calling party identification number. A response to the query is formed using the service control point by translating the dialed number to a called party identification number, and by modifying the calling party identification number to an |

31

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | identification number of a group associated with the calling party." Gruchala at Abstract. |
| | • "The SSP receives the service-specific code and the private virtual network number from the first member, and identifies the call as an AIN network call. The SSP suspends the call after receiving both the service-specific code and the private virtual network number, and sends a query to the SCP. The query includes the private virtual network number and a calling party identification number which identifies the first member. In one embodiment, the calling party identification number includes the ANI of the first member, i.e., the calling party." Gruchala at 3:53-62. |
| | • "As indicated by block 50, a step of receiving a service-specific code and a private virtual network number from a calling party initiating a call is performed. The service-specific code and the private virtual network number are received by the SSP at the end office via a public telephone line of the calling party." Gruchala at 5:13-18. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | Gruchala discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall. |
| | *See, e.g.:* |
| | • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is |

32

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. |
| |  |
| | Gruchala at Fig 2. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | Gruchala discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action. |
| | *See, e.g.*: |
| | • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier |

33

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | identification code."    Gruchala at 6:42–47. |
| |  |
| | Gruchala at Fig 2. |
| 27. The method as defined in claim 26, the method further comprising: | Gruchala discloses the method as defined in claim 26. |
| | *See* claim 26 above. |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | Gruchala discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses. |
| | *See* claim 26 above. |
| | • "A Work-at-home telecommunication service is provided in response to receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. The call is suspended and a query is sent to a service control number. The query includes the dialed number and a calling party identification number. A response to the query is formed using the service control point by translating the dialed number to a called party identification |

34

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | number, and by modifying the calling party identification number to an identification number of a group associated with the calling party."    Gruchala at Abstract. |
| | • "The SSP receives the service-specific code and the private virtual network number from the first member, and identifies the call as an AIN network call. The SSP suspends the call after receiving both the service-specific code and the private virtual network number, and sends a query to the SCP. The query includes the private virtual network number and a calling party identification number which identifies the first member. In one embodiment, the calling party identification number includes the ANI of the first member, i.e., the calling party."    Gruchala at 3:53-62. |
| | • "As indicated by block 50, a step of receiving a service-specific code and a private virtual network number from a calling party initiating a call is performed. The service-specific code and the private virtual network number are received by the SSP at the end office via a public telephone line of the calling party."    Gruchala at 5:13-18. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | Gruchala discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address.

*See* claim 26 above. |

35

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | *See, e.g.*: |
| | • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. |
| | 74⌐ ┌─────────────────────────┐ │ ROUTE CALL TO CALLED PARTY │ └─────────────────────────┘ Gruchala at Fig 2. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | Gruchala discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall.

*See* claim 26 above. |

36

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | *See, e.g.*: |
| | • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. |
| | 74⌐ ⌐→ [ ROUTE CALL TO CALLED PARTY ] |
| | Gruchala at Fig 2. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | *See* claim 26 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") | |
|---|---|---|
| | | Defendants' Invalidity Contentions, that contain this functionality. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | *See* claim 26 above. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | *See* claim 26 above. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | *See* claim 26 above. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

38

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 34. The method as defined in claim 26, the method further comprising: | Gruchala discloses the method as defined in claim 26, the method further comprising:<br><br>*See* claim 26 above. |

39

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | Gruchala discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system. |
| | *See* claim 26 above. |
| | *See, e.g.:* |
| | • "A Work-at-home telecommunication service is provided in response to receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. The call is suspended and a query is sent to a service control number. The query includes the dialed number and a calling party identification number. A response to the query is formed using the service control point by translating the dialed number to a called party identification number, and by modifying the calling party identification number to an identification number of a group associated with the calling party."   Gruchala at Abstract. |
| | • "The SSP receives the service-specific code and the private virtual network number from the first member, and identifies the call as an AIN network call. The SSP suspends the call after receiving both the service-specific code and the private virtual network number, and sends a query to the SCP. The query includes the private virtual network number and a calling party identification number which identifies the first member. In one embodiment, the calling party identification number includes the ANI of first member, i.e., the calling party."   Gruchala at 3:53-62. |
| | • "As indicated by block 50, a step of receiving a service-specific code and |

40

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | a private virtual network number from a calling party initiating a call is performed. The service-specific code and the private virtual network number are received by the SSP at the end office via a public telephone line of the calling party."   Gruchala at 5:13-18. |
| reading at least one user specified rule from computer readable memory; | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | Gruchala discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address.<br><br>*See* claim 26 above.<br><br>• "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the |

41

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | AMALineNumber." Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code." Gruchala at 6:42-47. |
| | 74 → ROUTE CALL TO CALLED PARTY |
| | Gruchala at Fig 2. |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically |

42

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising; | Gruchala discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |
| while the first outcall is in process, receiving at the call call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | Gruchala discloses while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination.<br><br>*See* claim 26 above. |
| placing an outcall to the connect destination; and | Gruchala discloses placing an outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>*See, e.g.:*<br>• "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate |

43

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14.<br><br>• "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47.<br><br><br><br>Gruchala at Fig 2. |
| connecting the first outcall with the outcall to the connect destination. | Gruchala discloses connecting the first outcall with the outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>• "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number |

44

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. |
| | • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. |
| | 74 → ┌─────────────────────────┐<br>│ ROUTE CALL TO CALLED PARTY │<br>└─────────────────────────┘<br><br>Gruchala at Fig 2. |
| 40. A method of processing calls, comprising: | Gruchala discloses a method of processing calls. |
| | • "In carrying out the above objects, the present invention provides a method of providing a work-at-home telecommunication service. The method includes a step of receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. After receiving the vertical feature code and the dialed number, a step of suspending the call and sending a query to a service control point is performed. The query includes the dialed number and a calling party identification number."   Gruchala at 2:9-17. |
| receiving at a call processing system a message from an Internet protocol proxy regarding a first | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

45

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| call from a caller; | skill in the art at the time of the invention to include such functionality, or to combine this invention with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Gruchala discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber.

*See, e.g.:*

• "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a user identification parameter (UserID), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyID), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."   Gruchala at 5:22-32.

• "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."   Gruchala at 7:6-9.

 |

46

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
| --- | --- |
| | UserID    DN of the originating facility<br>Expected Range:<br>DN    10 digits<br><br>Gruchala at Table I.<br><br>**TABLE II**<br><br>Parameter — Description<br><br>ChargeNumber — ANI of the calling party (replaced by the Business/Billing number for the service). Expected Range:   AIN Digits format; odd/even indicator 0 = even; nature of number 3 = national; numbering plan 1 = ISDN; digits 10 = digits<br><br>CallingPartyID — DN of the calling party (replaced by the Business/Billing number for the service). Expected Range:   AIN Digits format; odd/even indicator 0 = even; nature of number 3 = national; numbering plan 1 = ISDN; screening indicator 3 = network; presentation restricted ind 0 = allowed / 1 = restricted; digits 10 digits<br><br>Gruchala at Table II.<br><br>Gruchala discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction.<br><br>*See, e.g.:*<br>• "In an embodiment utilizing AIN 0.1 compliant components, the query message is an Info_Analyzed query message having the following parameters: a |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | |

47

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | user identification parameter (UseriD), a local access transport area parameter (LATA), a calling party identification parameter (CallingPartyID), a charge number parameter (ChargeNumber), collected address information (CollectedAddress Info) and/or collected digits information (CollectedDigits), a service-specific code parameter, and a trigger criteria type (TriggerCriteriaType)."    Gruchala at 5:22-32.<br><br>• "The Info_Analyzed parameters shown in Table I are expected by the telecommunication service. If the parameters are not populated as expected, the call will be terminated to an announcement."    Gruchala at 7:6-9.<br><br>CallingPartyID    DN of the calling party<br>             Expected Range:    AIN Digits format<br>             odd/even indicator    0 = even<br>             nature of number    3 = national<br>             numbering plan    1 = ISDN<br>             screening indicator    3 = network<br>             presentation restricted    0 = allowed<br>             ind    1 = restricted<br>             digits    10 digits<br>                          2 = customized access<br><br>UserID    DN of the originating facility<br>             Expected Range:<br>             DN    10 digits<br><br>Gruchala at Table I. |

48

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | **TABLE II** |
| | **Parameter** | **Description** |
| | ChargeNumber — ANI of the calling party (replaced by the Business/Billing number for the service). |
| | Expected Range: AIN Digits format |
| | odd/even indicator 0 = even |
| | nature of number 3 = national |
| | numbering plan 1 = ISDN |
| | digits 10 = digits |
| | CallingPartyID — DN of the calling party (replaced by the Business/Billing number for the service). |
| | Expected Range: AIN Digits format |
| | odd/even indicator 0 = even |
| | nature of number 3 = national |
| | numbering plan 1 = ISDN |
| | screening indicator 3 = network |
| | presentation restricted 0 = allowed |
| | ind 1 = restricted |
| | digits 10 digits |
| | Gruchala at Table II. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Gruchala discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber. |
| | *See, e.g.:* |

49

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | • "The step of forming the response includes a step of populating billing parameters, such as an AMALineNumber parameter and an AMAAlternate Billing Number parameter of the business customer, in the response message. The step of forming the response also includes modifying the calling party identification parameter and the charge number parameter to the billing number associated with the calling party's business group. It is noted that this step is performed subsequent to capturing the originating calling number to populate the AMALineNumber."   Gruchala at 6:5-14. <br><br> • "The response message is sent to the SSP in a step indicated by block 72. The SSP performs a step of routing the call to the called party, as indicated by block 74, using the telecommunication carrier identified by the carrier identification code."   Gruchala at 6:42-47. <br><br> 74 — [ ROUTE CALL TO CALLED PARTY ] <br><br> Gruchala at Fig 2. |
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| receiving a call connect instruction from the subscriber; and | Gruchala discloses receiving a call connect instruction from the subscriber. <br><br> *See, e.g.:* |

50

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | • "A Work-at-home telecommunication service is provided in response to receiving, from a calling party, a service-specific vertical feature code and a dialed number to initiate a call. The call is suspended and a query is sent to a service control number. The query includes the dialed number and a calling party identification number. A response to the query is formed using the service control point by translating the dialed number to a called party identification number, and by modifying the calling party identification number to an identification number of a group associated with the calling party."   Gruchala at Abstract. |
| | • "The SSP receives the service-specific code and the private virtual network number from the first member, and identifies the call as an AIN network call. The SSP suspends the call after receiving both the service-specific code and the private virtual network number, and sends a query to the SCP. The query includes the private virtual network number and a calling party identification number which identifies the first member. In one embodiment, the calling party identification number includes the ANI of the first member, i.e., the calling party."   Gruchala at 3:53-62. |
| | • "As indicated by block 50, a step of receiving a service-specific code and a private virtual network number from a calling party initiating a call is performed. The service-specific code and the private virtual network number are received by the SSP at the end office via a public telephone line of the calling party."   Gruchala at 5:13-18. |
| instructing the call processing system to connect the first call to a third communication device. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

51

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | *See* claim 40 above:<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | *See* claim 40 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | *See* claim 40 above:<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

52

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | *See* claim 40 above:<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | Gruchala discloses The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system.<br><br>See claim 40 above:<br><br>• "Telephone calls are communicated between the SSPs 12 and using any of the plurality of telecommunication carriers. The plurality of telecommunication carriers can include interexchange carriers, local exchange carriers, or any combination thereof. For the purpose of illustration, the plurality of telecommunication carriers includes a first telecommunication carrier 30, a second telecommunication carrier 32, and a third telecommunication carrier 34. The specific telecommunication carrier utilized for communicating a call is dependent upon a carrier identification code associated with the call, where each |

53

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,020,255 ("Gruchala") |
|---|---|
| | of the telecommunication carriers has a unique carrier identification code associated therewith."   Gruchala at 3:13-25. |

54

NY:1636653.1

Exhibit A-14

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,693,897 ("Huang")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,693,897 ("Huang") invalidates Claims 1-3, 5-13,15-21, 24-25, 40-43, and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Huang was filed on November 10, 2000 and issued on February 17, 2004, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| [1.1] A method of processing calls, the method comprising: | Huang discloses a method of processing calls (e.g., the user may monitor information about incoming calls and reroute, answer, or otherwise treat the incoming call).<br><br>*See, e.g.:*<br><br>"A Call Alerting and Control System is provided in a communication environment to allow an Internet user ('user') approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection with the Internet. The monitored information can include the calling party's name and telephone number. The system could also allow the user to provide an answering machine-type message to the calling party and the user to listen to the calling party's response to the message while still connected to the Internet. The system can further allow the user to reroute, answer or otherwise treat the incoming call while, at the user's discretion, either maintaining or disconnecting a connection to the Internet."   Huang at Abstract.[1] |

---

[1] All references are to Huang, unless otherwise expressly noted.

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | "This invention relates to a system and method for a user to screen and control an incoming telephone call while the user is connected to a packet-switched data network such as the Internet." 1:8-12. |
| | "By way of introduction, the preferred embodiment described below includes a Call Alerting and Control System (CACS) that manages incoming calls from a calling party to an Internet user ('user') while the user maintains a connection to the Internet. CACS allows the user approximately real-time monitoring of information about an incoming call from a calling party. The information includes, for example, data about the calling party, and/or an opportunity for the user to listen to a calling party's response to an answering machine type message. In addition, CACS allows the user to listen to caller's voice before making further decisions about handling the call." 1:47-58. |
| [1.2] storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Huang discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber (e.g., the CACS necessarily stores the phone number associated with the user's telephone line when the Client System registers with the Gateway System that the user is occupying the telephone line by connecting to the Internet). |
| | *See, e.g.*: |
| | "Many Internet users today connect their computers to the Internet over their telephone lines. As more information and services are available over the World Wide Web on the Internet, users spend more time connected to the Internet and thus occupying their telephone lines. If an Internet user has only a single telephone line, callers trying to reach such a user can encounter a busy signal for extended periods of time. Available Call Waiting services that typically allow a subscriber to answer an incoming call from a second party while conversing with a first party cannot be used while a user is connected to an Internet call. The Internet connecting software requires that the call waiting service be temporarily deactivated. Thus, the user is unaware of the incoming call." 1:15-27. |
| | "CACS operates within a communication environment. The communication |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | environment includes a telephone network that receives incoming calls and determines whether the intended communication line is busy. If the telephone line of the user is busy, a Service Switching Point (SSP) included in the telephone network obtains instructions from the Service Control Point (SCP) for the incoming call. The SCP determines whether the user is connected to the Internet or the Internet-like packet-based data network. The SCP instructs the SSP to transfer the incoming call to a Gateway System if the user is connected to the Internet." 1;59-2:2. |
| | "A Call Alerting and Control System (CACS) is provided in a communication environment that allows an Internet user ("user") approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection to the Internet. The information includes, for example, data about the calling party, such as the calling party's name and telephone number, and an opportunity for the user to listen to a calling party's response to an answering machine-like messaging system while the user is still connected to the Internet. CACS also allows the user to reroute, treat or otherwise answer the incoming call by, at the user's choice, either maintaining or disconnecting the user's connection to the Internet." 2:60-3:5. |
| | "The Client System 110 that runs in the background after user's computer starts up, is activated when the user accesses the Internet 104. The Client System 110 registers with the registration service 122 included in the Gateway System 106 when the user begins an Internet session. The registration service 122 records that the user is connected to the Internet 104. The Client System deregisters, when possible, with the registration service 122 when the user disconnects from the Internet 104. Various mechanisms can be used to register or deregister the Client System 110 from the registration service 122 including the user manually registering or deregistering upon initiation or termination of the Internet connection and/or automatic registration or deregistration by the Client System 110 upon signing-on or exiting the Internet. Other methods for deregistering the Client System 110 could also be used, such as the Gateway System 106 periodically polling the Client System 110 to determine if the Internet access has |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | ended." 3:37-54. |
| | "After the calling party 102 calls the user, if the telephone line 112 is busy, the SSP 116 queries a Service Control Point (SCP) 124 included with the telephone network 108 to determine how to handle the incoming call. The SCP 124 accesses registration information from the registration service 122 to determine if the Client System 110 is registered as being connected to the Internet 104. Based on the registration information the SCP 124 instructs the SSP 116 on how to process the incoming call. For example, if the user is not connected to the Internet, the SSP 116 can supply a busy signal to the calling party 102 or notify the user of the incoming call using a Call Waiting system as is known in the art." 3:55-67. |
| | "If the registration information indicates that the user is connected to the Internet, the SCP 124 instructs the SSP 116 to route control signals of the incoming call via a signaling system network (SS7) 126 to a media gateway controller 130. The media gateway controller 130 dispatches calls coming into the Gateway System 106. A signaling gateway 132 connects between the media gateway controller 130 and the SS7 network 126 to convert SS7 protocol control signals to a protocol understood by the Gateway System 106, such as Transmission Control Protocol/Internet Protocol (TCP/IP), Stream Control Transmission Protocol (SCTP), or other network protocol." 4:8-19. |
| [1.3] storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | Huang discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network (e.g., the CACS stores a plurality of phone addresses for the user, such as the telephone number being used to connect to the Internet, the user's wireless telephone number, the IP address of the user's computer, and/or the telephone number of an alternative destination for the user). |
| | *See, e.g.:* |
| | "A Call Alerting and Control System is provided in a communication |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | environment to allow an Internet user ("user") approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection with the Internet. The monitored information can include the calling party's name and telephone number. The system could also allow the user to provide an answering machine-type message to the calling party and the user to listen to the calling party's response to the message while still connected to the Internet. The system can further allow the user to reroute, answer or otherwise treat the incoming call while, at the user's discretion, either maintaining or disconnecting a connection to the Internet."    Abstract.<br><br>"By way of introduction, the preferred embodiment described below includes a Call Alerting and Control System (CACS) that manages incoming calls from a calling party to an Internet user ("user") while the user maintains a connection to the Internet. CACS allows the user approximately real-time monitoring of information about an incoming call from a calling party. The information includes, for example, data about the calling party, and/or an opportunity for the user to listen to a calling party's response to an answering machine type message. In addition, CACS allows the user to listen to caller's voice before making further decisions about handling the call."    1:47-58.<br><br>"CACS operates within a communication environment. The communication environment includes a telephone network that receives incoming calls and determines whether the intended communication line is busy. If the telephone line of the user is busy, a Service Switching Point (SSP) included in the telephone network obtains instructions from the Service Control Point (SCP) for the incoming call. The SCP determines whether the user is connected to the Internet or the Internet-like packet-based data network. The SCP instructs the SSP to transfer the incoming call to a Gateway System if the user is connected to the Internet."    1:59-2:2.<br><br>"The CACS includes the Gateway System and a Client System. The Gateway System instructs the Client System to notify the user of the incoming call and prompts the user to choose a call handling option. For example, call handling |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | options include the option of listening to the calling party who leaves a message while the user maintains a connection with the Internet. Thereafter, CACS manages the incoming call in accordance with a user-selected call handling option or with a preset default option after timeout period elapses for the user to indicate a selected option."   2:3-12. |
| | "FIG. 1 illustrates a communication environment 100 including a CACS 101 that allows a user to monitor and manage in real time an incoming call from a calling party 102 while maintaining a connection with the Internet 104, or other packet-based data network. CACS 101 includes a Gateway System 106 that processes and controls incoming calls. The Gateway System 106 receives the incoming call from a telephone network 108 that forwards the incoming call to the Gateway System 106 when the user is connected to the Internet 104. The user connects to the Internet 104 via a computer 138 and user's telephone line 112. The CACS 101 also includes a Client System 110, for example, a Client System application 300 described in FIG. 3, that resides on user's computer 138."   3:15-28. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | <br><br>FIG.1<br><br>See Fig. 1 and associated text.<br><br>"Those skilled in the art will appreciate that although the system of FIG. 1 illustrates an SCP 124, a SSP 116, and a telephone line 112 as being components of one type of telephone system 108, the CACS 101 may function in conjunction with other types of telephone systems. For example, by replacing the SCP 124, SSP 116, and telephone line 112 with a Home Location Register, a Mobile Switching Center, and a Radio connection, respectively, the telephone network can be a wireless network. Also, the user's telephone 140 can be a wireless telephone, and the computer 138 a portable computer of varying forms. While present radio connections may not provide the same voice quality and data network access of a present wired connection, advancing technologies could soon raise the bandwidth of the radio connection, and optimize the utilization of |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | the radio connection." 4:34-49. |
| | "The popup window can also prompt the user to select a call handling option within a determined time. Call handling options include a selection to further screen the incoming call, to redirect the incoming call to a certain destination, to answer, the incoming call, or to otherwise treat the incoming call. If the user does not respond to the popup window within a determined time, the Gateway System automatically initiates a user-preset option, such as to route the incoming call to a voice messaging server 136 (FIG. 1) so that the calling party 102 can leave a message." 5:52-61. |
| | "Alternatively, at block 232, the user can redirect the incoming call during screening the call at state 228, or redirect the incoming call after being alerted of the call during the alerting state 214. When the Gateway System 106 redirects the call, the Gateway System application 200 enters in the reroute caller state 234. Depending on the content of the calling party's information and/or message, the user may redirect the incoming call by forwarding the call to an alternate communication line, such as the telephone number of a colleague or a fax machine (not shown). An alternative destination for redirecting the incoming call is to send the incoming call to the voice messaging server 136 and disconnect the call from the user without disconnecting the user's Internet connection at block 220." 6:59-7:5. |
| | "The user can also answer the incoming call. There are various ways to connect the user to the incoming call, including using the Gateway System 106 to connect the incoming call to the user via VoIP, or by first disconnecting the Internet connection and then connecting the call to user's telephone through the SSP 116 and the telephone line 112. If the incoming call is connected via VoIP, the incoming call includes circuit switched connections from the telephone network 108 to the Gateway System 106 and two-way packet switched connections from the Gateway System 106 to the Internet 104, to the RAS 114, to the SSP 116 and to the Client System 110." 7:21-32. |
| | "Alternatively, if the user chooses to disconnect from the Internet and answer the |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | incoming call using the user's telephone 140 (FIG. 1), the connection between the user and the calling party 102 can be an all circuit switched connection. After the user chooses to answer the call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the Gateway System 106 routes back the call to the telephone network 108 and further back to the user's telephone line 112. Typically, an all circuit switched connection provides a better quality connection between the calling party 102 and the user than a system that includes VoIP packet switching." 7:34-45. |
| | "At block 308, when the Gateway System 106 commands the Client System application 300 to alert the user of an incoming call, the Client System application 300 notifies the user of the incoming call. For example, a popup window is displayed on the monitor of user's computer 138 that contains the Client System 110. The popup window alerts the user of the incoming call 310 and shows the user information about the incoming call, such as a name and telephone number associated with the incoming call, or in lieu of a name, the calling location such as a city name. Preferably, the Client System 110 displays whatever information the Gateway System 106 provides. Also, the Gateway System 106 may establish a one-way VoIP connection with the media gateway 128 to play back a spoken name by the caller and earlier recorded by the Gateway System 110. If no information about the incoming call is available, the popup window can notify the user of that situation. The popup window also displays incoming call handling options to the user, such as whether the user would like the call rerouted or otherwise treated, and a timeout indicator to indicate to the user the time in which the user can choose an option." 8:44-65. |
| | "At block 312, if the user decides to further screen the incoming call, the Client System application 300 enters the screening state 314. In the screening state 314, the Client System application 300 initiates a one-way VoIP connection from the calling party 102 to the user. The Client System application 300 establishes the one-way VoIP connection via the Gateway System 106, and utilizes an audio system of the computer 138 that allows the user to listen to the calling party's |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | message contemporaneous with the calling party 102 leaving the message. The Client System 110 displays the call handling options to the user while the user listens to the incoming call. The call handling options include allowing the user to reroute, answer or otherwise treat the incoming call, or to detach from the incoming call." 8:66-9:12. |
| [1.4] participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | Huang discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address (e.g., the user may possess multiple telephones, including for example a wireless telephone, and may use the second telephone to dial the primary telephone). <br><br> See citations and discussion above in connection with claim limitation 1.3. |
| [1.5] placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | Huang discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address (e.g., the Gateway System establishes a connection with the Client System running on the user's computer and transmits the calling party information). <br><br> *See e.g.,* <br><br> "Calling party information, whether received from the call signaling, obtained from LIDB 134, the Gateway System's 106 internal cache, or information recorded from the caller, is sent to the Client System 110 when the Client System 110 can receive the information. At block 208, the Client System 110 may be busy in an alerting state or a screening state, described below, for another call. While the Client System 110 is busy in the alerting state or the screening state, the Gateway System application 200 remains in the queuing state 210. The Gateway System 106 may play a general announcement to the calling party 102 to advice the calling party 102 of a waiting period in case of a |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | queuing occurs that becomes noticeable to the calling party 102."    5:23-35.<br><br>"At block 212, when the Client System 110 becomes available, or at block 213 or 214, if the Client System 110 was available at the end of the query or if no query is possible, the media gateway controller 130 in the Gateway System 106 prompts the Client System 110 to alert the user of the incoming call 214. As part of the alerting process 214, the media gateway 128 can send, or stream, the collected spoken calling party name to the Client System 110 for play back, if applicable. The Client System 110 preferably initiates a popup window to display the calling party information. For example, in a Microsoft Windows environment, the Internet user can be notified of the incoming call with a popup window that displays the calling party information and may also sound a beep to alert the user. The calling party's voice, if applicable, can be played at the same time."    5:37-51.<br><br>"The popup window can also prompt the user to select a call handling option within a determined time. Call handling options include a selection to further screen the incoming call, to redirect the incoming call to a certain destination, to answer, the incoming call, or to otherwise treat the incoming call. If the user does not respond to the popup window within a determined time, the Gateway System automatically initiates a user-preset option, such as to route the incoming call to a voice messaging server 136 (FIG. 1) so that the calling party 102 can leave a message."    5:52-61.<br><br>"At block 308, when the Gateway System 106 commands the Client System application 300 to alert the user of an incoming call, the Client System application 300 notifies the user of the incoming call. For example, a popup window is displayed on the monitor of user's computer 138 that contains the Client System 110. The popup window alerts the user of the incoming call 310 and shows the user information about the incoming call, such as a name and telephone number associated with the incoming call, or in lieu of a name, the calling location such as a city name. Preferably, the Client System 110 displays whatever information the Gateway System 106 provides. Also, the Gateway |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | System 106 may establish a one-way VoIP connection with the media gateway 128 to play back a spoken name by the caller and earlier recorded by the Gateway System 110. If no information about the incoming call is available, the popup window can notify the user of that situation. The popup window also displays incoming call handling options to the user, such as whether the user would like the call rerouted or otherwise treated, and a timeout indicator to indicate to the user the time in which the user can choose an option."    8:44-65. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [1.6] bridging the first call and the first outcall; | Huang discloses bridging the first call and the first outcall (e.g., the Gateway System connects the incoming call to the user's computer). |
| | *See, e.g.*: |
| | "Those skilled in the art will appreciate that although the system of FIG. 1 illustrates an SCP 124, a SSP 116, and a telephone line 112 as being components of one type of telephone system 108, the CACS 101 may function in conjunction with other types of telephone systems. For example, by replacing the SCP 124, SSP 116, and telephone line 112 with a Home Location Register, a Mobile Switching Center, and a Radio connection, respectively, the telephone network can be a wireless network. Also, the user's telephone 140 can be a wireless telephone, and the computer 138 a portable computer of varying forms. While present radio connections may not provide the same voice quality and data network access of a present wired connection, advancing technologies could soon raise the bandwidth of the radio connection, and optimize the utilization of the radio connection." 4:34-49. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | "Alternatively, at block 232, the user can redirect the incoming call during screening the call at state 228, or redirect the incoming call after being alerted of the call during the alerting state 214. When the Gateway System 106 redirects the call, the Gateway System application 200 enters in the reroute caller state 234. Depending on the content of the calling party's information and/or message, the user may redirect the incoming call by forwarding the call to an alternate communication line, such as the telephone number of a colleague or a fax machine (not shown). An alternative destination for redirecting the incoming call is to send the incoming call to the voice messaging server 136 and disconnect the call from the user without disconnecting the user's Internet connection at block 220." 6:59-7:5. |
| | "The user can also answer the incoming call. There are various ways to connect the user to the incoming call, including using the Gateway System 106 to connect the incoming call to the user via VoIP, or by first disconnecting the Internet connection and then connecting the call to user's telephone through the SSP 116 and the telephone line 112. If the incoming call is connected via VoIP, the incoming call includes circuit switched connections from the telephone network 108 to the Gateway System 106 and two-way packet switched connections from the Gateway System 106 to the Internet 104, to the RAS 114, to the SSP 116 and to the Client System 110." 7:21-32. |
| | "Alternatively, if the user chooses to disconnect from the Internet and answer the incoming call using the user's telephone 140 (FIG. 1), the connection between the user and the calling party 102 can be an all circuit switched connection. After the user chooses to answer the call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the Gateway System 106 routes back the call to the telephone network 108 and further back to the user's telephone line 112. Typically, an all circuit switched connection provides a better quality connection between the calling party 102 and the user than a system that includes VoIP packet switching." 7:34-45. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| [1.7] participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | Huang discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address (e.g., the user may possess multiple telephones, and the user may place a second call to the primary telephone number using a third telephone).

See citations and discussion above in connection with claim limitation 1.4.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [1.8] placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | Huang discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address (e.g., the Gateway System establishes a connection with the Client System running on the user's computer and transmits the calling party information).

See citations and discussion above in connection to claim limitation 1.5.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| [1.9] bridging the second call and the second outcall. | Huang discloses bridging the second call and the second outcall (e.g., the Gateway System connects the incoming call to the user's computer).<br><br>See citations and discussion above in connection with claim limitation 1.6. |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | Huang discloses the method of claim 1, wherein the first call is initiated by the subscriber (e.g., the user may place a phone call to a desired destination).<br><br>See claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 1.3.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | Huang discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition (e.g., an unconditional call forwarding service is activated for the user's voice line).<br><br>See claim 1 above. |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | *Furthermore, see, e.g.,* |
| | "FIG. 1 illustrates a communication environment 100 including a CACS 101 that allows a user to monitor and manage in real time an incoming call from a calling party 102 while maintaining a connection with the Internet 104, or other packet-based data network. CACS 101 includes a Gateway System 106 that processes and controls incoming calls. The Gateway System 106 receives the incoming call from a telephone network 108 that forwards the incoming call to the Gateway System 106 when the user is connected to the Internet 104. The user connects to the Internet 104 via a computer 138 and user's telephone line 112. The CACS 101 also includes a Client System 110, for example, a Client System application 300 described in FIG. 3, that resides on user's computer 138." 3:15-28. |
| | "The Client System 110 preferably reports a user specified configuration to the Gateway System 106 that then notifies the SCP 124 of the configuration for controlling the SSP 116. An unconditional forwarding service may be activated for the voice line(s) 402. Therefore, calls for the voice line(s) 402 can be forwarded to the Gateway System 106 and screening and control can be performed over the data line 404. Subsequently, if the user decides to answer the call over the voice line(s) 402, then the Gateway System 106, again working through SCP 124 and SSP 116, overrides the unconditional forwarding service of the voice line(s) 402, and reroutes the call to the user via the voice line 402." 9:52-63. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | Huang discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling (e.g., the incoming call's control signals are sent to the CACS using the SS7 network). |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | *See* claim 1 above. |
| | *Furthermore, see, e.g.,* |
| | "If the registration information indicates that the user is connected to the Internet, the SCP 124 instructs the SSP 116 to route control signals of the incoming call via a signaling system network (SS7) 126 to a media gateway controller 130. The media gateway controller 130 dispatches calls coming into the Gateway System 106. A signaling gateway 132 connects between the media gateway controller 130 and the SS7 network 126 to convert SS7 protocol control signals to a protocol understood by the Gateway System 106, such as Transmission Control Protocol/Internet Protocol (TCP/IP), Stream Control Transmission Protocol (SCTP), or other network protocol." 4:8-19. |
| | "Those skilled in the art will appreciate that the LIDB 134 can produce the calling party information according to a given calling party's telephone number, unless that number is not associated with a telephone user, such as a street payphone. In that case, the Gateway System application 200 may at least derive from a Gateway System database the location information of the origin of the call, such as calling city and state. The LIDB 134 can be a remote system that connects with the Gateway System 106 via the signaling gateway 132 and the SS7 network 126. Alternatively, historical LIDB 134 query results can be cached in the Gateway System 106 for a certain period of time to improve the performance. While the Gateway System 106 obtains the calling party information, the Gateway System application 200 remains in an obtain-name state 206 until the query has ended." 4:34-49. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | Huang discloses the method of claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber (e.g., the user's computer is capable of using a VoIP client). |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
|  | *See* claim 1 above. |
|  | *Furthermore, see, e.g.,* |
|  | "At block 212, when the Client System 110 becomes available, or at block 213 or 214, if the Client System 110 was available at the end of the query or if no query is possible, the media gateway controller 130 in the Gateway System 106 prompts the Client System 110 to alert the user of the incoming call 214. As part of the alerting process 214, the media gateway 128 can send, or stream, the collected spoken calling party name to the Client System 110 for play back, if applicable. The Client System 110 preferably initiates a popup window to display the calling party information. For example, in a Microsoft Windows environment, the Internet user can be notified of the incoming call with a popup window that displays the calling party information and may also sound a beep to alert the user. The calling party's voice, if applicable, can be played at the same time."   5:37-51. |
|  | "At block 226, if the user decides to screen the incoming call, the media gateway 128 plays an announcement that prompts the calling party 102 to leave a message. The announcement is preferably a request for the calling party 102 to record a short message including the calling party's name and a brief description of the intended topic of conversation. During a screening state 228, the user can listen to the calling party's response via a packet-switched telephony protocol, for example, in the case of Internet, a Voice Over Internet Protocol (VoIP) such as Real-time Transport Protocol (RTP). The connection is preferably a one-way connection allowing the user to listen to the calling party but not the calling party to the user. The connection can optionally be changed to a two-way connection at a later stage of the incoming call. While various VoIP protocols can be selected, exemplary VoIPs include Session Initiation Protocol (SIP) specified by the Internet Engineering Task Force (IETF) and H.323 specified by the International Telecommunication Union ITU. The selected protocol converts a circuit-switched voice connection used by the telephone network 108 to a packet switched voice connection that the user can hear while maintaining a |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | connection with the Internet."    6:19-41. |
| | "At block 308, when the Gateway System 106 commands the Client System application 300 to alert user of an incoming call, the Client System application 300 notifies the user of the incoming call. For example, a popup window is displayed on the monitor of user's computer 138 that contains the Client System 110. The popup window alerts the user of the incoming call 310 and shows the user information about the incoming call, such as a name and telephone number associated with the incoming call, or in lieu of a name, the calling location such as a city name. Preferably, the Client System 110 displays whatever information the Gateway System 106 provides. Also, the Gateway System 106 may establish a one-way VoIP connection with the media gateway 128 to play back a spoken name by the caller and earlier recorded by the Gateway System 110. If no information about the incoming call is available, the popup window can notify the user of that situation. The popup window also displays incoming call handling options to the user, such as whether the user would like the call rerouted or otherwise treated, and a timeout indicator to indicate to the user the time in which the user can choose an option."    8:44-65. |
| | "At block 312, if the user decides to further screen the incoming call, the Client System application 300 enters the screening state 314. In the screening state 314, the Client System application 300 initiates a one-way VoIP connection from the calling party 102 to the user. The Client System application 300 establishes the one-way VoIP connection via the Gateway System 106, and utilizes an audio system of the computer 138 that allows the user to listen to the calling party's message contemporaneous with the calling party 102 leaving the message. The Client System 110 displays the call handling options to the user while the user listens to the incoming call. The call handling options include allowing the user to reroute, answer or otherwise treat the incoming call, or to detach from the incoming call."    8:66-9:12. |
| | To the extent that Plaintiff contends this prior art reference does not specifically |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | Huang discloses the method of claim 1, wherein the signaling information associated with the first outcall is SIP signaling (e.g., the outgoing call by the CACS Gateway System may use the SIP protocol).

*See* claim 1 above.

*Furthermore, see e.g.,*

"At block 226, if the user decides to screen the incoming call, the media gateway 128 plays an announcement that prompts the calling party 102 to leave a message. The announcement is preferably a request for the calling party 102 to record a short message including the calling party's name and a brief description of the intended topic of conversation. During a screening state 228, the user can listen to the calling party's response via a packet-switched telephony protocol, for example, in the case of Internet, a Voice Over Internet Protocol (VoIP) such as Real-time Transport Protocol (RTP). The connection is preferably a one-way connection allowing the user to listen to the calling party but not the calling party to the user. The connection can optionally be changed to a two-way connection at a later stage of the incoming call. While various VoIP protocols can be selected, exemplary VoIPs include Session Initiation Protocol (SIP) specified by the Internet Engineering Task Force (IETF) and H.323 specified by the International Telecommunication Union ITU. The selected protocol converts a circuit-switched voice connection used by the telephone network 108 to a packet switched voice connection that the user can hear while maintaining a connection with the Internet." |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | Huang discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network (e.g., the Gateway System may place a VoIP call over the Internet).<br><br>*See* claim 1 above.<br><br>*Furthermore, see, e.g.,*<br><br>"At block 212, when the Client System 110 becomes available, or at block 213 or 214, if the Client System 110 was available at the end of the query or if no query is possible, the media gateway controller 130 in the Gateway System 106 prompts the Client System 110 to alert the user of the incoming call 214. As part of the alerting process 214, the media gateway 128 can send, or stream, the collected spoken calling party name to the Client System 110 for play back, if applicable. The Client System 110 preferably initiates a popup window to display the calling party information. For example, in a Microsoft Windows environment, the Internet user can be notified of the incoming call with a popup window that displays the calling party information and may also sound a beep to alert the user. The calling party's voice, if applicable, can be played at the same time."  5:37-51.<br><br>"At block 226, if the user decides to screen the incoming call, the media gateway 128 plays an announcement that prompts the calling party 102 to leave a message. The announcement is preferably a request for the calling party 102 to record a short message including the calling party's name and a brief description of the intended topic of conversation. During a screening state 228, the user can listen to the calling party's response via a packet-switched telephony protocol, for example, in the case of Internet, a Voice Over Internet Protocol (VoIP) such as Real-time Transport Protocol (RTP). The connection is preferably a one-way connection allowing the user to listen to the calling party but not the calling party to the user. The connection can optionally be changed to a two-way |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | connection at a later stage of the incoming call. While various VoIP protocols can be selected, exemplary VoIPs include Session Initiation Protocol (SIP) specified by the Internet Engineering Task Force (IETF) and H.323 specified by the International Telecommunication Union ITU. The selected protocol converts a circuit-switched voice connection used by the telephone network 108 to a packet switched voice connection that the user can hear while maintaining a connection with the Internet."   6:19-41.

"At block 308, when the Gateway System 106 commands the Client System application 300 to alert the user of an incoming call, the Client System application 300 notifies the user of the incoming call. For example, a popup window is displayed on the monitor of user's computer 138 that contains the Client System 110. The popup window alerts the user of the incoming call 310 and shows the user information about the incoming call, such as a name and telephone number associated with the incoming call, or in lieu of a name, the calling location such as a city name. Preferably, the Client System 110 displays whatever information the Gateway System 106 provides. Also, the Gateway System 106 may establish a one-way VoIP connection with the media gateway 128 to play back a spoken name by the caller and earlier recorded by the Gateway System 110. If no information about the incoming call is available, the popup window can notify the user of that situation. The popup window also displays incoming call handling options to the user, such as whether the user would like the call rerouted or otherwise treated, and a timeout indicator to indicate to the user the time in which the user can choose an option."   8:44-65.

"At block 312, if the user decides to further screen the incoming call, the Client System application 300 enters the screening state 314. In the screening state 314, the Client System application 300 initiates a one-way VoIP connection from the calling party 102 to the user. The Client System application 300 establishes the one-way VoIP connection via the Gateway System 106, and utilizes an audio system of the computer 138 that allows the user to listen to the calling party's message contemporaneous with the calling party 102 leaving the message. The Client System 110 displays the call handling options to the user while the user |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | listens to the incoming call. The call handling options include allowing the user to reroute, answer or otherwise treat the incoming call, or to detach from the incoming call." 8:66-9:12. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | Huang discloses the method of claim 1, wherein the first outcall is placed over a wireless network (e.g., the Gateway System may connect to the Client System using a wireless network). |
| | *See* claim 1 above. |
| | *Furthermore, see, e.g.,* |
| | "Those skilled in the art will appreciate that although the system of FIG. 1 illustrates an SCP 124, a SSP 116, and a telephone line 112 as being components of one type of telephone system 108, the CACS 101 may function in conjunction with other types of telephone systems. For example, by replacing the SCP 124, SSP 116, and telephone line 112 with a Home Location Register, a Mobile Switching Center, and a Radio connection, respectively, the telephone network can be a wireless network. Also, the user's telephone 140 can be a wireless telephone, and the computer 138 a portable computer of varying forms. While present radio connections may not provide the same voice quality and data network access of a present wired connection, advancing technologies could soon raise the bandwidth of the radio connection, and optimize the utilization of the radio connection." 4:34-49. |
| | "Alternatively, at block 232, the user can redirect the incoming call during screening the call at state 228, or redirect the incoming call after being alerted of the call during the alerting state 214. When the Gateway System 106 redirects the call, the Gateway System application 200 enters in the reroute caller state 234. Depending on the content of the calling party's information and/or message, the user may redirect the incoming call by forwarding the call to an alternate communication line, such as the telephone number of a colleague or a fax |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | machine (not shown). An alternative destination for redirecting the incoming call is to send the incoming call to the voice messaging server 136 and disconnect the call from the user without disconnecting the user's Internet connection at block 220." 6:59-7:5.<br><br>"The user can also answer the incoming call. There are various ways to connect the user to the incoming call, including using the Gateway System 106 to connect the incoming call to the user via VoIP, or by first disconnecting the Internet connection and then connecting the call to user's telephone through the SSP 116 and the telephone line 112. If the incoming call is connected via VoIP, the incoming call includes circuit switched connections from the telephone network 108 to the Gateway System 106 and two-way packet switched connections from the Gateway System 106 to the Internet 104, to the RAS 114, to the SSP 116 and to the Client System 110." 7:21-32.<br><br>"Alternatively, if the user chooses to disconnect from the Internet and answer the incoming call using the user's telephone 140 (FIG. 1), the connection between the user and the calling party 102 can be an all circuit switched connection. After the user chooses to answer the call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the Gateway System 106 routes back the call to the telephone network 108 and further back to the user's telephone line 112. Typically, an all circuit switched connection provides a better quality connection between the calling party 102 and the user than a system that includes VoIP packet switching." 7:34-45. |
| | |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | Huang discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network (e.g., the Gateway System may connect to the Client System using a circuit switched network or a packet switched network). |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | *See* claim 1 above. |
| | *Furthermore, see, e.g.,* |
| | "Those skilled in the art will appreciate that although the system of FIG. 1 illustrates an SCP 124, a SSP 116, and a telephone line 112 as being components of one type of telephone system 108, the CACS 101 may function in conjunction with other types of telephone systems. For example, by replacing the SCP 124, SSP 116, and telephone line 112 with a Home Location Register, a Mobile Switching Center, and a Radio connection, respectively, the telephone network can be a wireless network. Also, the user's telephone 140 can be a wireless telephone, and the computer 138 a portable computer of varying forms. While present radio connections may not provide the same voice quality and data network access of a present wired connection, advancing technologies could soon raise the bandwidth of the radio connection, and optimize the utilization of the radio connection." 4:34-49. |
| | "Alternatively, at block 232, the user can redirect the incoming call during screening the call at state 228, or redirect the incoming call after being alerted of the call during the alerting state 214. When the Gateway System 106 redirects the call, the Gateway System application 200 enters in the reroute caller state 234. Depending on the content of the calling party's information and/or message, the user may redirect the incoming call by forwarding the call to an alternate communication line, such as the telephone number of a colleague or a fax machine (not shown). An alternative destination for redirecting the incoming call is to send the incoming call to the voice messaging server 136 and disconnect the call from the user without disconnecting the user's Internet connection at block 220." 6:59-7:5. |
| | "The user can also answer the incoming call. There are various ways to connect the user to the incoming call, including using the Gateway System 106 to connect the incoming call to the user via VoIP, or by first disconnecting the |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
|  | Internet connection and then connecting the call to user's telephone through the SSP 116 and the telephone line 112. If the incoming call is connected via VoIP, the incoming call includes circuit switched connections from the telephone network 108 to the Gateway System 106 and two-way packet switched connections from the Gateway System 106 to the Internet 104, to the RAS 114, to the SSP 116 and to the Client System 110." 7:21-32. |
|  | "Alternatively, if the user chooses to disconnect from the Internet and answer the incoming call using the user's telephone 140 (FIG. 1), the connection between the user and the calling party 102 can be an all circuit switched connection. After the user chooses to answer the call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the Gateway System 106 routes back the call to the telephone network 108 and further back to the user's telephone line 112. Typically, an all circuit switched connection provides a better quality connection between the calling party 102 and the user than a system that includes VoIP packet switching." 7:34-45. |
|  | "FIG. 4 illustrates another type of communication circuit 400 that supports multiple frequency bands and/or multiple digital channels. The communication circuit 400 supports separate logical voice line(s) 402 and a data line 404, such as in case of a digital subscriber line (DSL) or an integrated services digital network (ISDN) line. In accordance with the process described above, the data line 402 can provide screening and control for the voice line(s) 404. The communication circuit 400 connects between the SSP 116 and a frequency splitter or ISDN terminal 406 to provide for a separate logical data line to the computer 138 (FIG. 1) and a separate logical voice line to the user's telephone 140. Unlike the single-channel telephone line 112, a potential conflict may not exist between the usage of voice and data communication competing for the same telephone line 112. The user, however, may still want to screen and/or control separate voice line(s) 402 from the data line 404. Therefore, the above described system and method allow the user to specify, through the Client System 110, the voice line(s) 402 to be included in the screening and control." |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | 9:31-50. |
| [11.1] The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| [11.2] receiving at the call processing system a third call from a calling party directed to the first phone address; | Huang discloses receiving at the call processing system (e.g., the CACS) a third call from a calling party directed to the first phone address (e.g., an incoming call directed to the user's telephone line). |
| | *See* claim 1 above. |
| | *Furthermore, see, e.g.,* |
| | "A Call Alerting and Control System is provided in a communication environment to allow an Internet user ('user') approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection with the Internet. The monitored information can include the calling party's name and telephone number. The system could also allow the user to provide an answering machine-type message to the calling party and the user to listen to the calling party's response to the message while still connected to the Internet. The system can further allow the user to reroute, answer or otherwise treat the incoming call while, at the user's discretion, either maintaining or disconnecting a connection to the Internet."    Abstract. |
| | "By way of introduction, the preferred embodiment described below includes a Call Alerting and Control System (CACS) that manages incoming calls from a calling party to an Internet user ('user') while the user maintains a connection to the Internet. CACS allows the user approximately real-time monitoring of information about an incoming call from a calling party. The information includes, for example, data about the calling party, and/or an opportunity for the user to listen to a calling party's response to an answering machine type message. In addition, CACS allows the user to listen to caller's voice before |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | making further decisions about handling the call."    1:47-58. |
| | "CACS operates within a communication environment. The communication environment includes a telephone network that receives incoming calls and determines whether the intended communication line is busy. If the telephone line of the user is busy, a Service Switching Point (SSP) included in the telephone network obtains instructions from the Service Control Point (SCP) for the incoming call. The SCP determines whether the user is connected to the Internet or the Internet-like packet-based data network. The SCP instructs the SSP to transfer the incoming call to a Gateway System if the user is connected to the Internet."    1:59-2:2. |
| | "The CACS includes the Gateway System and a Client System. The Gateway System instructs the Client System to notify the user of the incoming call and prompts the user to choose a call handling option. For example, call handling options include the option of listening to the calling party who leaves a message while the user maintains a connection with the Internet. Thereafter, CACS manages the incoming call in accordance with a user-selected call handling option or with a preset default option after timeout period elapses for the user to indicate a selected option."    2:3-12. |
| | "FIG. 1 illustrates a communication environment 100 including a CACS 101 that allows a user to monitor and manage in real time an incoming call from a calling party 102 while maintaining a connection with the Internet 104, or other packet-based data network. CACS 101 includes a Gateway System 106 that processes and controls incoming calls. The Gateway System 106 receives the incoming call from a telephone network 108 that forwards the incoming call to the Gateway System 106 when the user is connected to the Internet 104. The user connects to the Internet 104 via a computer 138 and user's telephone line 112. The CACS 101 also includes a Client System 110, for example, a Client System application 300 described in FIG. 3, that resides on user's computer 138."    3:15-28. |

29

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | See Fig. 1 and associated text. |
| [11.3] reading at least one subscriber specified rule from computer readable memory; and | Huang discloses reading at least one subscriber specified rule from computer readable memory (e.g., the user may specify call processing rules in a whitelist and/or blacklist that is necessarily stored on the Gateway System's memory as software). |
| | *See* claim 1 above. |
| | "FIG. 2 shows a state diagram illustrating an exemplary Gateway System application 200 included with the Gateway System 106 (FIG. 1) of the CACS 101 to handle incoming calls. The application 200 includes a program or process that can be implemented with software residing mostly in the Media Gateway Controller 130. The Gateway System application 200 remains in the null state 202 regarding to a specific user until the Gateway System 106 receives an incoming call for the calling party 102. As described above, the Gateway System 106 receives an incoming call when the communication line 112 of the Client System 110 is busy and the registration service 122 lists the user as being connected to the Internet 104." 4:50-62. |
| | "After the calling party 102 calls the user, if the telephone line 112 is busy, the SSP 116 queries a Service Control Point (SCP) 124 included with the telephone network 108 to determine how to handle the incoming call. The SCP 124 accesses registration information from the registration service 122 to determine if the Client System 110 is registered as being connected to the Internet 104. Based on the registration information the SCP 124 instructs the SSP 116 on how to process the incoming call. For example, if the user is not connected to the Internet, the SSP 116 can supply a busy signal to the calling party 102 or notify the user of the incoming call using a Call Waiting system as is known in the art." 3:55-67. |
| | "Alternatively, at block 232, the user can redirect the incoming call during screening the call at state 228, or redirect the incoming call after being alerted of the call during the alerting state 214. When the Gateway System 106 redirects |

30

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | the call, the Gateway System application 200 enters in the reroute caller state 234. Depending on the content of the calling party's information and/or message, the user may redirect the incoming call by forwarding the call to an alternate communication line, such as the telephone number of a colleague or a fax machine (not shown). An alternative destination for redirecting the incoming call is to send the incoming call to the voice messaging server 136 and disconnect the call from the user without disconnecting the user's Internet connection at block 220." 6:59-7:5. |
| | "In addition to the above, in a preferred embodiment the Gateway System 106 can also process an incoming call and automatically handle the incoming call upon receipt, before notifying the user. In a preferred embodiment, to process the incoming call, the Gateway System 106 determines whether a telephone number or other criteria about the incoming call is included in a user-defined list. User defined lists include a blacklist (e.g., undesired callers) and a white list (e.g., callers that may need immediate circuit-switched call connections) previously established by the user." 7:47-56. |
| | "At block 238, if the Gateway System 106 determines that a telephone number of the incoming call is included in a treating portion of the blacklist, the Gateway System application enters the treating state 218 to automatically treat the call, for example, by disconnecting the call. Before disconnecting the call, the Gateway System 106 may or may not play a terminating announcement. At block 240, if the Gateway System 106 determines that the incoming call number is included in a reroute portion of the blacklist, the Gateway System 106 can automatically reroute the incoming call 234, for example, by routing the incoming call to an alternate destination, such as to the telephone number of a colleague, or a messaging server 136. The treating and rerouting operations may occur automatically, with or without the user being notified." 7:57-8:4. |
| | "In addition, the user can establish a white list of incoming calls that should be directly connected to the user. When the Gateway System 106 determines that a call is a white list call, the Gateway System 106 commands the Client System |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the incoming call is routed to user via telephone network 108 and user's telephone line 112." 8:5-12. |
| [11.4] based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | Huang discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule (e.g., an incoming call may be automatically rerouted to an alternate destination, such as the telephone number of a colleague or the telephone number for the user's fax machine, by the Gateway System if the incoming call number is determined to be included in a reroute portion of the blacklist).

*See* claim 1 above.

Furthermore, see citations and discussion above in connection with claim limitation 11.3. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | Huang discloses the method of claim 1, further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication (e.g., the Gateway System may place a VoIP call over the Internet).

*See* claim 1 above.

Furthermore, see citations and discussion above in connection with claim 8.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

32

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | Huang discloses the method of claim 1, further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall (e.g., the Gateway System may place a VoIP call over the Internet). *See* claim 1 above. Furthermore, see citations and discussion above in connection with claim 8. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | Huang discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address (e.g., the CACS stores a plurality of phone addresses for the user, such as the telephone number being used to connect to the Internet, the user's wireless telephone number, the IP address of the user's computer, and/or the telephone number of an alternate communication line for the user). *See* claim 1 above. Furthermore, see citations and discussion above in connection with claim limitation 1.3. |
| | |

33

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | Huang discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber (e.g., the CACS system uses VoIP and the SIP protocol, with the SIP protocol necessarily requiring the use of a SIP address).

*See* claim 1 above.

Furthermore, see citations and discussion above in connection with claim 6. |
| | |
| [17.1] A method of processing calls, the method comprising: | *See* claim 1 above. |
| [17.2] receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | Huang discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called (e.g., the user's computer is capable of using a VoIP client).

See citations and discussion above in connection with claim 6.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [17.3] at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with | Huang discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user (e.g., the Gateway System establishes a connection with the Client System |

34

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| the user; | running on the user's computer and transmits the calling party information).<br><br>See citations and discussion above in connection with claim limitation 1.5. |
| [17.4] placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Huang discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user (e.g., the Gateway System establishes a connection with the Client System running on the user's computer and transmits the calling party information).<br><br>See citations and discussion above in connection with claim limitation 1.8.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [17.5] causing the first outcall and the second outcall to be connected. | Huang discloses causing the first outcall and the second outcall to be connected (e.g., the Gateway System may bridge two calls together).<br><br>See citations and discussion above in connection with claim limitation 1.6. |
| | |
| 18. The method as defined in claim 17, wherein | Huang discloses the method of claim 17, wherein the user telephone is a landline phone (e.g., the user may use a telephone connected to a wired telephone |

35

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| the user telephone is a landline phone. | network). |
| | *See* claim 17 above. |
| | *See* claim 10 above. |
| | *Furthermore, see, e.g.,* |
| | "FIG. 1 illustrates a communication environment 100 including a CACS 101 that allows a user to monitor and manage in real time an incoming call from a calling party 102 while maintaining a connection with the Internet 104, or other packet-based data network. CACS 101 includes a Gateway System 106 that processes and controls incoming calls. The Gateway System 106 receives the incoming call from a telephone network 108 that forwards the incoming call to the Gateway System 106 when the user is connected to the Internet 104. The user connects to the Internet 104 via a computer 138 and user's telephone line 112. The CACS 101 also includes a Client System 110, for example, a Client System application 300 described in FIG. 3, that resides on user's computer 138." 3:15-28. |
| | See Fig. 1 and associated text. |
| | "The user can also answer the incoming call. There are various ways to connect the user to the incoming call, including using the Gateway System 106 to connect the incoming call to the user via VoIP, or by first disconnecting the Internet connection and then connecting the call to user's telephone through the SSP 116 and the telephone line 112. If the incoming call is connected via VoIP, the incoming call includes circuit switched connections from the telephone network 108 to the Gateway System 106 and two-way packet switched connections from the Gateway System 106 to the Internet 104, to the RAS 114, to the SSP 116 and to the Client System 110." 7:21-32. |
| | "Alternatively, if the user chooses to disconnect from the Internet and answer the incoming call using the user's telephone 140 (FIG. 1), the connection between the user and the calling party 102 can be all circuit switched connection. After |

36

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | the user chooses to answer the call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the Gateway System 106 routes back the call to the telephone network 108 and further back to the user's telephone line 112. Typically, an all circuit switched connection provides a better quality connection between the calling party 102 and the user than a system that includes VoIP packet switching." 7:34-45. |
| | "FIG. 4 illustrates another type of communication circuit 400 that supports multiple frequency bands and/or multiple digital channels. The communication circuit 400 supports separate logical voice line(s) 402 and a data line 404, such as in case of a digital subscriber line (DSL) or an integrated services digital network (ISDN) line. In accordance with the process described above, the data line 402 can provide screening and control for the voice line(s) 404. The communication circuit 400 connects between the SSP 116 and a frequency splitter or ISDN terminal 406 to provide for a separate logical data line to the computer 138 (FIG. 1) and a separate logical voice line to the user's telephone 140. Unlike the single-channel telephone line 112, a potential conflict may not exist between the usage of voice and data communication competing for the same telephone line 112. The user, however, may still want to screen and/or control separate voice line(s) 402 from the data line 404. Therefore, the above described system and method allow the user to specify, through the Client System 110, the voice line(s) 402 to be included in the screening and control." 9:31-50. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | Huang discloses the method of claim 17, wherein the user telephone is a mobile phone (e.g., the user may use a wireless telephone).

*See* claim 17 above.

*Furthermore, see e.g.,* |

37

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|---|
| | | "Those skilled in the art will appreciate that although the system of FIG. 1 illustrates an SCP 124, a SSP 116, and a telephone line 112 as being components of one type of telephone system 108, the CACS 101 may function in conjunction with other types of telephone systems. For example, by replacing the SCP 124, SSP 116, and telephone line 112 with a Home Location Register, a Mobile Switching Center, and a Radio connection, respectively, the telephone network can be a wireless network. Also, the user's telephone 140 can be a wireless telephone, and the computer 138 a portable computer of varying forms. While present radio connections may not provide the same voice quality and data network access of a present wired connection, advancing technologies could soon raise the bandwidth of the radio connection, and optimize the utilization of the radio connection." 4:34-49. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | | Huang discloses the method of claim 17, wherein the user telephone is an Internet protocol phone (e.g., the user may use a VoIP telephone).<br><br>*See* claim 17 above.<br><br>*Furthermore, see, e.g.,*,<br><br>"The CACS includes the Gateway System and a Client System. The Gateway System instructs the Client System to notify the user of the incoming call and prompts the user to choose a call handling option. For example, call handling options include the option of listening to the calling party who leaves a message while the user maintains a connection with the Internet. Thereafter, CACS manages the incoming call in accordance with a user-selected call handling option or with a preset default option after timeout period elapses for the user to indicate a selected option."    2:3-12.<br><br>"A Call Alerting and Control System (CACS) is provided in a communication |

38

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | environment that allows an Internet user ("user") approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection to the Internet. The information includes, for example, data about the calling party, such as the calling party's name and telephone number, and an opportunity for the user to listen to a calling party's response to an answering machine-like messaging system while the user is still connected to the Internet. CACS also allows the user to reroute, treat or otherwise answer the incoming call by, at the user's choice, either maintaining or disconnecting the user's connection to the Internet."    2:60-3:5.<br><br>"FIG. 1 illustrates a communication environment 100 including a CACS 101 that allows a user to monitor and manage in real time an incoming call from a calling party 102 while maintaining a connection with the Internet 104, or other packet-based data network. CACS 101 includes a Gateway System 106 that processes and controls incoming calls. The Gateway System 106 receives the incoming call from a telephone network 108 that forwards the incoming call to the Gateway System 106 when the user is connected to the Internet 104. The user connects to the Internet 104 via a computer 138 and user's telephone line 112. The CACS 101 also includes a Client System 110, for example, a Client System application 300 described in FIG. 3, that resides on user's computer 138."    3:15-28.<br><br>"Those skilled in the art will appreciate that although the system of FIG. 1 illustrates an SCP 124, a SSP 116, and a telephone line 112 as being components of one type of telephone system 108, the CACS 101 may function in conjunction with other types of telephone systems. For example, by replacing the SCP 124, SSP 116, and telephone line 112 with a Home Location Register, a Mobile Switching Center, and a Radio connection, respectively, the telephone network can be a wireless network. Also, the user's telephone 140 can be a wireless telephone, and the computer 138 a portable computer of varying forms. While present radio connections may not provide the same voice quality and data network access of a present wired connection, advancing technologies could soon raise the bandwidth of the radio connection, and optimize the utilization of |

39

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | the radio connection." 4:34-49. |
| | "The popup window can also prompt the user to select a call handling option within a determined time. Call handling options include a selection to further screen the incoming call, to redirect the incoming call to a certain destination, to answer the incoming call, or to otherwise treat the incoming call. If the user does not respond to the popup window within a determined time, the Gateway System automatically initiates a user-preset option, such as to route the incoming call to a voice messaging server 136 (FIG. 1) so that the calling party 102 can leave a message." 5:52-61. |
| | "Alternatively, at block 232, the user can redirect the incoming call during screening the call at state 228, or redirect the incoming call after being alerted of the call during the alerting state 214. When the Gateway System 106 redirects the call, the Gateway System application 200 enters in the reroute caller state 234. Depending on the content of the calling party's information and/or message, the user may redirect the incoming call by forwarding the call to an alternate communication line, such as the telephone number of a colleague or a fax machine (not shown). An alternative destination for redirecting the incoming call is to send the incoming call to the voice messaging server 136 and disconnect the call from the user without disconnecting the user's Internet connection at block 220." 6:59-7:5. |
| | "The user can also answer the incoming call. There are various ways to connect the user to the incoming call, including using the Gateway System 106 to connect the incoming call to the user via VoIP, or by first disconnecting the Internet connection and then connecting the call to user's telephone through the SSP 116 and the telephone line 112. If the incoming call is connected via VoIP, the incoming call includes circuit switched connections from the telephone network 108 to the Gateway System 106 and two-way packet switched connections from the Gateway System 106 to the Internet 104, to the RAS 114, to the SSP 116 and to the Client System 110." 7:21-32. |
| | "Alternatively, if the user chooses to disconnect from the Internet and answer the |

40

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | incoming call using the user's telephone 140 (FIG. 1), the connection between the user and the calling party 102 can be an all circuit switched connection. After the user chooses to answer the call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the Gateway System 106 routes back the call to the telephone network 108 and further back to the user's telephone line 112. Typically, an all circuit switched connection provides a better quality connection between the calling party 102 and the user than a system that includes VoIP packet switching." 7:34-45. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | Huang discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall (e.g., the Gateway System may receive a VoIP call over the Internet). *See* claim 17 above. Furthermore, see citations and discussion above in connection with claim 12. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log | Huang discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry (e.g., the user may use a cellular phone, the cellular phone containing a contact |

41

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| entry. | database entry or call log entry with which the user can make a call request). |
| | *See* claim 17 above. |
| | *Furthermore, see, e.g.,* |
| | "Those skilled in the art will appreciate that although the system of FIG. 1 illustrates an SCP 124, a SSP 116, and a telephone line 112 as being components of one type of telephone system 108, the CACS 101 may function in conjunction with other types of telephone systems. For example, by replacing the SCP 124, SSP 116, and telephone line 112 with a Home Location Register, a Mobile Switching Center, and a Radio connection, respectively, the telephone network can be a wireless network. Also, the user's telephone 140 can be a wireless telephone, and the computer 138 a portable computer of varying forms. While present radio connections may not provide the same voice quality and data network access of a present wired connection, advancing technologies could soon raise the bandwidth of the radio connection, and optimize the utilization of the radio connection." 4:34-49. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | Huang discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed (e.g., the user may place a phone call to a desired destination). *See* claim 17 above. |

42

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | Furthermore, see citations and discussion above in connection with claim 2.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.1] A method of processing calls, comprising: | *See* claim 1 above. |
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Huang discloses receiving at a call processing system (e.g., the CACS) a message from an Internet protocol proxy regarding a first call from a caller (e.g., the CACS system supports VoIP calls over the Internet).

See citations and discussion above in connection with claim limitation 1.3.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Huang discloses determining if the first call is directed to a telephone address of a subscriber of services (e.g., the telephone number of the user) offered by the call processing system (e.g., the CACS), wherein at least partly in response to determining that the telephone address is that of a subscriber (e.g., the CACS determines whether the incoming call is for the telephone number of the user). |

43

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | *See e.g.,* |
| | "A Call Alerting and Control System is provided in a communication environment to allow an Internet user ("user") approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection with the Internet. The monitored information can include the calling party's name and telephone number. The system could also allow the user to provide an answering machine-type message to the calling party and the user to listen to the calling party's response to the message while still connected to the Internet. The system can further allow the user to reroute, answer or otherwise treat the incoming call while, at the user's discretion, either maintaining or disconnecting a connection to the Internet."   Abstract. |
| | "By way of introduction, the preferred embodiment described below includes a Call Alerting and Control System (CACS) that manages incoming calls from a calling party to an Internet user ('user') while the user maintains a connection to the Internet. CACS allows the user approximately real-time monitoring of information about an incoming call from a calling party. The information includes, for example, data about the calling party, and/or an opportunity for the user to listen to a calling party's response to an answering machine type message. In addition, CACS allows the user to listen to caller's voice before making further decisions about handling the call."   1:47-58. |
| | "CACS operates within a communication environment. The communication environment includes a telephone network that receives incoming calls and determines whether the intended communication line is busy. If the telephone line of the user is busy, a Service Switching Point (SSP) included in the telephone network obtains instructions from the Service Control Point (SCP) for the incoming call. The SCP determines whether the user is connected to the Internet or the Internet-like packet-based data network. The SCP instructs the SSP to transfer the incoming call to a Gateway System if the user is connected to the Internet."   1:59-2:2. |
| | "The CACS includes the Gateway System and a Client System. The Gateway |

44

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | System instructs the Client System to notify the user of the incoming call and prompts the user to choose a call handling option. For example, call handling options include the option of listening to the calling party who leaves a message while the user maintains a connection with the Internet. Thereafter, CACS manages the incoming call in accordance with a user-selected call handling option or with a preset default option after timeout period elapses for the user to indicate a selected option."   2:3-12. |
| | "FIG. 1 illustrates a communication environment 100 including a CACS 101 that allows a user to monitor and manage in real time an incoming call from a calling party 102 while maintaining a connection with the Internet 104, or other packet-based data network. CACS 101 includes a Gateway System 106 that processes and controls incoming calls. The Gateway System 106 receives the incoming call from a telephone network 108 that forwards the incoming call to the Gateway System 106 when the user is connected to the Internet 104. The user connects to the Internet 104 via a computer 138 and user's telephone line 112. The CACS 101 also includes a Client System 110, for example, a Client System application 300 described in FIG. 3, that resides on user's computer 138."   3:15-28. |
| | See Fig. 1 and associated text. |
| | "Many Internet users today connect their computers to the Internet over their telephone lines. As more information and services are available over the World Wide Web on the Internet, users spend more time connected to the Internet and thus occupying their telephone lines. If an Internet user has only a single telephone line, callers trying to reach such a user can encounter a busy signal for extended periods of time. Available Call Waiting services that typically allow a subscriber to answer an incoming call from a second party while conversing with a first party cannot be used while a user is connected to an Internet call. The Internet connecting software requires that the call waiting service be temporarily deactivated. Thus, the user is unaware of the incoming call." 1:15-27. |
| | "A Call Alerting and Control System (CACS) is provided in a communication |

45

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | environment that allows an Internet user ("user") approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection to the Internet. The information includes, for example, data about the calling party, such as the calling party's name and telephone number, and an opportunity for the user to listen to a calling party's response to an answering machine-like messaging system while the user is still connected to the Internet. CACS also allows the user to reroute, treat or otherwise answer the incoming call by, at the user's choice, either maintaining or disconnecting the user's connection to the Internet." 2:60-3:5. |
| | "The Client System 110 that runs in the background after user's computer starts up, is activated when the user accesses the Internet 104. The Client System 110 registers with the registration service 122 included in the Gateway System 106 when the user begins an Internet session. The registration service 122 records that the user is connected to the Internet 104. The Client System deregisters, when possible, with the registration service 122 when the user disconnects from the Internet 104. Various mechanisms can be used to register or deregister the Client System 110 from the registration service 122 including the user manually registering or deregistering upon initiation or termination of the Internet connection and/or automatic registration or deregistration by the Client System 110 upon signing-on or exiting the Internet. Other methods for deregistering the Client System 110 could also be used, such as the Gateway System 106 periodically polling the Client System 110 to determine if the Internet access has ended." 3:37-54. |
| | "After the calling party 102 calls the user, if the telephone line 112 is busy, the SSP 116 queries a Service Control Point (SCP) 124 included with the telephone network 108 to determine how to handle the incoming call. The SCP 124 accesses registration information from the registration service 122 to determine if the Client System 110 is registered as being connected to the Internet 104. Based on the registration information the SCP 124 instructs the SSP 116 on how to process the incoming call. For example, if the user is not connected to the Internet, the SSP 116 can supply a busy signal to the calling party 102 or notify |

46

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | the user of the incoming call using a Call Waiting system as is known in the art." 3:55-67. "If the registration information indicates that the user is connected to the Internet, the SCP 124 instructs the SSP 116 to route control signals of the incoming call via a signaling system network (SS7) 126 to a media gateway controller 130. The media gateway controller 130 dispatches calls coming into the Gateway System 106. A signaling gateway 132 connects between the media gateway controller 130 and the SS7 network 126 to convert SS7 protocol control signals to a protocol understood by the Gateway System 106, such as Transmission Control Protocol/Internet Protocol (TCP/IP), Stream Control Transmission Protocol (SCTP), or other network protocol." 4:8-19. |
| [40.4] accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Huang discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction (e.g., the user may specify call processing rules in a whitelist and/or blacklist that is necessarily stored on the Gateway System's memory as software as a record associated with the user). See citations and discussion above in connection with claim limitation 11.3. |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Huang discloses based at least in part on the subscriber instruction (e.g., the user may create a whitelist/blacklist rule), placing a first outcall to a first communication device associated with the subscriber (e.g., an incoming call may be automatically be routed to a user specified destination by the Gateway System depending on a user specified rule). See citations and discussion above in connection with claim limitation 11.4. |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device | Huang discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber (e.g., the Gateway System may automatically |

47

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| associated with the subscriber; and | reroute the incoming call, including to a voice messaging server, if the user does not select a call handling option within a determined time). |
| | *See e.g.,* |
| | "The popup window can also prompt the user to select a call handling option within a determined time. Call handling options include a selection to further screen the incoming call, to redirect the incoming call to a certain destination, to answer, the incoming call, or to otherwise treat the incoming call. If the user does not respond to the popup window within a determined time, the Gateway System automatically initiates a user-preset option, such as to route the incoming call to a voice messaging server 136 (FIG. 1) so that the calling party 102 can leave a message." 5:52-61. |
| | "In addition to the above, in a preferred embodiment the Gateway System 106 can also process an incoming call and automatically handle the incoming call upon receipt, before notifying the user. In a preferred embodiment, to process the incoming call, the Gateway System 106 determines whether a telephone number or other criteria about the incoming call is included in a user-defined list. User defined lists include a blacklist (e.g., undesired callers) and a white list (e.g., callers that may need immediate circuit-switched call connections) previously established by the user." 7:47-56. |
| | "At block 238, if the Gateway System 106 determines that a telephone number of the incoming call is included in a treating portion of the blacklist, the Gateway System application enters the treating state 218 to automatically treat the call, for example, by disconnecting the call. Before disconnecting the call, the Gateway System 106 may or may not play a terminating announcement. At block 240, if the Gateway System 106 determines that the incoming call number is included in a reroute portion of the blacklist, the Gateway System 106 can automatically reroute the incoming call 234, for example, by routing the incoming call to an alternate destination, such as to the telephone number of a colleague, or a messaging server 136. The treating and rerouting operations may |

48

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | occur automatically, with or without the user being notified." 7:57-8:4.<br><br>"In addition, the user can establish a white list of incoming calls that should be directly connected to the user. When the Gateway System 106 determines that a call is a white list call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the incoming call is routed to user via telephone network 108 and user's telephone line 112." 8:5-12.<br><br>"Alternatively, the calling party 102 can bypass the processing and screening processes described above and act as a white list caller, by entering a pass code obtained in advance from the user. The calling party 102 can enter the pass code, for example, by using the number pad on the calling party's telephone. If the Gateway System 106 receives the pass code, the Gateway System 106 can command the Client System 110 to disconnect from the Internet so that the incoming call can be placed. Alternatively, the VoIP can be used to connect the incoming call with the user via a two-way communication, for example, depending on the entered pass code. After the Gateway System 106 has processed the incoming call, if the call was not automatically treated 218, rerouted 234 or answered, the Gateway System 106 informs the Client System 110 of the incoming call as described herein." 8:13-38. |
| [40.7] receiving a call connect instruction from the subscriber; and | Huang discloses receiving a call connect instruction from the subscriber (e.g., the user selects a call handling option via his or her computer).<br><br>*See, e.g.*:<br><br>"The CACS includes the Gateway System and a Client System. The Gateway System instructs the Client System to notify the user of the incoming call and prompts the user to choose a call handling option. For example, call handling options include the option of listening to the calling party who leaves a message while the user maintains a connection with the Internet. Thereafter, CACS manages the incoming call in accordance with a user-selected call handling option or with a preset default option after timeout period elapses for the user to |

49

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | indicate a selected option."   2:3-12.

"A Call Alerting and Control System (CACS) is provided in a communication environment that allows an Internet user ("user") approximately real-time monitoring of information about an incoming call from a calling party while maintaining a connection to the Internet. The information includes, for example, data about the calling party, such as the calling party's name and telephone number, and an opportunity for the user to listen to a calling party's response to an answering machine-like messaging system while the user is still connected to the Internet. CACS also allows the user to reroute, treat or otherwise answer the incoming call by, at the user's choice, either maintaining or disconnecting the user's connection to the Internet."   2:60-3:5.

"FIG. 1 illustrates a communication environment 100 including a CACS 101 that allows a user to monitor and manage in real time an incoming call from a calling party 102 while maintaining a connection with the Internet 104, or other packet-based data network. CACS 101 includes a Gateway System 106 that processes and controls incoming calls. The Gateway System 106 receives the incoming call from a telephone network 108 that forwards the incoming call to the Gateway System 106 when the user is connected to the Internet 104. The user connects to the Internet 104 via a computer 138 and user's telephone line 112. The CACS 101 also includes a Client System 110, for example, a Client System application 300 described in FIG. 3, that resides on user's computer 138."   3:15-28.

"The popup window can also prompt the user to select a call handling option within a determined time. Call handling options include a selection to further screen the incoming call, to redirect the incoming call to a certain destination, to answer, the incoming call, or to otherwise treat the incoming call. If the user does not respond to the popup window within a determined time, the Gateway System automatically initiates a user-preset option, such as to route the incoming call to a voice messaging server 136 (FIG. 1) so that the calling party 102 can leave a message." 5:52-61. |

50

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | "Alternatively, at block 232, the user can redirect the incoming call during screening the call at state 228, or redirect the incoming call after being alerted of the call during the alerting state 214. When the Gateway System 106 redirects the call, the Gateway System application 200 enters in the reroute caller state 234. Depending on the content of the calling party's information and/or message, the user may redirect the incoming call by forwarding the call to an alternate communication line, such as the telephone number of a colleague or a fax machine (not shown). An alternative destination for redirecting the incoming call is to send the incoming call to the voice messaging server 136 and disconnect the call from the user without disconnecting the user's Internet connection at block 220." 6:59-7:5.

"The user can also answer the incoming call. There are various ways to connect the user to the incoming call, including using the Gateway System 106 to connect the incoming call to the user via VoIP, or by first disconnecting the Internet connection and then connecting the call to user's telephone through the SSP 116 and the telephone line 112. If the incoming call is connected via VoIP, the incoming call includes circuit switched connections from the telephone network 108 to the Gateway System 106 and two-way packet switched connections from the Gateway System 106 to the Internet 104, to the RAS 114, to the SSP 116 and to the Client System 110." 7:21-32.

"Alternatively, if the user chooses to disconnect from the Internet and answer the incoming call using the user's telephone 140 (FIG. 1), the connection between the user and the calling party 102 can be an all circuit switched connection. After the user chooses to answer the call, the Gateway System 106 commands the Client System 110 to disconnect from the Internet and informs the SCP 124 that the user's communication line 112 is no longer busy. Thereafter, the Gateway System 106 routes back the call to the telephone network 108 and further back to the user's telephone line 112. Typically, an all circuit switched connection provides a better quality connection between the calling party 102 and the user than a system that includes VoIP packet switching." 7:34-45. |

51

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | "At block 308, when the Gateway System 106 commands the Client System application 300 to alert the user of an incoming call, the Client System application 300 notifies the user of the incoming call. For example, a popup window is displayed on the monitor of user's computer 138 that contains the Client System 110. The popup window alerts the user of the incoming call 310 and shows the user information about the incoming call, such as a name and telephone number associated with the incoming call, or in lieu of a name, the calling location such as a city name. Preferably, the Client System 110 displays whatever information the Gateway System 106 provides. Also, the Gateway System 106 may establish a one-way VoIP connection with the media gateway 128 to play back a spoken name by the caller and earlier recorded by the Gateway System 110. If no information about the incoming call is available, the popup window can notify the user of that situation. The popup window also displays incoming call handling options to the user, such as whether the user would like the call rerouted or otherwise treated, and a timeout indicator to indicate to the user the time in which the user can choose an option." 8:44-65. "At block 312, if the user decides to further screen the incoming call, the Client System application 300 enters the screening state 314. In the screening state 314, the Client System application 300 initiates a one-way VoIP connection from the calling party 102 to the user. The Client System application 300 establishes the one-way VoIP connection via the Gateway System 106, and utilizes an audio system of the computer 138 that allows the user to listen to the calling party's message contemporaneous with the calling party 102 leaving the message. The Client System 110 displays the call handling options to the user while the user listens to the incoming call. The call handling options include allowing the user to reroute, answer or otherwise treat the incoming call, or to detach from the incoming call." 8:66-9:12. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | Huang discloses instructing the call processing system to connect the first call to a third communication device (e.g., the incoming call is connected to the user). |

52

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | See citations and discussion above in connection with claim limitation 40.7. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | Huang discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol (e.g., the CACS system supports VoIP calls over the Internet). |
| | See citations and discussion above in connection with claim 40.2. |
| | *Furthermore, see e.g.,* |
| | "If the registration information indicates that the user is connected to the Internet, the SCP 124 instructs the SSP 116 to route control signals of the incoming call via a signaling system network (SS7) 126 to a media gateway controller 130. The media gateway controller 130 dispatches calls coming into the Gateway System 106. A signaling gateway 132 connects between the media gateway controller 130 and the SS7 network 126 to convert SS7 protocol control signals to a protocol understood by the Gateway System 106, such as Transmission Control Protocol/Internet Protocol (TCP/IP), Stream Control Transmission Protocol (SCTP), or other network protocol." 4:8-19. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

53

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | Huang discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension (e.g., the Gateway System place an outcall).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 1.5.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | Huang discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., the user selects a call handling option via his or her computer).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 40.7.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

54

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | Huang discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., the Gateway System may receive a VoIP call over the Internet).

*See* claim 40 above.

Furthermore, see citations and discussion above in connection with claim 12.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | Huang discloses the method of claim 40, further comprising wherein the first communication device is connected to a private branch exchange system (e.g., the Gateway System place an outcall).

*See* claim 40 above.

Furthermore, see citations and discussion above in connection with claim 42.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

55

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,693,897 ("Huang") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |

56

Exhibit A-15

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 5,475,748 ("Jones")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,475,748 ("Jones") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Jones was published on December 12, 1995, from an application with a priority date of at least Sep. 18, 1992, before the alleged invention of the '591 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 1. A method of processing calls, the method comprising; | **Jones** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "Equipment providing information services, whether installed near a central office or provided as part of a PBX includes a search service for generating an number of outdialing operations in an effort to reach a subscriber of the search service for a caller.." Jones at Abstract. |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | **Jones** discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber.<br><br>*See, e.g.:*<br><br>• "The flexible operation of the preferred embodiment is made possible by storing information like that illustrated in FIG. 2. In the preferred embodiment, phone numbers at which a subscriber can be reached are stored in sets. Each set may have one or more telephone numbers which are recorded in the phone number field. In FIG. 2, textual labels are used, but in a real file, the |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | corresponding digits would be stored in the phone number field. Each of the sets have a predefined sequence as indicated by the sequence field. There are several ways in which multiple phone numbers can be assigned to the same set. One way is to permit several phone numbers to be entered in a single phone number field. Another is to have multiple records with the same sequence number, as illustrated in FIG. 2. An entry in the file having sequence number 1, such as the first line in FIG. 2, will be dialed as soon as the search service is initiated.r." Jones at 4:27-42. |
| | • *See also*, Jones at Fig. 2. |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | **Jones** discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network. <br><br> *See, e.g.:* <br><br> • "The flexible operation of the preferred embodiment is made possible by storing information like that illustrated in FIG. 2. In the preferred embodiment, phone numbers at which a subscriber can be reached are stored in sets. Each set may have one or more telephone numbers which are recorded in the phone number field. In FIG. 2, textual labels are used, but in a real file, the corresponding digits would be stored in the phone number field. Each of the sets have a predefined sequence as indicated by the sequence field. There are several ways in which multiple phone numbers can be assigned to the same set. One way is to permit several phone numbers to be entered in a single phone number field. Another is to have multiple records with the same sequence number, as illustrated in FIG. 2. An entry in the file having sequence number 1, such as the first line in FIG. 2, will be dialed as soon as the search service is initiated.r." Jones at 4:27-42. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | • *See also*, Jones at Fig. 2. |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | **Jones** discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address.<br><br>*See, e.g.:*<br><br>• "The essential steps of the present invention begin once a search indication is received (as part of step 62) that an incoming caller requires special handling to reach a called party. This search indication is obtained by an incoming call process which may be an automated receptionist or a process which maps telephone numbers to services, or some other process, as discussed above. In response, the MCU 16 reads 64 the search file stored in the MCU memory 46 and initiates 66 one or more outdialing operations, depending upon the number of phone numbers in the first phone number set, i.e., with sequence number 1, which match the circumstances, i.e., the priority of the caller, the time of day and any other restrictions which might be present."   Jones at 6:26-39. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | **Jones** discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address.<br><br>*See, e.g.:*<br><br>• "For the subscriber whose data is illustrated in FIG. 2, a single outdialing operation would be initiated when the search begins. The outdialing operation(s) are performed 68 as described below with reference to FIG. 3B and preferably the caller is informed 70 of the progress of the outdialing operations as described below with reference to FIG. 3C. The task of informing 70 the caller of progress |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | in performing the outdialing operation(s) may be one of the tasks of the incoming call process or the MCU 16 may initiate a task-on one of the APUs 24 to report on the progress of the outdialing operations."   Jones at 6:39-50. |
| bridging the first call and the first outcall; | **Jones** discloses bridging the first call and the first outcall.<br><br>*See, e.g.:*<br><br>• "An outdial operation response is received 72 as a busy signal, ring no answer, or a response by a human being, such as a response to a menu output by the process performing the outdialing operation, as discussed below with respect to FIG. 3B. Based on the outdial operation response a determination is made 74 whether the outdialing operation is successful. If the outdial operation response indicates that the outdialing operation was unsuccessful, that outdialing operation is terminated 76. If it is determined 74 that the outdialing operation was successful, i.e., the outdial operation response indicates that the called party is at the phone number called by that outdialing operation, the MCU 16 controls the DSS 12 to connect 78 the incoming call to the telephone called by the successful outdialing operation."   Jones at 6:51-64. |
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | **Jones** discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address.<br><br>*See, e.g.:*<br><br>• "Until a successful outdialing operation is detected, after each termination of an unsuccessful outdialing operation, a determination is made 82 as to whether all outdialing operations in a set have been found to be unsuccessful, e.g., after a predetermined amount of time has been spent calling a specific number. If at least one outdialing operation in the current set continues to be performed, the MCU 16 waits until another outdial operation response is |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | received 72.." Jones at 7:7-13. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | **Jones** discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address.<br><br>*See, e.g.:*<br><br>● "Until a successful outdialing operation is detected, after each termination of an unsuccessful outdialing operation, a determination is made 82 as to whether all outdialing operations in a set have been found to be unsuccessful, e.g., after a predetermined amount of time has been spent calling a specific number. If at least one outdialing operation in the current set continues to be performed, the MCU 16 waits until another outdial operation response is received 72.." Jones at 7:7-13.<br><br>"Alternatively, the outdialing operations may be performed sequentially; first one phone number is called and if the called party is not reached, then a second number is called. In addition, these alternatives can be combined by calling sets of telephone numbers in a predefined sequence. The manner in which the telephone numbers are called may be modified by time of day or by identification of the caller using, e.g., access codes or voice recognition." Jones at 2:16-24. |
| bridging the second call and the second outcall. | **Jones** discloses bridging the second call and the second outcall.<br><br>*See, e.g.:*<br><br>● "If the called party is available, a successful call completion indication is |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | generated 110 and output on bus 25 to the MCU 16 and to the process communicating with the caller. Then, the MCU 16 connects 78 the caller to the called party and generates message packets to the outdialing operation processes to terminate 80 all remaining outdialing operations."   Jones at 8:15 - 21. |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | **Jones** discloses the first call being forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition.<br><br>• "If the outdialing operation is determined 126 to be unsuccessful, the caller will be informed 130. The message produced 130 might simply state that "John Doe was not at one of the phone numbers" or a more elaborate message might be provided, such as "There was no answer on John Doe's pocket phone." After generating 130 the unsuccessful call completion message, the monitoring process determines 132 whether all dialing operations for a set have been completed.  If not, the monitoring process returns to describing 122 the remaining outdialing operation(s) and checking 124 for additional call completion indications."   Jones at 9:9-20. |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | • Jones at 1:63-67. |
| | • Jones at 5:49-6:15. |
| | • "Any known method may be used to identify 60 a caller if this option is made available to subscribers. The present invention does not depend upon the caller being identified, since all callers could be treated the same." Jones at 6:16-20. |
| | • "One way of implementing the present invention is to modify the existing mechanism for handling call failures to check the search service file which may be similar to the file depicted in FIG. 2, when, e.g., there is a "ring no answer" at a called number of a subscriber to the search service." Jones at 4:58-63. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | **Jones** discloses the method of claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. |
| | *See* claim 1 above. |
| | • "Any known method may be used to identify 60 a caller if this option is made available to subscribers. The present invention does not depend upon the caller being identified, since all callers could be treated the same." Jones at 6:16-20. |
| | • "For individuals who subscribe to both an automated receptionist and a search service according to the present invention, the automated receptionist may provide a menu option or respond to an unannounced access code which permits immediate access to the search service." Jones at 5:1-5. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | **Jones** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 1 above.<br><br>• "In the future, central offices may have the capability, e.g., using "SS7", to make the connection between the caller and the called party.." Jones at 7:1-3. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | **Jones** discloses the method of claim 1, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 1 above.<br><br>• Jones at Fig. 2.<br><br><br><br>FIG. 2 |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | **Jones** discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 1 above.<br><br>• Jones at Fig. 2.<br><br><table><tr><th>PRIORITY</th><th>SEQUENCE</th><th>PHONE NUMBER</th><th>TIME</th></tr><tr><td>1</td><td>1</td><td>POCKET PHONE</td><td></td></tr><tr><td>1</td><td>2</td><td>OFFICE 1</td><td></td></tr><tr><td>1</td><td>2</td><td>OFFICE 2</td><td></td></tr><tr><td>1</td><td>2</td><td>RESIDENCE</td><td></td></tr><tr><td>1</td><td>3</td><td>BREAKFAST RESTAURANT</td><td>07:00-08:00</td></tr><tr><td>1</td><td>3</td><td>SOCIAL CLUB</td><td>18:00-20:00</td></tr><tr><td>1</td><td>3</td><td>COUNTRY CLUB</td><td>07:00-19:00</td></tr><tr><td>1</td><td>4</td><td>RELATIVE</td><td></td></tr><tr><td>1</td><td>5</td><td>VOICE MAILBOX</td><td></td></tr></table><br>FIG. 2 |
| 11. The method as defined in claim 1, the method further comprising; | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone | **Jones** discloses receiving at the call processing system a third call from a calling party directed to the first phone address. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| address; | • "As can be seen from the above, an adaptive teleconferencing operation can be carried out by simultaneously signalling all of the telephone numbers to be teleconferenced and then establishing a conference call among all of those who answer." Jones at 3:27-31. |
| reading at least one subscriber specified rule from computer readable memory; and | **Jones** discloses reading at least one subscriber specified rule from computer readable memory. <br><br> • Jones at Fig. 2. <br> • Jones at Fig. 3. |
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | **Jones** discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule. <br><br> • Jones at Fig. 2. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | **FIG. 2** |
| | PRIORITY  SEQUENCE  PHONE NUMBER  TIME<br><br>1  1  POCKET PHONE<br>1  2  OFFICE 1<br>1  2  OFFICE 2<br>1  2  RESIDENCE<br>1  3  BREAKFAST RESTAURANT  07:00-08:00<br>1  3  SOCIAL CLUB  18:00-20:00<br>1  3  COUNTRY CLUB  07:00-19:00<br>1  4  RELATIVE<br>1  5  VOICE MAILBOX |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software providing a firewall to be penetrated by a call-related communication. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 14. The method as defined in claim 1, the method further comprising: | **Jones** discloses the method as defined in claim 1.<br><br>*See* claim 1 above. |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | **Jones** discloses a method in which the call processing system receives a call transfer request, which is associated with a destination, while the first outcall is in process.<br><br>*See, e.g.:*<br><br>● "An outdial operation response is received 72 as a busy signal, ring no answer, or a response by a human being, such as a response to a menu output by the process performing the outdialing operation, as discussed below with respect to FIG. 3B." Jones at 6:51-55.<br><br>● "If it is determined 100 that some other response has been received, a predefined message is generated 102 to request the called party using conventional voice synthesis (or a stored voice message) and menu generation techniques. For example a message of the type "Hello, I have an important phone call for John Doe; please indicate if John Doe is there by pressing 1, if John Doe is not there by pressing 2, if you want me to wait while you check to see if John Doe is there by pressing 3 and if you want to hear the options again by pressing 9." The process waits 104 until a predetermined period of time passes or a response is received. Speaker independent voice recognition could be used to try to determine what response, if any, is received, e.g., "Yes" or "No" in response to a query of whether the called party is present. The request 102 is repeated if no response is received. When it is determined 106 that an outdial operation response was received or the message has been repeated a predetermined number of times, a determination is made 108 as to whether the called party is available." Jones at 7:63-8:5. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | • Jones at 4:51-67. |
| | • Jones at Fig. 3B. |
| placing a third outcall to the transfer destination; and | **Jones** discloses placing a third outcall to the transfer destination. |
| | • Jones at 6:51-55. |
| | • Jones at 7:63-8:5. |
| | • Jones at 4:51-67. |
| | • Jones at Fig. 3B. |
| connecting the first outcall with the third outcall. | **Jones** discloses connecting the first outcall with the third outcall. |
| | • "An outdial operation response is received 72 as a busy signal, ring no answer, or a response by a human being, such as a response to a menu output by the process performing the outdialing operation, as discussed below with respect to FIG. 3B. Based on the outdial operation response a determination is made 74 whether the outdialing operation is successful. If the outdial operation response indicates that the outdialing operation was unsuccessful, that outdialing operation is terminated 76. If it is determined 74 that the outdialing operation was successful, i.e., the outdial operation response indicates that the called party is at the phone number called by that outdialing operation, the MCU 16 controls the DSS 12 to connect 78 the incoming call to the telephone called by the successful outdialing operation."    Jones at 6:51-64. |
| | • Jones at 8:15-21. |
| | |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work | **Jones** discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| phone address, a home phone address, and a mobile phone address. | address.<br><br>*See* claim 1 above.<br><br>•   Jones at Fig. 2. |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | **Jones** discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber.<br><br>*See* claim 1 above.<br><br>•   Jones at 2:1-5. |
| 17. A method of processing calls, the method comprising: | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Jones** discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>•   "The essential steps of the present invention begin once a search indication is received (as part of step 62) that an incoming caller requires special handling to reach a called party. This search indication is obtained by an incoming call process which may be an automated receptionist or a process which maps telephone numbers to services, or some other process, as discussed |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | above. In response, the MCU 16 reads 64 the search file stored in the MCU memory 46 and initiates 66 one or more outdialing operations, depending upon the number of phone numbers in the first phone number set, i.e., with sequence number 1, which match the circumstances, i.e., the priority of the caller, the time of day and any other restrictions which might be present."  Jones at 6:26-39. |
| | • Jones at Fig. 3a. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Jones** discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user. |
| | • "For the subscriber whose data is illustrated in FIG. 2, a single outdialing operation would be initiated when the search begins. The outdialing operation(s) are performed 68 as described below with reference to FIG. 3B and preferably the caller is informed 70 of the progress of the outdialing operations as described below with reference to FIG. 3C. The task of informing 70 the caller of progress in performing the outdialing operation(s) may be one of the tasks of the incoming call process or the MCU 16 may initiate a task-on one of the APUs 24 to report on the progress of the outdialing operations."  Jones at 6:39-50. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | **Jones** discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user. |
| | • "For the subscriber whose data is illustrated in FIG. 2, a single outdialing operation would be initiated when the search begins. The outdialing operation(s) |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | are performed 68 as described below with reference to FIG. 3B and preferably the caller is informed 70 of the progress of the outdialing operations as described below with reference to FIG. 3C. The task of informing 70 the caller of progress in performing the outdialing operation(s) may be one of the tasks of the incoming call process or the MCU 16 may initiate a task-on one of the APUs 24 to report on the progress of the outdialing operations."    Jones at 6:39-50.<br><br>    •    Jones at 2:1-14. |
| causing the first outcall and the second outcall to be connected. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this functionality with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | **Jones** discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br>*See* claim 10 above. |
| | |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | **Jones** discloses the method of claim 17, wherein the user telephone is a mobile phone. |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | *See* claim 17 above.<br>*See* claim 15 above. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from | **Jones** discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| the user as to which communication device the first outcall is to be placed. | be placed.<br><br>*See* claim 17 above.<br><br>• "In response, the MCU 16 reads 64 the search file stored in the MCU memory 46 and initiates 66 one or more outdialing operations, depending upon the number of phone numbers in the first phone number set, i.e., with sequence number 1, which match the circumstances, i.e., the priority of the caller, the time of day and any other restrictions which might be present."  Jones at 6:33-39.<br><br>• "Preferably, the caller is informed of the progress of the outdialing operations. During simultaneous calling of telephone numbers, each outdialing operation which is determined to be unsuccessful in reaching the called party is reported to the caller.  Jones at 2:25-29.<br><br>• Jones at Fig. 2. |
| 26. A method of processing calls, the method comprising: | **Jones** discloses a method of processing calls, the method comprising.<br><br>*See* claim 1 above. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | **Jones** discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system.<br><br>*See, e.g.:*<br><br>*See* element 1(a) above. |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | |
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | **Jones** discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network. <br><br> *See, e.g.*: <br><br> • "In the preferred embodiment, one or more other records are used to indicate when the search service is initiated. Some examples of what may be stored in the record(s) include initiating the search service immediately, or after a phone number dialed by a caller fails to reach the called party and the call is forwarded from a public telephone switch (e.g., using SMDI), or as an option in an automated receptionist service, or any other condition which can be detected. The record(s) may be created in any known way, including using either a computer terminal or an interface using audio output and telephone keypad input. Conventional information services systems typically provide for handling call failures in more than one way, e.g., transfer to another extension, such as the operator, or transfer to a voice mail process which may be executed by an APU 24 when implemented on the platform 10 illustrated in FIG. 1." Jones at 6:43-58. |
| storing the plurality of user phone addresses in computer readable memory; | **Jones** discloses storing the plurality of user phone addresses in computer readable memory. <br><br> *See, e.g.*: <br><br> *See* element 1(a) above. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the | **Jones** discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| plurality of phone addresses; and | *See, e.g.:*<br><br>*See* element 1(c) above. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | **Jones** discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.<br><br>*See, e.g.:*<br><br>*See* element 1(d) above. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | **Jones** discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.<br><br>*See, e.g.:*<br><br>•    See claim 1 above.<br>•    Jones at 6:51-55.<br>•    Jones at 7:63-8:5.<br>•    Jones at 4:51-67. |
| | |
| 27. The method as defined in claim 26, the method further comprising: | **Jones** discloses the method as defined in claim 26.<br><br>*See* claim 26 above. |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of | **Jones** discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses. |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| the user phone addresses; | |
| | *See* claim 26 above. |
| | • See element 1(f) above. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | **Jones** discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address. |
| | *See* claim 26 above. |
| | • See element 1(g) above.. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | **Jones** discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. |
| | *See* claim 26 above. |
| | • See element 1(h) above.. |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | **Jones** discloses the method of claim 26, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 26 above.<br><br>•    See claim 5 above. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

24

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|---|
| network. | | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | | |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | | **Jones** discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network. |
| | | *See* claim 26 above. |
| | | *See, e.g.:* |
| | | • "The flexible operation of the preferred embodiment is made possible by storing information like that illustrated in FIG. 2. In the preferred embodiment, phone numbers at which a subscriber can be reached are stored in sets. Each set may have one or more telephone numbers which are recorded in the phone number field. In FIG. 2, textual labels are used, but in a real file, the corresponding digits would be stored in the phone number field. Each of the sets have a predefined sequence as indicated by the sequence field. There are several ways in which multiple phone numbers can be assigned to the same set. One way is to permit several phone numbers to be entered in a single phone number field. Another is to have multiple records with the same sequence number, as illustrated in FIG. 2. An entry in the file having sequence number 1, such as the first line in FIG. 2, will be dialed as soon as the search service is initiated.r." Jones at 4:27-42. |
| | | • *See also*, Jones at Fig. 2. |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | **Jones** discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 26 above.<br><br>•    Jones at Fig. 2. |
| 34. The method as defined in claim 26, the method further comprising: | **Jones** discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | **Jones** discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system.<br><br>*See* claim 26 above.<br><br>•    See element 1(c) above. |
| reading at least one user specified rule from computer readable memory; | **Jones** discloses reading at least one subscriber specified rule from computer readable memory. |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") | |
|---|---|---|
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | *See* claim 26 above. <br>• Jones at Fig. 2. <br>• Jones at Fig. 3. <br><br> **Jones** discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. <br><br> . <br>• Jones at Fig. 2. <br>• "Some examples of what may be stored in the record(s) include initiating the search service immediately, or after a phone number dialed by a caller fails to reach the called party and the call is forwarded from a public telephone switch (e.g., using SMDI), or as an option in an automated receptionist service, or any other condition which can be detected. The record(s) may be created in any known way, including using either a computer terminal or an interface using audio output and telephone keypad input." Jones at 4:45-53. | |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising: | *Jones* discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing an outcall to the connect destination; and | *Jones* discloses placing an outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>*See* element 1(d) above. |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| connecting the first outcall with the outcall to the connect destination. | **Jones** discloses connecting the first outcall with the outcall to the connect destination. |
| | *See* claim 26 above. |
| | *See* element 1(e) above. |
| 40. A method of processing calls, comprising: | *See* claim 1 above. |
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | *See* element 1(b) and 1(c) above. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | *See* element 1(b) and 1(c) above. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication | **Jones** discloses the subscriber instruction, places a first outcall to a first communication device associated with the subscriber |

29

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| device associated with the subscriber; | • Jones at Fig. 2.<br><br>• "Some examples of what may be stored in the record(s) include initiating the search service immediately, or after a phone number dialed by a caller fails to reach the called party and the call is forwarded from a public telephone switch (e.g., using SMDI), or as an option in an automated receptionist service, or any other condition which can be detected. The record(s) may be created in any known way, including using either a computer terminal or an interface using audio output and telephone keypad input." Jones at 4:45-53. |
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | **Jones** discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber.<br><br>• "After the number has been "dialed" 90, a test is made 92 to determine whether call progress signals are received. If a "ring no answer" was received 94, i.e., a predetermined number of rings are detected by the outdial operation process and no other sounds are received indicating a response, the outdialing operation is terminated 96 and a call completion indication is provided via the bus 25 to the MCU 16 and to the process reporting on progress of the outdialing operations to the caller indicating that connection was made to the telephone number, but there was no answer. If a "ring no answer" has not been detected 94, appropriate action is taken 98 in response to the call progress signal which was detected." Jones 7:44-56.<br><br>• Jones at Fig. 3B. |
| receiving a call connect instruction from the subscriber; and | **Jones** discloses receiving a call connect instruction from the subscriber. |

30

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| | • "An outdial operation response is received 72 as a busy signal, ring no answer, or a response by a human being, such as a response to a menu output by the process performing the outdialing operation, as discussed below with respect to FIG. 3B." Jones at 6:51-55. |
| | • "If it is determined 74 that the outdialing operation was successful, i.e., the outdial operation response indicates that the called party is at the phone number called by that outdialing operation, the MCU 16 controls the DSS 12 to connect 78 the incoming call to the telephone called by the successful outdialing operation." Jones at 6:59-64. |
| | • "Alternatively, at this time or previously the caller may be asked to give the name of who is calling. In a conventional manner, this name may be stored as an announcement for when the called party is reached." Jones at 5:28-32. |
| instructing the call processing system to connect the first call to a third communication device. | **Jones** discloses instructing the call processing system to connect the first call to a third communication device. |
| | • Jones at 6:59-64. |
| | |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |

31

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|---|
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | | **Jones** discloses the method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones.<br><br>*See* claim 40 above.<br><br>•    Jones at Fig. 3B. |

32

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. |  To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

33

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,475,748 ("Jones") |
|---|---|---|
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

34

NY:1635942.3

Exhibit A-16

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,690,672 ("Klein")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,690,672 ("Klein") invalidates Claims 17-21 and 24-25 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Klein was published on February 10, 2004, from an application with a priority date of at least April 5, 1999, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| 17. A method of processing calls, the method comprising: | **Klein** discloses a method of processing calls.<br><br>• "METHOD AND APPARATUS FOR PLACING AN INTELLIGENT TELEPHONE CALL USING AN INTERNET BROWSER." *Id.* at Title.<br><br>• "An automated method and apparatus are provided for placing an intelligent telephone call using an Internet browser." *Id.* at Abstract.<br><br>• "An embodiment of this method can be performed comprising the steps of: (a) receiving a call request entered via a web page, the call request including a destination identification of the destination caller or destination communications device; (b) calling the destination communications device based on the received destination identification; (c) calling the originating communications device; and (d) bridging the calls to the destination and originating communications devices." *Id.* at col.2, ll.21-29.<br><br>• "1. An automated method, operable in a personal receptionist, to connect in real-time an originating communications device of an originating caller to a destination communications device of a destination caller comprising: receiving a call request entered via a web page from the originating caller; |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| | processing the call request; retrieving, from a personal receptionist database connected with said personal receptionist server, and based on a destination identification of the destination caller received in said call request, a destination telephone number of the destination communications device; placing a first telephone call to the destination communications device using the destination telephone number; determining whether the destination caller will accept the first telephone call from the originating caller; placing a second telephone call to the originating communications device if the destination caller will accept the first telephone call from the originating caller; and connecting the first telephone call and the second telephone call to the destination and originating communications devices." *Id.* at Claim 1, col.7.l.47 – col.8, l.3. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Klein** discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called. <br><br> • "(a) receiving a call request entered via a web page, the call request including a destination identification of the destination caller or destination communications device . . ." *Id.* at col.2, ll.22-25. <br><br> • "The Internet web browser caller is presented with a web page particular to the called party (and possibly specific to the caller and time of the call), which displays whatever the called party has decided to present to the caller." *Id.* at col.1, ll.44-48. <br><br> • "An embodiment of the present invention provides for a personal receptionist server for connecting in real-time an originating communications device of an originating caller to a destination communications device of a destination caller based on a call request entered via a web page . . ." *Id.* at col.2, ll.51-56. <br><br> • "Then, in step 410, the Java applet receives the originating call back number and originating caller identification, as well as identification of the personal receptionist server client (destination caller) to whom the originating caller |

3

Note: table is rotated.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| | wishes to speak. This request is then sent to applet services 270 in step 415." *Id.* at col.5, ll.34-40. <br><br> • "Next, in step 510, the applet services receives a connection request to a client (destination caller) of the personal receptionist server 205, which is stored in task queue 267 in step 515."  *Id.* at col.6, ll.12-15. <br><br> • "1. An automated method, operable in a personal receptionist, to connect in real-time an originating communications device of an originating caller to a destination communications device of a destination caller comprising: receiving a call request entered via a web page from the originating caller; processing the call request; retrieving, from a personal receptionist database connected with said personal receptionist server, and based on a destination identification of the destination caller received in said call request, a destination telephone number of the destination communications device; placing a first telephone call to the destination communications device using the destination telephone number; determining whether the destination caller will accept the first telephone call from the originating caller; placing a second telephone call to the originating communications device if the destination caller will accept the first telephone call from the originating caller; and connecting the first telephone call and the second telephone call to the destination and originating communications devices." *Id.* at Claim 1, col.7,l.47 – col.8, l.3. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Klein** discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user. <br><br> • "An embodiment of this method can be performed comprising the steps of: (a) receiving a call request entered via a web page, the call request including a destination identification of the destination caller or destination communications device; (b) calling the destination communications device based on the received destination identification; (c) calling the originating communications device; and (d) bridging the calls to the destination and originating communications devices." *Id.* at col.2, ll.21-29. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| | • "If a conference with the caller is desired, the web page will be updated to display 'please answer your phone, I have your party on the line' and the call back number will be rung to set-up the conference between the caller and called party." *Id.* at Abstract.<br><br>• "1. An automated method, operable in a personal receptionist, to connect in real-time an originating communications device of an originating caller to a destination communications device of a destination caller comprising: receiving a call request entered via a web page from the originating caller; processing the call request; retrieving, from a personal receptionist database connected with said personal receptionist server, and based on a destination identification of the destination caller received in said call request, a destination telephone number of the destination communications device; placing a first telephone call to the destination communications device using the destination telephone number; determining whether the destination caller will accept the first telephone call from the originating caller; placing a second telephone call to the originating communications device if the destination caller will accept the first telephone call from the originating caller; and connecting the first telephone call and the second telephone call to the destination and originating communications devices." *Id.* at Claim 1, col.7.1.47 – col.8, 1.3.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address | **Klein** discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | specified by the user.<br><br>• "An embodiment of this method can be performed comprising the steps of: (a) receiving a call request entered via a web page, the call request including a destination identification of the destination caller or destination communications device; (b) calling the destination communications device based on the received destination identification; (c) calling the originating communications device; and (d) bridging the calls to the destination and originating communications devices." *Id.* at col.2, ll.21-29.<br><br>• "One or more telephonic calls are then placed to attempt to reach the called party." *Id.* at Abstract.<br><br>• "1. An automated method, operable in a personal receptionist, to connect in real-time an originating communications device of an originating caller to a destination communications device of a destination caller comprising: receiving a call request entered via a web page from the originating caller; processing the call request; retrieving, from a personal receptionist database connected with said personal receptionist server, and based on a destination identification of the destination caller received in said call request, a destination telephone number of the destination communications device; placing a first telephone call to the destination communications device using the destination telephone number; determining whether the destination caller will accept the first telephone call from the originating caller; placing a second telephone call to the originating communications device if the destination caller will accept the first telephone call from the originating caller; and connecting the first telephone call and the second telephone call to the destination and originating communications devices." *Id.* at Claim 1, col.7.l.47 – col.8, l.3.<br><br>• "If the system is successful in finding the called party, the text entered name of the caller is presented to the called party using interactive voice response technology (i.e., text to speech), and the server will ask the called party whether to conference a voice call with the caller." *Id.* at col.1, ll.62-66. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| causing the first outcall and the second outcall to be connected. | **Klein** discloses causing the first outcall and the second outcall to be connected.<br><br>• "(d) bridging the calls to the destination and originating communications devices." *Id.* at col.2, ll.27-29.<br><br>• "If a conference with the caller is desired, the web page will be updated to display 'please answer your phone, I have your party on the line' and the call back number will be rung to set-up the conference between the caller and called party." *Id.* at Abstract.<br><br>• "1. An automated method, operable in a personal receptionist, to connect in real-time an originating communications device of an originating caller to a destination communications device of a destination caller comprising: receiving a call request entered via a web page from the originating caller; processing the call request; retrieving, from a personal receptionist database connected with said personal receptionist server, and based on a destination identification of the destination caller received in said call request, a destination telephone number of the destination communications device; placing a first telephone call to the destination communications device using the destination telephone number; determining whether the destination caller will accept the first telephone call from the originating caller; placing a second telephone call to the originating communications device if the destination caller will accept the first telephone call from the originating caller; and connecting the first telephone call and the second telephone call to the destination and originating communications devices." *Id.* at Claim 1, col.7,l.47 – col.8, l.3. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| | |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | **Klein** discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br><br>• Otherwise, if determined in step 430, audio steaming technology is not to be used, the call will be completed using other communications technology (e.g., cellular or analog phones)." *Id.* at col.5, ll.54-57.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | **Klein** discloses the method of claim 17, wherein the user telephone is a mobile phone.<br><br>*See* claim 17 above.<br><br>• Otherwise, if determined in step 430, audio steaming technology is not to be used, the call will be completed using other communications technology (e.g., cellular or analog phones)." *Id.* at col.5, ll.54-57.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | **Klein** discloses the method of claim 17, wherein the user telephone is an Internet protocol phone.<br><br>*See* claim 17 above.<br><br>• "Alternatively, a telephonic call to the caller will be placed using Internet Protocol audio streaming technology." *Id.* at Abstract.<br>• "This call could be either via the public switched/cellular telephone networks, or even an audio streaming call on the Internet." *Id.* at col.6, ll.47-49.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | **Klein** discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry.<br><br>*See* claim 17 above.<br><br>• "The Internet Web browser caller is presented with a web page particular to |

9

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,690,672 ("Klein") |
|---|---|---|
| | | the called party (and possibly specific to the caller and time of the call), which displays whatever the called party has decided to present to the caller." *Id.* at col.1, ll.44-48. |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

10

NY:1636659.1

Exhibit A-17

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 5,802,160 ("Kugell")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,802,160 ("Kugell") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Kugell was published on September 1, 1998, from an application with a priority date of at least Jan. 19, 1996, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| 1. A method of processing calls, the method comprising; | **Kugell** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "A method and system of providing telephone service comprises associating a list of telephone numbers with a representative telephone number." Kugell at Abstract. |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | **Kugell** discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber.<br><br>*See, e.g.:*<br><br>• "A method and system of providing telephone service comprises associating a list of telephone numbers with a representative telephone number." Kugell at Abstract.<br><br>• "Also receiving information from the telephone switch 144 is the |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | microprocessor 142 with its associated memory 143. The microprocessor receives the called telephone number from the called number detection circuit 141 and looks in memory 143 to see if there is a list of numbers associated therewith." Kugell at 5:1-6. |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | **Kugell** discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network.<br><br>*See, e.g.:*<br><br>• "Also receiving information from the telephone switch 144 is the microprocessor 142 with its associated memory 143. The microprocessor receives the called telephone number from the called number detection circuit 141 and looks in memory 143 to see if there is a list of numbers associated therewith." Kugell at 5:1-6.<br><br>• *See also*, Kugell at Fig. 3 |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | **Kugell** discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address.<br><br>*See, e.g.:*<br><br>• "In the case of destination switch office 14, as shown in FIG. 3, there are six telephone numbers on list associated with the representative telephone number. The microprocessor then configures the telephone switch to simultaneously signal at a plurality of the numbers on the list via output ports N1–N1, N2, N3, . . . Nn via subscriber line interface cards S1, S2, S3, . . . Sn. All of the switch offices 12, 14 and 15, as well as those within relay net 13, |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("KugelI") |
|---|---|
| | could have similar circuitry for signalling a plurality of telephone numbers. In the case of originating switch office 12, the output ports would be used for signalling the telephone number 800-555-1111 at a tandem switching office within relay net 13. In the case of that tandem switching office, the output ports would be used for signalling the telephone numbers 800-555-1234 and 202-555-6789. In the case of destination switch office 14, the output ports would be used for signalling the telephone numbers 20-25. In the case of destination switch office 15, the output ports would be used for signalling the telephone number 202-555-6789."   KugelI at 5:10-29 |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | **KugelI** discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address.

*See, e.g.:*

• "The microprocessor also makes use of the ANI from the calling number identification circuit 140. The memory 143 stores ANI signalling parameters associated with each number in the list. Telephone number 22 has a table B of telephone numbers which would be excluded from signalling it. Thus, if the ANI identification of the calling number matches a number on table B, the in-laws' home telephone number would not be signalled, even if the time parameters would allow it to be signalled."   KugelI at 5:57- 6:5.

• "FIG. 2 shows the circuitry for each switch office in more detail. As shown therein, the incoming call is received at input port M, which is the next available input port at the switching office and is applied to telephone switch 144. Telephone switch 144 is also connected to a calling number identification circuit 140, which is able to determine the ANI of the incoming call. A called number detection circuit 141 is also available for determining the identity of the number being called. In the case of switch office 12, the number being called is |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | the representative telephone number 800-555-1111. In the case of switch office 14, the number being called is the representative number 800-555-1234. In the case of switch office 15, the number being called is 202-555-6789." Kugell at 4:54-67. |
| bridging the first call and the first outcall; | **Kugell** discloses bridging the first call and the first outcall.<br><br>*See, e.g.:*<br><br>• "In accordance with the present invention, when a caller dials a specific representative telephone number, the picking up of the telephone (with verification if required) at any of the simultaneously signalled numbers from the list establishes a connection among the caller and the other parties who have answered, but have not disconnected." Kugell at 3:13-18. |
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | **Kugell** discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address.<br><br>*See, e.g.:*<br><br>• "In another embodiment of the present invention, the list is supplied by a party desiring to set up a conference call, for example, a conference call among various business associates. In that instance, the representative telephone number has a plurality of different number on the list and, upon the calling of the representative number, a plurality of the numbers on the list are simultaneously signalled Because the caller desires to speak to all of the persons on the list, signalling will not terminate until there is an off-hook indication at all of the plurality of telephone numbers. Because there is a possibility that one of the persons will not be available, the signalling could terminate after a suitable number of rings. Alternatively, one or more of the called numbers on the list may itself be a representative telephone number with an associated list of telephone numbers which would be called simultaneously and for which signalling among those numbers would terminate after an off-hook indication at |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | one of the plurality of those telephone numbers. Signalling among the numbers on the first list, however, would not terminate until the requirements applicable to the first list are met.   Other alternative embodiments are possible in accordance with the present invention. Thus, for example, the signaling can be terminated when there is an off-hook indication at a majority of the plurality of telephone numbers, for example, three out of five. This might be useful for a telephonic Board of Directors meeting." Kugell at 6:61 – 7:20. |
| | • *See also* Kugell at 3:26 – 30. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | **Kugell** discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address. |
| | *See, e.g.:* |
| | • Kugell at 6:61 – 7:20. |
| bridging the second call and the second outcall. | **Kugell** discloses bridging the second call and the second outcall. |
| | *See, e.g.:* |
| | • Kugell at 6:61 – 7:20. |
| | |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | **Kugell** discloses the method of claim 1, wherein the first call is initiated by the subscriber. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | *See* claim 1 above. |
| | • "In another embodiment of the present invention, the list is supplied by a party desiring to set up a conference call, for example, a conference call among various business associates. In that instance, the representative telephone number has a plurality of different numbers on the list and, upon the calling of the representative number, a plurality of the numbers on the list are simultaneously signalled. Because the caller desires to speak to all of the persons on the list, signalling will not terminate until there is an off-hook indication at all of the plurality of telephone numbers. Because there is a possibility that one of the persons will not be available, the signalling could terminate after a suitable number of rings."   Kugell at 6:61-7:6. |
| | • "The verification code can be a Personal Identification Number (PIN) code which the answering party must key in in order to obtain verification, it can be voice data which would then be compared to a pre-recorded sample of the voice of the answering party for a match and thus verification, or it could be the name of a person which the verification circuit would compare to a name keyed-in or said by an answering party."   Kugell at 6:24-31. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 4. The method as defined in claim 1, wherein the | **Kugell** discloses the method of claim 1, wherein the first call is forwarded to a |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| first call is forwarded to a pilot number associated with the call processing system. | pilot number associated with the call processing system. *See* claim 1 above. <br> • Kugell at 4:8-11. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | **Kugell** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. <br><br> *See* claim 1 above. <br><br> • "In accordance with another aspect of the present invention, certain of the numbers on the list can be included or excluded from the numbers that are to be signalled depending upon characteristics of the calling number. Since the telephone switching office can identify the calling number with Automatic Number Identification (ANI) circuitry, it is possible to determine the identity of the calling number before the signalling is commenced. Thus, each telephone number on the list may have associated with it data in the form of a table which includes calling numbers for which the number on the list should or should not be signalled. Thus, if a party's list consists of five numbers, the party additionally may designate, for example, that his home number is to be signalled only for calls from a table of specified calling numbers and that his in-town apartment's number is not to be signalled for calls from another table of specified calling numbers." Kugell at 2:63-3:3. <br><br> • *See also* Kugell at Fig. 1. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("KugelI") |
|---|---|
| | 

FIG. 1 |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | **Kugell** discloses the method of claim 1, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 1 above.<br><br>• Kugell at Fig. 1. |
| | |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | **Kugell** discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 1 above.<br><br>• Kugell at Figs. 1, 6.<br><br>• "The call from calling telephone number 11 is routed through a subscriber line interface card in the switch office 12, which sends information including the caller identification through the relay net 13 to the destination |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | switch offices 14 and 15." Kugell at 4:23-27. |
| 11. The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone address; | **Kugell** discloses receiving at the call processing system a third call from a calling party directed to the first phone address.<br><br>• "As can be seen from the above, an adaptive teleconferencing operation can be carried out by simultaneously signalling all of the telephone numbers to be teleconferenced and then establishing a conference call among all of those who answer." Kugell at 3:27-31. |
| reading at least one subscriber specified rule from computer readable memory; and | **Kugell** discloses reading at least one subscriber specified rule from computer readable memory.<br><br>• "In the case of destination switch office 14, as shown in FIG. 3, there are six telephone numbers on a list associated with the representative telephone number. The microprocessor then configures the telephone switch to simultaneously signal at a plurality of the numbers on the list via output ports N1–N1, N2, N3, . . . Nn via subscriber line interface cards S1, S2, S3, . . . Sn. All of the switch offices 12, 14 and 15, as well as those within relay net 13, could have similar circuitry for signalling a plurality of telephone numbers. In the case of originating switch office 12, the output ports would be used for signalling the telephone number 800-555-1111 at a tandem switching office within relay net 13. In the case of that tandem switching office, the output ports would be used for signalling the telephone numbers 800-555-1234 and 202-555-6789. In the case of destination switch office 14, the output ports would be used for signalling the telephone numbers 20-25. In the case of destination |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | switch office 15, the output ports would be used for signalling the telephone number 202-555-6789." Kugell at 5:11-28. |
| | • Kugell at 3:31-40. |
| | • Kugell at Fig. 3. |
| |  |
| | FIG. 3 |
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | **Kugell** discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule. |
| | • Kugell at 5:11-28. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 14. The method as defined in claim 1, the method further comprising: | **Kugell** discloses method as defined in claim 1. *See* claim 1 above. |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a third outcall to the transfer destination; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| connecting the first outcall with the third outcall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

13

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,802,160 ("KugelI") |
|---|---|---|
| | | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | | |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | | **Kugell** discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address.<br><br>*See* claim 1 above.<br><br>• Kugell at 1:8-13.<br>• Kugell at Fig. 1. |
| | | |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | | **Kugell** discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber.<br><br>*See* claim 1 above.<br><br>• "The representative telephone number can be an instrument speci?c telephone number, or a virtual telephone number (i.e., one not associated with a specific telephone instrument)."   Kugell at 4:8-11. |
| | | |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| 17. A method of processing calls, the method comprising; | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Kugell** discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>• Kugell at 5:10-29. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Kugell** discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br><br>• Kugell at 5:57-65.<br>• Kugell at 4:54-67. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | **Kugell** discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user.<br><br>• Kugell at 3:26-30.<br>• Kugell at 6:61-7:3. |
| causing the first outcall and the second outcall to be connected. | **Kugell** discloses causing the first outcall and the second outcall to be connected. |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | • Kugell at 3:26-30. |
| | • "In a particularly preferred embodiment of the present invention, the calling party enters a list of numbers corresponding to persons with whom a conference call will be set up. At this time, the caller will also indicate as part of the stored information relating to the representative telephone number, the number of off-hook indications that will be required before the signalling is terminated. In the case of a conference call, it is desired that all of the plurality of numbers have an off-hook indication if possible. Thus when the caller dials the representative number, the microprocessor 142 effects the simultaneous signalling of each of the plurality of numbers on the list so that they are signalled simultaneously and does not terminate signalling until each has an off-hook indication (or a security failure) or there is a time out termination. As was noted previously, each of the numbers that the caller is calling for the conference call also can be a representative number itself which simultaneously signals an associated list of numbers determined by the called party."    Kugell at 9:61 – 10:12. |
| | • "As people answer a call, a temporary conference call is obtained among those answering parties who stay on the line. Because there is a possibility that two or more parties may want to speak during the time they are waiting for others to answer, the volume of whatever is heard (after the first party answers) will be automatically lowered."    Kugell at 10:46-51. |
| | |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | **Kugell** discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br><br>*See* claim 10 above. |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | **Kugell** discloses the method of claim 17, wherein the user telephone is a mobile phone.<br><br>*See* claim 17 above.<br>*See* claim 15 above. |
| | |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| selecting a contact database entry or a call log entry. | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | **Kugell** discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed.<br><br>*See* claim 17 above.<br><br>• "The system also has the capability for either the calling party or a called party (who has answered) to manually terminate signalling at all of the other numbers being signalled by entering a predetermined tone code, such as '"*'"*"*'"'. Kugell at 8:61-65. |
| 26. A method of processing calls, the method comprising: | **Kugell** discloses a method of processing calls, the method comprising.<br><br>*See* claim 1 above. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | **Kugell** discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system.<br><br>*See, e.g.:*<br><br>*See* element 1(a) above. |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | **Kugell** discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network.

*See, e.g.:*

• "The manner in which the information stored in memory 143 is entered and later updated is disclosed with regard to FIG. 5. The calling number identification circuit 140 detects a call configuration telephone number in step 400 and the verification circuit 145 receives a password keyed in by the caller in step 401. The microprocessor, upon receiving a favorable comparison indication from the verification circuit 145, presents a verbal menu of various options which are available in step 402. For example, a configuration message would play to the user a message such as press the pound key '#' to add a new number to the list, press the star key "*" to remove a number from the list, press "S" to change signalling parameters for a number on the list, press "V" to change verification parameters for a number on the list, press "X" to change signalling termination parameters for the list and press "E" to end. Depending upon the tone received from the caller, the microprocessor selects one of the six menus in steps 410, 420, 430, 440 450 and 460." Kugell 9:8-32. |
| storing the plurality of user phone addresses in computer readable memory; | **Kugell** discloses storing the plurality of user phone addresses in computer readable memory.

*See, e.g.:*

*See* element 1(a) above. |
| receiving at the call processing system an indication from the user that the user wants to | **Kugell** discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| establish a call with a first party using a first of the plurality of phone addresses; and | plurality of phone addresses.<br><br>*See, e.g.:*<br><br>• "The system also has the capability for either the calling party or a called party (who has answered) to manually terminate signalling at all of the other numbers being signalled by entering a predetermined tone code, such as "'*'*'*'"." Kugell at 8:61-65.<br><br>*See* element 1(c) above. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | **Kugell** discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.<br><br>*See, e.g.:*<br><br>*See* element 1(d) above. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | **Kugell** discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.<br><br>*See, e.g.:*<br><br>• Kugell at 6:24-31.<br>• Kugell at 8:30-41. |
| | |
| 27. The method as defined in claim 26, the method further comprising; | **Kugell** discloses the method as defined in claim 26. |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | *See* claim 26 above.<br><br>**Kugell** discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses.<br><br>*See* claim 26 above.<br><br>• Kugell at 9:3-32.<br>• Kugell at 9:61-10:7. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | **Kugell** discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address.<br><br>*See* claim 26 above.<br><br>• Kugell at 9:3-32.<br>• Kugell at 4:54-67. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | **Kugell** discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | *See* claim 26 above. <br><br> • Kugell at 3:18-23 <br> • Kugell at 10:46-51. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("KugelI") | |
|---|---|---|
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. | |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | **Kugell** discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 26 above.<br><br>•    Kugell at Fig. 1. | |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | **Kugell** discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 26 above.<br><br>•    Kugell at Figs. 1, 6. | |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| 34. The method as defined in claim 26, the method further comprising: | **Kugell** discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | **Kugell** discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system.<br><br>*See* claim 26 above.<br><br>• Kugell at 5:10-29. |
| reading at least one user specified rule from computer readable memory; | **Kugell** discloses reading at least one user specified rule from computer readable memory.<br><br>*See* claim 26 above.<br><br>• Kugell at 2:47-56.<br>• Kugell at 5:30-47. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different | **Kugell** discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| than the first phone address. | address. |
| | *See* claim 26 above. |
| | • Kugell at 2:47-56. <br> • Kugell at 5:30-47. |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising: | **Kugell** discloses the method as defined in claim 26, the method further comprising. |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | *See* claim 26 above. |
| while the first outcall is in process, receiving at the call processing system a call connect request request from the user, wherein the call connect request is associated with a connect destination; | **Kugell** discloses while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination.<br><br>*See* claim 26 above.<br><br>• "The system also has the capability for either the calling party or a called party (who has answered) to manually terminate signalling at all of the other numbers being signalled by entering a predetermined tone code, such as "'*'*'.'" Kugell at 8:61-65. |
| placing an outcall to the connect destination; and | **Kugell** discloses placing an outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>*See* element 1(d) above. |
| connecting the first outcall with the outcall to the connect destination. | **Kugell** discloses connecting the first outcall with the outcall to the connect destination.<br><br>*See* claim 26 above. |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| | *See* element 1(e) above. |
| 40. A method of processing calls, comprising: | *See* claim 1 above. |
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | *See* element 1(b) and 1(c) above. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | *See* element 1(b) and 1(c) above. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | • "Also receiving information from the telephone switch 144 is the microprocessor 142 with its associated memory 143. The microprocessor receives the called telephone number from the called number detection circuit 141 and looks in memory 143 to see if there is a list of numbers associated therewith." Kugell at 5:1-6.<br><br>• *See also,* Kugell at Fig. 3 |
| if the first outcall is not answered within a first | • "In another embodiment of the present invention, the list is supplied by |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | a party desiring to set up a conference call, for example, a conference call among various business associates. In that instance, the representative telephone number has a plurality of different numbers on the list and, upon the calling of the representative number, a plurality of the numbers on the list are simultaneously signalled. Because the caller desires to speak to all of the persons on the list, signalling will not terminate until there is an off-hook indication at all of the plurality of telephone numbers. Because there is a possibility that one of the persons will not be available, the signalling could terminate after a suitable number of rings."   Kugell at 6:61-7:6. |
| receiving a call connect instruction from the subscriber; and | • "The system also has the capability for either the calling party or a called party (who has answered) to manually terminate signalling at all of the other numbers being signalled by entering a predetermined tone code, such as '****'." . Kugell at 8:61-65 |
| instructing the call processing system to connect the first call to a third communication device. | • "This code is recognized by detection circuit 141 which applies a control signal to microprocessor 142 which terminates signalling at the other numbers." Kugell at 8:65-67 |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,802,160 ("Kugell") |
|---|---|
| stages includes dialing a private branch exchange extension. | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | **Kugell** discloses the method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones.<br><br>*See* claim 40 above.<br><br>• "The system also has the capability for either the calling party or a called party (who has answered) to manually terminate signalling at all of the other numbers being signalled by entering a predetermined tone code, such as "*∗∗*"." Kugell at 8:61-65. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

29

NY:1635738.1

30

Exhibit A-18

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,430,289 ("Liffick")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,430,289 to Liffick ("Liffick") invalidates Claims 17-20, 24-29, 31-34, and 37 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Liffick was published on August 6, 2002, from an application with a priority date of at least April 13, 1999, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| 17. A method of processing calls, the method comprising: | Liffick discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "A telecommunications system combines telephone technology and computer network technology . . . to access call processing[.]"  Liffick at Abstract. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | Liffick discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>*See, e.g.:*<br><br>• "The present invention combines telephone technology with Internet technology to allow the user to 'filter' incoming calls based on user-selected criteria.  In particular, the user may establish a series of lists, stored on the Internet in association with the user's telephone, to filter incoming calls and thereby control access to the user's telephone."  Liffick at 2:66 – 3:5. |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | • "Both the caller and callee can specify user-selectable call processing criteria.   The potential callee can specify call processing criteria for all incoming calls, such as providing a list of individuals whom the person will accept calls, a list of individuals from whom the person will not accept calls, or conditional criteria . . . ."   Liffick at 2:7-14. |
| | • "The caller may be identified by a caller identification data, such as automatic number identification (ANI)."   Liffick at 1:65-67. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Liffick discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user. |
| | • "With the system 100, the central office switch 116 does not initially establish the telephone communication link 120 with the destination telephone 104 to cause the telephone to ring.   Instead, the central office switch 116 establishes a communication link 132 with a computer network 134, such as the Internet." Liffick at 5: 29-34. |
| | • "The Internet 134 stores an affiliation list 150, which may be established by the user of the destination telephone 104.   Data stored within the affiliation list 150 is accessed by the central office switch 116 to determine the manner in which the call from the originating telephone 102 will be processed."   Liffick at 6:30-35. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | • *See also*, Figs. 1, 8 |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Liffick discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user. |
| | • "The central office switch 116 accesses the affiliation list 150 via the communication link 132 and determines whether the calling party is in a list (e.g., the forward list 160) that the user wishes to communicate with. If the calling party is contained within an 'approved' list, the central office switch 116 establishes the communication link 1230 and sends a ring signal to the destination telephone 104. Thus, the user can pick up the telephone with the knowledge that the calling party is an individual with whom the user wishes to communicate." Liffick at 8:56-65. |
| | • "Both the caller and callee can specify user-selectable call processing criteria. The potential callee can specify call processing criteria for all incoming calls, such as providing a list of individuals whom the person will accept calls, a list of individuals from whom the person will not accept calls, or conditional criteria . . . ." Liffick at 2:7-14. |
| | • "The caller may be identified by a caller identification data, such as automatic number identification (ANI)." Liffick at 1:65-67. |
| | • "The discussion above provides examples of the central office switch 116 |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| causing the first outcall and the second outcall to be connected. | processing calls from a calling party in accordance with their presence or absence of certain lists in the affiliation list 150. For example, a call from a party on the forward list 160 will be connected to the destination telephone 104 (see FIG. 2) while a call from a party on the block list 164 will not be put through to the destination telephone. However, the system 100 also allows the selection of call processing options on an individual basis rather than simply on the presence or absence in a particular list. For example, the user can edit the allow list 166 to specify that certain individuals are 'allowed' while other individuals may be allowed, conditionally allowed, or blocked all together. If the individual calling party has an associated status indicating that they are allowed, the central office switch 116 will process the incoming call and connect it to the destination telephone 104." Liffick at 9:31-48. |
| | Liffick discloses causing the first outcall and the second outcall to be connected. |
| | • "The central office switch 116 accesses the affiliation list 150 via the communication link 132 and determines whether the calling party is in a list (e.g., the forward list 160) that the user wishes to communicate with. If the calling party is contained within an 'approved' list, the central office switch 116 establishes the communication link 1230 and sends a ring signal to the destination telephone 104. Thus, the user can pick up the telephone with the knowledge that the calling party is an individual with whom the user wishes to communicate." Liffick at 8:56-65. |
| | • "The discussion above provides examples of the central office switch 116 processing calls from a calling party in accordance with their presence or absence of certain lists in the affiliation list 150. For example, a call from a party on the forward list 160 will be connected to the destination telephone 104 (see FIG. 2) while a call from a party on the block list 164 will not be put through to the destination telephone. However, the system 100 also allows the |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
|  | selection of call processing options on an individual basis rather than simply on the presence or absence in a particular list.   For example, the user can edit the allow list 166 to specify that certain individuals are 'allowed' while other individuals may be allowed, conditionally allowed, or blocked all together.   If the individual calling party has an associated status indicating that they are allowed, the central office switch 116 will process the incoming call and connect it to the destination telephone 104." Liffick at 9:31-48. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Liffick discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br><br>• "[T]he communication link 110 may be a hard-wired connection, such as a fiber optic, copper wire, or the like."   Liffick at 4:46-48. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | Liffick discloses the method of claim 17, wherein the user telephone is a mobile phone.<br><br>*See* claim 17 above.<br><br>• "Alternatively, the communication link 110 may be a wireless communication link if the originating phone 102 is a cellular telephone or some other form of wireless telephone."   Liffick at 4:49-52. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | Liffick discloses the method of claim 17, wherein the user telephone is an Internet protocol phone.<br><br>*See* claim 17 above.<br><br>• "Alternatively, the communication link 110 may be a wireless communication link if the originating phone 102 is a cellular telephone or some other form of wireless telephone." Liffick at 4:49-52.<br><br>• "Although the Internet 134 may use a variety of different communication protocols, a well-known communication protocol used by the Internet is a Transmission Control Protocol/Internet Protocol (TCP/IP). The transmission of 40 data on the Internet 134 using the TCP/IP is known to those skilled in the art and need not be described in greater detail herein." Liffick at 5:37-43. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | Liffick discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry.<br><br>*See* claim 17 above.<br><br>• "The database or other form of the forward list 160 may be satisfactorily implemented using any known data structure for storage of data. For example, the various lists (e.g., the allow list 166, the reverse list 162, the block list 164 and the allow list 166) may all be integrated within a single database structure." Liffick at 10:15-19. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | • "In an exemplary embodiment, the telephone number of the destination telephone 104 or other callee identification is used as an index or pointer to a specific location within the database where the affiliation list 150 for the particular user may be 55 found." 12:50-55. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | Liffick discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed.<br><br>*See* claim 17 above.<br><br>• "For example, the user may wish to allow all calls from a particular number, such as an caller's work number. However, calls from another number, such as the caller's home phone, may be blocked. Other calls, such as from a caller's cellular telephone, may be allowed only at certain times of day. FIG. 7 is intended to illustrate some of the call processing options that are available to the user."  Liffick at 10:34-41. |
| 26. A method of processing calls, the method comprising: | Liffick discloses a method of processing calls, the method comprising.<br><br>*See, e.g.:*<br><br>• "A telecommunications system combines telephone technology and computer network technology[.]' . . . to access call processing[.]"  Liffick at Abstract. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | Liffick discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system.<br><br>*See, e.g.*:<br><br>• "The call processing criteria for both the caller and callee are analyzed and when all conditions are met, a telephone communication link is established between an originating telephone associated with the caller and a destination telephone associated with the callee." Liffick at 2:21-26.<br><br>• "The user can establish a database stored on the Internet in association with the user's telephone number and indicating the user selectable call processing criteria for one or more potential callers." Liffick at   1:61-65. |
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | Liffick discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network.<br><br>*See, e.g.*:<br><br>• "The present invention combines telephone technology with Internet technology to allow the user to 'filter' incoming calls based on user-selected criteria.   In particular, the user may establish a series of lists, stored on the Internet in association with the user's telephone, to filter incoming calls and thereby control access to the user's telephone."   Liffick at 2:66 – 3:5.<br><br>• "Both the caller and callee can specify user-selectable call processing criteria.   The potential callee can specify call processing criteria for all incoming calls, such as providing a list of individuals whom the person will accept calls, a list of individuals from whom the person will not accept calls, or conditional criteria . . . ."   Liffick at 2:7-14. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| storing the plurality of user phone addresses in computer readable memory; | Liffick discloses storing the plurality of user phone addresses in computer readable memory. <br><br> *See, e.g.:* <br><br> • "The database or other form of the forward list 160 may be satisfactorily implemented using any known data structure for storage of data."  Liffick at 10:14-16. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | Liffick discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses. <br><br> *See, e.g.:* <br><br> • "The system 100 can monitor computer activity and generate signals to both the originating telephone 102 and the destination telephone 104 when the callee computer 154 and the caller computer 184 are not in the idle state." 14:50-53. <br><br> • "The system 100 monitors the caller and callee activities and call processing rules and, when appropriate for both parties, establishes a telephone communication link by sending signals from the central office switch 116 to the originating telephone to generate a ring signal. The central office switch 116 also generates appropriate signals to generate ring signal at the destination telephone 104."  Liffick at 15:18-24. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling | Liffick discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| information corresponding to the first outcall, | *See, e.g.:*<br><br>• "The received call data includes the destination telephone number of the destination telephone 104 and identification data indicating the originating telephone 102 as the source of the present call." Liffick at 12:16-19.<br><br>• "The system 100 operates satisfactorily with any form of caller identification. The only requirement for the system 100 is that some form 35 of caller identification be provided. The call is processed in accordance with the user-specified criteria in the affiliation list 150 for the identified caller." Liffick at 12:32-37. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | Liffick discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.<br><br>*See, e.g.:*<br><br>• "The central office switch 116 accesses the affiliation list 150 via the communication link 132 and determines whether the calling party is in a list (e.g., the forward list 160) that the user wishes to communicate with.  If the calling party is contained within an 'approved' list, the central office switch 116 establishes the communication link 1230 and sends a ring signal to the destination telephone 104.   Thus, the user can pick up the telephone with the knowledge that the calling party is an individual with whom the user wishes to communicate."   Liffick at 8:56-65. |
| 27. The method as defined in claim 26, the method further comprising: | Liffick discloses the method as defined in claim 26.<br><br>*See claim 26 above.* |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | Liffick discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses.<br><br>*See claim 26 above.*<br><br>● "As can be appreciated, the originating telephone 102 communicates with the central office switch 116 using the communication link 110 while the caller computer 184 communicates with the Internet 134 using the communication link 132. The communication link 132 may be a second telephone line, a network connection, such as an Ethernet connection, or the like. If the user has two telephone lines, the telephone number of the telephone (e.g., the destination telephone 104) can be different from the telephone number associated with the computer (e.g., the callee computer 154)."    Liffick at 15:25-34.<br><br>● "In operation, the system allows a caller to indicate a desire to establish a telephone communication link with a specified callee." Liffick at 15:14-16. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | Liffick discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address.<br><br>*See claim 26 above.*<br><br>● "The central office switch 116 accesses the affiliation list 150 via the |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | communication link 132 and determines whether the calling party is in a list (e.g., the forward list 160) that the user wishes to communicate with.  If the calling party is contained within an 'approved' list, the central office switch 116 establishes the communication link 1230 and sends a ring signal to the destination telephone 104.  Thus, the user can pick up the telephone with the knowledge that the calling party is an individual with whom the user wishes to communicate."  Liffick at 8:56-65. |
| | ● "Both the caller and callee can specify user-selectable call processing criteria.  The potential callee can specify call processing criteria for all incoming calls, such as providing a list of individuals whom the person will accept calls, a list of individuals from whom the person will not accept calls, or conditional criteria . . . ."  Liffick at 2:7-14. |
| | ● "The caller may be identified by a caller identification data, such as automatic number identification (ANI)."  Liffick at 1:65-67. |
| | ● "The   discussion above provides examples of the central office switch 116 processing calls from a calling party in accordance with their presence or absence of certain lists in the affiliation list 150.   For example, a call from a party on the forward list 160 will be connected to the destination telephone 104 (see FIG. 2) while a call from a party on the block list 164 will not be put through to the destination telephone.   However, the system 100 also allows the selection of call processing options on an individual basis rather than simply on the presence or absence in a particular list.   For example, the user can edit the allow list 166 to specify that certain individuals are 'allowed' while other individuals may be allowed, conditionally allowed, or blocked all together.     If the individual calling party has an associated status indicating that they are allowed, the central office switch 116 will process the incoming call and connect |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | it to the destination telephone 104." Liffick at 9:31-48.<br><br>• "The received call data includes the destination telephone number of the destination telephone 104 and identification data indicating the originating telephone 102 as the source of the present call." Liffick at 12:16-19.<br><br>• "The system 100 operates satisfactorily with any form of caller identification. The only requirement for the system 100 is that some form 35 of caller identification be provided. The call is processed in accordance with the user-specified criteria in the affiliation list 150 for the identified caller." Liffick at 12:32-37. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | Liffick discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall.<br><br>*See* claim 26 above.<br><br>• "**[Quote]**"  Liffick at @ @. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | Liffick discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 26 above. |

14

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|---|
| | • | "**[Quote]**" Liffick at @ @. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | | Liffick discloses the method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. |
| | | *See* claim 26 above. |
| | | • "The central office switch 116 accesses the affiliation list 150 via the communication link 132 and determines whether the calling party is in a list (e.g., the forward list 160) that the user wishes to communicate with.  If the calling party is contained within an 'approved' list, the central office switch 116 establishes the communication link 1230 and sends a ring signal to the destination telephone 104.  Thus, the user can pick up the telephone with the knowledge that the calling party is an individual with whom the user wishes to communicate."  Liffick at 8:56-65. |
| | | • "The   discussion above provides examples of the central office switch 116 processing calls from a calling party in accordance with their presence or absence of certain lists in the affiliation list 150.  For example, a call from a party on the forward list 160 will be connected to the destination telephone 104 (see FIG. 2) while a call from a party on the block list 164 will not be put through to the destination telephone.  However, the system 100 also allows the selection of call processing options on an individual basis rather than simply on the presence or absence in a particular list.  For example, the user can edit the allow list 166 to specify that certain individuals are 'allowed' while other individuals may be allowed, conditionally allowed, or blocked all together.    If the individual calling party has an associated status indicating that they are |

15

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,430,289 ("Liffick") | |
|---|---|---|---|
| | | allowed, the central office switch 116 will process the incoming call and connect it to the destination telephone 104." Liffick at 9:31-48. | |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | | Liffick discloses the method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | |
| | | *See* claim 26 above. | |
| | | • "Although the Internet 134 may use a variety of different communication protocols, a well-known communication protocol used by the Internet is a Transmission Control Protocol/Internet Protocol (TCP/IP). The transmission of 40 data on the Internet 134 using the TCP/IP is known to those skilled in the art and need not be described in greater detail herein." Liffick at 5:37-43. | |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | | Liffick discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network. | |
| | | *See* claim 26 above. | |
| | | • "Alternatively, the communication link 110 may be a wireless communication link if the originating phone 102 is a cellular telephone or some other form of wireless telephone."    Liffick at 4:49-52. | |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | Liffick discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 26 above.<br><br>*See* claim 17 above.<br><br>• "[T]he communication link 110 may be a hard-wired connection, such as a fiber optic, copper wire, or the like. "   Liffick at 4:46-48.<br><br>• "A system to specify user-selectable criteria for call processing is implemented on a telephone system, such as a public switched telephone network (PSTN)." |
| 34. The method as defined in claim 26, the method further comprising; | Liffick discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | Liffick discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system.<br><br>*See* claim 26 above.<br><br>• "The caller indicates a desire to establish a communication link with the callee. The computer network accesses the caller's call processing criteria and |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | the callee's call processing criteria."    Liffick at 2:18-21. |
| reading at least one user specified rule from computer readable memory; | Liffick discloses reading at least one user specified rule from computer readable memory. |
| | *See* claim 26 above. |
| | • "Both the caller and callee can specify user-selectable call processing criteria.    The potential callee can specify call processing criteria for all incoming calls, such as providing a list of individuals whom the person will not accept calls, or conditional criteria . . . ."    Liffick at 2:7-14. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | Liffick discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. |
| | *See* claim 26 above. |
| | • "Both the caller and callee can specify user-selectable call processing criteria.    The potential callee can specify call processing criteria for all incoming calls, such as providing a list of individuals whom the person will not accept calls, a list of individuals from whom the person will not accept calls, or conditional criteria . . . ."    Liffick at 2:7-14. |
| | • "The caller indicates a desire to establish a communication link with the callee. The computer network accesses the caller's call processing criteria and the callee's call processing criteria. The call processing criteria for both the caller and callee are analyzed and when all conditions are met, a telephone |

18

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|---|
| | | communication link is established between an originating telephone associated with the caller and a destination telephone associated with the callee." Liffick at 2:18-26. |
| 37. The method as defined in claim 26, the method further comprising: | | Liffick discloses the method as defined in claim 26, the method further comprising. <br><br> *See* claim 26 above. |
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | | Liffick discloses while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination. <br><br> *See* claim 26 above. <br><br> • "Both the caller and callee can specify user-selectable call processing criteria. The potential callee can specify call processing criteria for all incoming calls, such as providing a list of individuals whom the person will accept calls, a list of individuals from whom the person will not accept calls, or conditional criteria . . . ." Liffick at 2:7-14. <br><br> • "The caller indicates a desire to establish a communication link with the callee. The computer network accesses the caller's call processing criteria and the callee's call processing criteria. The call processing criteria for both the caller and callee are analyzed and when all conditions are met, a telephone communication link is established between an originating telephone associated with the caller and a destination telephone associated with the callee." Liffick |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | at 2:18-26. |
| placing an outcall to the connect destination; and | Liffick discloses placing an outcall to the connect destination. |
| | *See* claim 26 above. |
| | • "With the system 100, the central office switch 116 does not initially establish the telephone communication link 120 with the destination telephone 104 to cause the telephone to ring. Instead, the central office switch 116 establishes a communication link 132 with a computer network 134, such as the Internet." Liffick at 5: 29-34. |
| | • "The Internet 134 stores an affiliation list 150, which may be established by the user of the destination telephone 104. Data stored within the affiliation list 150 is access by the central office switch 116 to determine the manner in which the call from the originating telephone 102 will be processed." Liffick at 6:30-35. |
| | • *See also*, Figs. 1, 8 |
| connecting the first outcall with the outcall to the connect destination. | Liffick discloses connecting the first outcall with the outcall to the connect destination. |
| | *See* claim 26 above. |
| | • "The call processing criteria for both the caller and callee are analyzed and when all conditions are met, a telephone communication link is established between an originating telephone associated with the caller and a destination |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,430,289 ("Liffick") |
|---|---|
| | telephone associated with the callee."    Liffick at 2:18-26. |

21

Exhibit A-19

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on U.S. Patent No. 5,903,636 ("Malik")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,903,636 ("Malik") invalidates Claims 1-3, 5-13,15-21, and 24-25 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Malik was filed on October 27, 1997 and issued on May 11, 1999, before the alleged invention of the '188 Patent. Malik qualifies as prior art under at least 35 U.S.C. §§ 102(a), (b) and (e).

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| [1.1] A method of processing calls, the method comprising: | Malik discloses a method of processing calls (e.g., a system and method for providing calling party identification information to a called party in an intelligent network). *See, e.g.:* "A system and method for providing calling party identification information to a called party in an intelligent network. A long distance calling card company maintains a subscriber database that includes preferred calling number data and calling name data for each subscriber. When a subscriber places a calling card call, the service provider looks up the subscriber's database record, retrieves the preferred calling number data, and sends the calling number data to the terminating end office. A calling name query from the terminating end office is routed to a database that includes data from the service provider's subscriber database. The caller's name is retrieved and returned to the terminating end office and displayed on the called party's display device, along with the calling number data, date, and time. By directing the calling name inquiry to the service provider's subscriber database, or to a database that includes relevant data from |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | the subscriber database, the called party's caller ID display device is able to display both the calling party's identity and a valid call back number."    Malik at Abstract.[1]

"The present invention relates to the provision of calling party identification data in telecommunications systems, and more particularly relates to a system and method for providing calling party identification data in conjunction with calling card calls." 1:7-11.

"Caller ID-Deluxe, which is also referred to as calling name delivery service, requires additional features available in an intelligent telecommunications network. Like the basic Caller ID scenario described above, the calling number is captured by the originating end office and sent to the terminating end office in an Initial Address Message. At that point, the terminating end office recognizes that the call is for a Caller ID-Deluxe subscriber and launches a calling name query on the intelligent network. The query message includes the calling number in the message's called party address field. A signaling transfer point (STP) performs a global title translation on the called party address to determine which service control point (SCP) to route the query to, and forwards the query to that SCP. The SCP searches the name database, which is built from the local phone company's billing records, for the calling number record and retrieves the associated name. The SCP returns the caller name to the terminating end office in a TCAP response. When the terminating office completes the call to the subscriber's phone, it sends the caller name and calling number, along with the current date and time, over the subscriber's line to the display device." 1:53-2:7.

"From the foregoing, it is apparent that in order for called party to know both the identity of the calling party and the telephone number at which the calling party may be reached, two things must happen. First, the calling number data received by the terminating end office must be the correct call back number. Second, the calling name database that is queried as a result of the terminating end office's |

[1] All references are to Malik, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | calling name query must be able to match the caller's name with the calling number that was received at the terminating end office." 2:8-16. |
| | "Therefore, there is a need in the art for an improved system and method for providing calling party identification data, which will allow a calling party to ensure that the called party's display device displays both the calling party's proper identity and a valid call back number in situations where the calling party is not calling from a phone that is billed to him." 2:57-63. |
| | "The present invention satisfies the above-described needs by providing an improved system and method for providing calling party identification information to a called party in an intelligent network. A service provider maintains at least one subscriber database that includes preferred calling number data and calling name data for each subscriber. When a subscriber places a call, the service provider looks up the subscriber's database record and sends the calling number data to the terminating end office. When the terminating end office launches a calling name inquiry, the inquiry will be directed to a database that includes the data from the service provider's subscriber database. The caller's name is returned to the terminating end office and displayed on the called party's display device, along with the calling number data, date, and time." 2:66-3:12. |
| | "Generally described, the present invention provides a method for providing calling party identification information to a called party in a telecommunications network. The method includes receiving a first query, which includes a subscriber number, from a first switch. A calling line identification number associated with the subscriber number is retrieved in response to the first query and transmitted to the first switch. A second query, including the calling line identification number, is received from a second switch. Calling party identification information associated with the calling line identification number is retrieved in response to the second query and transmitted to the second switch." 3:13-24. |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| [1.2] storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Malik discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber (e.g., the service provider maintains a subscriber database that includes preferred calling number data and calling name data for each subscriber). |
| | *See, e.g.:* |
| | "The present invention satisfies the above-described needs by providing an improved system and method for providing calling party identification information to a called party in an intelligent network. A service provider maintains at least one subscriber database that includes preferred calling number data and calling name data for each subscriber. When a subscriber places a call, the service provider looks up the subscriber's database record and sends the calling number data to the terminating end office. When the terminating end office launches a calling name inquiry, the inquiry will be directed to a database that includes the data from the service provider's subscriber database. The caller's name is returned to the terminating end office and displayed on the called party's display device, along with the calling number data, date, and time." 2:66-3:12. |
| | "Generally described, the present invention provides a method for providing calling party identification information to a called party in a telecommunications network. The method includes receiving a first query, which includes a subscriber number, from a first switch. A calling line identification number associated with the subscriber number is retrieved in response to the first query and transmitted to the first switch. A second query, including the calling line identification number, is received from a second switch. Calling party identification information associated with the calling line identification number is retrieved in response to the second query and transmitted to the second switch." 3:13-24. |
| | "More particularly described, the calling party identification information associated with the calling line identification number is retrieved by first |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | retrieving calling name data associated with the calling line identification number and determining whether the calling name data includes a special character. If the calling name data includes a special character, calling party identification information, which is associated with a key that forms a part of the calling name data, is retrieved. Still more particularly, the calling name data and the calling party identification information may be retrieved from first and second databases, respectively, with the calling name data including a database identifier that links the calling name data to the second database." 3:25-37. |
| | "In another aspect, the present invention provides a data structure that allows calling party information associated with a calling party to be displayed on a display device associated with a called party. The data structure includes a linked record and a standard record. The linked record includes a first field, which includes a calling line identification number associated with the calling party, and a second field, which includes a special character and a key. The standard record includes a first field, which includes a calling line identification number corresponding to the key, and a second field, which includes calling name data associated with the calling party. Together, these features of the database structure allow a telecommunications network to provide to the display device both the calling line identification number associated with the calling party and the calling name data associated with the calling party." 3:38-53. |
| | "9. In a telecommunications network, a computer-readable medium containing a data structure for allowing calling party information associated with a calling party to be displayed on a display device associated with a called party, the data structure comprising: |
| | a linked record including a first field and a second field, the first field including a calling line identification number associated with the calling party, the second field including a special character and a key; and |
| | a standard record including a first field and a second field, the first field including a calling line identification number corresponding to the key, the |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | second field including calling name data associated with the calling party, whereby the telecommunications network is able to provide to the display device both the calling line identification number associated with the calling party and the calling name data associated with the calling party." Claim 9. |
| [1.3] storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | Malik discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network (e.g., the subscriber database may store a plurality of callback numbers for the subscriber, including the subscriber's home, office, cellular phone, etc., numbers). |
| | See citations and discussion above in connection with claim limitation 1.2. |
| | *Furthermore, see e.g.,* |
| | "The present invention is particularly advantageous when used with to display a calling party's 'portable' call back number. In the context of this discussion, portable numbers include so-called personal numbers, which route incoming calls to a list of directory numbers identified by the subscriber. This allows a user to give out a single telephone number and have the calls to that number routed to his or her home, office, cellular phone, etc. The term portable number also includes directory numbers associated with portable devices, such as wireless (e.g., cellular and PCS) telephones and pagers. Those skilled in the art will appreciate that portable numbers allow users to receive incoming telephone calls regardless of their geographic location." 4:27-40. |
| | "It will be appreciated that the telecommunications company may allow the subscriber to select one of a group of predetermined display names to be transmitted during each call. In this scenario, the subscriber could provide a plurality of phone numbers (e.g., office and mobile), and select the desired display number at the beginning of each call. For example, the SCN may play a recording that instructs the subscriber to enter a '1' to select the office number |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | and a '2' to select the mobile number as the display number." 7:51-59. |
| | "The present invention allows a caller to let the called party know both who the caller is and how to reach the caller, regardless of where the caller is calling from. It is believed that a service embodying the invention will be especially attractive to travelers and other business people who rely on "portable" numbers, such as personal numbers, or portable devices, such as cellular telephones, pagers, and the like, to receive calls regardless of where they are located. In this context, a caller will be properly identified and the preferred call back number will be displayed on the called party's caller ID display device. In another context, a service embodying the present invention will allow a traveling family members to be properly identified when they place a call back to their home." 12:45-58. |
| | "A system in accordance with the present invention accomplishes two objectives. In a first aspect, such a system includes a subscriber database that provides the calling number data that is sent to the terminating switch and displayed on the called party's display device. This allows the subscriber to select a preferred calling number that will be transmitted with his or her calls. Preferably, this number is a portable number, but may be the subscriber's home number, work number, etc. The second aspect of the system includes adding new entries to a calling name database in order to match a name to non-traditional telephone numbers, thereby allowing the caller to be properly identified on the called party's display device." 12:59-13:4. |
| [1.4] participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | Malik discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address (e.g., the subscriber may dial into the SCN and then select a callback number to display to the called party).

See citations and discussion above in connection with claim limitation 1.3.

*Furthermore, see, e.g.:* |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | "The present invention is directed to an improved system and method for providing calling party identification information to a called party in an intelligent network. In an exemplary embodiment, a telecommunications service provider, such as a long distance calling card company, maintains a subscriber database that includes preferred calling number data and calling name data for each subscriber. When a subscriber places a call, the service provider looks up the subscriber's database record and sends the calling number data to the terminating end office. When the terminating end office launches a calling name inquiry, the inquiry will be directed to a database that includes the data from the service provider's subscriber database. The caller's name is returned to the terminating end office and displayed on the called party's display device, along with the calling number data, date, and time. By directing the calling name inquiry to the service provider's subscriber database, or to a database that includes relevant data from the subscriber database, the called party's caller ID display device is able to display both the calling party's identity and a valid call back number." 4:7-26. |
| | "Each of the SSPs 115a, 115b is connected to another type of AIN element referred to as a local signal transfer point (STP) 135 via respective data links. Currently, these are data links employing a signaling protocol referred to as Signaling System 7 (SS7), which is well known to those skilled in the art. Much of the intelligence of the AIN resides in yet another type of AIN element referred to as a local service control point (SCP) 140 that is connected to STP 135 over a SS7 data link. Among the functions performed by the SCP 140 is the maintenance of network databases and subscriber databases referred to collectively as local SCP databases 142. These databases may be used in providing advanced telecommunication services to a customer. Typically, the SCP 140 is also the repository of service package applications (SPAs) that are used in connection with or as part of the databases in the application of advanced telecommunication services or enhanced features to calling lines.'" 5:49-65. |
| | "With continuing reference to FIG. 1, an exemplary approach to provisioning the present invention will be described. In exemplary embodiment, the present |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | invention is employed by a telecommunications company to provide caller identification services to those who subscribe to its calling card service. These services will permit the recipient of a calling card call from a subscriber to receive the called ID information required to display both the caller's identity and a valid call back number, regardless of where the caller is calling from. In the exemplary embodiment, the long distance service is provided by the same local exchange carrier that operates the AIN 105." 6:43-54.<br><br>"To implement this service, the calling card company employs a toll switch (SSP 115a) to receive calls from its subscribers. Is this case, the SSP 115a is not connected to any individual subscriber lines or terminating equipment. An SCP 170 houses the calling card caller ID application and the calling card subscriber database 180. The calling card subscriber database includes the subscriber's calling card number, personal identification number, and the calling number data and calling name data that the subscriber would like to be sent to the called party's terminating equipment. Advantageously, the calling number data may represent a subscriber's portable number instead of a fixed residential or business phone. The toll switch 115a is connected to SCN 175, which is used primarily to provide instructions to the subscriber through voice prompts and to collect digits representative of the subscriber's calling card number and the directory number of the called party. The SCN 175 and SCP 170 are connected to each other and to the other AIN components in a conventional fashion." 6:55-7:6. |
| [1.5] placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | Malik discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address (e.g., the SCP instructs the switch to route the call to the called number and to use the display number from the calling card subscriber database as the calling line identification data). |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | *See, e.g.:* |
| | "FIG. 2 illustrates the relevant fields of an exemplary database record 200 from the calling card subscriber database, which is stored at SCP 170. For each subscriber, the database includes a subscriber number 205, such as the subscriber's account number or calling card number, and personal identification number 210, which is used for validation purposes. The database also includes calling name data (display name 215) and calling number data (display number 220). The display number 220 will be sent from the calling card company's toll switch to the terminating switch as the calling line data. The display name 215 is the name that will eventually be sent to the terminating switch as the calling name data after it launches its calling name query. Those skilled in the art will appreciate that the database may also include additional information for billing and administrative purposes." 7:7-22. |
| | "FIG. 3 is a flow chart illustrating an exemplary method 300 for implementing a calling card caller ID service in accordance with the present invention. It will be appreciated that the flow chart is FIG. 3 represents steps carried out by the caller, the PSTN, and various parts of the AIN." 7:23-27. |
| | "At step 305 a long distance service subscriber initiates a calling card call by calling a directory number associated with the long distance service provider. Typically, this number is a toll free 800 number. For purposes of this illustration, the call may originate from terminating equipment 110 (FIG. 1) connected to the PSTN 100." 7:28-33. |
| | "At step 310 the call is routed to a toll switch 115a (FIG. 1), which is operated by the long distance service company. In an exemplary embodiment, the toll switch is an SSP that forms a part of the AIN 105." 7:35-38. |
| | "At step 315 the toll switch 115a (FIG. 1) connects the calling card caller to the SCN 175 (FIG. 1), which plays a message instructing the caller to enter his or her calling card number and PIN." 7:39-42. |
| | "At step 320 the SCN 175 plays a message instructing the caller to enter his or |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | her calling card number and PIN. The caller responds by entering the calling card number and PIN at steps 325. The SCN collects the entered digits and transmits them to the SCP 170. At step 330 the SCP validates the calling card number and PIN and looks up the display number 220 (FIG. 2) in the database record associated with that calling card number." 7:43-50.

"At step 335 the SCN plays an announcement instructing the caller to enter the directory number to be called. The caller enters the called number at step 340 and the SCN transmits the number to the SCP. At step 345 the SCP instructs the switch 115a to route the call to the called number and to use the display number from the calling card subscriber database as the calling line identification data that will be transmitted to the terminating switch." 7:60-67.

"At step 350 the terminating switch 115b (FIG. 1) receives the call from the toll switch 115a and determines whether the called party has subscribed to the calling name, or Caller ID-Deluxe, service. If not, the operation proceeds to step 355 and process the call in a normal manner. The operation subsequently terminates at step 360. If the terminating switch needs to launch a calling name query, the operation proceeds to step 365." 8:1-8.

"At step 365 the terminating switch 115b launches a calling name query using the calling number that was received from the toll switch in the called party address portion of the query. At step 370 the STP 135 (FIG. 1) performs a global title translation on the data in the Called Party Address field and routes the query to the SCP that contains the calling name data associated with the calling card subscriber. Those skilled in the art will appreciate that the query may be routed to the SCP 170 (FIG. 1). Alternatively, the required data from the calling card subscriber's database may be stored in a database on other SCPs, such as the local SCP 30, or the regional SCP 150. This routing operation is described more completely below." 8:9-21.

"At step 375 the SCP retrieves the display name 215 (FIG. 2) from the database and transmits the calling name data to the terminating switch 115b. At that point (step 380), the call is completed and the calling name data, calling number data, |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | date, and time are sent to the caller ID display device 120 in a conventional manner. The calling name data, calling number data, date, and time are displayed on the display device at step 385. At that point, the call is processed normally (step 355) and the operation subsequently terminates at step 360." 8:22–31. |
| | "In the embodiment of FIG. 1, all of the calling card calls are routed to the toll switch 115a, which launches a query to obtain the proper calling number data from the subscriber's account records. Those skilled in the art will appreciate that routing calls to the toll switch can be avoided if the calling card call is placed from a switch in the AIN and if the originating switch is programmed to launch a calling card query in response to the calling card 800 number being dialed. At that point, an SCP would retrieve the calling number data and instruct the originating switch to route the call to the appropriate terminating switch and to send the retrieved calling number data as the calling number." 11:53–12:7. |

13

| U.S. Patent No. 5,903,636 ("Malik") | U.S. Patent No. 7,822,188 |
|---|---|
|  FIG.1<br><br>See Fig. 1 and associated text. | |

14



**U.S. Patent No. 5,903,636 ("Malik")**

**U.S. Patent No. 7,822,188**

See Fig. 3 and associated text.

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| [1.6] bridging the first call and the first outcall; | Malik discloses bridging the first call and the first outcall (e.g., the SCP instructs the switch to route the call to the called number and to use the display number from the calling card subscriber database as the calling line identification data).<br><br>See citations and discussion above in connection with claim limitation 1.5. |
| [1.7] participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | Malik discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address (e.g., the caller may be a calling card user and may place a second call to the access calling card service from a different phone).<br><br>See citations and discussion above in connection with claim limitation 1.6.<br><br>*Furthermore, see, e.g.:*<br><br>"A telephone 110 represents terminating equipment connected to the PSTN 100. Those skilled in the art will appreciate that the AIN 105 is operated by a local exchange carrier, such as the assignee of the present invention, and that the PSTN 100 represents various networks belong to other entities. For purposes of the present invention, the PSTN represent telecommunications networks operated by other local exchange carriers in the United States and various telephone companies around the world. Similarly, in the exemplary embodiment of FIG. 1, the local exchange carrier that operates the AIN 105 also provides long distance calling card services to subscribers." 5:1-11.<br><br>"The AIN 105 includes a variety of interconnected network elements. A group of such network elements includes the plurality of central offices, which are indicated as service switching points (SSPs) 115a, 115b. An SSP typically includes switch functionality, but also includes other functionality so as to communicate with other AIN elements as those skilled in the art understand. The SSP 115b has a plurality of subscriber lines connected thereto. A subscriber line may also be referred to as a calling line. Each SSP serves a designated group of calling lines, and thus, the SSP that serves a particular calling line may be |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | referred to as its serving SSP. Each calling line is connected typically to a piece of terminating equipment including a plurality of telephones commonly referenced as 120 and individually referenced as 120a and 120b. Although telephones are illustrated as the pieces of terminating equipment in FIG. 1, those skilled in the art will understand that such pieces include other telecommunication devices such as facsimile machines, computers, modems, etc. The telephone 120b is also connected to a caller ID display device 125, which is capable of displaying the calling number and the calling party's name when a call is received." 5:12-33.<br><br>"It will be appreciated that the telecommunications company may allow the subscriber to select one of a group of predetermined display names to be transmitted during each call. In this scenario, the subscriber could provide a plurality of phone numbers (e.g., office and mobile), and select the desired display number at the beginning of each call. For example, the SCN may play a recording that instructs the subscriber to enter a '1' to select the office number and a '2' to select the mobile number as the display number." 7:51-59. |
| [1.8] placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | Malik discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address (e.g., the SCP instructs the switch to route the call to the called number and to use the display number from the calling card subscriber database as the calling line identification data).<br><br>See citations and discussion above in connection with claim limitation 1.5. |
| [1.9] bridging the second call and the second outcall. | Malik discloses bridging the second call and the second outcall (e.g., the SCP instructs the switch to route the call to the called number and to use the display number from the calling card subscriber database as the calling line |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | identification data).<br><br>See citations and discussion above in connection with claim limitation 1.6. |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | Malik discloses the method of claim 1, wherein the first call is initiated by the subscriber (e.g., the subscriber places a phone call to the access calling card service).<br><br>See claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 1.5. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | Malik discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition (e.g., the subscriber may dial into the SCN).<br><br>See claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 1.4.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | Malik discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling (e.g., the AIN data links employ SS7 signaling).<br><br>*See* claim 1 above.<br><br>*Furthermore, see, e.g.,*<br><br>"Each of the SSPs 115a, 115b is connected to another type of AIN element referred to as a local signal transfer point (STP) 135 via respective data links. Currently, these are data links employing a signaling protocol referred to as Signaling System 7 (SS7), which is well known to those skilled in the art. Much of the intelligence of the AIN resides in yet another type of AIN element referred to as a local service control point (SCP) 140 that is connected to STP 135 over a SS7 data link. Among the functions performed by the SCP 140 is the maintenance of network databases and subscriber databases referred to collectively as local SCP databases 142. These databases may be used in providing advanced telecommunication services to a customer. Typically, the SCP 140 is also the repository of service package applications (SPAs) that are used in connection with or as part of the databases in the application of advanced telecommunication services or enhanced features to calling lines." 5:49-65.<br><br>"As illustrated in FIG. 1, the AIN 105 also includes a service circuit node 160 (SCN), which may also be referred to herein as a service node (SN). SCN 160 includes voice and dual tone multi-frequency (DTMF) signal recognition devices and voice synthesis devices. SCN 160 is connected to the local SCP 140 via data link 165 using an X.25 protocol and to the SMS 155 via a data link (not shown). In addition, SCN 160 typically is connected to one or more (but usually only a few) SSPs via Integrated Service Digital Network (ISDN) links as shown by the connection to SSP 115b." 6:30-40. |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | See Fig. 1 and associated text. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | Malik discloses the method of claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber (e.g., the subscriber may use a computer as a telephone).<br><br>*See* claim 1 above.<br><br>*Furthermore, see, e.g.,*<br><br>"The AIN 105 includes a variety of interconnected network elements. A group of such network elements includes the plurality of central offices, which are indicated as service switching points (SSPs) 115a, 115b. An SSP typically includes switch functionality, but also includes other functionality so as to communicate with other AIN elements as those skilled in the art understand. The SSP 115b has a plurality of subscriber lines connected thereto. A subscriber line may also be referred to as a calling line. Each SSP serves a designated group of calling lines, and thus, the SSP that serves a particular calling line may be referred to as its serving SSP. Each calling line is connected typically to a piece of terminating equipment including a plurality of telephones commonly referenced as 120 and individually referenced as 120a and 120b. Although telephones are illustrated as the pieces of terminating equipment in FIG. 1, those skilled in the art will understand that such pieces include other telecommunication devices such as facsimile machines, computers, modems, etc. The telephone 120b is also connected to a caller ID display device 125, which is capable of displaying the calling number and the calling party's name when a call is received." 5:12-33. |
| 7. The method as defined in claim 1, wherein the | Malik discloses the method of claim 1, wherein the signaling information |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| signaling information associated with the first outcall is SIP signaling. | associated with the first outcall is SIP signaling (e.g., the subscriber may use a computer as a telephone). <br><br> *See* claim 1 above. <br><br> *Furthermore*, see citations and discussion above in connection with claim 6. <br><br> To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | Malik discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network (e.g., the subscriber may use a computer as a telephone, the computer necessarily using an IP network to make a telephone call). <br><br> *See* claim 1 above. <br><br> *Furthermore*, see citations and discussion above in connection with claim 6. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | Malik discloses the method of claim 1, wherein the first outcall is placed over a wireless network (e.g., the subscriber may initiate a call to a called party's telephone and the phone may be a cellular telephone). <br><br> *See* claim 1 above. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | *Furthermore, see, e.g.,*<br><br>"The present invention is particularly advantageous when used with to display a calling party's 'portable' call back number. In the context of this discussion, portable numbers include so-called personal numbers, which route incoming calls to a list of directory numbers identified by the subscriber. This allows a user to give out a single telephone number and have the calls to that number routed to his or her home, office, cellular phone, etc. The term portable number also includes directory numbers associated with portable devices, such as wireless (e.g., cellular and PCS) telephones and pagers. Those skilled in the art will appreciate that portable numbers allow users to receive incoming telephone calls regardless of their geographic location." 4:27-40.<br><br>"The AIN 105 includes a variety of interconnected network elements. A group of such network elements includes the plurality of central offices, which are indicated as service switching points (SSPs) 115a, 115b. An SSP typically includes switch functionality, but also includes other functionality so as to communicate with other AIN elements as those skilled in the art understand. The SSP 115b has a plurality of subscriber lines connected thereto. A subscriber line may also be referred to as a calling line. Each SSP serves a designated group of calling lines, and thus, the SSP that serves a particular calling line may be referred to as its serving SSP. Each calling line is connected typically to a piece of terminating equipment including a plurality of telephones commonly referenced as 120 and individually referenced as 120a and 120b. Although telephones are illustrated as the pieces of terminating equipment in FIG. 1, those skilled in the art will understand that such pieces include other telecommunication devices such as facsimile machines, computers, modems, etc. The telephone 120b is also connected to a caller ID display device 125, which is capable of displaying the calling number and the calling party's name when a call is received." 5:12-33.<br><br>"The present invention allows a caller to let the called party know both who the caller is and how to reach the caller, regardless of where the caller is calling |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | from. It is believed that a service embodying the invention will be especially attractive to travelers and other business people who rely on "portable" numbers, such as personal numbers, or portable devices, such as cellular telephones, pagers, and the like, to receive calls regardless of where they are located. In this context, a caller will be properly identified and the preferred call back number will be displayed on the called party's caller ID display device. In another context, a service embodying the present invention will allow a traveling family members to be properly identified when they place a call back to their home." 12:45-58. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | Malik discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network (e.g., the call may be placed over the PSTN network). *See* claim 1 above. *Furthermore,* see citations and discussion above in connection with claim limitation 1.5. |
| [11.1] The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| [11.2] receiving at the call processing system a third call from a calling party directed to the first phone address; | Malik discloses receiving at the call processing system a third call from a calling party directed to the first phone address (e.g., the subscriber may configure a personal number so that incoming calls to that number are routed to specified directory numbers). *See* claim 1 above. |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | *Furthermore, see, e.g.,*<br><br>"The present invention is particularly advantageous when used with to display a calling party's 'portable' call back number. In the context of this discussion, portable numbers include so-called personal numbers, which route incoming calls to a list of directory numbers identified by the subscriber. This allows a user to give out a single telephone number and have the calls to that number routed to his or her home, office, cellular phone, etc. The term portable number also includes directory numbers associated with portable devices, such as wireless (e.g., cellular and PCS) telephones and pagers. Those skilled in the art will appreciate that portable numbers allow users to receive incoming telephone calls regardless of their geographic location." 4:27-40. |
| [11.3] reading at least one subscriber specified rule from computer readable memory; and | Malik discloses reading at least one subscriber specified rule from computer readable memory (e.g., the subscriber may configure a personal number so that incoming calls to that number are routed to specified directory numbers).<br><br>*See* claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 11.2. |
| [11.4] based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | Malik discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule (e.g., the user may give out a single telephone number and have calls to that number routed to his or her home, office, cellular phone, etc.).<br><br>*See* claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 11.3. |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | Malik discloses the method of claim 1, further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication (e.g., the subscriber may use a computer as a telephone).<br><br>*See* claim 1 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 6.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | Malik discloses the method of claim 1, further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall (e.g., the subscriber may use a computer as a telephone).<br><br>*See* claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim 12.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | Malik discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address (e.g., the subscriber database may store a plurality of callback numbers for the subscriber, including the subscriber's home, office, cellular phone, etc., numbers). <br><br> *See* claim 1 above. <br><br> Furthermore, see citations and discussion above in connection with claim limitation 1.3. |
| | |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | Malik discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber (e.g., the subscriber may use a personal number). <br><br> *See* claim 1 above. <br><br> Furthermore, see citations and discussion above in connection with claim limitation 1.3. |
| | |
| [17.1] A method of processing calls, the method comprising: | *See* claim 1 above. |
| [17.2] receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | Malik discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called (e.g., the caller may use a computer as a telephone and may place a telephone call that is redirected to the |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| | SCP). |
| | See citations and discussion above in connection with claim limitation 1.4 and claim 6. |
| [17.3] at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Malik discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user (e.g., the SCP instructs the switch to route the call to the called number and to use the display number from the calling card subscriber database as the calling line identification data). |
| | See citations and discussion above in connection with claim limitation 1.5. |
| [17.4] placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Malik discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user (e.g., the caller may be a calling card user and may place a second call to the access calling card service from a different phone). |
| | See citations and discussion above in connection with claim limitation 1.7. |
| [17.5] causing the first outcall and the second outcall to be connected. | Malik discloses causing the first outcall and the second outcall to be connected (e.g., the SCP instructs the switch to route the call to the called number and to use the display number from the calling card subscriber database as the calling line identification data). |
| | See citations and discussion above in connection with claim limitation 1.9. |
| | |
| 18. The method as defined in claim 17, wherein | Malik discloses the method of claim 17, wherein the user telephone is a landline |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| the user telephone is a landline phone. | phone (e.g., the subscriber may use a home or office telephone connected to the PSTN network).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 10 above. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | Malik discloses the method of claim 17, wherein the user telephone is a mobile phone (e.g., the subscriber may use a cellular telephone).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 9 above. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | Malik discloses the method of claim 17, wherein the user telephone is an Internet protocol phone (e.g., the subscriber may use a computer as a telephone).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 6 above. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request | Malik discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall (e.g., the subscriber may use a computer as a telephone). |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| traverses a firewall. | *See* claim 17 above.<br><br>Furthermore, see citations and discussion above in connection with claim 12.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | Malik discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry (e.g., the subscriber database may store a plurality of callback numbers for the subscriber, including the subscriber's home, office, cellular phone, etc., numbers).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim limitation 15.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from | Malik discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,903,636 ("Malik") |
|---|---|
| the user as to which communication device the first outcall is to be placed. | be placed (e.g., the subscriber may use a personal number).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 16.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

30

Exhibit A-20

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on U.S. Patent No. 7,245,612 ("Petty '612")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 7,245,612 ("Petty '612'") invalidates Claims 1-37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent'") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Petty issued from a U.S. national stage of a PCT application filed on March 21, 2001, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612'") |
|---|---|
| 1. A method of processing calls, the method comprising: | Petty '612 discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "The invention relates to a call-waiting feature for telephone service subscribers. In particular, the invention relates to methods and a system for providing voice call information voice call screening and voice messaging capabilities for a called telephone station set that is busy as a result of being connected to a data network, such as the Internet."  Petty '612 at 1: 7-12.<br><br>• "FIG. 6 is a flow diagram showing a process by which waiting calls are handled in accordance with an embodiment of the invention."  Petty '612 at 4:1-3. |

2

| U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") | U.S. Patent No. 7,822,188 |
|---|---|
| \n\nPetty '612 at Fig. 6. | |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Petty '612 discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber.<br><br>*See, e.g.:*<br><br>• "Each ICW registration server 152 preferably maintains a complete copy of ICW subscriber profiles."  Petty '612 at 5:33-35.<br><br>• "The ICW service is normally offered on a subscription basis. An ICW service activation process includes a subscriber information collection step, and a subscriber profile creation step. The information collection step may include prompt-based information collection, but other methods of information collection may be used. The collected subscriber information includes, for example, subscriber's name, user-id, password, e-mail address, DN and subscriber's preference settings."  Petty '612 at 5: 53-61. |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | Petty '612 discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network.<br><br>*See, e.g.:*<br><br>• "Each ICW registration server 152 preferably maintains a complete copy of ICW subscriber profiles."  Petty '612 at 5:33-35.<br><br>• "The ICW service is normally offered on a subscription basis. An ICW service activation process includes a subscriber information collection step, and a subscriber profile creation step. The information collection step may include prompt-based information collection, but other methods of information collection may be used. The collected subscriber information includes, for example, subscriber's name, user-id, password, e-mail address, DN and |

4

Case 1:12-cv-01702-RGA    Document 602-1    Filed 10/19/16    Page 559 of 1001 PageID #: 36610

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | subscriber's preference settings."    Petty '612 at 5: 53-61. |
| | • "If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the subscriber's profile. At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW."    Petty '612   at 10:52-59. |
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."    Petty '612   at 10:56-60. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art."   Petty '612 at 10:61-66. |
| |  |
| | Petty '612   at Fig. 6. |
| participating at the call processing system in a first | Petty '612   discloses participating at the call processing system in a first call |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| call with the subscriber, wherein the first call is associated with a second phone address; | with the subscriber, wherein the first call is associated with a second phone address.<br><br>See, e.g.:<br><br>• "FIG. 6 is a flow diagram of a process by which waiting calls are handled in accordance with an embodiment of the invention. The process begins at step 300 when a call to the ICW subscriber 100 is forwarded to the ICW application server."  Petty '612 at 9:37-31.<br><br>• "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."  Petty '612 at 10:56-60.<br><br>• "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art."  Petty '612 at 10:61-66. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| |  Petty '612 at Fig 6. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| bridging the first call and the first outcall; | Petty '612 discloses bridging the first call and the first outcall.<br><br>*See, e.g.:*<br><br>• "A call treatment option for the waiting call is selected by the subscriber from a call treatment selection displayed at the data network node. A waiting call is bridged through to the data network node over the data connection on |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | selection of a "call screening" option."  Petty '612 at 3:30-35. |
| | • "At step 342, the ICW server redirects the call through the PSTN back to the subscriber's local loop, which permits the subscriber to answer the incoming call."  Petty '612 at 11:13-15. |
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."  Petty '612 at 10:56-60. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoIP), the process continues at step 336. The VoIP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoIP connection to the user's computer and at step 338, the ICW server bridges the call to the VoIP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoIP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."  Petty '612 at 10:61-11:6 |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | 

Petty '612 at Fig. 6. |
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | Petty '612 discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address.

*See, e.g.:*

- "A call treatment option for the waiting call is selected by the subscriber from a call treatment selection displayed at the data network node. A waiting call is bridged through to the data network node over the data connection on selection of a 'call screening' option."   Petty '612 at 3:30-35.

- "At step 342, the ICW server redirects the call through the PSTN back to the subscriber's local loop, which permits the subscriber to answer the incoming |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | call."    Petty '612 at 11:13-15. |
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."    Petty '612 at 10:56-60. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoiP connection to the user's computer and at step 338, the ICW server bridges the call to the VoiP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoiP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."    Petty '612 at 10:61-11:6. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| |  Petty '612 at Fig. 6. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| bridging the second call and the second outcall. | Petty '612 discloses bridging the second call and the second outcall.<br><br>*See, e.g.:*<br><br>• "If the subscriber profile specifies that calls are to be answered using |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoiP connection to the user's computer and at step 338, the ICW server bridges the call to the VoiP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoiP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."   Petty '612 at 10:61-11:6. |
| | • "A call treatment option for the waiting call is selected by the subscriber from a call treatment selection displayed at the data network node. A waiting call is bridged through to the data network node over the data connection on selection of a 'call screening' option."   Petty '612 at 3:30-35. |
| | • "At step 342, the ICW server redirects the call through the PSTN back to the subscriber's local loop, which permits the subscriber to answer the incoming call."   Petty '612 at 11:13-15. |
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:56-60. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | <br><br>Petty '612 at Fig. 6 |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | Petty '612 discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. <br><br> *See* claim 1 above. <br><br> • "Call Forward on Busy Line (CFBL) is a telephone service feature that enables the redirection of calls placed to an off-hook local loop to another PSTN termination. In accordance with the invention, the user's local loop 104 is provisioned with the CFBL feature so that calls made to the user's PSTN termination while the user's local loop 104 is busy, are redirected to an ICW service node 150. As such, calls are redirected to the ICW service node 150 whether the subscriber 100 is engaged in a telephone conversation, or connected to the Internet 134. The CFBL feature is triggered in the local telephone switch 122 that serves the local loop 104." Petty '612 at 4:53-64. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | Petty '612 discloses the method of claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. <br><br> *See* claim 1 above. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | • "When a caller 123 places a call 250 from the caller's telephone set 124 to the ICW subscriber's telephone 106, the local telephone switch 122 determines that the subscriber's telephone line is provisioned with the CFBL. The local telephone switch 122 therefore redirects the incoming call through the PSTN 120 to the call forward number associated with the subscriber line 104. The call forward number directs the call to an available ICW application server, establishing a connection 252 via ISDN trunks 168 in a manner well known in the art."  Petty '612 at 7:41-50. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | *See* claim 1 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | Petty '612 discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network. *See* claim 1 above. <br><br> • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoiP connection to the user's computer and at step 338, the ICW server bridges the call to the VoiP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoiP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."   Petty '612 at 10:61-11:6. |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | • "Provisions are made for connecting the waiting call to the client's computer premises as an Internet protocol (IP) call."   Petty '612 at 2:37-39. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | Petty '612 discloses the method of claim 1, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 1 above.<br><br>• "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:56-60. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | Petty '612 discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 1 above.<br><br>• "At step 342, the ICW server redirects the call through the PSTN back to the subscriber's local loop, which permits the subscriber to answer the incoming call."   Petty '612 at 11:13-15.<br><br>• "At step 334, the ICW server then redirects the call through the PSTN to |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:56-60. |
| | • "An ICW service subscriber 100, located at customer premises 102, uses a local loop 104 to access a Public Switched Telephone Network (PSTN). The local loop 104 is associated with a Directory Number, (DN) and provides Plain Old Telephone Service (POTS) service to the subscriber 100."   Petty '612 at 4:14-22. |
| 11. The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone address; | Petty '612 discloses receiving at the call processing system a third call from a calling party directed to the first phone address. |
| | • "FIG. 6 is a flow diagram of a process by which waiting calls are handled in accordance with an embodiment of the invention. The process begins at step 300 when a call to the ICW subscriber 100 is forwarded to the ICW application server."   Petty '612 at 9:37-31. |
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:56-60. |
| | • "If the subscriber profile specifies that calls are to be answered using |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art."   Petty '612 at 10:61-66. |
| | Petty '612 at Fig 6. |
| reading at least one subscriber specified rule from computer readable memory; and | Petty '612 discloses reading at least one subscriber specified rule from computer readable memory.

• "At step 330, the subscriber's pre-specified call answer preferences are examined in the subscriber profile. If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than first phone address. | subscriber's profile."   Petty '612 at 10:51-56.<br><br>Petty '612 discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule.<br><br>• "At step 330, the subscriber's pre-specified call answer preferences are examined in the subscriber profile. If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, 55 where the ICW server retrieves an alternate directory number from the subscriber's profile. At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW 60 subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:51-60. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| firewall. | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 14. The method as defined in claim 1, the method further comprising: | Petty '612 discloses method as defined in claim 1.<br><br>*See* claim 1 above. |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | Petty '612 discloses while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination.<br><br>*See* claim 1 above.<br><br>• "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | detects this condition and ends the call with a busy call treatment. VoIP bridging of the call is the only option if CFU is applied to the line.'"   Petty '612 at 11:41-55. |
| placing a third outcall to the transfer destination; and | Petty '612 discloses placing a third outcall to the transfer destination. |
| | *See* claim 1 above. |
| | ● "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoIP bridging of the call is the only option if CFU is applied to the line."   Petty '612 at 11:41-55. |
| connecting the first outcall with the third outcall. | Petty '612 discloses connecting the first outcall with the third outcall. |
| | *See* claim 1 above. |
| | ● "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect all incoming calls to the ICW service node 150. If the subscriber enables CFU, |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoIP bridging of the call is the only option if CFU is applied to the line."  Petty '612 at 11:41-55. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | Petty '612 discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address.<br><br>*See* claim 1 above.<br><br>● "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."  Petty '612 at 10:56-60.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 16. The method as defined in claim 1, wherein the | Petty '612 discloses the method of claim 1, wherein the first phone address is a |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | virtual telephone address that is not assigned by a carrier to the subscriber. |
| | *See* claim 1 above. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art." Petty '612 at 10:61-66. |
| 17. A method of processing calls, the method comprising; | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality.. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Petty '612 discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user. |
| | • "At step 342, the ICW server redirects the call through the PSTN back to the subscriber's local loop, which permits the subscriber to answer the incoming call." Petty '612 at 11:13-15. |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."  Petty '612 at 10:56-60. |
| | • "An ICW service subscriber 100, located at customer premises 102, uses a local loop 104 to access a Public Switched Telephone Network (PSTN). The local loop 104 is associated with a Directory Number, (DN) and provides Plain Old Telephone Service (POTS) service to the subscriber 100."  Petty '612 at 4:14-22. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| causing the first outcall and the second outcall to | Petty '612 discloses causing the first outcall and the second outcall to be |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| be connected. | connected. |
| | • "A call treatment option for the waiting call is selected by the subscriber from a call treatment selection displayed at the data network node. A waiting call is bridged through to the data network node over the data connection on selection of a 'call screening' option."  Petty '612 at 3:30-35. |
| | • "At step 342, the ICW server redirects the call through the PSTN back to the subscriber's local loop, which permits the subscriber to answer the incoming call."  Petty '612 at 11:13-15. |
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."  Petty '612 at 10:56-60. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoiP connection to the user's computer and at step 338, the ICW server bridges the call to the VoiP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoiP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."  Petty '612 at 10:61-11:6 |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| |  Petty '612 at Fig. 6 |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Petty '612 discloses the method of claim 17, wherein the user telephone is a landline phone. *See* claim 17 above. *See* claim 10 above. • "The ICW service is normally offered on a subscription basis. An ICW service activation process includes a subscriber information collection step, and |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | a subscriber profile creation step. The information collection step may include prompt-based information collection, but other methods of information collection may be used. The collected subscriber information includes, for example, subscriber's name, user-id, password, e-mail address, DN and subscriber's preference settings." Petty '612 at 5: 53–61.<br><br>• "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like." Petty '612 at 10:56-60. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | Petty '612 discloses the method of claim 17, wherein the user telephone is a mobile phone.<br><br>*See* claim 17 above.<br><br>• "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like." Petty '612 at 10:56-60.<br><br>• "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoIP), the process continues at step 336. The VoIP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | art."   Petty '612 at 10:61-66. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | Petty '612 discloses the method of claim 17, wherein the user telephone is an Internet protocol phone. |
| | *See* claim 17 above. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoiP connection to the user's computer and at step 338, the ICW server bridges the call to the VoIP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoiP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."   Petty '612 at 10:61-11:6. |
| | • "Provisions are made for connecting the waiting call to the client's computer premises as an Internet protocol (IP) call."   Petty '612 at 2:37-39. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call | *See* claim 17 above. |

29

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| processing system after the first call request traverses a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | Petty '612 discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed.<br><br>*See* claim 17 above.<br><br>• "At step 330, the subscriber's pre-specified call answer preferences are examined in the subscriber profile. If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, |

30

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | where the ICW server retrieves an alternate directory number from the subscriber's profile. At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW 60 subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:51-60. |
| 26. A method of processing calls, the method comprising: | Petty '612 discloses a method of processing calls, the method comprising. *See* claim 1 above. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | Petty '612 discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system: *See, e.g.:* <br><br> • "Each ICW registration server 152 preferably maintains a complete copy of ICW subscriber profiles." Petty '612 at 5:33-35. <br><br> • "The ICW service is normally offered on a subscription basis. An ICW service activation process includes a subscriber information collection step, and a subscriber profile creation step. The information collection step may include prompt-based information collection, but other methods of information collection may be used. The collected subscriber information includes, for example, subscriber's name, user-id, password, e-mail address, DN and subscriber's preference settings."   Petty '612 at 5: 53-61. |

31

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | Petty '612 discloses storing in computer readable memory a plurality of phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network: <br><br> *See, e.g.:* <br><br> • "Each ICW registration server 152 preferably maintains a complete copy of ICW subscriber profiles."   Petty '612 at 5:33-35. <br><br> • "The ICW service is normally offered on a subscription basis. An ICW service activation process includes a subscriber information collection step, and a subscriber profile creation step. The information collection step may include prompt-based information collection, but other methods of information collection may be used. The collected subscriber information includes, for example, subscriber's name, user-id, password, e-mail address, DN and subscriber's preference settings."   Petty '612 at 5: 53-61. <br><br> • "If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the subscriber's profile. At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW."   Petty '612 at 10:52-59. <br><br> • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:56-60. <br><br> • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoIP), the process continues at step 336. The VoIP option |

32

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art."   Petty '612 at 10:61-66.



Petty '612 at Fig. 6. |
| storing the plurality of user phone addresses in computer readable memory; | Petty discloses '612 storing the plurality of user phone addresses in computer readable memory.

See, e.g.:

● "Each ICW registration server 152 preferably maintains a complete copy of ICW subscriber profiles."   Petty '612   at 5:33-35.

● "The ICW service is normally offered on a subscription basis. An ICW service activation process includes a subscriber information collection step, and a subscriber profile creation step. The information collection step may include prompt-based information collection, but other methods of information collection may be used. The collected subscriber information includes, for example, subscriber's name, user-id, password, e-mail address, DN and subscriber's preference settings."   Petty '612 at 5: 53-61.

● "If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the subscriber's profile. At step 334, the ICW |

33

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW." Petty '612 at 10:52-59. |
| | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like." Petty '612 at 10:56-60. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoiP), the process continues at step 336. The VoiP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art." Petty '612 at 10:61-66.<br><br>Petty '612 at Fig. 6. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a first outcall from the call processing | To the extent that Plaintiff contends this prior art reference does not specifically |

34

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 27. The method as defined in claim 26, the method further comprising: | Petty '612 discloses the method as defined in claim 26.

*See* claim 26 above. |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | *See* claim 26 above.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a second outcall from the call processing system to the second party, wherein the call | *See* claim 26 above. |

35

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 29. The method as defined in claim 26, wherein | Petty '612 discloses the method as defined in claim 26, wherein the first |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| the first communication device is a computer hosting Voice over IP software. | communication device is a computer hosting Voice over IP software. |
| | *See* claim 26 above. |
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoIP), the process continues at step 336. The VoIP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoIP connection to the user's computer and at step 338, the ICW server bridges the call to the VoIP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoIP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."   Petty '612 at 10:61-11:6. |
| | • "Provisions are made for connecting the waiting call to the client's computer premises as an Internet protocol (IP) call."   Petty '612 at 2:37-39. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | *See* claim 26 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

37

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | Petty '612 discloses the method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network.<br><br>*See* claim 26 above.<br><br>● " If the subscriber profile specifies that calls are to be answered using Voice over IP (VoIP), the process continues at step 336. The VoIP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art. At step 336, the ICW server sets up a VoIP connection to the user's computer and at step 338, the ICW server bridges the call to the VoIP connection. The subscriber's computer must be equipped with appropriate software, a microphone and speakers to enable the VoIP option, as is well understood. This option permits the subscriber to talk with the caller without disconnecting from the Internet."   Petty '612 at 10:61-11:6.<br><br>● "Provisions are made for connecting the waiting call to the client's computer premises as an Internet protocol (IP) call."   Petty '612 at 2:37-39. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | Petty '612 discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 26 above. |

38

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") | |
|---|---|---|
| | | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."  Petty '612 at 10:56-60. |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | Petty '612 discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network.  *See* claim 26 above. | |
| | | • "At step 342, the ICW server redirects the call through the PSTN back to the subscriber's local loop, which permits the subscriber to answer the incoming call."  Petty '612 at 11:13-15. |
| | | • "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."  Petty '612 at 10:56-60. |
| | | • "An ICW service subscriber 100, located at customer premises 102, uses a local loop 104 to access a Public Switched Telephone Network (PSTN). The local loop 104 is associated with a Directory Number, (DN) and provides Plain |

39

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | Old Telephone Service (POTS) service to the subscriber 100."   Petty '612 at 4:14-22. |
| 34. The method as defined in claim 26, the method further comprising: | Petty '612 discloses the method as defined in claim 26, the method further comprising.

*See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | Petty '612 discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system.

*See* claim 26 above.

*See, e.g.:*

● "FIG. 6 is a flow diagram of a process by which waiting calls are handled in accordance with an embodiment of the invention. The process begins at step 300 when a call to the ICW subscriber 100 is forwarded to the ICW application server."   Petty '612 at 9:37-31.

● "At step 334, the ICW server then redirects the call through the PSTN to the second directory number. The second directory number may be associated with a second local loop (not shown) at the ICW subscriber's premises 102, a cellular telephone, or the like."   Petty '612 at 10:56-60. |

40

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | • "If the subscriber profile specifies that calls are to be answered using Voice over IP (VoIP), the process continues at step 336. The VoIP option permits the subscriber to answer the call using his computer by sending the voice signals in data packets over the data connection, in a manner well known in the art."   Petty '612 at 10:61-66.<br><br><br><br>Petty '612 at Fig. 6. |
| reading at least one user specified rule from computer readable memory; | Petty '612 discloses reading at least one user specified rule from computer readable memory.<br><br>*See* claim 26 above.<br><br>• "At step 330, the subscriber's pre-specified call answer preferences are examined in the subscriber profile. If the subscriber profile specifies that calls |

41

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the subscriber's profile."   Petty '612 at 10:51-56. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | Petty '612 discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address.

*See* claim 26 above.

• "At step 330, the subscriber's pre-specified call answer preferences are examined in the subscriber profile. If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the subscriber's profile."   Petty '612at 10:51-56. |
| | |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | *See* claim 26 above.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |

42

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 37. The method as defined in claim 26, the method further comprising: | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | Petty '612 discloses while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination.<br><br>*See* claim 26 above.<br><br>• "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect |

43

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoIP bridging of the call is the only option if CFU is applied to the line."   Petty '612 at 11:41-55. |
| placing an outcall to the connect destination; and | Petty '612 discloses placing an outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>● "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoIP bridging of the call is the only option if CFU is applied to the line."   Petty '612 at 11:41-55. |
| connecting the first outcall with the outcall to the connect destination. | Petty '612 discloses connecting the first outcall with the outcall to the connect destination. |

44

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | *See* claim 26 above. |
| | • "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoiP bridging of the call is the only option if CFU is applied to the line."   Petty '612 at 11:41-55. |
| 40. A method of processing calls, comprising: | Petty '612 discloses a method of processing calls.<br><br>*See* claim 1 above. |
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the | Petty '612 discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a |

45

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| telephone address is that of a subscriber: | subscriber.<br><br>*See, e.g.:*<br><br>• "FIG. 5 is a schematic diagram showing connections being established to notify a registered ICW client computer 110 of a waiting call, in accordance with an embodiment of the invention. When a caller 123 places a call 250 from the caller's telephone set 124 to the ICW subscriber's telephone 106, the local telephone switch 122 determines that the subscriber's telephone line is provisioned with the CFBL. The local telephone switch 122 therefore redirects the incoming call through the PSTN 120 to the call forward number associated with the subscriber line 104. The call forward number directs the call to an available ICW application server, establishing a connection 252 via ISDN trunks 168 in a manner well known in the art."  Petty '612 at 7:38-50. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Petty '612 discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction.<br><br>*See, e.g.:*<br><br>• "At step 330, the subscriber's pre-specified call answer preferences are examined in the subscriber profile. If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the subscriber's profile."  Petty '612 at   10:51-56. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Petty '612 discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber. |

46

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | *See, e.g.:*<br><br>• "At step 330, the subscriber's pre-specified call answer preferences are examined in the subscriber profile. If the subscriber profile specifies that calls are to be directed to a second telephone line, the process continues at step 332, where the ICW server retrieves an alternate directory number from the subscriber's profile."  Petty '612 at 10:51-56. |
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | Petty '612 discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber.<br><br>*See, e.g.:*<br><br>• "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber node 150 to redirect all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoIP bridging of the call is the only option if CFU is applied to the line."  Petty '612 at 11:41-55.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

47

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| receiving a call connect instruction from the subscriber; and | Petty '612 discloses receiving a call connect instruction from the subscriber. |
| | *See, e.g.:* |
| | • "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoIP bridging of the call is the only option if CFU is applied to the line."    Petty '612 at 11:41-55. |
| instructing the call processing system to connect the first call to a third communication device. | Petty '612 discloses instructing the call processing system to connect the first call to a third communication device. |
| | *See, e.g.:* |
| | • "A Call Forward Unconditional (CFU) feature forces all calls to a Directory Number (DN) to be redirected to another PSTN termination. CFU has precedence over CFBL and may be used by an ICW subscriber 100 to redirect |

48

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | all incoming calls to the ICW service node 150. If the subscriber enables CFU, after specifying in his profile that calls are to be answered on his primary phone line, then at step 342, the ICW server would attempt to redirect the call through the PSTN back to the user's phone line, at which point, the CFU feature would transfer the call back to the ICW service node 150. A loop detection process detects this condition and ends the call with a busy call treatment. VoiP bridging of the call is the only option if CFU is applied to the line."    Petty '612 at 11:41-55. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | *See* claim 40 above: To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | *See* claim 40 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

49

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | *See* claim 40 above: |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | *See* claim 40 above: |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | See claim 40 above: |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

50

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,245,612, "Internet Call Waiting With Voicemail System that Provides Monitoring During Recording" ("Petty '612") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

51

NY:1636655.2

Exhibit A-21

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on U.S. Patent No. 6,337,858 ("Petty '858")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty") invalidates Claims 17–21, 24–25 and 40-43 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Petty was issued on Jan. 8, 2002, from an application with a priority date of at least October 10, 1997, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| 17. A method of processing calls, the method comprising: | **Petty '858 discloses** a method of processing calls.<br><br>*See, e.g.:*<br><br>60   These and other objects are realized in a method of providing voice communications between two parties using computer controlled telephony hardware which is separate from the Public Switched Telephone Network (PSTN), at least one of the parties having access to a data network, comprising;<br><br>65   originating a first voice connection from the computer controlled telephony hardware in response to a call request received from the data network; |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | originating a second voice connection from the computer controlled telephony hardware in response to the call request received from the data network; and<br><br>bridging together the first and second voice connections at the computer controlled telephony hardware to permit voice communications between the two parties.<br><br>**Petty '858 at 2:58–3:6.** |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Petty '858 discloses** receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>*See, e.g.:*<br><br>to be established. All call initiation and bridging is effected from computer telephony hardware comprising a switch fabric and a switch controller which permits ultimate flexibility with respect to the establishment, bridging, transfer and other call operations. The computer telephony hardware is the originating point for each leg of a voice connection.<br><br>**Petty '858 at 4:23–28.    *See also, e.g.,* id. at 7:22–32.**<br><br>The servers **38** and **46–54** have certain functional requirements. In particular, the voice web server **38** requires no special hardware but must support the ability to download JAVA applets to the clients **18, 20** workstations and/or the subscriber workstations **34**.<br><br>**Petty '858 at 7:17–21.** |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | 65     originating a first voice connection from the computer controlled telephony hardware in response to a call request received from the data network;<br><br>**Petty '858 at 2:64–66.**<br><br>        FIG. **6** is a schematic diagram showing a simple call sequence in accordance with the invention. For simplicity of illustration, the user is browsing the WWW using client station **18** and the service subscriber **32** has only one 10   workstation **36** and one business phone **34**. The user initiates a call request from an interactive information page maintained for the service subscriber **32**. The call request is forwarded over the Internet to the web server **38**. The call<br><br>**Petty '858 at 10:8–15.** *See also, e.g.,* id. at 3:14–15; 4:29–30; 5:56–65; 11:8–14; Claims 1, 9. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Petty '858 discloses** at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br><br>*See, e.g.:*<br><br>65     originating a first voice connection from the computer controlled telephony hardware in response to a call request received from the data network;<br><br>**Petty '858 at 2:64–66.** |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | 25   the subscriber **32**. The web server **38** then passes informa-tion to the CTI server **40** which operates the CTI hardware **44** to place a first call to the user client **18**. In this example, the user client **18** has requested a VoIP call connection. The CTI server therefore sends a request to the VoIP gateway **42** 30   to make a VoIP call offer to the user client **18**. The call offer is accepted by the user client **18** and the call is answered. <br><br> **Petty '858 at** 10:26–32.   *See also, e.g.,* id. at 3:23–25; 4:29–32; 5:65–6:3; 11:8–12; Claims 1, 9. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | **Petty '858 discloses** placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user. <br><br> *See, e.g.:* |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | server **38** that the call connection is complete. The web server **38** forwards call alert information to the workstation **36** of service subscriber **32**. The call alert information "pops" open a call alert window **82** (see FIG. **5**) on the workstation **36**. Web server **38** then passes information to the CTI server **40** to enable a call to the service subscriber **32**.<br><br>In this example, the service subscriber has specified that calls be completed over the PSTN to the business telephone **34**. The CTI server **40** therefore initiates a PSTN call. The PSTN call is initiated using, for example, a trunk link to the PSTN having a PRI interface, well known in the art. A PRI packet is therefore sent over the trunk to the PSTN which completes the call in a manner well known in the art. When the service subscriber **32** answers the call on business phone **34**, the CTI server **40** informs the web server **38** that the call is answered. The web server **38** then instructs the CTI server<br><br>**Petty '858 at** 10:34–50.  *See also, e.g.,* id. at 3:1–3:3:26–28; 4:29–32; 11:12–19; Claims 1, 9. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | invention. When a user such as client **18, 20** initiates a call request, the web server **38** preferably sends an alert applet **66** (see FIG. **2**) to the agent screen display **78**. The alert applet **66** preferably opens an alert window **82** on the screen display **78**. The contents of the alert window **82** will depend on the type of connection established with the user and the information available from the connection, as well as implementation preferences. In the example illustrated, a user John Doe has requested a voice connection over a telephone line using telephone number 613-123-4567. The user name is identified from the telephone number and displayed to the call handling agent. Also provided is the URL **84** of the page [20] [25] **Petty '858 at 9:34–50.** FIG. **5** is a schematic representation of one potential implementation of a screen display **78** for the workstation **36** of a call handling agent for the service subscriber **32**. In this **Petty '858 at 9:7–9.** |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | 
**Petty '858 at Fig. 5.** *See also, e.g.,* id. at 12:54–57. |
| causing the first outcall and the second outcall to be connected. | **Petty '858 discloses** causing the first outcall and the second outcall to be connected.

*See, e.g.:*

is answered. The web server **38** then instructs the CTI server **40** to join the calls and conversation between the user client **18** and the service subscriber **32** ensues. In this instance, the

**Petty '858 at 10:50–52.** |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | agent for the service subscriber. Once both calls are established they are bridged by the computer telephony hardware to provide the voice communication<br><br>**Petty '858 at** 4:32–34.  *See also, e.g.,* id. at 3:4–6; 3:29–30; 4:58–59; 6:3; 10:25–26; 13:65–66; Claims 1, 9. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | **Petty '858 discloses** the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.  *See, e.g.:*<br><br>10  "Voice over IP" connection with the service subscriber. If the user has a data line as well as a phone line, the user will likely prefer a voice terminal connection over the phone line due to the superior sound quality. When a first time user<br><br>**Petty '858 at** 4:10–13.<br><br>60  **3.** A method as claimed in claim **1** wherein each of the first and second voice connections are voice calls placed through the PSTN.<br><br>**Petty '858 at** Claim 3.<br><br>**11.** A method as claimed in claim **9** wherein the voice connection medium preferred by the user is a telephone call through the switched telephone network and the first call is 65 routed by the computer telephony hardware outside the PSTN to the switched telephone network. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | **Petty '858** at Claim 11. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | **Petty '858 discloses** the method of claim 17, wherein the user telephone is an Internet protocol phone.<br><br>*See* claim 17 above.    *See, e.g.*:<br><br>    for the voice communication. If the user connects to the data network with his phone line, the user is likely to prefer a "Voice over IP" connection with the service subscriber. If<br><br>**Petty '858 at** 4:8–10. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | **44** to place a first call to the user client **18**. In this example, the user client **18** has requested a VoIP call connection. The CTI server therefore sends a request to the VoIP gateway **42** 30 to make a VoIP call offer to the user client **18**. The call offer **Petty '858 at** 10:28–31. *See also, e.g., id.* at 11:8–12; 12:31–32; Claims 2, 4. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | *See* claim 17 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | *See* claim 17 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

11

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|---|
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | | **Petty '858 discloses** the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed.<br><br>*See claim 17 above.  See, e.g.:*<br><br>10   being advertised. The user may select a preferred medium for the voice communication. If the user connects to the data network with his phone line, the user is likely to prefer a "Voice over IP" connection with the service subscriber. If the user has a data line as well as a phone line, the user will likely prefer a voice terminal connection over the phone line due to the superior sound quality. When a first time user<br><br>**Petty '858 at 4:7–13.**<br><br>65   mine where calls for each category are directed. When a specific category is selected, the user is then presented with a form to determine the preferred medium for voice communication or there is a lookup of a pre-stored preference file commonly called a "cookie" on the client hard drive. In the example of client **18** presented above, the client **18** must either select VoIP by clicking the radio button beside that |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | selection, or may specify his telephone number but in that instance he is required to disconnect from his ISP before the telephone call can be received. In the example of client **20**, the client may indicate his telephone number and is permitted to remain connected to his ISP during the telephone conversation with the service subscriber **32**.<br><br>**Petty '858 at 8:61–9:6.** |
| 40. A method of processing calls, comprising: | **Petty '858 discloses** a method of processing calls.<br><br>*See, e.g.:*<br><br>    These and other objects are realized in a method of providing voice communications between two parties using computer controlled telephony hardware which is separate from the Public Switched Telephone Network (PSTN), at least one of the parties having access to a data network, comprising:<br><br>    originating a first voice connection from the computer controlled telephony hardware in response to a call request received from the data network;<br><br>    originating a second voice connection from the computer controlled telephony hardware in response to the call request received from the data network; and<br><br>    bridging together the first and second voice connections at the computer controlled telephony hardware to permit voice communications between the two parties.<br><br>**Petty '858 at 2:58–3:6.** |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | **Petty '858 discloses** receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller. <br><br> *See, e.g.:* <br><br> In accordance with a further aspect of the invention there is provided a method of providing voice communication between a service subscriber and a user of a data network accessing an interactive information page available on the [10] network using a data terminal, the information page including a voice communication request button relating to the service subscriber, comprising the steps of: <br><br> a) accepting a voice communication request from the [15] user; <br><br> **Petty '858 at 3:7–15.** *See also, e.g.,* id. at 6:12–21; 10:8–15; Claim 9. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | **Petty '858 discloses** determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber. <br><br> *See, e.g.:* <br><br> c) consulting a rule base using a code that identifies the [20] subscriber to locate at least one rule which determines how a voice connection is to be established with the subscriber; |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | **Petty '858 at 3:19–22.**   *See also, e.g.,* id. at Claim 9. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | **Petty '858 discloses** accessing an account record associated with the subscriber, the account record including at least one subscriber instruction. |
| | *See, e.g.:* |
| | c) consulting a rule base using a code that identifies the [20] subscriber to locate at least one rule which determines how a voice connection is to be established with the subscriber; |
| | **Petty '858 at 3:19–22.** |
| | subscriber administration functions. The OAM server pro-[55] vides the tools to create subscribers, subscriber access and to create, store and maintain the rules which customize the functions of the apparatus to serve each particular subscriber's needs. Each time a call is placed, the WEB server **38** retrieves relevant rules from the OAM server **52** to deter-[60] mine how the subscriber leg of the call is to be set up. |
| | **Petty '858 at 7:54–60.**   *See also, e.g.,* id. at 3:21–23; 4:51–53; 5:11–13; 7:1–5; 8:29–36; Claim 9. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | **Petty '858 discloses** based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber. |
| | *See, e.g.:* |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | e) operating the computer telephony hardware to place a second call to the subscriber in accordance with the at least one rule located in the rule base; |
| | **Petty '858 at 3:26–28.** |
| | subscriber administration functions. The OAM server pro- 55 vides the tools to create subscribers, subscriber access and to create, store and maintain the rules which customize the functions of the apparatus to serve each particular subscriber's needs. Each time a call is placed, the WEB server **38** retrieves relevant rules from the OAM server **52** to deter- 60 mine how the subscriber leg of the call is to be set up. |
| | **Petty '858 at 7:54–60.** *See also, e.g.,* id. at 4:21–23; 6:1–3; 8:29–36; Claim 9. |
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | **Petty '858 discloses** if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber. |
| | *See, e.g.:* |
| | to be the agent sought. With "automated page return" a subscriber is paged using an identification number for a call 65 being held. When the paged subscriber calls in and enters the identification number he is automatically bridged to the held calling party. |
| | **Petty '858 at 4:65–69.** |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
|  | sequence is illustrated in FIG. **10**. The call sequence begins after the web server **38** has instructed the CTI server **40** to call the subscriber **32**. In this example, subscriber **32** is not available and does not answer the telephone **34**. After a predetermined time, the CTI server **40** informs web server **38** that the subscriber has not answered. In response, the web server **38** instructs the CTI server **40** to hold the user (not illustrated) and sends an options list to the user client **18**. Among the options is an option to page the subscriber. The user client **18** selects the page subscriber option and returns the option request to the web server **38**. On receipt of the [. . .] The web server **38** then supplies a pager number from the rule base and instructs the CTI server to page the subscriber. The CTI server **40** dials the pager number using the PSTN and when the paging service answers the CTI server **40** sends the call identification number, which is displayed on the subscriber's pager. The subscriber responds by calling a **Petty '858 at 13:30–57.   *See also, e.g.,* id. at Claims 26–27.** |
| receiving a call connect instruction from the subscriber; and | **Petty '858 discloses** receiving a call connect instruction from the subscriber. *See, e.g.:* |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | to be the agent sought. With "automated page return" a subscriber is paged using an identification number for a call 65 being held. When the paged subscriber calls in and enters the identification number he is automatically bridged to the held calling party.<br><br>**Petty '858 at 4:65–69.**<br><br>the subscriber's pager. The subscriber responds by calling a predetermined number that connects the subscriber to a port of the CTI hardware **44**. On connection, the subscriber enters the call ID, for instance the number "1". On receipt 60<br><br>**Petty '858 at 13:57–60.**  *See also, e.g.,* id. at Claim 28. |
| instructing the call processing system to connect the first call to a third communication device. | **Petty '858 discloses** instructing the call processing system to connect the first call to a third communication device.<br><br>*See, e.g.:*<br><br>to be the agent sought. With "automated page return" a subscriber is paged using an identification number for a call 65 being held. When the paged subscriber calls in and enters the identification number he is automatically bridged to the held calling party.<br><br>**Petty '858 at 4:65–69.** |

18

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|---|
| | | enters the call ID, for instance the number "1". On receipt of 60 the call ID, the CTI server **40** informs the web server **38** that the subscriber has answered. The web server **38** instructs the CTI server **40** to stop the broadcast to the user client **18** and to join the calls using the call ID to locate the user client **18**. The CTI server **40** joins the paged subscriber with the user 65 client **18** enabling conversation to ensue. Call disconnect <br><br> **Petty '858** at 13:60–66.  *See also, e.g.,* id. at Claim 28. |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | | **Petty '858 discloses** the method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. <br><br> *See* claim 40 above.  *See, e.g.:* <br><br> network. In addition, since only standard **Public Switched Telephone Network (PSTN)** functionality or standard Voice over IP functionality is used in call completion, no 40 knowledge, control or adaptation of those protocols or procedures is required to construct, install or operate the system in accordance with the invention. Furthermore, there are no compatibility issues with the **PSTN** respecting deployment of the method or apparatus in accordance with 45 the invention. <br><br> **Petty '858** at 4:39–44. |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | *See* claim 40 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | **Petty '858 discloses** the method of claim 40, wherein the call connect instruction is provided using DTMF tones. *See, e.g.:*<br><br>*See* claim 40 above. |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | The CTI server **40** dials the pager number using the PSTN and when the paging service answers the CTI server **40** sends the call identification number, which is displayed on the subscriber's pager. The subscriber responds by calling a predetermined number that connects the subscriber to a port of the CTI hardware **44**. On connection, the subscriber enters the call ID, for instance the number "1". On receipt of the call ID, the CTI server **40** informs the web server **38** that the subscriber has answered. The web server **38** instructs the CTI server **40** to stop the broadcast to the user client **18** and to join the calls using the call ID to locate the user client **18**. **Petty '858 at 13:54-64.** |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | *See* claim 40 above: <br><br> To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | *See* claim 40 above. <br><br> To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,337,858 "Method and Apparatus for Originating Voice Calls from a Data Network" ("Petty '858") |
|---|---|
| | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

NY:1636664.2

22

Exhibit A-22

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,137,870 ("Scherer")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,137,870 ("Scherer") invalidates Claims 1-3, 5-13,15-21, and 24-25 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Scherer was filed on March 6, 1996 and issued on October 24, 2000, before the alleged invention of the '188 Patent. Scherer qualifies as prior art under at least 35 U.S.C. §§ 102(a), (b) and (e).

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| [1.1] A method of processing calls, the method comprising: | Scherer discloses a method of processing calls (e.g., a system and method for handling a telephone call). *See, e.g.:* "A system is described in which a standard data field in a telephone system call format, such as ASI and/or dials number is changed to reflect caller and/or call specific information. The caller and/or calls specific information is made available to a called party, and elements of the telephone switching system." Scherer at Abstract.[1] "1. A system for handling a telephone call, said system comprising: an ANI field in a call element format of said telephone call; a call data character stream which is in compliance with said call element format and which is adapted to reside in said ANI data field, said call data character stream adapted to reference call specific information; |

2

---

[1] All references are to Scherer, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | a second standard data field in said call element format of said telephone call wherein said call specific information is stored; |
| | whereby contents of said standard data field are modified by said call data character stream, and wherein said call data character stream is unique from the call's original ANI data and from the call's original dialed number, and whereby said call specific information includes information beyond that which is available from the original ANI and from the originally dialed number and wherein said ANI field of the call is increasingly updated to new data in one call, a plurality of times." Claim 1. |
| | "7. A method for handling a telephone call, said method comprising the steps of: |
| | modifying an ANI field in a call element format of said telephone call with a call data character data stream that is in compliance with said call element form and that is adapted to reference call specific information; |
| | modifying by said call data character stream the contents of a second standard data field in said call element format of said telephone call wherein said call specific information is stored, wherein said call data character stream is unique from said telephone call's original ANI data and from the telephone call's original dialed number, and whereby said call specific information includes information beyond that which is available from the original ANI and from the originally dialed number; and |
| | updating a plurality of times said ANI field of the telephone call to new data in one telephone call." Claim 7. |
| | "The present invention relates generally to the science of telecommunications. Particularly, the present invention relates to a system for providing advanced information to a called party about the calling party and/or call origination party, by providing coded data in the call identification data character field used in the telephone network call flow." 1:5-10. |
| | "The present invention recognizes deficiencies in the use of calling/billing line |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | number to identify a caller and/or call (ANI). The use of calling/billing line number does not indicate the actual identity of the caller. Furthermore, it does not indicate the specific purpose of the call. Changes to data elements in the telephone network's call flow, however, may be used to more accurately indicate the caller's identity and the purpose for the call so that the called party and/or location may expedite the processing of the call. Therefore, the present invention is a system for replacing all or a portion of the existing caller identification data (caller ID also referred to as the calling number and/or ANI), or modifying the caller ID, and/or having the modified caller ID act as a reference to data stored elsewhere such as in the Initial Address Message (IAM) user-to-user field and/or in an external database, with 'Caller Specific Information' ('CSI') data to occupy the caller ID or ANI field, and this CSI data will travel in place of the ANI data in the Public Telephone Switched, Private, Signaling System 7 ('SS7 and/or CCS7'), ISDN or any other network that supports this data format." 7:15-35. |
| [1.2] storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Scherer discloses storing in computer readable memory associated with a call processing system (e.g., the call processors may be computers which necessarily require computer readable memory) a phone address associated with a first subscriber (e.g., the ANI of the caller is stored in a database).

*See, e.g.:*

"The present invention recognizes deficiencies in the use of calling/billing line number to identify a caller and/or call (ANI). The use of calling/billing line number does not indicate the actual identity of the caller. Furthermore, it does not indicate the specific purpose of the call. Changes to data elements in the telephone network's call flow, however, may be used to more accurately indicate the caller's identity and the purpose for the call so that the called party and/or location may expedite the processing of the call. Therefore, the present invention is a system for replacing all or a portion of the existing caller identification data |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | (caller ID also referred to as the calling number and/or ANI), or modifying the caller ID, and/or having the modified caller ID act as a reference to data stored elsewhere such as in the Initial Address Message (IAM) user-to-user field and/or in an external database, with 'Caller Specific Information' ('CSI') data to occupy the caller ID or ANI field, and this CSI data will travel in place of the ANI data in the Public Telephone Switched, Private, Signaling System 7 ('SS7 and/or CCS7'), ISDN or any other network that supports this data format." 7:15-35. |
| | "For example, if the 10 position ANI field is not sufficient to hold the Caller Specific Information (CSI), then the network provided caller ANI data may be replaced with a 'Caller Specific Account Number' ('CSA') that directly references the CSI which can be requested as needed from an on-line data storage (or multiple on-line data resources)." 7:36-42. |
| | "The present invention also may be used to replace or modify all or part of the Dialed Number in the Public Telephone Switch, Private, Signaling System 7 ('SS7 and/or CCS7'), ISDN or any other network where the Dialed Number (domestic U.S.A. or International) traditionally reflects the number dialed by the caller, to change the routing of the call, change the handling of the call, or to pass on enhanced data about the call. By modifying the Dialed Number, the call may be routed according to the new Dialed Number. Modification of the Dialed Number may change the handling of the call so that it may be given a different treatment both within the network (e.g., redirect on busy, priority call, etc.) at the customer's location (priority call), for example, and outside the network. Finally, the dialed number may be modified to pass on enhanced data known and/or collected about the call in addition to the enhanced data that may be carried in other fields (e.g., CSI & CSA and user-to-user)." 7:43-60. |
| | "In addition to placing special information about the caller and the call's purpose in the Dialed Number field and/or ANI field for example, the present invention may be used to reference or cause the telephone network and/or telephone switches and equipment to recognize data in the 'user-to-user' data field of the |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
|  | ISDN and/or SS7 and/or CCS7 or Initial Address Message ('IAM') of the call. For example, the 'user-to-user' data field may be used to store the extra and/or special data for this call as well as the original ANI, dialed number, account number, and other information. The control network recognizes this based on data in the call such as the 'CSI' in the ANI field. The CSI and/or CSA and/or modified dialed number may also refer to or be used as a key to data stored outside the call flow or telephone network as external data. The external data may be retrieved at various points including before the call is answered, during the call and after the call is completed." 7:61-8:9. |
|  | "By use of the present invention, a called party can know significantly more information about a caller before even answering the phone call. The CSA or CSI may be completed by a call processing company, equipment and/or function connected to, attached to, and/or in the telephone network, before the call arrives at its intended destination. The called party may then access the CSI or CSA electronically as it arrives with the call. By cross checking the CSI or CSA data against a database as part of the phone network and/or external to the phone network where some or all of the caller information that has been collected has been stored, the called party may receive substantial information about the calling party before, during and after talking with the calling party and/or handling the call, as needed. The calling party information may be displayed on a computer terminal, for example, that is in view of the called party." 8:10-25. |
|  | "If the calling party is in need of speaking with another party other than the party who received the call (for example, when a sales attendant takes the call and the caller also has questions for a supervisor or manager), the caller's information may be readily transferred electronically to the second call receiving party and neither the caller nor the first call receiving party will have to repeat the information already collected from the caller. The modified ANI (CSI) would flow with the transfer and could reference already collected data." 8:26-35. |
|  | "The collection of information about the caller, to create the CSI or CSA, need only be done once and may then later be updated from time to time as needed. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | For example, if a caller is calling to rent a car, the caller's personal information (for example, address, phone number, rental insurance needs, credit card, etc.) can be collected and stored in a database, once by an agent for the rental car company, and assigned a CSI or CSA number (e.g., the rental car company's customer number). From that time forward, if any of the caller information changes, only that specific change needs to be updated in the database, which takes far less time than taking the information all over again every time the caller calls." 8:36-48. |
| | "Once the CSI or CSA is created for a particular caller and dialed number, every time that caller calls that dialed number and identifies who is calling and why, for example their frequent flyer number, their car rental number, the caller ID (ANI) will be replaced with the CSI or CSA which will travel with the call. In other words, a caller may have several CSI or CSA combinations (which could be equal to their customer number for that vendor). As an example, a caller may have a CSI or CSA for his rental car company and a different CSI or CSA for his favorite airline, each being automatically invoked upon recognition of the dialed number of the rental car company and the airline respectively and the identification of the caller (not the ANI, but the customer number for that vendor). Or, the CSI or CSA may include sufficient information to be used by a number of different types of called parties in which it would be invoked automatically upon recognition of the caller ID." 8:49-65. |
| | "The database to store the information on respective callers may be resident practically anywhere that the called party has electronic or other form of access. This includes at the called party's location, or at a remote site where it may be operated by an agent for the called party or as a feature of the telephone network." 8:66-9:4. |
| | "Many of the components described in FIGS. 2-6 are commercially available. The telephone network switches 132, 154 may be, for example, an AT&T 4E or a Northern Telecom DMS 250. IVR's are available from Periphonics Corporation, while AT&T also makes an IVR known as Conversant. Harris and |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | Summa4 make telephone switches with ACD 200. Several remote switches such as the AT&T G3 are available. Several call processors 152 are available, such as Sun Microsystems Sparc 20, DEC's Alpha Computer and the Intel Pentium, to name just a few examples of call processors. Several database products 150, 153 are available, for example, Oracle and Sybase. The previously mentioned products and companies are generally widely known and available." 23:19-33. |
| |  FIG-2 |
| | See Fig. 2 and associated text. |
| [1.3] storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | Scherer discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network (e.g., the database may store the caller's phone number, the caller may originate a call from a residential or business phone, cellular phone, or personal computer). |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
|  | *See, e.g.:* |
|  | "Referring now to FIG. 1, a block diagram of the primary elements of the telephone network may be used to illustrate the flow of telephone calls through the network. Calls originate and terminate at devices or terminals 10 such as residential telephones, business telephones, cellular telephones, personal computers and commercial telephones. Calls are routed through a number of devices capable of transporting calls before reaching their destinations. For example, a call placed at a residential telephone 10b may be transported by a switch at the LEC 36 to an IXC switch 42, to a Network to Network switch 44, to a local IXC switch 42, to a PCS cellular switch 20, and finally, to someone's cellular phone 10s. In another example, a call placed at a business phone 10f may be transported by the business's PBX 14 to the LEC switch 36, to an IXC switch 42, to a PCS/Cellular switch 18, and finally, to a cellular phone 10g." 9:47-10:11. |
|  | "For a multi-line location (such as a business or residence with 2 or more lines), a PBX (Private Branch Exchange, a location's switch), or Centrex (where the local telephone company's switch or a separate switch acts as a PBX), the billing number or the lead number may be presented by the public telephone network as the ANI for the actual line used to place the call. For example, for a multi-line location such as a business, the public telephone network may present all the out-bound calls with the same ANI as the billing ANI even though multiple lines are in use, each with their own assigned line ANI and most of which are different than the billing ANI. The billing ANI is usually a good geographic representation of the non-mobile caller and usually represents the responsible (billing) party for the call (or one of them). However, in some cases, the billing ANI may not represent the actual ANI (or line number) of the call. In other cases, the billing ANI may not be presented and the line number ANI is presented instead. In any case, the line ANI or billing ANI never defines 100% of the time who is calling or why they are calling." 3:8-27. |
|  | "A caller at a hotel wishes to call his girlfriend and get past her 'Caller ID' box. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | The caller dials a gateway number (e.g., 1-800, 1-500, 1-614-847-6161, etc.) and identifies himself to the gateway by entering, for example, his home phone number and his LEC phone card PIN number. The gateway allows the caller to dial any public telephone number (or private number, if so provided) and the caller's home phone number is substituted into the ANI field of the gateway's out-bound call. The call may be billed through the LEC phone bill or through any other form of billing (e.g., credit card, private arrangement, etc.) The call then clears his girlfriend's Caller ID box (because it shows his home phone number) and rings (unless she has recently blocked his home ANI) her telephone. The call looks as though it came from the caller's home because the gateway substituted the caller's home ANI for the call." 24:30-45. |
| [1.4] participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | Scherer discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address (e.g., the caller may originate a call that is received by the call processor from a first phone line). *See, e.g.:* "In FIG. 2 a caller 60 lifts the handset on a telephone 62 to initiate a phone call 64 into the telephone network. The LEC (Local Exchange Carrier) switch 66 realizes that the telephone 62 has gone off hook due to current flow, and provides a dial tone to the telephone 62 so that the caller 60 may initiate his telephone call 64 over the telephone network. The caller 60 proceeds to enter the dialed number on the telephone 62 and the data is passed as part of the call 64 to the LEC switch 66. After screening the caller entered call data (dialed number), plus assigning the calling number (ANI) to the line creating the call, the LEC switch 66 determines if the call is a local call which can be completed by the local LEC network, or if the call should be handed off to an IXC (Interexchange Carrier) for a long distance call or an intra-LATA call that is to be handled by an IXC. For this example it is assumed that an IXC is involved, and that the call will be transported out of the LATA, although it does not have to be, and that the |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | call data will be passed to the IXC for further processing." 14:38-56. |
| | "The call 64 that was created, and the call's associated information including the dialed number and the number the caller is calling from (ANI) plus other caller data is stored in the LEC switch 66. The LEC switch launches a data element 68 "IAM" (Initial Address Message that contains both the dialed number and the ANI) plus other call data to the IXC, who can be selected on a call-by-call basis. The IXC may be the 1+IXC for this caller, or it may be an 800 number, 900 number, 500 number or other type of general purpose number. For example, for an 800 number the LEC switch 66 accesses the SMS 800 data base 112 (this is a simplified diagram) to determine which carrier will be passed the call detail (IAM) for a gateway type call such as a 1-800 call. In this case, the carrier would be selected based on the SMS 800 data base 112 and the call data 68 would be sent from the LEC switch 66 to the STP 70 handling the carrier. At some time a voice path 74 for the voice portion of the call will be selected by the LEC switch 66 and will be presented to the carrier's switch 76 if the LEC switch 66 is to complete the call or provide voice path or additional information such as a ring, intercept, and the answering of the phone call itself, to be passed back over the listen (talk) paths to the Caller 60." 14:57-15:12. |
| | "The carrier receives the call data 72 assigns the talk paths 74 and forwards the call data (IAM) on, as call data 78 to an STP 80. The call data (IAM) 82 may be forwarded to an intermediate carrier or enhanced service provider 86 (a place where the call can be further processed). The call path 84 is also selected by the IXC 76 to access the enhanced service point 86. If a call path is not assignable through the network, then the call cannot be completed and a data busy packet will be sent back through the data network to the LEC switch 66 to generate a busy signal to the caller 60. This may occur during any part of the call until answered by the enhanced service point 86. In this example, the enhanced service point 86 will issue an off hook answer SS7 message based on the caller information contained in the IAM, plus other data. Enhanced service point 86 has in its databases on site 114, plus access to remote data bases 120. The Enhanced Service Point 86 sends an 'off hook' or SS7 answer message which |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | will be sent backwards through data 82, through STP 80 and data 78, to the IXC switch 76 to tell the IXC to cut through the call voice path 84 to the enhanced service point 86. The IXC 76 will pass back through data 72 through STP 70 through data 68 to the LEC switch 66 that the call 64 will be answered by service point 86 and that the local phone company at switch 66 should complete the call voice path 74 to the IXC 76." 15:13-37. |
| | "At this point in the answered call, the call path has been established using talk paths (voice/analog channels) 74 and 84 and the enhanced service point 86 is now prompting the caller 60 for the caller's account number, social security number, reason for calling, and/or other enhanced data. Once the enhanced service point 86 has determined as needed who is calling, and as needed why they are calling, the enhanced service point may then change or modify the dialed number as needed, and change or modify the ANI as needed, as well as put any additional data into an external database 114 as needed, and transfer that data to database 120 as needed, as well as updating the user-to-user field(s) of the IAM (Initial Address Message) to be sent across the data network 88 as needed." 15:38-51. |
| | "A caller at a hotel wishes to call his girlfriend and get past her 'Caller ID' box. The caller dials a gateway number (e.g., 1-800, 1-500, 1-614-847-6161, etc.) and identifies himself to the gateway by entering, for example, his home phone number and his LEC phone card PIN number. The gateway allows the caller to dial any public telephone number (or private number, if so provided) and the caller's home phone number is substituted into the ANI field of the gateway's out-bound call. The call may be billed through the LEC phone bill or through any other form of billing (e.g., credit card, private arrangement, etc.) The call then clears his girlfriend's Caller ID box (because it shows his home phone number) and rings (unless she has recently blocked his home ANI) her telephone. The call looks as though it came from the caller's home because the gateway substituted the caller's home ANI for the call." 24:30-45. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| [1.5] placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | Scherer discloses placing a first outcall from a call processing system to the first called party (e.g., a second device on the network receives the incoming call, modifies the AIN, and then transmits the call and the modified AIN to the called destination), wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address (e.g., the caller's AIN may be modified to represent a different phone number).

See citations and discussion above in connection with claim limitation 1.4.

*Furthermore, see, e.g.:*

"The use of a common telephone call format (i.e., NANP and CCITT) and supporting protocols that preserve the format, allow the ANI, Dialed Number, 'user-to-user' data fields to be modified or replaced in accordance with the present invention anywhere in the call flow and/or at multiple places in the call flow. In one embodiment of the present invention, data fields of a telephone call may be modified by the equipment or device currently processing the call. Referring again to FIG. 1, data fields of the telephone call may be modified or replaced at a PBX 14, P/C controller 16, switch 12, 18, 20, 24, 26, 36, 38, 40, 42, 44, 48, 50, 52 local or special access devices 28, 34, 54, ACD 30, IVR 32, call processor 22 or set box 46. The data fields may be modified at the point of call origination if the caller has special equipment. Specifically, the ANI data, or caller ID standard data field, may be modified or replaced with CSI and/or CSA and/or the Dialed Number may be replaced and/or modified with a new Dialed Number:

"at the call origination point (10a-10z), if the caller's equipment has SS7 and/or ISDN capabilities (i.e., the call has the ability to select its own 'ANI' or replace it with his account number, password, reference number, etc. thereby directly creating his own CSI/CSA and/or modified Dialed Number); |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | "at the local telephone company 36; |
| | "at the local IXC access 42 to the local telephone company; |
| | "at any point in the IXC network or international network and international switches; |
| | "at points between telephone/network switches, nodes, and SCP's, or at points within the IXC or call handling network; |
| | "at special platforms and facilities anywhere in the call flow, by live agents and/or automated agents and/or IVR equipment; |
| | "at the point at which an IXC passes the call to another IXC or CAP; |
| | "at the point at which the IXC hands off the call to the terminating LEC, Local Transport Provider, and/or customer; |
| | "at the LEC end office, before reaching the customer premises; |
| | "at the customer premises; and |
| | "at ACD, IVR, call processor or switch equipment at the customer premises or elsewhere." 10:40-11:17. |
| | "The existing equipment and devices at these various locations are capable of interpreting the data fields in the telephone call and therefore, may also modify the data fields as the call is processed and passed through the equipment. As long as the overall format of the telephone call is preserved, the data fields of the telephone call may be altered at various locations during call transport." 11:18-24. |
| | "In an alternative embodiment of the present invention, switch and telephone equipment on-line messaging capabilities (e.g., SS7 messages, ISDN maintenance messages, Asynchronous Transfer Mode (ATM), X.25, frame relay, or any other data or packet technique) may be used to modify or replace telephone call data fields. A message originating from a first device in the network is routed to a second device in the telephone network where the |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | recipient second (third, etc.) device changes, modifies, replaces, overlays, or updates the Dialed Number and/or ANI with modified and/or new values other than those originally entered, dialed, and/or captured, so the future routing, transferring, handling, and/or data referencing of the call is now accomplished and/or related to the replaced and/or modified ANI and/or Dialed Number referenced for the call. The second recipient device modifies the specified data field according to the contents of the message from the originating device plus other data, inputs and information available. The second device now communicates to the first device or prior handling devices using a data packet network described to modify the data stored about the call in the first or earlier device, so that the values stored in the first or earlier device reflect some (or all) of the values assigned by the second or later device. In this example, the data stored in prior call handling switches is also being modified, changed and/or updated |
| | "Special information about the call and the caller may be placed in the ANI and Dialed Number fields as well as the 'user-to-user' data field of the ISDN or SS7 or Initial Address Message (IAM) of the call. For example, in the ANI field, the originating caller's telephone number may be replaced with 'Caller Specific Information' (CSI) such as an account number, social security number, or any unique caller (customer) identifier that may also reference data in the user-to-user data field of the IAM and/or external databases. In the event additional caller data is required for processing of the telephone call throughout the network or at the final destination, the new value in the ANI field may be a 'Customer Specific Account Number' (CSA) that serves as a reference to Customer Specific Information (CSI) stored in the user-to-user of the IAM and/or in an external database location(s). The extra and/or special data stored in a data record external to the call (and/or in the IAM user-to-user field) may be retrieved based on data in the call (e.g., CSI or CSA and/or modified dialed number) at several points in time including: |
| | "before the call is answered; |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | "before the call is answered at a new location, but has been answered previously and data has been collected and stored whether answered in the network and/or at one of the terminations (this could occur multiple times); "while the call is being answered; "while the call is being or attempting to be transferred, partially based on the stored data; "any time during the call; or "any time after the call." 11:25-12:14. |
| [1.6] bridging the first call and the first outcall; | Scherer discloses bridging the first call and the first outcall (e.g., the call is connected to the dialed number). See citations and discussion above in connection with claim limitation 1.5. |
| [1.7] participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | Scherer discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address (e.g., the IVR of the call processor system may renegotiate the incoming call from the caller and place the call on a new phone line, or, alternatively, the caller may place a second phone call from a different phone to the gateway number). See citations and discussion above in connection with claim limitation 1.5. *Furthermore, see, e.g.:* "For a multi-line location (such as a business or residence with 2 or more lines), a PBX (Private Branch Exchange, a location's switch), or Centrex (where the local telephone company's switch or a separate switch acts as a PBX), the billing number or the lead number may be presented by the public telephone network as |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | the ANI for the actual line used to place the call. For example, for a multi-line location such as a business, the public telephone network may present all the out-bound calls with the same ANI as the billing ANI even though multiple lines are in use, each with their own assigned line ANI and most of which are different than the billing ANI. The billing ANI is usually a good geographic representation of the non-mobile caller and usually represents the responsible (billing) party for the call (or one of them). However, in some cases, the billing ANI may not represent the actual ANI (or line number) of the call. In other cases, the billing ANI may not be presented and the line number ANI is presented instead. In any case, the line ANI or billing ANI never defines 100% of the time who is calling or why they are calling." 3:8-27. |
| | "The caller may be prompted to, or through prior knowledge regarding the call knows to provide additional input of data or information that becomes part of the call data through the use of ANI field changes to 'CSI', 'CSA' and/or Dialed Number changes, and/or stored data. The ANI field of the call--which is preserved and travels with the call--when modified in accordance with the present invention may truly represent the caller." 13:21-28. |
| | "Changes to the ANI and/or dialed number fields may necessitate changes to billing systems that use ANI and/or dialed number for billing information. Billing systems may instead reference the original dialed number and modified dialed number, and/or the original ANI and the modified ANI, call duration plus any other necessary data stored in the user-to-user field, switch table(s), call detail records, and on-line data systems. Additionally, the billing system may reference external and/or other databases during and/or after the call to rate, bill, calculate taxes, and report on the call because the original call data may be modified and/or carry extra data that references indirectly the geographic location and duration of the caller and the called party(s) for each part of the call. Preferably, the billing and reporting system(s) do not rely on the modified Dialed Number and/or modified ANI alone due to the change in value. However, the original ANI and/or Dialed Number plus the final geographic location of the termination (plus duration and other stored data) may be used for accurate billing |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | and reporting." 13:29-47. |
| | "The Dialed Number may be modified in accordance with the present invention to reflect the status of both the caller and the called party. Data input or collected from the caller, prior and/or current knowledge about the caller as revealed by the CSI and/or CSA, the network status, and/or information about the initially dialed location as well as possible subsequent locations (e.g., busy) are examples of the type of data that may be examined to determine whether and how the Dialed Number field may be changed. Based on the results of a data evaluation, the Dialed Number may be modified to change the routing of the telephone call, the destination of the telephone call, or the priority of the telephone call. Other changes to the dialed number may be made as well such as blocking the call or providing other special treatment such as 'ring, no answer.' Finally, the Dialed Number may be modified to include additional data such as the present invention reflects changes in the ANI field. Many other changes may be made to the Dialed Number value as well depending on the goals to be accomplished." 13:48-67. |
| | "The call is now ready to be tandemed, or passed on, through the telephone network. The new IAM (with the new and/or modified data) call data is now ready to be presented to the called party (or revised called party--agent 118) in data element 88 which is passed through the STP 90 to data element 92 to IXC 96. The IXC 96 will route the call based on the new dialed number (if changed) and will carry forward the changed ANI and/or IAM of the call to pass on to the LEC 106 and/or called party as the new called number will designate. The IXC 96 views this call as a tandem call, a call being passed on through the telephone network, and accepts the modified and/or new Dialed Number as well the modified and/or new ANI and/or modified IAM as if it were part of the original call record and has no knowledge (unless otherwise informed) that anything has been changed. The IXC 96 based on the new dialed number, routes the call to LEC 106 and sends the data 98 about the call to the LEC's STP 100 which can be forwarded on to the local LEC switch 106 through data 102. The call 108 is then presented to the destination location 110. Based on the invention and the |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | modified IAM, ANI and/or modified called number, the agent 118 knows precisely who is calling, to the extent needed, based on the data now carried in the IAM and/or ANI field, to the agent 118 and accessed by the agent's work station 116. The agent 118 may have direct access to the data stored at database 114 and/or the data stored at location 120 or any other place in the data network. When the agent 118 answers the call, the call is completed from caller 60 through enhanced service point 86 through voice paths 94, 104, and 108." 15:52-16:14. |
| | "In FIG. 3 the caller 130 places a telephone call, which is routed through the telephone network 132 to an enhanced service point somewhere in the telephone network. The enhanced service point may be located at the local LEC location or anywhere in the telephone network, and/or may be located at multiple locations in the telephone network. In FIG. 3 an IVR 138 (interactive voice response unit) is located before the telephone switch 166. The call processing system 152 has access to the telephone network 154 using links [158, 160, 162, 164 ] through IVR 138 and switch 166." 16:62-17:4. |
| | "The data from the telephone network 132 is presented to the call processing controlled IVR system 138 through multiple possible data links. Link 170 would be an SS7 connection, link 168 may be an ISDN data link (D-Channel), link 172 may be a combination of in band voice and data over the same line phone lines, and phone lines 134 and 136 represent traditional telephone lines usually referred to as B-Channels, with associated data carried over links 168 and 170. The call processing system 152 controls the IVR system 138 through links 174 as well as the telephone switch 166 through links 156. The call processing system 152 receives data from the IVR system 138 as well as the telephone switch 166. The Dialed Number and ANI data, other network data, and/or database data is evaluated by the call processor 152 through the call processor's access to the IVR 138 by data links 174. In addition, if the telephone call is not on a phone line that is convenient to the call processing system 152, the call processor 152 through the IVR 138 using the ISDN data link 168 or the SS7 data link 170, can renegotiate the calls from phone line 134 or phone line 136, or to |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | other phone lines, to negotiate 'the incoming call' to place it on a line of its selection based on services that the call processor 152 would like to see appear or be offered to the caller 130. For example, using channel negotiation, the call may be moved from line 134 to line 136." 17:5-29. |
| | "The call processor 152 preferably is equipped to greet the caller 130 using the IVR 138, and may proceed to inquire through touch tone, voice recognition, automated agent and other mechanisms to determine who exactly is calling and why they are calling. The call processing system 152 can access local databases 150 and remote databases through network 140 to validate, acquire and update data as needed. If sufficient information cannot be obtained from the caller through an automated interface, then the call processor 152 can instruct the IVR 138 to tell the caller 130 to please hold while the caller is being routed to a live agent. The call processor 152 can then instruct the IVR 138 to send the call through phone line 142 using data link 144 to the telephone switch 166 using control links 156 and 174 to route the telephone call to an agent located on phone lines 146 to collect additional data. Once the agents at location 146 collect additional data and input it into a database 150 through work stations 148 the information will then be accessible by the call processor 152 which will have access to this database through data link 140. The call processor 152 has multiple choices as to how to present the call out to the telephone network. Two of these choices follow: |
| | "(a) The call processor 152 can instruct the IVR 138 to drop the phone call link going to agent 146 over telephone line 142 while holding onto the caller 130. The call processor 152 instructs the IVR 138 to change the dialed number and/or the ANI and initiate a phone call over data link 162 out into the telephone network 154 using phone lines 164. Telephone network 154 may route the call to remote location 176, based on data in the call's IAM. At any point in time the remote locations 176 can again instruct the call to be transferred, more data to be collected, the call to be re-routed using networks at remote location 176 and additional call forwarding or call processing to occur as necessary. The IVR 138 can also instruct the switch 154 to drop the call that is at location 176 while |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
|  | holding onto the caller 130 and the IVR 138 can initiate a new call, a conference call or any other new call routing, by having the call processor 152 initiate a new call through the IVR 138 with new call data (dialed number and/or ANI) as a new call is presented over data link 162 and phone lines 164 to telephone network 154 without dropping the caller 130. |
|  | "(b) The call processor 152 using data link 156 instructs the telephone switch 166 to drop the agent off of link 146 while holding the caller 130 at the switch 166 and to instruct the telephone switch 166 to initiate an out bound call into the phone network 154 using the data link 158 and the voice paths 160. As in paragraph 'a' above, the call will then be routed over the public telephone network, and/or the private telephone network with the current call routing and destination using the same or a new dialed number and/or modified or new ANI which will carry information that will trigger receipt of the telephone call at a far end destination with special treatment. The additional call data can be retrieved from call processor 152 as well as the agent database 150 through the data network 140 supporting the remote sites 176, 177, remote agents and remote centers with additional call data. When the remote sites and remote agents are finished with the call, the call can again be forwarded on, taken back while holding onto the caller 130 for re-routing again by switch 166 or terminated, depending on the needs of the caller." 17:30-18:27. |

21

| U.S. Patent No. 6,137,870 ("Scherer") | U.S. Patent No. 7,822,188 |
|---|---|
|  | |

FIG-3A

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| |  FIG-3B <br><br> See Figs. 3A and 3B and associated text. |
| [1.8] placing a second outcall from a call | Scherer discloses placing a second outcall from a call processing system to the |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall (e.g., the IVR of the call processor system may renegotiate the incoming call from the caller and place the call on a new phone line, or, alternatively, the caller may place a second phone call from a different phone to the gateway number), wherein the first phone address is different than the third phone address (e.g., the caller's AIN may be modified to represent a different phone number). |
|  | See citations and discussion above in connection with claim limitation 1.7. |
| [1.9] bridging the second call and the second outcall. | Scherer discloses bridging the second call and the second outcall (e.g., the call is connected to the dialed number). |
|  | *See, e.g.:* |
|  | See citations and discussion above in connection with claim limitation 1.7. |
|  |  |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | Scherer discloses the method of claim 1, wherein the first call is initiated by the subscriber (e.g., the call is placed by the caller/customer/boyfriend). |
|  | *See* claim 1 above. |
|  | See citations and discussion above in connection with claim limitation 1.7. |
|  |  |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | Scherer discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition (e.g., all calls are forwarded to the call processor system's IVR). |
|  | *See* claim 1 above. |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | See citations and discussion above in connection with claim limitation 1.7.<br><br>*Furthermore, see, e.g.,*<br><br>"The present invention also may be used to replace or modify all or part of the Dialed Number in the Public Telephone Switch, Private, Signaling System 7 ('SS7' and/or CCS7'), ISDN or any other network where the Dialed Number (domestic U.S.A. or International) traditionally reflects the number dialed by the caller, to change the routing of the call, change the handling of the call, or to pass on enhanced data about the call. By modifying the Dialed Number, the call may be routed according to the new Dialed Number. Modification of the Dialed Number may change the handling of the call so that it may be given a different treatment both within the network (e.g., redirect on busy, priority call, etc.) at the customer's location (priority call), for example, and outside the network. Finally, the dialed number may be modified to pass on enhanced data known and/or collected about the call in addition to the enhanced data that may be carried in other fields (e.g., CSI & CSA and user-to-user)." 7:43-60.<br><br>"The Dialed Number may be modified in accordance with the present invention to reflect the status of both the caller and the called party. Data input or collected from the caller, prior and/or current knowledge about the caller as revealed by the CSI and/or CSA, the network status, and/or information about the initially dialed location as well as possible subsequent locations (e.g., busy) are examples of the type of data that may be examined to determine whether and how the Dialed Number field may be changed. Based on the results of a data evaluation, the Dialed Number may be modified to change the routing of the telephone call, the destination of the telephone call, or the priority of the telephone call. Other changes to the dialed number may be made as well such as blocking the call or providing other special treatment such as 'ring, no answer.' Finally, the Dialed Number may be modified to include additional data such as the present invention reflects changes in the ANI field. Many other changes may be made to the Dialed Number value as well depending on the goals to be accomplished." 13:49-67. |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | "The call 64 that was created, and the call's associated information including the dialed number and the number the caller is calling from (ANI) plus other caller data is stored in the LEC switch 66. The LEC switch launches a data element 68 'IAM' (Initial Address Message that contains both the dialed number and the ANI) plus other call data to the IXC, who can be selected on a call-by-call basis. The IXC may be the 1+IXC for this caller, or it may be an 800 number, 900 number, 500 number or other type of general purpose number. For example, for an 800 number the LEC switch 66 accesses the SMS 800 data base 112 (this is a simplified diagram) to determine which carrier will be passed the call detail (IAM) for a gateway type call such as a 1-800 call. In this case, the carrier would be selected based on the SMS 800 data base 112 and the call data 68 would be sent from the LEC switch 66 to the STP 70 handling the carrier. At some time a voice path 74 for the voice portion of the call will be selected by the LEC switch 66 and will be presented to the carrier's switch 76 if the LEC switch 66 is to complete the call or provide voice path or additional information such as a ring, intercept, and the answering of the phone call itself, to be passed back over the listen (talk) paths to the Caller 60." 14:57-15:12.

"The carrier receives the call data 72 assigns the talk paths 74 and forwards the call data (IAM) on, as call data 78 to an STP 80. The call data (IAM) 82 may be forwarded to an intermediate carrier or enhanced service provider 86 (a place where the call can be further processed). The call path 84 is also selected by the IXC 76 to access the enhanced service point 86. If a call path is not assignable through the network, then the call cannot be completed and a data busy packet will be sent back through the data network to the LEC switch 66 to generate a busy signal to the caller 60. This may occur during any part of the call until answered by the enhanced service point 86. In this example, the enhanced service point 86 will issue an off hook answer SS7 message based on the caller information contained in the IAM, plus other data. Enhanced service point 86 has in its databases on site 114, plus access to remote data bases 120. The Enhanced Service Point 86 sends an 'off hook' or SS7 answer message which will be sent backwards through data 82, through STP 80 and data 78, to the IXC |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | switch 76 to tell the IXC to cut through the call voice path 84 to the enhanced service point 86. The IXC 76 will pass back through data 72 through STP 70 through data 68 to the LEC switch 66 that the call 64 will be answered by service point 86 and that the local phone company at switch 66 should complete the call voice path 74 to the IXC 76." 15:13-37. |
| | "At this point in the answered call, the call path has been established using talk paths (voice/analog channels) 74 and 84 and the enhanced service point 86 is now prompting the caller 60 for the caller's account number, social security number, reason for calling, and/or other enhanced data. Once the enhanced service point 86 has determined as needed who is calling, and as needed why they are calling, the enhanced service point may then change or modify the dialed number as needed, and change or modify the ANI as needed, as well as put any additional data into an external database 114 as needed, and transfer that data to database 120 as needed, as well as updating the user-to-user field(s) of the IAM (Initial Address Message) to be sent across the data network 88 as needed." 15:38-51. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | Scherer discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling (e.g., the modified ANI information is converted to SS7 or CCS7 signaling information).<br><br>*See claim 1 above.*<br><br>*Furthermore,* see citations and discussion above in connection with claim limitation 1.2.<br><br>*See also,* |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| |  |
| | DEVICE A — SS7 NETWORK — DEVICE B |
| | 1) DEVICE "A" SENDS AN IAM (INITIAL ADDRESS MESSAGE) FOR A CALL AND/OR NON-CALL TO DEVICE "B" |
| | 2) THE DIALED NUMBER COULD BE THE ADDRESS OF DEVICE "B" ON THE NETWORK |
| | 3) THE ANI FIELD DOES NOT CONTAIN ANI, THE ANI FIELD CONTAINS SOMETHING OTHER THAN ANI THAT DEVICE "A" WANTS TO SEND TO DEVICE "B" THAT COULD ALSO REFERENCE OTHER DATA |
| | 4) THE NON-ANI DATA WAS INITIATED BY DEVICE "A" TO SEND TO DEVICE "B" |
| | FIG−8 |
| | See Fig. 8 and associated text. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | Scherer discloses the method of claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber (e.g., the caller may use a personal computer to originate a call). |
| | *See* claim 1 above. |
| | *See, e.g.,* |
| | "Referring now to FIG. 1, a block diagram of the primary elements of the telephone network may be used to illustrate the flow of telephone calls through the network. Calls originate and terminate at devices or terminals 10 such as |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | residential telephones, business telephones, cellular telephones, personal computers and commercial telephones. Calls are routed through a number of devices capable of transporting calls before reaching their destinations. For example, a call placed at a residential telephone 10b may be transported by a switch at the LEC 36 to an IXC switch 42, to a Network to Network switch 44, to a local IXC switch 42, to a PCS cellular switch 20, and finally, to someone's cellular phone 10s. In another example, a call placed at a business phone 10f may be transported by the business's PBX 14 to the LEC switch 36, to an IXC switch 42, to a PCS/Cellular switch 18, and finally, to a cellular phone 10g." 9:47-10:11. |

29

| U.S. Patent No. 6,137,870 ("Scherer") | U.S. Patent No. 7,822,188 |
|---|---|
|  | |

FIG-1A

30

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
| --- | --- |
|  |  |

FIG−1B

See Figs. 1A and 1B and associated text.

31

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | Scherer discloses the method of claim 1, wherein the signaling information associated with the first outcall is SIP signaling (e.g., the caller may use a personal computer to originate a call). <br><br> *See* claim 1 above. <br><br> *Furthermore,* see citations and discussion above in connection with claim 6. <br><br> To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | Scherer discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network (e.g., the caller may use a personal computer to originate a call). <br><br> *See* claim 1 above. <br><br> *Furthermore,* see citations and discussion above in connection with claim 6. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | Scherer discloses the method of claim 1, wherein the first outcall is placed over a wireless network (e.g., the caller may use a cellular and/or PCS phone to originate a call). <br><br> *See* claim 1 above. |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | *Furthermore*, see citations and discussion claim 6. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | Scherer discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network (e.g., the call may be placed over the Public Telephone Network). |
| | *See* claim 1 above. |
| | *Furthermore*, see citations and discussion above in connection with claim limitation 1.7. |
| [11.1] The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| [11.2] receiving at the call processing system a third call from a calling party directed to the first phone address; | Scherer discloses receiving at the call processing system (e.g., the call processor system) a third call from a calling party directed to the first phone address (e.g., the caller/customer may call to the phone number serviced by the call processor system). |
| | *See* claim 1 above. |
| | *Furthermore*, see citations and discussion above in connection with claim limitation 1.7. |
| [11.3] reading at least one subscriber specified rule from computer readable memory; and | Scherer discloses reading at least one subscriber specified rule from computer readable memory (e.g., the enhanced service point may change or modify the dialed number as needed based on data from the caller and the IXC will route the |

33

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
|  | call to the new dialed number).<br><br>*See* claim 1 above.<br><br>*Furthermore,* see citations and discussion above in connection with claim limitation 1.7. |
| [11.4] based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | Scherer discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule (e.g., the enhanced service point may change or modify the dialed number as needed based on data from the caller and the IXC will route the call to the new dialed number).<br><br>*See* claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 11.3. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | Scherer discloses the method of claim 1, further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication (e.g., the caller may use a personal computer to originate a call).<br><br>*See* claim 1 above.<br><br>*Furthermore,* see citations and discussion above in connection with claim 6.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

34

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | Scherer discloses the method of claim 1, further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall (e.g., the caller may use a personal computer to originate a call).<br><br>*See* claim 1 above.<br><br>Furthermore, see citations and discussion above in connection with claim 12.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | Scherer discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address (e.g., a residential telephone, business telephone, or a cellular telephone, etc.).<br><br>*See* claim 1 above.<br><br>*Furthermore, see e.g.,*<br><br>"Referring now to FIG. 1, a block diagram of the primary elements of the telephone network may be used to illustrate the flow of telephone calls through the network. Calls originate and terminate at devices or terminals 10 such as residential telephones, business telephones, cellular telephones, personal |

35

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|---|
| | | computers and commercial telephones. Calls are routed through a number of devices capable of transporting calls before reaching their destinations. For example, a call placed at a residential telephone 10b may be transported by a switch at the LEC 36 to an IXC switch 42, to a Network to Network switch 44, to a local IXC switch 42, to a PCS cellular switch 20, and finally, to someone's cellular phone 10s. In another example, a call placed at a business phone 10f may be transported by the business's PBX 14 to the LEC switch 36, to an IXC switch 42, to a PCS/Cellular switch 18, and finally, to a cellular phone 10g." 9:47-10:11. |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | | Scherer discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber (e.g., the phone address may be a 1-800, 1-900, etc. phone number).

*See* claim 1 above.

*Furthermore, see e.g.,*

"The caller's ANI (billing number and/or line number) is directly used for billing for calls dialed to:

"900 access code type calls (e.g., 1-900-WEATHER)

"500 access code type calls (e.g., 1-500 personal communications which currently can be billed to the caller)

"10XXX access code type calls (e.g., 10288 where the caller dials an access code to reach a carrier and then dials a number)

"1+ long distance number type calls per the caller's prescribed carrier

"411, 1-555-1212 and many other access codes, methods and applications |

36

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | "The caller's ANI is indirectly (and sometimes directly) used as part of the billing equation for calls where the Dialed Number pays for the call: |
| | collect calls |
| | "1-500 (depending on features) |
| | "1-700 (depending on features) |
| | "1-800 (e.g., 1-800-SCHERER) |
| | "other access methods, codes, and applications where the ANI is used, but the caller is not billed for the call (1-800-COLLECT, 1-800-CALL ATT, etc.). |
| | "For 1-800 access code calls, the caller's originating ANI is used to control some of the billing decisions--for example: |
| | "Intra-state |
| | "Inter-state |
| | "origination from a different country or island (e.g., calls from Canada) time zones |
| | "mileage between calling parties and mileage bands. 1-800 access service was introduced by AT&T around 1967. From that time on, the caller's originating ANI became an integral part of the billing, routing, and call detail. 1-900, 411, and other pay-per-call numbers have also been around for 15 or more years and use the caller's originating ANI for part of the billing equation." 3:45-4:15. |
| | "EXAMPLE 1 |
| | "A caller calls an 800 number for an airline company. An IVR in the network prompts the caller for his frequent flyer number. The frequent flyer number is provided by the caller to the IVR (touch toned in, spoken, etc.). The frequent flyer number is used as input to the airline's computer, which has been programmed in accordance with the present invention, to determine: |

37

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | "(a) Validity of frequent flyer number |
| | "(b) Additional data caller required to validate the caller (Social Security Number, mother's maiden name, etc.) |
| | "(c) Frequent flyer status and priority (Gold, Silver, Platinum, miles flown, etc.) |
| | "(d) Whether caller is scheduled for any flights that day |
| | "(e) Geographic location of caller based on ANI (e.g., to determine caller is still at the airport 1/2 hour after scheduled flight has left) |
| | "(f) Additional data such as caller has lost luggage on last two times the caller has flown with the airline. |
| | "Using the information acquired from the airline's computer, data fields of the telephone call may be modified in accordance with the present invention to expedite processing of the call. For example, once the caller has validated his identity by giving the last 4 digits of the Social Security Number to the IVR (step b above), then: |
| | "(a) the Dialed Number field of the call may be changed to a higher priority Dialed Number so that the call is serviced immediately. |
| | "(b) the ANI field of the call may be replaced with a "CSA" so agent handling the call may get a screen POP (display) such that all the data the agent needs to process the call is available even before the phone rings (as based on the "CSA" stored data and other external data available to the agent). |
| | "Even though the ANI and Dialed Number values are changed, the call can flow through the present Public and Private Telephone Networks, PBX's, call processors and ACD's because the changed data meets supported format and value ranges. Only the agent's computer needs to know to query a database using 'CSA' to obtain the additional data. In the above example, based on the caller entered data that identified and confirmed the caller, the ANI field takes on the caller's real identity by assuming a value that serves as a reference to additional |

38

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | data and the Dialed Number field assumes a value to reflect a change in routing and priority." 23:47-24:26.

"EXAMPLE 2

"A caller at a hotel wishes to call his girlfriend and get past her 'Caller ID' box. The caller dials a gateway number (e.g., 1-800, 1-500, 1-614-847-6161, etc.) and identifies himself to the gateway by entering, for example, his home phone number and his LEC phone card PIN number. The gateway allows the caller to dial any public telephone number (or private number, if so provided) and the caller's home phone number is substituted into the ANI field of the gateway's out-bound call. The call may be billed through the LEC phone bill or through any other form of billing (e.g., credit card, private arrangement, etc.) The call then clears his girlfriend's Caller ID box (because it shows his home phone number) and rings (unless she has recently blocked his home ANI) her telephone. The call looks as though it came from the caller's home because the gateway substituted the caller's home ANI for the call." 24:28-45. |
| [17.1] A method of processing calls, the method comprising: | *See* claim 1 above. |
| [17.2] receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | Scherer discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called (e.g., the caller may use a personal computer to originate a call).

See citations and discussion above in connection with claim 6. |
| [17.3] at least partly in response to the first call | Scherer discloses at least partly in response to the first call request, placing a |

39

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| request, placing a first outcall from the call processing system to a telephone associated with the user; | first outcall from the call processing system to a telephone associated with the user (e.g., a second device on the network receives the incoming call, modifies the AIN, and then transmits the call and the modified AIN to the called destination, the called destination may belong to the subscriber).<br><br>See citations and discussion above in connection with claim limitation 1.5. |
| [17.4] placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Scherer discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user (e.g., the IVR of the call processor system may renegotiate the incoming call from the caller and place the call on a new phone line, or, alternatively, the caller may place a second phone call from a different phone to the gateway number; the caller's AIN may be modified to represent a different phone number).<br><br>See citations and discussion above in connection with claim limitation 1.7. |
| [17.5] causing the first outcall and the second outcall to be connected. | Scherer discloses causing the first outcall and the second outcall to be connected (e.g., the call is connected to the dialed number).<br><br>See citations and discussion above in connection with claim limitation 1.9. |
| | |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Scherer discloses the method of claim 17, wherein the user telephone is a landline phone (e.g., the caller may use a landline phone).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 15. |

40

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | Scherer discloses the method of claim 17, wherein the user telephone is a mobile phone (e.g., the user may use a PCS or cellular phone).<br><br>*See* claim 17 above.<br><br>*Furthermore*, see citations and discussion above in connection with claim 15. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | Scherer discloses the method of claim 17, wherein the user telephone is an Internet protocol phone (e.g., the caller may use a personal computer to originate a call).<br><br>*See* claim 17 above.<br><br>*Furthermore*, citations and discussion above in connection with claim 6. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | Scherer discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall (e.g., the caller may use a personal computer to originate a call).<br><br>*See* claim 17 above.<br><br>Furthermore, see citations and discussion above in connection with claim 12.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

41

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|---|
| | | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | | |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | | Scherer discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry (e.g., the user may use a PCS or cellular phone). *See* claim 17 above. *Furthermore*, see citations and discussion above in connection with claim limitation 15. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | | |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | | Scherer discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed (e.g., the caller identifies the public or private telephone number to call). *See* claim 17 above. *Furthermore*, see citations and discussion above in connection with claim 16. To the extent that Plaintiff contends this prior art reference does not specifically |

42

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,137,870 ("Scherer") |
|---|---|
| | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

43

NY:1636674.2

Exhibit A-23

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 6,130,935 ("Shaffer")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,130,935 ("Shaffer") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Shaffer was published on Oct. 10, 2000, from an application with a priority date of at least Aug. 8, 1996, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| 1. A method of processing calls, the method comprising: | **Shaffer** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "A system and method for virtual networking work at home provides the capability to bill business calls from an employee's home telephone to the business and to bill personal calls from the same telephone to the employee. Upon entry of an access code by a caller, a second dial tone is presented to the caller, who then dials the desired virtual network station number. A signaling message containing the dialed number and the ANI of the calling station is sent to a service control point which translates the dialed number and ANI to corresponding numbers. The dialed number is translated to a telephone number which allows the call to be completed to the desired virtual network station. The ANI is translated to a number which allows correct billing of the call. The call is then presented to an inter-exchange carrier network which completes and bills the call, using the translated numbers. This allows virtual network work-at-home stations to be located anywhere in the country..."   Shaffer at Abstract. |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | **Shaffer** discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber.<br><br>*See, e.g.:*<br><br>• "Translation of the ANI is relatively straightforward. For example, if station 102 has the number "(505) 555-5555", this number would be present in the ANI field of the message as received by SCP 112. SCP 112 would simply search the database using the number in the ANI field as a key and obtain the corresponding billing number. The particular translation depends on the location of the billing number. If the billing number is located on the same exchange, the translated number would be, for example "(505) 555-2222". If the billing number is not on the same exchange, but is within the same area code, the translated number would be, for example, "(505) 222-2222". If the billing number was not in the same area code, the translated number would be, for example, "(222) 555-2222"." Shaffer at 4:28-41. |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | **Shaffer** discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network.<br><br>*See, e.g.:*<br><br>• "Translation of the ANI is relatively straightforward. For example, if station 102 has the number "(505) 555-5555", this number would be present in the ANI field of the message as received by SCP 112. SCP 112 would simply search the database using the number in the ANI field as a key and obtain the corresponding billing number. The particular translation depends on the location of the billing number. If the billing number is located on the same exchange, the translated number would be, for example "(505) 555-2222". If the billing number is not on the same exchange, but is within the same area code, the |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| | translated number would be, for example, "(505) 222-2222". If the billing number was not in the same area code, the translated number would be, for example, "(222) 555-2222"." Shaffer at 4:28-41. |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | **Shaffer** discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address. *See, e.g.:* <br><br> • "The essential steps of the present invention begin once a search indication is received (as part of step 62) that an incoming caller requires special handling to reach a called party. This search indication is obtained by an incoming call process which may be an automated receptionist or a process which maps telephone numbers to services, or some other process, as discussed above. In response, the MCU 16 reads 64 the search file stored in the MCU memory 46 and initiates 66 one or more outdialing operations, depending upon the number of phone numbers in the first phone number set, i.e., with sequence number 1, which match the circumstances, i.e., the priority of the caller, the time of day and any other restrictions which might be present." Jones at 6:26-39. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | **Shaffer** discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address. *See, e.g.:* <br><br> • "In conventional call processing, the ANI associated with a call is used to indicate the number to which the call is to be billed, termed the billing number. The ANI typically indicates the normal telephone number of the station |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| | originating the call. In the present invention the ANI is translated to indicate a different billing number than the normal telephone number. The number of a virtual network station is substituted for the original ANI. Thus, the virtual network station number becomes the billing number and the call is billed to that number. |
| | Likewise, in conventional call processing, the dialed number is presented unaltered to the IEC as the number to which the call is to be completed. The IEC completes the call to this number in the conventional way. If the dialed number is a special service number, such as an "800" number, the IEC performs well-known translation on the dialed number to obtain a geographic routing number. In the present invention, if the dialed number is a virtual network station number, the dialed number is translated to a corresponding conventional number before the call is presented to the IEC. The IEC then completes the call to the conventional number presented to it in the conventional way." Shaffer at 4:5-26. |
| | • Shaffer at 4:27-41. |
| bridging the first call and the first outcall; | **Shaffer** discloses bridging the first call and the first outcall. |
| | *See, e.g.:* |
| | • "IEC 118 would then complete the call to translated number of the dialed number, for example, "(515) 555-5225" and bill the call to the translated number of the ANI, for example, "(222) 555-2222". If the translated number is a special-service number, such as, for example, "(700) 123-4567", the EC network would perform additional processing and translation to obtain the ultimate destination of the call, as is well known to those of skill in the art." Shaffer at 4:66 – 5:6 |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | **Shaffer** discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address.<br><br>*See, e.g.:*<br><br>• "Virtual networking allows telephone stations at multiple locations to be dialed as though they were at one location." Shaffer at 1:12-13. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | **Shaffer** discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address.<br><br>*See, e.g.:*<br><br>• "Virtual networking allows telephone stations at multiple locations to be dialed as though they were at one location." Shaffer at 1:12-13.<br><br>• "In conventional call processing, the ANI associated with a call is used to indicate the number to which the call is to be billed, termed the billing number. The ANI typically indicates the normal telephone number of the station originating the call. In the present invention the ANI is translated to indicate a different billing number than the normal telephone number. The number of a virtual network station is substituted for the original ANI. Thus, the virtual network station number becomes the billing number and the call is billed to that number.<br><br>Likewise, in conventional call processing, the dialed number is presented |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| bridging the second call and the second outcall. | unaltered to the IEC as the number to which the call is to be completed. The IEC completes the call to this number in the conventional way. If the dialed number is a special service number, such as an "800" number, the IEC performs well-known translation on the dialed number to obtain a geographic routing number. In the present invention, if the dialed number is a virtual network station number, the dialed number is translated to a corresponding conventional number before the call is presented to the IEC. The IEC then completes the call to the conventional number presented to it in the conventional way." Shaffer at 4:5-26.<br><br>• Shaffer at 4:27-41. |
| | **Shaffer** discloses bridging the second call and the second outcall.<br><br>*See, e.g.:*<br><br>• "IEC 118 would then complete the call to translated number of the dialed number, for example, "(515) 555-5225" and bill the call to the translated number of the ANI, for example, "(222) 555-2222". If the translated number is a special-service number, such as, for example, "(700) 123-4567", the EC network would perform additional processing and translation to obtain the ultimate destination of the call, as is well known to those of skill in the art." Shaffer at 4:66 – 5:6. |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | **Shaffer** discloses the first call is initiated by the subscriber.<br><br>*See, e.g.:*<br><br>• "A system and method for virtual networking Work at home provides |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| | the capability to bill business calls from an employee's home telephone to the business and to bill personal calls from the same telephone to the employee."  Shaffer at 1:57-60.<br><br>• Shaffer at Fig. 2.<br><br> |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | **Shaffer** discloses the first call being forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| | • "Therefore, once the message has been received, IEC 118 treats the call the same as if it had originated at a dedicated virtual network station. This includes not only billing and call completion, as discussed above, but also any special features implemented by the virtual network system, such as, for example, call waiting, call forwarding, voice messaging, etc.."    Shaffer at 5:21-26.. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | **Shaffer** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 1 above.<br><br>• Shaffer at 5:40-44. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit | **Shaffer** discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
| telephone network. | *See* claim 1 above.<br><br>• Jones at Fig. 1.<br><br><br><br>FIG. 1 |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | **Shaffer** discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber.<br><br>*See* claim 1 above. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,130,935 ("Shaffer") |
|---|---|
|  | • "Virtual networking allows telephone stations at multiple locations to be dialed as though they Were at one location. In order to gain access to a virtual network service, each telephone station must indicate to the network that virtual network service is desired." Shaffer at 1:12 - 16. |

11

NY:1636561.3

Exhibit A-24

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 7,213,073 ("Slavin")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 7,213,073 ("Slavin") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103.    Slavin was filed on Nov. 20, 2000, before the priority date of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| 17. A method of processing calls, the method comprising: | Slavin discloses a method of processing calls, the method comprising:<br><br>• "The system of the invention includes a computer system to provide at least one telephone feature to a telephone of a user, the computer system receiving instructions regarding said at least one telephone feature via a network from a graphical user interface operating on a computer of the user." Slavin at 1:44-48.<br><br>• "The invention integrates and improves upon call processing technologies and network technologies for new, unique, and useful telephone-related services for a user." Slavin at 3:40-42. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | Slavin discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>• "As part of the initiation process, the GUI 17 prompts the user to enter |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number."    Slavin at 8:6-14. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Slavin discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br><br>● "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number."    Slavin at 8:6-14.<br><br>● "In block 43, the application server 4 processes the call information received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number.    From the telephone 3, the user hears the number being dialed, and the desired telephone number ringing if the connection is successful."    8:52-58. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call | Slavin discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| processing system, but is a phone address assigned to or specified by the user; and | • "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number."   Slavin at 8:6-14.<br><br>• "In block 43, the application server 4 processes the call information received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number.   From the telephone 3, the user hears the number being dialed, and the desired telephone number ringing if the connection is successful."   8:52-58.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| causing the first outcall and the second outcall to be connected. | Slavin discloses causing the first outcall and the second outcall to be connected.<br><br>• "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number."   Slavin at 8:6-14. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | • "In block 43, the application server 4 processes the call information received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number. From the telephone 3, the user hears the number being dialed, and the desired telephone number ringing if the connection is successful." 8:52-58.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Slavin discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br><br>*See* claim 10 above.<br><br>• "The telephone 3 of the user is implemented with a wide variety of telephones. Examples of the telephone 3 include: a single-line telephone; a multiple-line telephone; a direct dial-in telephone; a public pay telephone; a mobile telephone; a wireless telephone; and a soft client (e.g., a web telephone)." Slavin at 4:10-15. |
| 19. The method as defined in claim 17, wherein | Slavin discloses the method of claim 17, wherein the user telephone is a mobile |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| the user telephone is a mobile phone. | phone.<br><br>*See* claim 17 above.<br><br>• "The telephone 3 of the user is implemented with a wide variety of telephones. Examples of the telephone 3 include: a single-line telephone; a multiple-line telephone; a direct dial-in telephone; a public pay telephone; a mobile telephone; a wireless telephone; and a soft client (e.g., a web telephone)." Slavin at 4:10-15. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | Slavin discloses the method of claim 17, wherein the user telephone is an Internet protocol phone.<br><br>*See* claim 17 above.<br><br>• "The telephone 3 of the user is implemented with a wide variety of telephones. Examples of the telephone 3 include: a single-line telephone; a multiple-line telephone; a direct dial-in telephone; a public pay telephone; a mobile telephone; a wireless telephone; and a soft client (e.g., a web telephone)." Slavin at 4:10-15.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | Slavin discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. *See* claim 17 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | Slavin discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. *See* claim 17 above. • "Phone list display area 74 is a pull-down menu listing available telephone lists. Examples of telephone lists include: a business phone group list, a personal phone list, and a recent calls phone list. After a phone list is selected from area 74, the numbers available from the selected phone list are displayed in a phone list entries display area 75, which is a pull-down menu."   Slavin at 10:30-36. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | Slavin discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed.

*See* claim 17 above.

• "Phone list display area 74 is a pull-down menu listing available telephone lists. Examples of telephone lists include: a business phone group list, a personal phone list, and a recent calls phone list. After a phone list is selected from area 74, the numbers available from the selected phone list are displayed in a phone list entries display area 75, which is a pull-down menu." Slavin at 10:30-36.

• "As an example of areas 74 and 75, with the business group phone list, the user selects the business group phone list 40 from area 74 and selects a name from area 75 corresponding to a member within the business group. The business group is, for instance, a company employing the user, and the business group phone list includes names of fellow employees in the company. The business group phone list is, for example, set by the company of the user, where the company subscribes to the service provider on behalf of the user." Slavin at 10:38-46.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

8

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|---|
| | | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 26. A method of processing calls, the method comprising: | | Slavin discloses a method of processing calls, the method comprising, *See, e.g.*: |
| | | • "The system of the invention includes a computer system to provide at least one telephone feature to a telephone of a user, the computer system receiving instructions regarding said at least one telephone feature via a network from a graphical user interface operating on a computer of the user." Slavin at 1:44-48. |
| | | • "The invention integrates and improves upon call processing technologies and network technologies for new, unique, and useful telephone-related services for a user." Slavin at 3:40-42. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | | Slavin discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system. *See, e.g.*: |
| | | • "Each line in area 78 includes a cell 78a for the name of the party on the call, a cell 78b for the number of the party on the call and a cell 78c for the status of the call (e.g., ringing, talking, holding)." Slavin at 11:13-16. |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | Slavin discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network.<br><br>*See, e.g.:*<br><br>• "The telephone 3 of the user is implemented with a wide variety of telephones. Examples of the telephone 3 include: a single-line telephone; a multiple-line telephone; a direct dial-in telephone; a public pay telephone; a mobile telephone; a wireless telephone; and a soft client (e.g., a web telephone)." Slavin at 4:10-15.<br><br>• "Each line in area 78 includes a cell 78a for the name of the party on the call, a cell 78b for the number of the party on the call and a cell 78c for the status of the call (e.g., ringing, talking, holding)."    Slavin at 11:13-16.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| storing the plurality of user phone addresses in computer readable memory; | Slavin discloses storing the plurality of user phone addresses in computer readable memory.<br><br>*See, e.g.:* |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | • "The telephone 3 of the user is implemented with a wide variety of telephones. Examples of the telephone 3 include: a single-line telephone; a multiple-line telephone; a direct dial-in telephone; a public pay telephone; a mobile telephone; a wireless telephone; and a soft client (e.g., a web telephone)." Slavin at 4:10-15. |
| | • "Each line in area 78 includes a cell 78a for the name of the party on the call, a cell 78b for the number of the party on the call and a cell 78c for the status of the call (e.g., ringing, talking, holding)."   Slavin at 11:13-16. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | Slavin discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses. |
| | *See, e.g.:* |
| | • "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number."   Slavin at 8:6-14. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | • "In block 43, the application server 4 processes the call information received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number. From the telephone 3, the user hears the number being dialed, and the desired telephone number ringing if the connection is successful." 8:52-58. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | Slavin discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.<br><br>See, e.g.:<br><br>• "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number." Slavin at 8:6-14.<br><br>• "In block 43, the application server 4 processes the call information received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number. From the telephone 3, the user hears the number being dialed, and the |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | desired telephone number ringing if the connection is successful."    8:52-58. |
| 27. The method as defined in claim 26, the method further comprising: | Slavin discloses the method as defined in claim 26.

*See* claim 26 above. |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | Slavin discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses.

*See* claim 26 above.

• "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number."    Slavin at 8:6-14.

• "In block 43, the application server 4 processes the call information received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number.   From the telephone 3, the user hears the number being dialed, and the desired telephone number ringing if the connection is successful."    8:52-58. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | • "The telephone 3 of the user is implemented with a wide variety of telephones. Examples of the telephone 3 include: a single-line telephone; a multiple-line telephone; a direct dial-in telephone; a public pay telephone; a mobile telephone; a wireless telephone; and a soft client (e.g., a web telephone)." Slavin at 4:10-15. |
| | • "Each line in area 78 includes a cell 78a for the name of the party on the call, a cell 78b for the number of the party on the call and a cell 78c for the status of the call (e.g., ringing, talking, holding)." Slavin at 11:13-16. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | Slavin discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address.<br><br>*See* claim 26 above.<br><br>• "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number." Slavin at 8:6-14.<br><br>• "In block 43, the application server 4 processes the call information |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number.   From the telephone 3, the user hears the number being dialed, and the desired telephone number ringing if the connection is successful."   8:52–58. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | Slavin discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. |
| | *See* claim 26 above. |
| | ● "As part of the initiation process, the GUI 17 prompts the user to enter the telephone number of the telephone 3. Preferably, the GUI 17 includes a list of previously registered telephone numbers which are available to the user for selection. The list of previously registered telephone numbers is maintained by the network server layer 5 and is included with the GUI 17. The user selects one of the previously registered telephone numbers or enters a new telephone number."   Slavin at 8:6-14. |
| | ● "In block 43, the application server 4 processes the call information received from the telephone 3. Using the call information, the application server 4 accesses a telephone network (not shown) and dials the dialed telephone number.   From the telephone 3, the user hears the number being dialed, and the desired telephone number ringing if the connection is successful."   8:52–58. |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | Slavin discloses the method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software.<br><br>*See* claim 26 above.<br><br>• "A "telephone network" refers to a network to route a telephone call. Example of a telephone network include: public switch telephone network (PSTN); and the Internet. A telephone network is accessed, for example, via an access gateway, a network gateway, or a soft switch."   Slavin at 2:63-67.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | Slavin discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling.<br><br>*See* claim 26 above.<br><br>•    "[**Quote**]"    Slavin at @ @. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | Slavin discloses the method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network.<br><br>*See* claim 26 above.<br><br>•    "A 'telephone network' refers to a network to route a telephone call. Example of a telephone network include: public switch telephone network (PSTN); and the Internet. A telephone network is accessed, for example, via an access gateway, a network gateway, or a soft switch."   Slavin at 2:63-67.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

17

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|---|
| | | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | | Slavin discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network. |
| | | *See* claim 26 above. |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | | Slavin discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. |
| | | *See* claim 26 above. |
| | | • "A "telephone network" refers to a network to route a telephone call. Example of a telephone network include: public switch telephone network (PSTN); and the Internet. A telephone network is accessed, for example, via an |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | access gateway, a network gateway, or a soft switch." Slavin at 2:63-67. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 34. The method as defined in claim 26, the method further comprising: | Slavin discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | Slavin discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system.<br><br>*See* claim 26 above.<br><br>• "FIG. 6 illustrates a flow diagram for receiving a call on the telephone 3 of the user. In block 61, the application server 4 receives an incoming call on behalf of the telephone 3." Slavin at 9:64-66. |
| reading at least one user specified rule from computer readable memory; | Slavin discloses reading at least one user specified rule from computer readable memory. |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | *See* claim 26 above. |
| | • "The network server layer 5 provides to the GUI 17 an indication as to which telephone features 11 are accessible via the GUI 17 and an update of accessibility for the accessible telephone features 11. For example, if a conferencing feature is one of the telephone features 11, the user is able to have conference calls from the telephone 3. If the user does not subscribe to the conferencing feature, the network server layer 5 does not provide an indication that the conferencing feature is available to the user via the GUI 17. If, however, the user subscribes to the conferencing feature, the network server layer 5 provides an indication of accessibility to the conferencing feature and updates this indication of accessibility as the conferencing feature is in use and not in use. As another example, if the user subscribes to a hold feature of the telephone features 11, the user is able to hold a call."   Slavin at 6:3-18. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | Slavin discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. |
| | *See* claim 26 above. |
| | • "In block 62, the application server 4 rings the telephone 3 via the telephone network 10. In block 63, the network server layer 5 synchronizes the GUI 17 with the telephone 3."   Slavin at 10:4-7. |
| | • "Transfer icon 79 transfers the highlighted call in area 78 to the number displayed in area 76. The transferred-to number is, for example, the telephone number of a coworker or voicemail. The highlighted call is transferred from |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | telephone 3 to the transferred-to party, and the highlighted call is disconnected from the telephone 3. Selecting icon 79 initiates the transfer feature of telephone features 11." Slavin at 11:30-36. |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | Slavin discloses the method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising: | Slavin discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | Slavin discloses while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination.<br><br>*See* claim 26 above.<br><br>• "Transfer icon 79 transfers the highlighted call in area 78 to the number displayed in area 76. The transferred-to number is, for example, the telephone number of a coworker or voicemail. The highlighted call is transferred from telephone 3 to the transferred-to party, and the highlighted call is disconnected from the telephone 3. Selecting icon 79 initiates the transfer feature of telephone features 11." Slavin at 11:30-36. |
| placing an outcall to the connect destination; and | Slavin discloses placing an outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>• "Transfer icon 79 transfers the highlighted call in area 78 to the number displayed in area 76. The transferred-to number is, for example, the telephone number of a coworker or voicemail. The highlighted call is transferred from telephone 3 to the transferred-to party, and the highlighted call is disconnected from the telephone 3. Selecting icon 79 initiates the transfer feature of telephone features 11." Slavin at 11:30-36. |
| connecting the first outcall with the outcall to the connect destination. | Slavin discloses connecting the first outcall with the outcall to the connect destination. |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 7,213,073 ("Slavin") |
|---|---|
| | *See* claim 26 above. |
| | • "Transfer icon 79 transfers the highlighted call in area 78 to the number displayed in area 76. The transferred-to number is, for example, the telephone number of a coworker or voicemail. The highlighted call is transferred from telephone 3 to the transferred-to party, and the highlighted call is disconnected from the telephone 3. Selecting icon 79 initiates the transfer feature of telephone features 11." Slavin at 11:30-36. |

23

NY:1636649.1

Exhibit A-25

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 5,487,11 ("Slusky")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,487,111 ("Slusky") invalidates Claims 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Slusky was filed on July 29, 1993 and issued on January 23, 1996, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| [40.1] A method of processing calls, comprising: | Slusky discloses a method of processing calls (e.g., a method for use in a telecommunications system in which a call sequencing facility allows a caller who is trying to reach a called subscriber to be routed to each of a sequence of telephone numbers specified by the subscriber).<br><br>*See, e.g.,*<br><br>"A method for use in a telecommunications system in which a call sequencing facility allows a caller who is trying to reach a called subscriber to be routed to each of a sequence of telephone numbers specified by the subscriber, even though a call placed to one such telephone number is answered."   Slusky at Abstract. [1]<br><br>"The present invention relates to the processing of telephone calls in a telecommunications system." 1:6-7.<br><br>"Among the various forward-looking concepts being implemented or planned |

2

---

[1] All references are to Slusky, unless otherwise expressly noted.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | for the balance of the decade, and beyond, is the notion of sequence calling. Once this feature is deployed, a telephone service subscriber will be enabled to specify to the telecommunications infrastructure a sequence of telephone numbers to which a call to the subscriber can be routed until the subscriber is "found". For example, a subscriber to a "700" telephone number, such as a so-called personal EasyReach™ 700 number obtained from AT&T, will be able to specify that a call made to that number should be routed, for example, first to the subscriber's office telephone number and then, if no answer there, to the cellular telephone number associated with the subscriber's car telephone and, if no answer there, to the subscriber's home telephone number. The prior art in this regard is typified by the technology described in U.S. Pat. No. 5,222,125 issued to C. W. Creswell et al on Jun. 22, 1993." 1:8-24.<br><br>"The present invention is directed to an enhancement to sequence calling. In accordance with the invention, and in a departure from the prior art, a mechanism is provided for allowing a call to be routed to a telephone number in the sequence even if the call had been completed, or 'answered,' at a previous telephone number in the sequence. This technique solves a problem that the present inventor has recognized will occur when sequence calling is actually deployed as a commercial offering. The problem is the fact that a call may be answered even if the subscriber is not available at the called location. For example, a call to an office may be answered by a secretary or co-worker; a call to a home may be answered by a family member other than the subscriber. I have realized that having the calling sequence terminated in such a situation frustrates the subscriber's intention and expectation that the telephone system will forward his/her calls to each of the telephone numbers in the sequence until the subscriber is 'found,' which is the real purpose of providing call sequencing." 1:29-46.<br><br>"The invention can be implemented in any of a number of ways. However, in preferred embodiments, the system is responsive to a request from the caller to disconnect the call from a present answered (or ringing) location and to initiate a connection to the next number in the sequence. The request from the caller could |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | be, for example, a specific code (such as *#) input from the telephone keypad or could be a spoken command (such as the word "next"). Advantageously, the caller may be presented a recorded announcement when the subscriber's '700' or other telephone number is first dialed, that announcement providing such information as the fact that the subscriber has specified a list of telephone numbers; that these telephone numbers can be tried in sequence; and that the caller can cause the call to proceed to the next number on the list at almost any point in time by inputting the code or speaking the command." 1:48-63. |
| [40.2] receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | Slusky discloses receiving at a call processing system (e.g., the personal telephone number service) a message from an Internet protocol proxy regarding a first call from a caller (e.g., a user other than the subscriber places a call to the subscriber's service number). |
| | *See e.g.,* |
| | "FIG. 1 shows a public switched telephone network 100 that provides long distance telephone services for its subscribers, such as the subscribers associated with telephone stations S1 through S4. Network 100 includes, inter alia, a plurality of Toll Switching (TS) offices, or switches, three of which--110, 115 and 120--are shown. Network 100 also includes a plurality of Operator Service Position System offices (OSPS), one of which--105--, is shown. The switches and OSPS offices are interconnected via an inter-toll network 111. A switch and OSPS office may also be connected to one or more local Central Offices (CO), such as COs 5, 10 and 15, which respectively serve stations S1 through S4, where station S3 represents a mobile telephone station." 2:16-29. |
| | "Included in network 100 is service adjunct 150 which processes calls placed to a subscriber of a personal telephone number service in accordance with a telecommunications service profile associated with that subscriber. As described in detail hereinbelow, the information contained in the profile can be entered and/or changed by the subscriber via interaction with a voice interactive system." 2:30-36. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
|  |  |

FIG. 1

See Fig. 1 and associated text.

"The subscriber is also provided with the capability of interacting with adjunct 150 for the purpose of administering the subscriber's CINs. Briefly, the subscriber invokes that capability by entering the digit '4' in response to hearing announcement (1). Adjunct 150, in response thereto, presents the user with a menu and submenus thereof detailing a number of different options relating to (a) adding, deleting, renaming and/or specifying the call treatments that are to be accorded to a respective caller identification number or (b) reviewing such numbers." 5:25-34.

"From time to time, the subscriber may want to be reached at any one of a sequence of different telephone numbers and, more particularly, at any one of those numbers even though a call placed to another one of those numbers that is earlier in the sequence is answered by someone other than the subscriber. That is, the subscriber is not present at the called location to take the call, but may be present at a location associated with one of the other telephone numbers. To this end and in accord with an aspect of the invention, a mechanism is provided for

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
| --- | --- |
| | allowing a call to be routed to a telephone number in the sequence even if the call had been completed, or 'answered,' at a previous telephone number in the sequence. The subscriber may invoke such a call sequencing mechanism by entering the digit '5' in response to announcement (1). Adjunct 150, in response thereto, transmits a prompt requesting entry of (a) a specification of the order in which calls are to be forwarded to the telephone numbers stored in fields CFNUM.1-3, (b) date and time during which the call sequencing is to be in effect, including the option that call sequencing is to be in effect until it is canceled by the subscriber or in the event that single number call forwarding is activated, as discussed above, subsequent to the activation of call sequencing. Adjunct 150 confirms the entry of the various responses by returning announcements indicative thereof and presenting the subscriber with the option of changing or approving them. Once approved, the data are stored in respective subfields of the CALL. SEQ field of the associated record." 5:35-62. <br><br> "Thereafter, when a user other than the subscriber places a call to the subscriber's service number, then adjunct 150 advises the caller that call sequencing is in effect. Adjunct 150 also advises the caller that he/she may sequence through the subscriber's call forwarding numbers, as will be described below detail. It suffices to say at this point, however, that adjunct 150 forwards the call via OSPS 105 to a station associated with a first telephone number, e.g., the particular one of the telephone numbers stored in fields CFNUM. 1-3 designated to be the first in the sequence--illustratively the telephone number in field CFNUM. 1. If the called number is busy or if the person answering the call is not the subscriber, then the caller may request call sequencing by entering, for example, the star (*) sign followed by the pound (#) sign. OSPS 105, responsive to receipt of the signals characterizing that request, terminates the connection to the called station, but retains the connection to the calling station. OSPS 105 then reconnects the calling station to adjunct 150. In addition, OSPS 105 forwards via path 107 a message containing, inter alia, (a) calling and called numbers (b) subscriber's personal service telephone number, (c) call identifier and (d) information indicating a calling party request for call sequencing. At that |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | point, adjunct 150 obtains the next telephone number in the sequence-illustratively, the telephone number contained in the CFNUM2 field of the associated record-and then forwards the call to OSPS 105. In doing so, adjunct 150 sends a message containing, inter alia, (a) calling number, (b) new call sequencing number, (c) subscriber personal service telephone number and (d) call identifier, as will be explained below." 5:62-6:26.

"Similarly, if the latter call is busy or is answered by a person other than the subscriber, then the caller may again request call sequencing in the described manner. In that event, adjunct 150 forwards the call via OSPS 105 to a next telephone number in the sequence, illustratively, the telephone number stored in the CFNUM3 field of the associated record. Thus, in accord with the invention, the caller may cause adjunct 150 to sequence through each of the telephone numbers specified by the subscriber until the caller reaches the subscriber. However, if the caller is still unable to reach the subscriber after the associated call has been forwarded to the last of such telephone numbers, then adjunct 150 provides to the caller the option of leaving a message for the called subscriber." 6:27-40.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| [40.3] determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Slusky discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system (e.g., the personal telephone number service determines whether a subscriber record has been assigned to the called number), wherein at least partly in response to determining that the telephone address is that of a subscriber (e.g., the personal telephone service determines that the called number is valid). |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
|  | *See e.g.,* |
|  | "Referring to FIGS. 1 and 3-8, assume that a caller, who may be the subscriber, dials the subscriber's personal telephone number 700-555-2234. The call is ultimately extended to service adjunct 150 via a network 100 switch, e.g., OSPS 105 as a result of dialing a prefix of zero ('0'), and thence via one of the T1 channels of path 106. Upon receipt via data path 107 of a call set-up message containing, inter alia, (a) called and calling numbers, and (b) a particular call identifier that OSPS 105 associates with the call and (c) the channel carrying the call, as mentioned above, the adjunct 150 program responds to the receipt thereof and returns a dialing signal, e.g., a 'bong', over the associated channel to alert the calling party that the desired connection has been established (block 501)." 6:27–40. |
|  | "The program then forms a message containing the received called number (e.g., 700-555-2234) and a request to validate the number, and sends the message to an associated database manager, discussed below. The latter, in turn, determines (block 502) if a subscriber record has been assigned to the called number. If thus, then the database manager transmits a message indicating that the called number is valid back to the transaction processor. Otherwise, the message indicates that the called number is not valid, which causes the program to transmit over the path 106 channel an announcement indicating that the called number is not in service (block 503). The program then terminates the call (block 504) by sending a call termination message containing the associated call identifier over path 107 to OSPS 105. OSPS 105, upon receipt of the latter message, terminates the call connection in a conventional manner." 6:58-7:6. |
|  | "If the called number is valid, then the program transmits a prerecorded 'welcome' announcement (block 506) requesting entry of a personal identification number over the associated channel. The following is an example of such announcement: |
|  | "Welcome to the personalized calling system. If you are calling from a touch-tone telephone and have a personal calling identification (4 |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | number, please enter it now followed by the pound sign. Otherwise, just press the pound sign." 7:7-17. |
| | "The program then monitors the path 106 channel for receipt of an identification (ID) number, i.e., a PIN, CIN or, alternatively, the # sign. If at the end of, for example, ten seconds, no ID number or # sign was received (block 507), a re-entry message is transmitted (block 509). If neither an ID number nor a # sign is received this time (block 510), the program transmits a message indicating that the call will be terminated (block 512) and then terminates the call (block 504) in the manner described above." 7:19-26. |
| [40.4] accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Slusky discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction (e.g., the subscriber record contains the subscriber's preferences, including the subscriber's call forwarding numbers and call sequencing settings). |
| | See citations and discussion above in connection with claim limitation 40.3. |
| | *Furthermore, see e.g.,* |
| | "As a further result of such interaction, the service representative positioned at terminal 160 causes a data record defining a profile for the new subscriber to be stored in memory internal to adjunct 150. An illustrative example of a such a record 300 is shown in FIG. 2, in which one or more of the fields define a particular aspect of the personal telephone number service as follows: |
| | "HOME.PHONE--defines the subscriber's home telephone number. |
| | "SUB.PIN--defines the PIN assigned to the associated subscriber and may further define an associated secondary subscriber PIN. |
| | "SUB.LANG--identifies a particular language in which announcements are to be made to the subscriber. |
| | "PHONE.NUM--defines the unique subscription telephone number, e.g., 700-555-2234, assigned to the associated subscriber. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | "NUM.MSG--defines the number of voice messages stored in a messaging service system (not shown) for the associated subscriber. |
| | "NUM.CIN--defines the number of CINs assigned to the associated subscriber. |
| | "CFNUM. 1-3--define respective call forwarding numbers when programmed by the subscriber. |
| | "CALL.SEQ--when set indicates that call sequencing, embodying the principles of the present invention, is in effect. |
| | "CIN. 1-4--define respective CINs and their respective call treatments as specified by the subscriber. |
| | "NU--indicates that the field is not used or is not pertinent to the present invention." 2:59-3:25. |
| | "Once the profile information has been stored in record 300, the subscriber may thereafter interact with adjunct 150 and update the record to a) invoke particular calling features, (b) change the values of one or more of the assigned CINs, (c) change various call forwarding numbers or (d) activate call sequencing." 3:26-30. |
| | "If the subscriber enters the digit '2', adjunct 150 prompts him/her to enter up to (in this case) three ten-digit call forwarding telephone numbers; to designate a particular one (or none) of them, as being the number to which calls are to be forwarded; and to designate the date and/or time during which call forwarding to any particular one of the call forwarding telephone numbers is to be effective. Adjunct 150 confirms the entry of these various pieces of information by returning an announcement indicative thereof and presents the subscriber with the option of changing or approving it. Once approved, the data are stored in associated subfields (not shown) of the CFNUM. 1-3 fields of the associated record. The selection of a particular number to which calls are to be forwarded during any period overrides any previous activation of call sequencing (discussed below) for that period." 4:46-61. |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | "From time to time, the subscriber may want to be reached at any one of a sequence of different telephone numbers and, more particularly, at any one of those numbers even though a call placed to another one of those numbers that is earlier in the sequence is answered by someone other than the subscriber. That is, the subscriber is not present at the called location to take the call, but may be present at a location associated with one of the other telephone numbers. To this end and in accord with an aspect of the invention, a mechanism is provided for allowing a call to be routed to a telephone number in the sequence even if the call had been completed, or 'answered,' at a previous telephone number in the sequence. The subscriber may invoke such a call sequencing mechanism by entering the digit '5' in response to announcement (1). Adjunct 150, in response thereto, transmits a prompt requesting entry of (a) a specification of the order in which calls are to be forwarded to the telephone numbers stored in fields CFNUM.1-3, (b) date and time during which the call sequencing is to be in effect, including the option that call sequencing is to be in effect until it is canceled by the subscriber or in the event that single number call forwarding is activated, as discussed above, subsequent to the activation of call sequencing. Adjunct 150 confirms the entry of the various responses by returning announcements indicative thereof and presenting the subscriber with the option of changing or approving them. Once approved, the data are stored in respective subfields of the CALL. SEQ field of the associated record." 5:35-62. |
| [40.5] based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Slusky discloses based at least in part on the subscriber instruction (e.g., the subscriber's call sequencing settings), placing a first outcall to a first communication device associated with the subscriber (e.g., the personal telephone number service system calls the first phone number set in the subscriber's call sequencing setting). |
| | See citations and discussion above in connection with claim limitation 40.2. |
| [40.6] if the first outcall is not answered within a first number of rings or period of time, placing a | Slusky discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| second outcall to a second communication device associated with the subscriber; and | associated with the subscriber (e.g., the called telephone number has been ringing for 5 rings without having been answered, the OSPS program dials the next phone number in the subscriber's call sequencing setting).
See citations and discussion above in connection with claim limitation 40.1.
*Furthermore, see e.g.,*
"Assuming that the caller enters a request for call sequencing, or if the called telephone number has been ringing for 5 rings without having been answered, then the OSPS program (block 610, FIG. 7) disconnects the call forward connection to the destination toll switch (if it had not been previously disconnected (block 6042)) and then unloads the associated call record from memory (block 611 ). The program then sets (blocks 612 and 614) a 'software flag' to a predetermined value if the call was completed. Otherwise, the program clears the flag (blocks 612 and 613). The program then creates a billing record (block 615) and notes therein whether or not the associated call had been completed based on the value of the aforementioned flag. The program then stores the billing record in an associated database, as mentioned above. The program then forms a CS message (block 617) and supplies the message to adjunct 150 over the associated data path, e.g., path 107 (block 618). The program then exits." 9:14-30.
"Upon receipt of a CS request message from OSPS 105 (sent at block 618, FIG. 7), the adjunct 150 program gets of copy the subscriber record associated with the service telephone number contained in the CS message (block 701, FIG. 8). The program then compares the called number contained in the message with the telephone numbers contained in the CFNUM. 1-3 fields of the associated record (block 703), in the order determined by the predetermined sequence, until it finds a match. If the match is with the last number of the sequence, this means that all the numbers have been tried, that is, the sequence has been exhausted. If this is the case (block 702), the program transmits an announcement (block 704) over the channel identified in the CF message to present the caller with the option of leaving a voice message for the called service subscriber. If the calling |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
|  | party accepts the option (block 705) by the entering of the appropriate keypad (MF) character, e.g., the pound (#) sign, then the program forms a message containing, inter alia, the telephone number of the called subscriber's voice message service and a request to forward the call to the identified telephone number and sends the message to OSPS 105 (block 706). OSPS 105, in turn, disconnects the call from adjunct 150 and forwards the call to the called destination. The program then exits. If the subscriber does not accept the option, then the program terminates the connection (block 707) by sending a disconnect message to OSPS 105." 9:31-57. <br><br> "If the matched number is not the last number in the sequence, then the program sends a CF call set-up message (block 703) containing the next number in the sequence to OSPS 105 (block 708). The program then exits, thereby relinquishing control of the call to OSPS 105. OSPS 105, in turn, forwards the associated call to the destination identified by the latter number, as described above." 9:58-64. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | FIG. 8<br><br>See Fig. 8 and associated text. |
| [40.7] receiving a call connect instruction from the subscriber; and | Slusky discloses receiving a call connect instruction from the subscriber (e.g., the subscriber answers the incoming phone call).<br><br>See citations and discussion above in connection with claim limitation 40.1. |
| [40.8] instructing the call processing system to connect the first call to a third communication device. | Slusky discloses instructing the call processing system to connect the first call to a third communication device (e.g., the caller and the subscriber are connected).<br><br>See citations and discussion above in connection with claim limitation 40.6. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | Slusky discloses the method of claim 40, further comprising wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol (e.g., a user other than the subscriber places a call to the subscriber's service number).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 40.2.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | Slusky discloses the method of claim 40, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension (e.g., the personal telephone number service system calls the first phone number set in the subscriber's call sequencing setting).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 40.5.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | Slusky discloses the method of claim 40, further comprising wherein the call connect instruction is provided using DTMF tones (e.g., the subscriber answers the incoming phone call).<br><br>*See* claim 40 above.<br><br>*Furthermore, see* citations and discussion above in connection with claim limitation 40.7.<br><br>*See also,*<br><br>"The invention can be implemented in any of a number of ways. However, in preferred embodiments, the system is responsive to a request from the caller to disconnect the call from a present answered (or ringing) location and to initiate a connection to the next number in the sequence. The request from the caller could be, for example, a specific code (such as *#) input from the telephone keypad or could be a spoken command (such as the word "next"). Advantageously, the caller may be presented a recorded announcement when the subscriber's '700' or other telephone number is first dialed, that announcement providing such information as the fact that the subscriber has specified a list of telephone numbers; that these telephone numbers can be tried in sequence; and that the caller can cause the call to proceed to the next number on the list at almost any point in time by inputing the code or speaking the command." 1:48-63.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | Slusky discloses the method of claim 40, further comprising wherein the first communication device resides behind a firewall (e.g., a user other than the subscriber places a call to the subscriber's service number).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 40.2.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | Slusky discloses the method of claim 40, further comprising wherein the first communication device is connected to a private branch exchange system (e.g., the personal telephone number service system calls the first phone number set in the subscriber's call sequencing setting).<br><br>*See* claim 40 above.<br><br>Furthermore, see citations and discussion above in connection with claim limitation 40.5. |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,487,111 ("Slusky") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

18

NY:1636679.3

Exhibit A-26

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on U.S. Patent No. 5,784,444 ("Snyder")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,784,444 ("Snyder") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Snyder issued on Jul. 21, 1998, from an application filed on Dec. 1, 1994, before the alleged invention of the '591 patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| 1. A method of processing calls, the method comprising: | Snyder discloses a method of processing calls. <br><br> *See, e.g.:* <br><br> • "This invention generally relates to caller identification for telephone communication calls and more particularly to an apparatus and method for providing personal calling identification at remote phone locations." Snyder at 1:6-10. |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Snyder discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber. <br><br> *See, e.g.:* <br><br> • "Each telephone station further includes a telephone transceiver and processor means. The processor means is operative under the control of a program to store both the conventional incoming calling line identification number and the personalized incoming calling line identification number |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | provided by the caller. The processor is further operative under the control of the program to transmit the aforementioned incoming calling line identification numbers to a telephone switching network so as to enable transmission of the aforementioned incoming calling line identification numbers to at least one other telephone station associated with the telephone communication system of the present invention."   Snyder at 2:14-26.<br><br>• "Referring to FIG. 2 in conjunction with FIG. 1, there is illustrated a simplified block diagram of telephone system illustrating telephone stations T1 and T N• and switching network 12 which are respectfully adapted for implementation of the present invention. In particular, each telephone station T1 and T N• respectively includes a processor 20. 22 which are each controlled by a program 26 for executing the program as specified by the flow charts illustrated and described hereinbelow. Similarly, switching network 12 includes a processor 24 which is controlled by a program 28 for executing the aforementioned program as specified by the above mentioned flow charts. Further, each telephone station T 1 and TN, and switching network 12 each respectfully include a telephone transceiver 28, 30. 32 for enabling telephone communication between the aforementioned components."   Snyder at 3:26-41. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; |   FIG. 2  Synder at Figure 2.  Snyder discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network.  *See, e.g.*:  • "Each telephone station further includes a telephone transceiver and processor means. The processor means is operative under the control of a program to store both the conventional incoming calling line identification number and the personalized incoming calling line identification number provided by the caller. The processor is further operative under the control of the program to transmit the aforementioned incoming calling line identification numbers to a telephone switching network so as to enable transmission of the aforementioned incoming calling line identification numbers to at least one other |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | telephone station associated with the telephone communication system of the present invention."   Snyder at 2:14-26. |
| | • "The user then enters his/her ICUDTO number 208 (i.e. • 908-111-2222) via dial pad 42. (block 106) which is to be used as the tag-on caller ID phone number (i.e., 908-111-2222) to be received and processed by telephone TN (FIG. 2) in addition to the corresponding telephone number (i.e., 212-123-4567) of telephone station T1. Preferably, the ICUDTO number may also be accompanied by a limited amount of indicia 210 (i.e., jjs office) which further identifies the caller to the called party which is entered by the user (block 108) via keyboard 38. Additionally, the caller may enter a short message 212. via keyboard 38 (preferably 2 text lines) (block 110) to which is to be transmitted to telephone station TN: as will be further described hereinbelow."   Snyder at 4: 34-46. |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | <br><br>Snyder at Fig. 3. |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | Snyder discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address.<br><br>*See, e.g.:*<br><br>• "The caller then enters via dial pad 42 the telephone number 204 (i.e., 908-999-8888) the caller desires to call (i.e., telephone station TN) (block 102)." Snyder at 4:22-25.<br><br>• "Referring now to FIG. 4, in conjunction with FIGS. 1 and 2, when the switching network 12 first receives the aforementioned ICLIDTO information (block 120), via transceiver 30 of telephone station T1, the switching network 112 then "Dials" the telephone number (i.e., 908-999-8888) which corresponds with telephone station TN."  Snyder at 5:2-6. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | *FIG. 4*<br><br>SWITCH NETWORK RECEIVES INFORMATION —— 120<br><br>Snyder at Fig. 4. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | Snyder discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address.<br><br>*See, e.g.:*<br><br>• "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | system of the present invention."    Snyder at 2:29-48.  • "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."    Snyder at 5:16-24. |
| bridging the first call and the first outcall; | Snyder discloses bridging the first call and the first outcall.  *See, e.g.:*  • "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."    Snyder at 2:29-48. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | • "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24. |
| | ESTABLISH TWO-WAY TELEPHONE COMMUNICATION ——146 |
| | Snyder at Fig. 5. |
| | • "The aforementioned selectivity of LASS is enhanced with the telephone system of the present invention, in that a called telephone station is not only limited to using the caller ID number (i.e., 212-123-4567) as an identifying flag (as in the prior art) but may also utilize the caller ID tag on number (i.e., 908-111-2222) and corresponding indicia (i.e., jjs office) as an identifying flag. Thus, a caller at a remote phone, other than the caller's usual phone (i.e., home. office) may utilize customized identifying flags (the caller ID tag or number) when calling from a remote phone so as to ensure that the phone call will be answered and not automatically rejected."   Snyder at 5:51-62. |
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | Snyder discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address.<br><br>*See, e.g.:* |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | • "The caller then enters via dial pad 42 the telephone number 204 (i.e., 908-999-8888) the caller desires to call (i.e., telephone station TN) (block 102)." Snyder at 4:22-25. |
| | • "Referring now to FIG. 4, in conjunction with FIGS. 1 and 2, when the switching network 12 first receives the aforementioned ICLIDTO information (block 120), via transceiver 30 of telephone station T1, the switching network 112 then "Dials" the telephone number (i.e., 908-999-8888) which corresponds with telephone station TN." Snyder at 5:2-6. |
| | *FIG. 4* <br><br> SWITCH NETWORK RECEIVES INFORMATION — 120 <br><br> Snyder at Fig. 4. |
| | • "For simplicity, discussion hereinbelow of the present invention will be made in reference to FIG. 2, wherein a caller of telephone station T 1 is calling a called party of telephone station TN. Further, the caller of telephone station T1 is initiating a phone call at a remote location (i.e., an airport) other than the usual location of the caller's telephone station (i.e., home or office). It is to be appreciated that the aforementioned scenario is for illustrative purposes only and is not to be limited thereto, as it is to be understood that the present invention is intended to be utilized whenever a caller desires to personalize his/her phone call." Snyder at 3:64-4:7. |
| placing a second outcall from a call processing | Snyder discloses placing a second outcall from a call processing system to the |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address.<br><br>See, e.g.:<br><br>• "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."  Snyder at 2:29-48.<br><br>• "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| bridging the second call and the second outcall. | Snyder discloses bridging the second call and the second outcall. |
| | *See, e.g.*: |
| | • "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."    Snyder at 2:29-48. |
| | • "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."    Snyder at 5:16-24. |

12

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|---|
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | | Snyder discloses the method of claim 1, wherein the first call is initiated by the subscriber.<br><br>*See* claim 1 above.<br><br>• "The caller then enters via dial pad 42 the telephone number 204 (i.e., 908-999-8888) the caller desires to call (i.e., telephone station TN) (block 102)." Snyder at 4:22-25.<br><br>• "Referring now to FIG. 4, in conjunction with FIGS. 1 and 2, when the switching network 12 first receives the aforementioned ICLIDTO information (block 120), via transceiver 30 of telephone station T1, the switching network 112 then "Dials" the telephone number (i.e., 908-999-8888) which corresponds with telephone station TN." Snyder at 5:2-6.<br><br>*FIG. 4*<br><br>SWITCH NETWORK RECEIVES INFORMATION —120<br><br>Snyder at Fig. 4. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring–no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 11. The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone address; | |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| reading at least one subscriber specified rule from computer readable memory; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | *See* claim 1 above.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method | *See* claim 1 above. |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 14. The method as defined in claim 1, the method further comprising: | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a third outcall to the transfer destination; and | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| connecting the first outcall with the third outcall. | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 17. A method of processing calls, the method comprising: | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Snyder discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br><br>*See, e.g.:*<br><br>• "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."   Snyder at 2:29-48.<br><br>• "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | Snyder discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user.<br><br>See, e.g.:<br><br>• "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."   Snyder at 2:29-48. |
| | • "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24. |
| causing the first outcall and the second outcall to be connected. | Snyder discloses causing the first outcall and the second outcall to be connected. |
| | *See, e.g.:* |
| | • "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
|  | made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."    Snyder at 2:29-48. |
|  | • "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."    Snyder at 5:16-24. |
|  | ESTABLISH TWO-WAY TELEPHONE COMMUNICATION ——146 |
|  | Snyder at Fig. 5. |
|  | • "The aforementioned selectivity of LASS is enhanced with the telephone system of the present invention, in that a called telephone station is not only limited to using the caller ID number (i.e., 212-123-4567) as an identifying flag (as in the prior art) but may also utilize the caller ID tag on number (i.e., 908-111-2222) and corresponding indicia (i.e., jjs office) as an identifying flag. Thus, a caller at a remote phone, other than the caller's usual phone (i.e., home office) may utilize customized identifying flags (the caller ID tag or number) when calling from a remote phone so as to ensure that the phone call will be answered and not automatically rejected."    Snyder at 5:51-62. |

23

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|---|
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | | Snyder discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br>*See* claim 10 above. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | | Snyder discloses the method of claim 17, wherein the user telephone is a mobile phone.<br><br>*See* claim 17 above. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method | *See* claim 17 above. |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 26. A method of processing calls, the method comprising: | Snyder discloses a method of processing calls, the method comprising. *See, e.g.:* <br><br> • "This invention generally relates to caller identification for telephone communication calls and more particularly to an apparatus and method for providing personal calling identification at remote phone locations."    Snyder at 1:6-10. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | Snyder discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system. *See, e.g.:* <br><br> • "Each telephone station further includes a telephone transceiver and processor means. The processor means is operative under the control of a program to store both the conventional incoming calling line identification number and the personalized incoming calling line identification number provided by the caller. The processor is further operative under the control of the program to transmit the aforementioned incoming calling line identification numbers to a telephone switching network so as to enable transmission of the |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | aforementioned incoming calling line identification numbers to at least one other telephone station associated with the telephone communication system of the present invention."  Snyder at 2:14-26. |
| | • "Referring to FIG. 2 in conjunction with FIG. 1, there is illustrated a simplified block diagram of telephone system illustrating telephone stations T1 and T N• and switching network 12 which are respectfully adapted for implementation of the present invention. In particular, each telephone station T1 and T N• respectively includes a processor 20. 22 which are each controlled by a program 26 for executing the program as specified by the flow charts illustrated and described hereinbelow. Similarly, switching network 12 includes a processor 24 which is controlled by a program 28 for executing the aforementioned program as specified by the above mentioned flow charts. Further, each telephone station T 1 and TN, and switching network 12 each respectfully include a telephone transceiver 28. 30. 32 for enabling telephone communication between the aforementioned components."  Synder at 3:26-41. |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; |  Synder at Figure 2. Snyder discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network. *See, e.g.*: • "Each telephone station further includes a telephone transceiver and processor means. The processor means is operative under the control of a program to store both the conventional incoming calling line identification number and the personalized incoming calling line identification number provided by the caller. The processor is further operative under the control of the program to transmit the aforementioned incoming calling line identification numbers to a telephone switching network so as to enable transmission of the aforementioned incoming calling line identification numbers to at least one other telephone station associated with the telephone communication system of the |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | present invention."    Snyder at 2:14-26.<br><br>• "The user then enters his/her ICUDTO number 208 (i.e. • 908-111-2222) via dial pad 42. (block 106) which is to be used as the tag-on caller ID phone number (i.e., 908-111-2222) to be received and processed by telephone TN (FIG. 2) in addition to the corresponding telephone number (i.e., 212-123-4567) of telephone station T1. Preferably, the ICUDTO number may also be accompanied by a limited amount of indicia 210 (i.e., jjs office) which further identifies the caller to the called party which is entered by the user (block 108) via keyboard 38. Additionally, the caller may enter a short message 212. via keyboard 38 (preferably 2 text lines) (block 110) to which is to be transmitted to telephone station TN- as will be further described hereinbelow."    Snyder at 4: 34-46.<br><br>FIG. 3<br><br>CALLER ACTIVATES CALLER ID TAG ON —100<br>CALLER ENTERS TELEPHONE NUMBER —102<br>CALLER ENTERS BILLING INFORMATION —104<br>CALLER ENTERS CALLER ID TAG ON TELEPHONE NUMBER —106<br>CALLER ENTERS IDENTIFYING INDICIA —108 |

29

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| storing the plurality of user phone addresses in computer readable memory; | Snyder at Fig. 3. Snyder discloses storing the plurality of user phone addresses in computer readable memory. *See, e.g.:* • "Each telephone station further includes a telephone transceiver and processor means. The processor means is operative under the control of a program to store both the conventional incoming calling line identification number and the personalized incoming calling line identification number provided by the caller. The processor is further operative under the control of the program to transmit the aforementioned incoming calling line identification numbers to a telephone switching network so as to enable transmission of the aforementioned incoming calling line identification numbers to at least one other telephone station associated with the telephone communication system of the present invention." Snyder at 2:14-26. • "The user then enters his/her ICUDTO number 208 (i.e. • 908-111-2222) via dial pad 42. (block 106) which is to be used as the tag-on caller ID phone number (i.e., 908-111-2222) to be received and processed by telephone TN (FIG. 2) in addition to the corresponding telephone number (i.e., 212-123-4567) of telephone station TI. Preferably, the ICUDTO number may also be accompanied by a limited amount of indicia 210 (i.e., jjs office) which further identifies the caller to the called party which is entered by the user (block 108) via keyboard 38. Additionally, the caller may enter a short message 212. via keyboard 38 (preferably 2 text lines) (block 110) to which is to be transmitted to telephone station TN· as will be further described hereinbelow." Snyder at 4: 34-46. |

30

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | <br><br>Snyder at Fig. 3. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | Snyder discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses.<br><br>*See, e.g.:*<br><br>• "Each telephone station further includes a telephone transceiver and processor means. The processor means is operative under the control of a program to store both the conventional incoming calling line identification number and the personalized incoming calling line identification number provided by the caller. The processor is further operative under the control of the program to transmit the aforementioned incoming calling line identification numbers to a telephone switching network so as to enable transmission of the aforementioned incoming calling line identification numbers to at least one other |

31

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | telephone station associated with the telephone communication system of the present invention." Snyder at 2:14-26. |
| | • "The user then enters his/her ICUDTO number 208 (i.e. ● 908-111-2222) via dial pad 42. (block 106) which is to be used as the tag-on caller ID phone number (i.e., 908-111-2222) to be received and processed by telephone TN (FIG. 2) in addition to the corresponding telephone number (i.e., 212-123-4567) of telephone station T1. Preferably, the ICUDTO number may also be accompanied by a limited amount of indicia 210 (i.e., jjs office) which further identifies the caller to the called party which is entered by the user (block 108) via keyboard 38. Additionally, the caller may enter a short message 212. via keyboard 38 (preferably 2 text lines) (block 110) to which is to be transmitted to telephone station TN: as will be further described hereinbelow." Snyder at 4: 34-46. |

32

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | <br><br>FIG. 3<br><br>CALLER ACTIVATES CALLER ID TAG ON — 100<br>CALLER ENTERS TELEPHONE NUMBER — 102<br>CALLER ENTERS BILLING INFORMATION — 104<br>CALLER ENTERS CALLER ID TAG ON TELEPHONE NUMBER — 106<br>CALLER ENTERS IDENTIFYING INDICIA — 108<br><br>Snyder at Fig. 3.<br><br>Snyder discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.<br><br>*See, e.g.:*<br><br>● "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then |

33

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."   Snyder at 2:29-48.

• "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | Snyder discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.

*See, e.g.*:

• "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the |

34

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
|  | simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."   Snyder at 2:29-48. |
|  | • "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N•as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24. |
| 27. The method as defined in claim 26, the method further comprising: | Snyder discloses the method as defined in claim 26. *See* claim 26 above. |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | Snyder discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses. *See* claim 26 above. |

35

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
|  | • "The caller then enters via dial pad 42 the telephone number 204 (i.e., 908-999-8888) the caller desires to call (i.e., telephone station TN) (block 102)." Snyder at 4:22-25. <br><br> • "Referring now to FIG. 4, in conjunction with FIGS. 1 and 2, when the switching network 12 first receives the aforementioned ICLIDTO information (block 120), via transceiver 30 of telephone station T1, the switching network 112 then "Dials" the telephone number (i.e., 908-999-8888) which corresponds with telephone station TN."   Snyder at 5:2-6. <br><br> *FIG. 4* <br><br>  <br> SWITCH NETWORK RECEIVES INFORMATION — 120 <br><br> Snyder at Fig. 4. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | Snyder discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address. <br><br> *See claim 26 above.* <br><br> • "First, a caller inputs a first telephone number in an originating telephone |

36

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."  Snyder at 2:29-48. |
| | ● "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N● as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | Snyder discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. |
| | *See* claim 26 above. |
| | ● "First, a caller inputs a first telephone number in an originating telephone |

37

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."  Snyder at 2:29-48.<br><br>● "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N· as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."   Snyder at 5:16-24.<br><br>ESTABLISH TWO-WAY TELEPHONE COMMUNICATION —146<br><br>Snyder at Fig. 5.<br><br>● "The aforementioned selectivity of LASS is enhanced with the telephone system of the present invention, in that a called telephone station is not only |

38

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | limited to using the caller ID number (i.e., 212-123-4567) as an identifying flag (as in the prior art) but may also utilize the caller ID tag on number (i.e., 908-111-2222) and corresponding indicia (i.e., jjs office) as an identifying flag. Thus, a caller at a remote phone, other than the caller's usual phone (i.e., home office) may utilize customized identifying flags (the caller ID tag or number) when calling from a remote phone so as to ensure that the phone call will be answered and not automatically rejected."   Snyder at 5:51-62. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

39

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") | |
|---|---|---|
| | | Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | *See* claim 26 above. | |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | *See* claim 26 above. | |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | *See* claim 26 above. | |

40

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | *See* claim 26 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 34. The method as defined in claim 26, the method further comprising: | Snyder discloses the method as defined in claim 26, the method further comprising. |
| | *See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address | Snyder discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing |

41

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| associated with the call processing system; | system. |
| | *See* claim 26 above. |
| | • "First, a caller inputs a first telephone number in an originating telephone station, wherein the first telephone number corresponds to the telephone number of another telephone station associated with the telecommunication system. The caller then inputs a second telephone number in the originating telephone station wherein the second telephone number is a telephone number other than the third telephone number associated with the originating telephone station. The first, second and third telephone numbers are then simultaneously transmitted to the switching network which, in turn, enables the simultaneous transmission of the second and third telephone numbers to the telephone station having the first telephone number. A determination is then made at the telephone station having the first telephone number as to whether to answer a phone call from the originating telephone station on the basis of the second and third telephone numbers which are displayed on a display means associated with each telephone station associated with the telecommunication system of the present invention."    Snyder at 2:29-48. |
| | • "Referring now to FIG. 5 in conjunction with FIG. 6a, when telephone TN station accepts the phone call from telephone station T1, (block 140), the aforementioned ICLIDTO information is then displayed as screen 250 on display 36 of telephone T N• as shown in FIG. 6a (block 142). The called party may then view the ICLIDTO information presented on screen 250 of telephone station TN so as to make a determination as to whether to answer or reject the phone call from telephone station T1 (block 144)."    Snyder at 5:16-24. |
| reading at least one user specified rule from | To the extent that Plaintiff contends this prior art reference does not specifically |

42

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| computer readable memory; | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

43

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") | |
|---|---|---|
| | | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising: | *See* claim 26 above. | |
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. | |
| placing an outcall to the connect destination; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. | |
| connecting the first outcall with the outcall to the connect destination. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to | |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 40. A method of processing calls, comprising: | Snyder discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "This invention generally relates to caller identification for telephone communication calls and more particularly to an apparatus and method for providing personal calling identification at remote phone locations."    Snyder at 1:6-10. |
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

45

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| receiving a call connect instruction from the subscriber; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| instructing the call processing system to connect the first call to a third communication device. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

46

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
| to SIP protocol. | Defendants' Invalidity Contentions, that contain this functionality. |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

47

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,784,444 ("Snyder") |
|---|---|
|  | Defendants' Invalidity Contentions, that contain this functionality. |

48

Exhibit A-27

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 5,864,612 ("Strauss")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), United States Patent No. 5,864,612 ("Strauss") invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Strauss issued on Jan. 26, 1999 from an application filed on on October 1, 1996, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| 1. A method of processing calls, the method comprising: | Strauss discloses a method of processing calls. *See, e.g.:* <br><br> • "The present invention relates to telephone systems that convey caller line identification information to called parties and, more particularly, to enabling the calling party selective control with each call over specific information to be conveyed." Strauss at 1:5-9. <br><br> • "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3." Strauss at 7:60-61. |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | 

Strauss at Fig 3. |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | Strauss discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber.

*See, e.g.:*

- "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."   Strauss at 8:33-39. |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | • "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."   Strauss at Abstract. |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | Strauss discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network.<br><br>*See, e.g.:*<br><br>• "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."   Strauss at 8:33-39.<br><br>• "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."   Strauss at Abstract. |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | Strauss discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address.<br><br>*See, e.g.:*<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."   Strauss at 7:60-65. |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| |   101  DIALED CALL  Strauss at Fig 3. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | Strauss discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address.  *See, e.g.:*  • "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109."  Strauss at 8:46-50.  • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided."  Strauss at 8:5-11. |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | <br><br>Strauss at Fig. 3. |
| bridging the first call and the first outcall; | Strauss discloses bridging the first call and the first outcall.<br><br>*See, e.g.:*<br><br>• "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50.<br><br>• "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11.<br><br>Strauss at Fig. 3. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | Strauss discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address.<br><br>*See, e.g.:*<br><br>• "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."   Strauss at 8:33-39.<br><br>• "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."   Strauss at Abstract.<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."   Strauss at 7:60-65. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
|  |  |
|  | Strauss at Fig 3. |
|  | • "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109."    Strauss at 8:46-50. |
|  | • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided."    Strauss at 8:5-11. |
|  | Strauss at Fig. 3. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| bridging the second call and the second outcall. | Strauss discloses bridging the second call and the second outcall.<br><br>*See, e.g.:*<br><br>• "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."    Strauss at 8:33-39.<br><br>• "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."    Strauss at Abstract.<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."    Strauss at 7:60-65.<br><br>DIALED CALL — 101<br><br>Strauss at Fig 3. |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | • "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50. <br><br> • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11. <br><br> ROUTE CALL ⌐109 <br><br> Strauss at Fig. 3. |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | Strauss discloses the method of claim 1, wherein the first call is initiated by the subscriber. <br><br> *See* claim 1 above. <br><br> • "Processing of a call in accordance with a first embodiment of the |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile." Strauss at 7:60-65.<br><br>[DIALED CALL — 101]<br><br>Strauss at Fig 3. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated | *See* claim 1 above. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| with the call processing system. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | Strauss discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. *See* claim 1 above. • "A CCIS terminal 73 and an associated data unit 71 provide a signalling link between is the administrative module processor 61 and an SS7 network connection to an STP or the like, as shown in FIG. 1, for facilitating call processing signal communications with other COs and with the ISCP 40." Strauss at 7:38-43. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | *See* claim 1 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

12

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|---|
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | Strauss discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network. |
| | *See* claim 1 above. |
| | • "The central office SSPs are interconnected to each other by trunk circuits for carrying telephone services."   Strauss at 5:54-56. |
| 11. The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone address; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| reading at least one subscriber specified rule from computer readable memory; and | Strauss discloses reading at least one subscriber specified rule from computer readable memory. |
| | • "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party. Thus, at step 113 a determination is made by the ISCP of whether the LIB data base is to be accessed. This determination is dependent upon the caller's stored CPR contents that correspond to the dialed access code and the makeup of the stored identifying information."    Strauss at 8:33-43. |
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| firewall. | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 14. The method as defined in claim 1, the method further comprising: | Strauss discloses method as defined in claim 1. |
| | *See* claim 1 above. |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a third outcall to the transfer destination; and | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| connecting the first outcall with the third outcall. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
|  | Defendants' Invalidity Contentions, that contain this functionality. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 17. A method of processing calls, the method comprising: | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | *See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | Strauss discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.

*See, e.g.:*

- "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50.

- "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11.



Strauss at Fig. 3.. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling | Strauss discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | address of the call processing system, but is a phone address assigned to or specified by the user.<br><br>*See, e.g.:*<br><br>● "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."   Strauss at 8:33-39.<br><br>● "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."   Strauss at Abstract.<br><br>● "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."   Strauss at 7:60-65.<br><br>DIALED CALL — 101<br><br>Strauss at Fig 3.<br><br>"The ISCP, at step 117, then formulates a return message to the |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109."   Strauss at 8:46-50. |
| | • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided."   Strauss at 8:5-11. |
| |  |
| | Strauss at Fig. 3. |
| causing the first outcall and the second outcall to be connected. | Strauss discloses causing the first outcall and the second outcall to be connected. |
| | *See, e.g.*: |
| | • "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."   Strauss at 8:33-39. |
| | • "The telephone system Line Identification Data Base (LIB) contains |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | listings for subscribers that may each include a plurality of assigned telephone numbers and names."   Strauss at Abstract. |
| | • "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."   Strauss at 7:60-65. |
| |  |
| | Strauss at Fig 3. |
| | "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109."   Strauss at 8:46-50. |
| | • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided."   Strauss at 8:5-11. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| |  Strauss at Fig. 3. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | Strauss discloses the method of claim 17, wherein the user telephone is a landline phone.<br><br>*See* claim 17 above.<br>*See* claim 10 above.<br><br>• "The central office SSP's are interconnected to each other by trunk circuits for carrying telephone services."    Strauss at 5:54-56. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | *See* claim 17 above.<br>To the extent that Plaintiff contends this prior art reference does not specifically |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
|  | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided *via* the user selecting a contact database entry or a call log entry. | *See* claim 17 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

23

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|---|
| | | Defendants' Invalidity Contentions, that contain this functionality. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | | Strauss discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. |
| | | See claim 17 above. |
| | | See, e.g.: |
| | | • "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50. |
| | | • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11. |
| | | ROUTE CALL ⌐109 |
| | | Strauss at Fig. 3. |

24

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|---|
| 26. A method of processing calls, the method comprising; | | Strauss discloses a method of processing calls, the method comprising. |
| | | *See, e.g.:* |
| | | • "The present invention relates to telephone systems that convey caller line identification information to called parties and, more particularly, to enabling the calling party selective control with each call over specific information to be conveyed."   Strauss at 1:5-9. |
| | | • "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3."   Strauss at 7:60-61. |
| | |   FIG. 3 |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | Strauss at Fig 3. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | Strauss discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system. *See, e.g.:* <br><br> • "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."  Strauss at 8:33-39. <br><br> • "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."  Strauss at Abstract. |
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | Strauss discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network. *See, e.g.:* <br><br> • "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."  Strauss at 8:33-39. <br><br> • "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."  Strauss at Abstract. |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| storing the plurality of user phone addresses in computer readable memory; | Strauss discloses storing the plurality of user phone addresses in computer readable memory.<br><br>*See, e.g.:*<br><br>• "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."    Strauss at 8:33-39.<br><br>• "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."    Strauss at Abstract. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | Strauss discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses.<br><br>*See, e.g.:*<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."    Strauss at 7:60-65. |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| |  Strauss at Fig 3. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | Strauss discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.<br><br>*See, e.g.:*<br><br>● "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109."    Strauss at 8:46-50.<br><br>● "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided."    Strauss at 8:5-11. |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| |  |
| | Strauss at Fig. 3. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | Strauss discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.<br><br>*See, e.g.:*<br><br>• "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50.<br><br>• "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11. |

29

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | Strauss at Fig. 3. |
| 27. The method as defined in claim 26, the method further comprising: | Strauss discloses the method as defined in claim 26.<br><br>*See* claim 26 above. |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | Strauss discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses.<br><br>*See* claim 26 above.<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."   Strauss at 7:60-65. |

30

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | <br><br>Strauss at Fig 3.. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | Strauss discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address.<br><br>*See* claim 26 above.<br><br>• "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."    Strauss at 8:33-39.<br><br>• "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."    Strauss at Abstract.<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a |

31

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."   Strauss at 7:60-65. |



Strauss at Fig 3.

"The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109."   Strauss at 8:46-50.

- "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided."   Strauss at 8:5-11.



32

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | Strauss at Fig. 3. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | Strauss discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall.<br><br>*See* claim 26 above.<br><br>*See, e.g.:*<br><br>• "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."   Strauss at 8:33-39.<br><br>• "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."   Strauss at Abstract.<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."   Strauss at 7:60-65. |

33



| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|

Strauss at Fig 3.

"The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50.

• "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11.

Strauss at Fig. 3.

34

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | Strauss discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 26 above.<br><br>• "A CCIS terminal 73 and an associated data unit 71 provide a signalling link between is the administrative module processor 61 and an SS7 network connection to an STP or the like, as shown in FIG. 1, for facilitating call processing signal communications with other COs and with the ISCP 40." Strauss at 7:38-43. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | Strauss discloses the method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software.<br><br>*See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein | *See* claim 26 above. |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| the signaling information associated with the first outcall is SIP signaling. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | *See* claim 26 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | *See* claim 26 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 33. The method as defined in claim 26, wherein | Strauss discloses the method as defined in claim 26, wherein the first outcall is |

36

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| the first outcall is placed over a switched circuit telephone network. | placed over a switched circuit telephone network. |
| | *See* claim 26 above. |
| | • "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50. |
| | • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11. |
| |  |
| | Strauss at Fig. 3. |
| | • "The central office SSPs are interconnected to each other by trunk circuits for carrying telephone services." Strauss at 5:54-56. |

37

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| 34. The method as defined in claim 26, the method further comprising: | Strauss discloses the method as defined in claim 26, the method further comprising. <br><br> *See* claim 26 above. |
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | *See* claim 26 above. <br><br> To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| reading at least one user specified rule from computer readable memory; | Strauss discloses reading at least one user specified rule from computer readable memory. <br><br> *See* claim 26 above. <br><br> • "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party. Thus, at step 113 a determination is made by the ISCP of whether the LIB data base is to be |

38

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | accessed. This determination is dependent upon the caller's stored CPR contents that correspond to the dialed access code and the makeup of the stored identifying information."    Strauss at 8:33-43. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | Strauss discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address.<br><br>*See claim 26 above.*<br><br>• "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."    Strauss at 7:60-65.<br><br><br><br>Strauss at Fig 3. |

39

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising: | Strauss discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |

40

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | *See* claim 26 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing an outcall to the connect destination; and | Strauss discloses placing an outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>• "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50.<br><br>• "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11. |

41

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | <br>Strauss at Fig. 3. |
| connecting the first outcall with the outcall to the connect destination. | Strauss discloses connecting the first outcall with the outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>*See, e.g.*:<br><br>● "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109."   Strauss at 8:46-50.<br><br>● "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided."   Strauss at 8:5-11. |

42

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|---|
| | |  Strauss at Fig. 3. |
| 40. A method of processing calls, comprising: | | Strauss discloses a method of processing calls. *See, e.g.:* <br><br> • "The present invention relates to telephone systems that convey caller line identification information to called parties and, more particularly, to enabling the calling party selective control with each call over specific information to be conveyed."   Strauss at 1:5-9. <br><br> • "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3."   Strauss at 7:60-61. |

43

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| |  Strauss at Fig 3. |
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | Strauss discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber. |

44

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | *See, e.g.:* <br><br> ● "The LIB data base contains all relevant identifying information for each subscriber line. In relatively noncomplex conditions, sufficient identifying information also exists in the ISCP. For example, a calling subscriber CPR may contain two telephone numbers associated with the caller line and no name identification is to be furnished to the called party."    Strauss at 8:33-39. <br><br> ● "The telephone system Line Identification Data Base (LIB) contains listings for subscribers that may each include a plurality of assigned telephone numbers and names."    Strauss at Abstract. <br><br> ● "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."    Strauss at 7:60-65. |
| accessing an account record associated with the subscriber, the account record including at least one subscriber instruction; | Strauss discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction. <br><br> *See, e.g.:* <br><br> ● "Processing of a call in accordance with a first embodiment of the invention is explained with reference to FIG. 3. At step 101, a call is dialed. The dialed digits are received at the caller's end office at step 103. If the caller is a subscriber to selective caller ID service, triggers corresponding to one or more access codes or to a selected default setting may exist in the caller's switch profile."    Strauss at 7:60-65. |

45

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| | |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | Strauss discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber. *See, e.g.:* <br><br> • "The ISCP, at step 117, then formulates a return message to the originating SSP to complete the call. The message may include routing instructions as well as the selected caller ID information. The call will then be routed in the manner of step 109." Strauss at 8:46-50. <br><br> • "If the called party subscriber end office SSP indicates caller ID or an enhanced caller ID feature, the calling party subscriber's listed telephone number and name information is made available for display at the called party's caller ID apparatus. The primary listing information for a calling party subscriber with multiple listings will be provided." Strauss at 8:5-11. <br><br> ROUTE CALL — 109 <br><br> Strauss at Fig. 3. |
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

46

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|
| associated with the subscriber; and | Defendants' Invalidity Contentions, that contain this functionality. |
| receiving a call connect instruction from the subscriber; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| instructing the call processing system to connect the first call to a third communication device. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | *See* claim 40 above:<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

47

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,864,612 ("Strauss") | |
|---|---|---|---|
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes dialing a private branch exchange extension. | | *See* claim 40 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. | |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | | *See* claim 40 above:<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. | |

48

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,864,612 ("Strauss") |
|---|---|---|
| 49. The method as defined in claim 40, wherein the first communication device resides behind a firewall. | | *See* claim 40 above:<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | | *See* claim 40 above:<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

49

NY:1636646.2

Exhibit A-28

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Patent No. 5,901,209 ("Tannenbaum")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 5,901,209 (hereinafter "Tannenbaum") invalidates Claims 1-10, 12-21, 26-33 & 35-37 of United States Patent No. 7,822,188 ("the '188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Tannenbaum was published on May 4, 1999, from an application with a priority date of at least December 16, 1996, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| 1. A method of processing calls, the method comprising: | **Tannenbaum** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>"These and other objects, needs and desires are obtained in one embodiment having a system and method for providing a predictive dialer in combination with a call management system which is networked, to allow the predictive dialer to be centrally located, such as at a service provider's location, for cost effective utilization by a number of remote users." Tannenbaum at 3:1-6.<br><br>"A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ." Tannenbaum, claim 7. |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | **Tannenbaum** discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber. |
| | *See, e.g.*: |
| | "This interface allows for the input, via a supported network, of calling information, such as target names, phone numbers (or other electronic addresses), street addresses, calling agent identification, etcetera, and presents information to the user regarding call management . . ." Tannenbaum at 3:16-20. |
| | "It shall be appreciated that system 10 may accept and store more than one set of call management information. Such sets of call management information may be utilized to perform predictive dialing functions for different users simultaneously or serially." Tannenbaum at 7:28-33. |
| | "The call management information provided to system 10 includes a call list of desired addresses to contact and may also include such information as the identification of agents authorized to access system 10 or times at which to perform predictive dialing functions." Tannenbaum at 7:33-38. |
| | "Furthermore, it shall be appreciated that information transmitted to and received from [call management system] CMS 109 may be utilized directly or indirectly by applications executed by PC 101." Tannenbaum at 7:52-54. |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with | **Tannenbaum** discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected |

3

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | from the group including a wireline network, a wireless network, and/or an Internet network.<br><br>*See, e.g.:*<br><br>"This interface allows for the input, via a supported network, of calling information, such as target names, phone numbers (or other electronic addresses), street addresses, calling agent identification, etcetera, and presents information to the user regarding call management . . ." Tannenbaum at 3:16-20.<br><br>"It shall be appreciated that system 10 may accept and store more than one set of call management information. Such sets of call management information may be utilized to perform predictive dialing functions for different users simultaneously or serially."   Tannenbaum at 7:28-33.<br><br>"It shall be understood that network 150 may comprise any means of information communication, such as a PSN, a computer network, or the Internet, suitable for providing information communication between a particular network element and system 10, information communication may be accomplished through network 150, for example, by such communication protocols as facsimile, file transport protocol (FTP), hypertext markup language (HTML), telephony audio communication, or the like. Furthermore, although multiple call management network elements are illustrated connected to network 150, it shall be appreciated that ones of the network elements may be connected to different networks." Tannenbaum 7:6-18.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | **Tannenbaum** discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address.<br><br>*See, e.g.:*<br><br>"Specifically, predictive dialer 110 calls ahead of an agent's availability in anticipation of an agent becoming available . . ."   Tannenbaum at 9:1-2.<br><br>"After call management information is provided by the user to system 10, predictive dialer 110 may begin calling the target parties indicated in the call management information (steps 501-503)."   Tannenbaum at 11:66-12:2.<br><br>"The means by which target parties are contacted depends in part upon the address information provided system 10 as call management information. For example, if a phone number is listed as an address entry in the call management information, predictive dialer will attempt to contact that target by phone . . ."   Tannenbaum at 13:30-35.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | **Tannenbaum** discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address.<br><br>*See, e.g.:*<br><br>"Specifically, predictive dialer 110 calls ahead of an agent's availability in anticipation of an agent becoming available . . ."   Tannenbaum at 9:1-2.<br><br>"After call management information is provided by the user to system 10, predictive dialer 110 may begin calling the target parties indicated in the call management information (steps 501-503)."   Tannenbaum at 11:66-12:2.<br><br>"The means by which target parties are contacted depends in part upon the address information provided system 10 as call management information. For example, if a phone number is listed as an address entry in the call management information, predictive dialer will attempt to contact that target by phone . . ."  Tannenbaum at 13:30-35.<br><br>"There may be times that it is desirable to change the field referred to generally as ANI or 'caller ID field' on the originating call. This change would be made to change the ANI field to reflect the particular institution that is sponsoring the call. Thus as shown in box SO1A, if someone is calling from his/her home on a collections campaign or a fundraising campaign, that person does not necessarily want his/her home phone number to show up on the called parties caller ID. Instead, it is desired to |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | use the phone number of the organization that the person is calling on behalf of to show up in the caller ID field of the called party. There are a number of ways to do this. If the system that the caller is using is ISDN-connected, feature group D, trunking arrangement, SS-7 ISUP, and a number of others, it is possible to alter that field, inserting an alternate, or what we refer to as a 'pseudo' ANI from ' a database ' into that field prior to call placement. An ISUP is an ISDN user port, one of the alternate APis and SS-7 used primarily for caller setup and teardown." Tannenbaum 12:6-24. |
| | "When the caller is calling from home and it is desired to use the caller ID number of a third party, database 601 would be entered, perhaps under control of a special dialed code, and by using the caller ID number as an address into a database." Tannenbaum 12:31-35. |
| | "In situations where there is no actual 'campaign,' but the caller's ID is to be changed, a similar ID substitution can be made. However, while not shown, the existing ANI of the caller would be matched against a database using the ANI as an address. This match could be triggered, for example, by the dialing of a special code, or by the insertion of a code in the ANI at the calling station. There can be security codes added to insure that improper users do not have their IDs changed. Alternatively, a caller could simply have a PIN which is used (and matched against a database of valid PIN's) to change IDs. This would allow police officers (for example) to call from any phone and the recipient would 'see' the ID of the police department. A database lookup, as shown in FIG. 6 would be used for such purposes. The ID change can be made for one call or for a campaign of calls, depending upon the authorization level established for the PIN." Tannenbaum 12:41-58. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | "A method of placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification; the method comprising the steps of: . . . placing said calls to said called parties from a predictive dialer; connecting said called parties to said calling party; and substituting a preselected caller identification for said calling party's particular caller identification."    Tannenbaum at claim 36. |
| bridging the first call and the first outcall; | **Tannenbaum** discloses bridging the first call and the first outcall.

*See, e.g.:*

"When the network system detects that a live person has answered (as opposed to a no-answer or to an answering machine) the network then connects the call through to one of the remote based agents." Tannenbaum at 2:15-18.

"Alternatively, depending on the contacted target's responses, system 10 may connect an agent from the pool to the contacted target, or may otherwise communicate specific information to an agent or the user." Tannenbaum at 14:38-41.

"A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ."    Tannenbaum at claim 7. |
| participating at the call processing system in a | To the extent that Plaintiff contends this prior art reference does not specifically |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| bridging the second call and the second outcall. | **Tannenbaum** discloses bridging the first call and the first outcall. *See, e.g.:* "When the network system detects that a live person has answered (as opposed to a no-answer or to an answering machine) the network then connects the call through to one of the remote based agents." Tannenbaum at 2:15-18. "Alternatively, depending on the contacted target's responses, system 10 may connect an agent from the pool to the contacted target, or may otherwise communicate specific information to an agent or the user." Tannenbaum at 14:38-41. "A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ."   Tannenbaum |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | at claim 7. |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | **Tannenbaum** discloses the method of claim 1, wherein the first call is initiated by the subscriber.<br><br>*See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | **Tannenbaum** discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition.<br><br>*See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | **Tannenbaum** discloses the method of claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system.<br><br>*See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | **Tannenbaum** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 1 above.<br><br>"Instead, it is desired to use the phone number of the organization that the person is calling on behalf of to show up in the caller ID field of the called party. There are a number of ways to do this. If the system that the caller is using is ISDN-connected, feature group D, trunking arrangement, SS-7 ISUP, and a  number of others, it is possible to alter that field, inserting an |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | alternate, or what we refer to as a 'pseudo' ANI from ' a database ' into that field prior to call placement. An ISUP is an ISDN user port, one of the alternate APIs and SS-7 used primarily for caller setup and teardown." Tannenbaum 12:14-24. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | **Tannenbaum** discloses the method of claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber.

*See* claim 1 above.

"Additionally, some agents using system 10 may communicate to called parties through ADSI telephones, such as illustrated as phone 108, or through processor based systems, such as illustrated as PCs 105, 114 and 115." Tannenbaum at 11:57-60.

"System 10 includes call management system (CMS) 109 and predictive dialer 110. CMS 109 and predictive dialer 110 are systems that may be embodied in a processor-based and predictive dialer 110 are systems that may be embodied in a processor-based system such as a general purpose computer, a PC, a server class microcomputer, a minicomputer or a mainframe computer." Tannenbaum at 6:23-28. |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | **Tannenbaum** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SIP signaling.<br><br>*See* claim 1 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | **Tannenbaum** discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network.<br><br>*See* claim 1 above.<br><br>"It shall be understood that network 150 may comprise any means of information communication, such as a PSN, a computer network, or the Internet, suitable for providing information communication between a particular network element and system 10, information communication may be accomplished through network 150, for example, by such communication protocols as facsimile, file transport protocol (FTP), hypertext markup language (HTML), telephony audio communication, or the like. Furthermore, although multiple call management network elements are illustrated connected to network 150, it shall be appreciated that ones of the network elements may be connected to different networks." |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | Tannenbaum 7:6-18. |
| | "This call management network element may be coupled to CMS 109 by any means suitable for information communication between the two systems, such as a PSN, computer network system, dedicated communication lines, proprietary interface and connection, or even the Internet."   Tannenbaum at 7:47-52. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | **Tannenbaum** discloses the method of claim 1, wherein the first outcall is placed over a wireless network. *See* claim 1 above. "A standard telephone is illustrated as phone 106 which provides an agent with both voice communication capability as well as limited data transmission capability in the form of DTMF. Of course, this telephone may be analogue or may be digital, such as is common in cellular communications."   Tannenbaum at 9:62-66. |
| 10. The method as defined in claim 1, wherein the | **Tannenbaum** discloses the method of claim 1, wherein the first outcall is placed |

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| first outcall is placed over a switched circuit telephone network. | over a switched circuit telephone network. |
| | *See* claim 1 above. |
| | "It shall be understood that network 150 may comprise any means of information communication, such as a PSN . . ."   Tannenbaum at 7:6-10. |
| | "This call management network element may be coupled to CMS 109 by any means suitable for information communication between the two systems, such as a PSN . . ."   Tannenbaum at 7:47-50. |
| | "The method as set forth in [Tannenbaum] claim 26, wherein at least one agent of said agents communicates with said centralized location through an information communication link selected from the group consisting of: . . . a public switched network . . ."   Tannenbaum at claim 27. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | **Tannenbaum** discloses the method of claim 1, further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. |
| | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | **Tannenbaum** discloses the method of claim 1, further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall.

*See* claim 1 above.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 14. The method as defined in claim 1, the method further comprising: | **Tannenbaum** discloses method as defined in claim 1.

*See* claim 1 above. |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is | **Tannenbaum** discloses while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| associated with a transfer destination; | transfer request is associated with a transfer destination. |
| | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a third outcall to the transfer destination; and | **Tannenbaum** discloses placing a third outcall to the transfer destination. |
| | *See* claim 1 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| connecting the first outcall with the third outcall. | **Tannenbaum** discloses connecting the first outcall with the third outcall. |
| | *See* claim 1 above. |
| | *See, e.g.:* |
| | "When the network system detects that a live person has answered (as |

17

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|---|
| | | opposed to a no-answer or to an answering machine) the network then connects the call through to one of the remote based agents." Tannenbaum at 2:15-18. |
| | | "Alternatively, depending on the contacted target's responses, system 10 may connect an agent from the pool to the contacted target, or may otherwise communicate specific information to an agent or the user." Tannenbaum at 14:38-41. |
| | | "A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ." Tannenbaum at claim 7. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. | | **Tannenbaum** discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a mobile phone address. |
| | | *See* claim 1 above. |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

18

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | **Tannenbaum** discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. *See* claim 1 above. To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 17. A method of processing calls, the method comprising: | **Tannenbaum** discloses a method of processing calls. *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Tannenbaum** discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called. *See, e.g.:* "After entry of calling information within the call management system, regardless of the means by which it was entered, the predictive dialer is supplied with information, from the call management system, sufficient to |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | enable its dialing of individual targets according to the user's desires." Tannenbaum at 3:54-58 |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Tannenbaum** discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br><br>"Specifically, predictive dialer 110 calls ahead of an agent's availability in anticipation of an agent becoming available . . ."   Tannenbaum at 9:1-2.<br><br>"After call management information is provided by the user to system 10, predictive dialer 110 may begin calling the target parties indicated in the call management information (steps 501-503)."   Tannenbaum at 11:66-12:2.<br><br>"The means by which target parties are contacted depends in part upon the address information provided system 10 as call management information. For example, if a phone number is listed as an address entry in the call management information, predictive dialer will attempt to contact that target by phone . . ."   Tannenbaum at 13:30-35. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | |
| causing the first outcall and the second outcall to be connected. | **Tannenbaum** discloses causing the first outcall and the second outcall to be connected.<br><br>*See, e.g.:*<br><br>"When the network system detects that a live person has answered (as opposed to a no-answer or to an answering machine) the network then connects the call through to one of the remote based agents." Tannenbaum at 2:15-18.<br><br>"Alternatively, depending on the contacted target's responses, system 10 may connect an agent from the pool to the contacted target, or may otherwise communicate specific information to an agent or the user." Tannenbaum at 14:38-41.<br><br>"A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ."    Tannenbaum at claim 7. |
| 18. The method as defined in claim 17, wherein | **Tannenbaum** discloses the method of claim 17, wherein the user telephone is a |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| the user telephone is a landline phone. | landline phone. |
| | *See* claim 17 above. |
| | *See* claim 10 above. |
| | "A standard telephone is illustrated as phone 106 which provides an agent with both voice communication capability as well as limited data transmission capability in the form of DTMF. Of course, this telephone may be analogue or may be digital, such as is common in cellular communications." Tannenbaum at 9:62–66. |
| | "The method as set forth in [Tannenbaum] claim 25, wherein said general purpose communication device is selected from the group consisting of: . . . a screen telephone; a digital telephone; an analogue telephone; and a general purpose processor-based system." Tannenbaum at claim 26. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | **Tannenbaum** discloses the method of claim 17, wherein the user telephone is a mobile phone. |
| | *See* claim 17 above. |
| | "A standard telephone is illustrated as phone 106 which provides an agent with both voice communication capability as well as limited data |

22

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,901,209 ("Tannenbaum") |
| --- | --- | --- |
| | | transmission capability in the form of DTMF. Of course, this telephone may be analogue or may be digital, such as is common in cellular communications."   Tannenbaum at 9:62-66. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | | **Tannenbaum** discloses the method of claim 17, wherein the user telephone is an Internet protocol phone. |
| | | *See* claim 17 above. |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | | **Tannenbaum** discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. |
| | | *See* claim 17 above. |
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

23

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this invention with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 26. A method of processing calls, the method comprising: | **Tannenbaum** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>"These and other objects, needs and desires are obtained in one embodiment having a system and method for providing a predictive dialer in combination with a call management system which is networked, to allow the predictive dialer to be centrally located, such as at a service provider's location, for cost effective utilization by a number of remote users." Tannenbaum at 3:1-6.<br><br>"A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ." Tannenbaum, claim 7. |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | **Tannenbaum** discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system.<br><br>*See, e.g.:*<br><br>"This interface allows for the input, via a supported network, of calling information, such as target names, phone numbers (or other electronic addresses), street addresses, calling agent identification, etcetera, and presents information to the user regarding call management . . ." |

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | Tannenbaum at 3:16-20. |
| | "It shall be appreciated that system 10 may accept and store more than one set of call management information. Such sets of call management information may be utilized to perform predictive dialing functions for different users simultaneously or serially."    Tannenbaum at 7:28-33. |
| | "The call management information provided to system 10 includes a call list of desired addresses to contact and may also include such information as the identification of agents authorized to access system 10 or times at which to perform predictive dialing functions."    Tannenbaum at 7:33-38. |
| | "Furthermore, it shall be appreciated that information transmitted to and received from [call management system] CMS 109 may be utilized directly or indirectly by applications executed by PC 101."    Tannenbaum at 7:52-54. |
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| storing the plurality of user phone addresses in computer readable memory; | **Tannenbaum** discloses storing the plurality of user phone addresses in computer readable memory.<br><br>*See, e.g.:*<br><br>"This interface allows for the input, via a supported network, of calling |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | information, such as target names, phone numbers (or other electronic addresses), street addresses, calling agent identification, etcetera, and presents information to the user regarding call management . . ." Tannenbaum at 3:16-20. |
| | "It shall be appreciated that system 10 may accept and store more than one set of call management information. Such sets of call management information may be utilized to perform predictive dialing functions for different users simultaneously or serially." Tannenbaum at 7:28-33. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | **Tannenbaum** discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.<br><br>*See, e.g.:*<br><br>"Specifically, predictive dialer 110 calls ahead of an agent's availability in anticipation of an agent becoming available . . ." Tannenbaum at 9:1-2.<br><br>"After call management information is provided by the user to system 10, predictive dialer 110 may begin calling the target parties indicated in the call management information (steps 501-503)." Tannenbaum at |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | 11:66-12:2. |
| | "The means by which target parties are contacted depends in part upon the address information provided system I0 as call management information. For example, if a phone number is listed as an address entry in the call management information, predictive dialer will attempt to contact that target by phone . . ." Tannenbaum at 13:30-35. |
| | "There may be times that it is desirable to change the field referred to generally as ANI or 'caller ID field' on the originating call. This change would be made to change the ANI field to reflect the particular institution that is sponsoring the call. Thus as shown in box SO1A, if someone is calling from his/her home on a collections campaign or a fundraising campaign, that person does not necessarily want his/her home phone number to show up on the called parties caller ID. Instead, it is desired to use the phone number of the organization that the person is calling on behalf of to show up in the caller ID field of the called party. There are a number of ways to do this. If the system that the caller is using is ISDN-connected, feature group D, trunking arrangement, SS-7 ISUP, and a number of others, it is possible to alter that field, inserting an alternate, or what we refer to as a 'pseudo' ANI from ' a database ' into that field prior to call placement. An ISUP is an ISDN user port, one of the alternate APis and SS-7 used primarily for caller setup and teardown." Tannenbaum 12:6-24. |
| | "When the caller is calling from home and it is desired to use the caller ID number of a third party, database 601 would be entered, perhaps under control of a special dialed code, and by using the caller ID number as an |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | address into a database."    Tannenbaum 12:31-35. |
| | "In situations where there is no actual 'campaign,' but the caller's ID is to be changed, a similar ID substitution can be made. However, while not shown, the existing ANI of the caller would be matched against a database using the ANI as an address. This match could be triggered, for example, by the dialing of a special code, or by the insertion of a code in the ANI at the calling station. There can be security codes added to insure that improper users do not have their IDs changed. Alternatively, a caller could simply have a PIN which is used (and matched against a database of valid PIN's) to change IDs. This would allow police officers (for example) to call from any phone and the recipient would 'see' the ID of the police department. A database lookup, as shown in FIG. 6 would be used for such purposes. The ID change can be made for one call or for a campaign of calls, depending upon the authorization level established for the PIN."    Tannenbaum 12:41-58. |
| | "A method of placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification; the method comprising the steps of: . . . placing said calls to said called parties from a predictive dialer; connecting said called parties to said calling party; and substituting a preselected caller identification for said calling party's particular caller identification."    Tannenbaum at claim 36. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in |

28

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") | |
|---|---|---|
| | Defendants' Invalidity Contentions, that contain this functionality. | |
| | | |
| 27. The method as defined in claim 26, the method further comprising: | **Tannenbaum** discloses the method as defined in claim 26.<br><br>*See claim 26 above.* | |
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. | |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | **Tannenbaum** discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address.<br><br>*See claim 26 above.*<br><br>"There may be times that it is desirable to change the field referred to generally as ANI or 'caller ID field' on the originating call. This change would be made to change the ANI field to reflect the particular institution that is sponsoring the call. Thus as shown in box SO1A, if someone is calling from his/her home on a collections campaign or a fundraising | |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | campaign, that person does not necessarily want his/her home phone number to show up on the called parties caller ID. Instead, it is desired to use the phone number of the organization that the person is calling on behalf of to show up in the caller ID field of the called party. There are a number of ways to do this. If the system that the caller is using is ISDN-connected, feature group D, trunking arrangement, SS-7 ISUP, and a number of others, it is possible to alter that field, inserting an alternate, or what we refer to as a 'pseudo' ANI from ' a database ' into that field prior to call placement. An ISUP is an ISDN user port, one of the alternate APIs and SS-7 used primarily for caller setup and teardown." Tannenbaum 12:6-24. |
| | "When the caller is calling from home and it is desired to use the caller ID number of a third party, database 601 would be entered, perhaps under control of a special dialed code, and by using the caller ID number as an address into a database." Tannenbaum 12:31-35. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. | **Tannenbaum** discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall. |
| | *See claim 26 above.* |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | "When the network system detects that a live person has answered (as opposed to a no-answer or to an answering machine) the network then connects the call through to one of the remote based agents." Tannenbaum at 2:15-18. |
| | "Alternatively, depending on the contacted target's responses, system 10 may connect an agent from the pool to the contacted target, or may otherwise communicate specific information to an agent or the user." Tannenbaum at 14:38-41. |
| | "A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ." Tannenbaum at claim 7. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | **Tannenbaum** discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. |
| | *See* claim 26 above. |
| | "Instead, it is desired to use the phone number of the organization that the person is calling on behalf of to show up in the caller ID field of the called party. There are a number of ways to do this. If the system that the caller is |

31

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|---|
| | | using is ISDN-connected, feature group D, trunking arrangement, SS-7 ISUP, and a   number of others, it is possible to alter that field, inserting an alternate, or what we refer to as a 'pseudo' ANI from ' a database ' into that field prior to call placement. An ISUP is an ISDN user port, one of the alternate APIs and SS-7 used primarily for caller setup and teardown." Tannenbaum 12:14-24. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | | **Tannenbaum** discloses the method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. |
| | | *See* claim 26 above. |
| | | "It shall be understood that network 150 may comprise any means of information communication, such as a PSN, a computer network, or the Internet, suitable for providing information communication between a particular network element and system 10, information communication may be accomplished through network 150, for example, by such communication protocols as facsimile, file transport protocol (FTP), hypertext markup language (HTML), telephony audio communication, or the like. Furthermore, although multiple call management network elements are illustrated connected to network 150, it shall be appreciated that ones of the network elements may be connected to different networks." Tannenbaum 7:6-18. |
| | | "This call management network element may be coupled to CMS 109 by |

32

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | any means suitable for information communication between the two systems, such as a PSN, computer network system, dedicated communication lines, proprietary interface and connection, or even the Internet." Tannenbaum at 7:47-52.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | **Tannenbaum** discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling.

*See* claim 26 above.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | **Tannenbaum** discloses the method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. |

33

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | *See* claim 26 above. |
| | "It shall be understood that network 150 may comprise any means of information communication, such as a PSN, a computer network, or the Internet, suitable for providing information communication between a particular network element and system 10, information communication may be accomplished through network 150, for example, by such communication protocols as facsimile, file transport protocol (FTP), hypertext markup language (HTML), telephony audio communication, or the like. Furthermore, although multiple call management network elements are illustrated connected to network 150, it shall be appreciated that ones of the network elements may be connected to different networks." Tannenbaum 7:6-18. |
| | "This call management network element may be coupled to CMS 109 by any means suitable for information communication between the two systems, such as a PSN, computer network system, dedicated communication lines, proprietary interface and connection, or even the Internet." Tannenbaum at 7:47-52. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | **Tannenbaum** discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network. |
| | *See* claim 26 above. |

34

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|---|
| | | "A standard telephone is illustrated as phone 106 which provides an agent with both voice communication capability as well as limited data transmission capability in the form of DTMF. Of course, this telephone may be analogue or may be digital, such as is common in cellular communications."    Tannenbaum at 9:62-66. |
| | | "The method as set forth in [Tannenbaum] claim 25, wherein said general purpose communication device is selected from the group consisting of: . . . a digital telephone . . ."    Tannenbaum at claim 26. |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | | **Tannenbaum** discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. |
| | | *See* claim 26 above. |
| | | "It shall be understood that network 150 may comprise any means of information communication, such as a PSN . . ."    Tannenbaum at 7:6-10. |
| | | "This call management network element may be coupled to CMS 109 by any means suitable for information communication between the two systems, such as a PSN . . ."    Tannenbaum at 7:47-50. |

35

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | "The method as set forth in [Tannenbaum] claim 26, wherein at least one agent of said agents communicates with said centralized location through an information communication link selected from the group consisting of: . . . a public switched network . . . ."   Tannenbaum at claim 27. |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | **Tannenbaum** discloses the method as defined in claim 26, the method further comprising providing software used to penetrate a firewall.

*See* claim 26 above.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | **Tannenbaum** discloses the method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall.

*See* claim 26 above.

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary |

36

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 37. The method as defined in claim 26, the method further comprising; | **Tannenbaum** discloses the method as defined in claim 26, the method further comprising. *See claim 26 above.* |
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | **Tannenbaum** discloses while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination. *See claim 26 above.* To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing an outcall to the connect destination; and | **Tannenbaum** discloses placing an outcall to the connect destination. *See claim 26 above.* |

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| connecting the first outcall with the outcall to the connect destination. | **Tannenbaum** discloses connecting the first outcall with the outcall to the connect destination.<br><br>*See* claim 26 above.<br><br>*See, e.g.*:<br><br>"When the network system detects that a live person has answered (as opposed to a no-answer or to an answering machine) the network then connects the call through to one of the remote based agents." Tannenbaum at 2:15-18.<br><br>"Alternatively, depending on the contacted target's responses, system 10 may connect an agent from the pool to the contacted target, or may otherwise communicate specific information to an agent or the user." Tannenbaum at 14:38-41.<br><br>"A method for placing calls to called parties by a telephone network based control system and for connecting said calls for communication purposes to a calling party having a particular caller identification . . ."    Tannenbaum at claim 7. |

38

| U.S. Patent No. 7,822,188 | U.S. Patent No. 5,901,209 ("Tannenbaum") |
|---|---|
|  |  |

NY:1636671.2

39

Exhibit A-29

Initial Invalidity Claim Chart for

United States Patent No. 7,822,188

Based on U.S. Patent No. 6,574,328 ("Wood '328")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Patent No. 6,574,328 (hereinafter "Wood '328") invalidates Claims 17-21, 24-26, 28-36 of United States Patent No. 7,822,188 ("the '188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Wood '328 was published on June 3, 2003, from an application with a priority date of at least May 4, 2000, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| 17. A method of processing calls, the method comprising: | Wood '328 discloses a method of processing calls. |
| | See, e.g.: |
| | "The [Tandem Access Controller] TAC 10 is connected to or inside the conventional PSTN tandem switch 16 such that calls may flow through the TAC 10 in the same manner as the existing PSTN tandem switch, except that additional 3rd-party features are applied to the call." Wood '328 at 3:66-4:3. |
| | "The PSTN tandem switch 16 directs a first call (from the calling party 20 to the subscriber's phone 14 using the subscriber's public phone number) to the TAC 10 . . . . Hence, the calling party essentially calls the TAC 10, using the subscriber's public phone number, and the TAC 10, after processing the call using the selected features, calls the subscriber, as appropriate, using the subscriber's private phone number and connects the two calls." Wood '328 at 4:11-25. |

2

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | "Incoming call data is received by the TAC 10 from the tandem switch 16. The TAC 10 processor checks calling and called numbers, class of service, time of day, number lists, etc." Wood '328 at 5:27-30. |
| | "The connection to the tandem switch 16 may be as simple as a telephone circuit, since the TAC 10 receives an incoming call from a caller and processes the call." Wood '328 at 6:9-12. |
| | "A telephone system comprising: . . . a tandem access controller (TAC) . . . said TAC for receiving a first call by a calling party, entering a first telephone number, intended for said subscriber . . ." Wood '328 at claim 1. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Wood '328** discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>*See, e.g.:*<br><br>"FIG. 6 is a flowchart of actions taken by the subscriber 12 and the TAC 10 when the subscriber desires to make an outbound call via the web or using a conventional telephone. When using the web to place a call, the subscriber may simply click a name on the computer screen 26 using a mouse." Wood '328 at 5:46-51. |

3

| U.S. Patent No. 6,574,328 ("Wood '328") | U.S. Patent No. 7,822,188 |
|---|---|



Outbound Call (from Subscriber)

FIG. 6

"Certain advantages that can be obtained using the invention include the following: . . . Click-to-Dial from Web Pages, Directories, Calendars. . . ." Wood '328 at 6:16-17 & 6:57.

4

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Wood '328** discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br><br>"In response to the call data, an outgoing call to the subscriber 12 may be placed back through the tandem switch 16 by TAC 10. The TAC 10 links the two calls and monitors the connection." Wood '328 at 5:35-38.<br><br>"FIG. 6 is a flowchart of actions taken by the subscriber 12 and the TAC 10 when the subscriber desires to make an outbound call via the web or using a conventional telephone. When using the web to place a call, the subscriber may simply click a name on the computer screen 26 using a mouse." Wood '328 at 5:46-51.<br><br>*See also* FIG. 6 above. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned | **Wood '328** discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user<br><br>*See, e.g.:*<br><br>"FIG. 6 is a flowchart of actions taken by the subscriber 12 and the |

5

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| to or specified by the user; and | TAC 10 when the subscriber desires to make an outbound call via the web or using a conventional telephone. When using the web to place a call, the subscriber may simply click a name on the computer screen 26 using a mouse." Wood '328 at 5:46-51.<br><br>*See also* FIG. 6 above. |
| causing the first outcall and the second outcall to be connected. | **Wood '328** discloses causing the first outcall and the second outcall to be connected.<br><br>*See, e.g.*:<br><br>"FIG. 6 is a flowchart of actions taken by the subscriber 12 and the TAC 10 when the subscriber desires to make an outbound call via the web or using a conventional telephone. When using the web to place a call, the subscriber may simply click a name on the computer screen 26 using a mouse." Wood '328 at 5:46-51.<br><br>*See also* FIG. 6 above. |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | **Wood '328** discloses the method of claim 17, wherein the user telephone is a landline phone. |

6

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | *See* claim 17 & FIG. 6 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | **Wood '328** discloses the method of claim 17, wherein the user telephone is a mobile phone.<br><br>*See* claim 17 & FIG. 6 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | **Wood '328** discloses the method of claim 17, wherein the user telephone is an Internet protocol phone. |

7

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | *See* claim 17 & FIG. 6 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| | **Wood '328** discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall.<br><br>*See* claim 17 & FIG. 6 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log | **Wood '328** discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. |

8

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| entry. | *See* claim 17 & FIG. 6 above.<br><br>"Certain advantages that can be obtained using the invention include the following: . . . Click-to-Dial from Web Pages, Directories, Calendars. . . ." Wood '328 at 6:16-17 & 6:57. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | **Wood '328** discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall.<br><br>*See* claim 17 & FIG. 6 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 26. A method of processing calls, the method comprising: | **Wood '328** discloses a method of processing calls.<br><br>"The [Tandem Access Controller] TAC 10 is connected to or inside the conventional PSTN tandem switch 16 such that calls may flow through |

9

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | the TAC 10 in the same manner as the existing PSTN tandem switch, except that additional 3rd-party features are applied to the call." Wood '328 at 3:66-4:3.<br><br>"The PSTN tandem switch 16 directs a first call (from the calling party 20 to the subscriber's phone 14 using the subscriber's public phone number) to the TAC 10 . . . . Hence, the calling party essentially calls the TAC 10, using the subscriber's public phone number, and the TAC 10, after processing the call using the selected features, calls the subscriber, as appropriate, using the subscriber's private phone number and connects the two calls." Wood '328 at 4:11-25.<br><br>"Incoming call data is received by the TAC 10 from the tandem switch 16. The TAC 10 processor checks calling and called numbers, class of service, time of day, number lists, etc." Wood '328 at 5:27-30.<br><br>"The connection to the tandem switch 16 may be as simple as a telephone circuit, since the TAC 10 receives an incoming call from a caller and processes the call." Wood '328 at 6:9-12.<br><br>"A telephone system comprising: . . . a tandem access controller (TAC) . . . said TAC for receiving a first call by a calling party, entering a first telephone number, intended for said subscriber . . . ." Wood '328 at claim 1. |
| storing in computer readable memory an association between a user and a first phone | **Wood '328** discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing |

10

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| address associated with a call processing system; | system.<br><br>*See, e.g.:*<br><br>"Examples of some of the actions taken by the TAC 10 are: . . . stor[ing] phone numbers downloaded from provisioning system . . . [and] stor[ing] lists of numbers in groups used for processing incoming calls." Wood '328 at 5:15-16, 5:19-20 & 5:23-25. |
| receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network; | **Wood '328** discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network.<br><br>*See, e.g.:*<br><br>"Examples of some of the actions taken by the TAC 10 are: . . . stor[ing] phone numbers downloaded from provisioning system . . . [and] stor[ing] lists of numbers in groups used for processing incoming calls." Wood '328 at 5:15-16, 5:19-20 & 5:23-25.<br><br>"As a registered subscriber, . . . the user [can] make additions or changes to features such as speed calling, call forwarding, selection of such descriptors as time of day, busy status, callerID status, etc. A user-friendly web page leads the subscriber through the various procedures and available features. The selections made by the subscriber are translated into provisioning data and transmitted to the TAC 10. The TAC 10 in turn keeps track of incoming and outgoing calls based on this information. The subscriber can also program a set of the call control features via a telephone link in the event a data link connection is unavailable." Wood '328 at 4:61-5:7. |

11

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| storing the plurality of user phone addresses in computer readable memory; | **Wood '328** discloses storing the plurality of user phone addresses in computer readable memory. |
| | *See, e.g.*: |
| | "Examples of some of the actions taken by the TAC 10 are: . . . stor[ing] phone numbers downloaded from provisioning system . . . [and] stor[ing] lists of numbers in groups used for processing incoming calls." Wood '328 at 5:15-16, 5:19-20 & 5:23-25. |
| | "As a registered subscriber, . . . the user [can] make additions or changes to features such as speed calling, call forwarding, selection of such descriptors as time of day, busy status, callerID status, etc. A user-friendly web page leads the subscriber through the various procedures and available features. The selections made by the subscriber are translated into provisioning data and transmitted to the TAC 10. The TAC 10 in turn keeps track of incoming and outgoing calls based on this information. The subscriber can also program a set of the call control features via a telephone link in the event a data link connection is unavailable." Wood '328 at 4:61-5:7. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such |

12

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | **Wood '328** discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses. *See, e.g.:* "FIG. 6 is a flowchart of actions taken by the subscriber 12 and the TAC 10 when the subscriber desires to make an outbound call via the web or using a conventional telephone. When using the web to place a call, the subscriber may simply click a name on the computer screen 26 using a mouse." Wood '328 at 5:46-51. |

13

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|

**Outbound Call (from Subscriber)**



FIG. 6

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such

14

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | **Wood '328** discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.<br><br>*See, e.g.:*<br><br>"FIG. 6 is a flowchart of actions taken by the subscriber 12 and the TAC 10 when the subscriber desires to make an outbound call via the web or using a conventional telephone. When using the web to place a call, the subscriber may simply click a name on the computer screen 26 using a mouse." Wood '328 at 5:46-51.<br><br>*See also* FIG. 6 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | **Wood '328** discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall. |

15

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | *See, e.g.*: |
| | "FIG. 6 is a flowchart of actions taken by the subscriber 12 and the TAC 10 when the subscriber desires to make an outbound call via the web or using a conventional telephone. When using the web to place a call, the subscriber may simply click a name on the computer screen 26 using a mouse." Wood '328 at 5:46-51. |
| | *See also* FIG. 6 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 28. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. | **Wood '328** discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SS7 signaling. |
| | *See* claim 26 & FIG. 6 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain |

16

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | this functionality. |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | **Wood '328** discloses the method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software.<br><br>*See* claim 26 & FIG. 6 above.<br><br>"The invention may also include ivr/vm/voverip."    Wood '328 at 4:59.<br><br>"FIG. 4 is a flowchart of actions that may be taken by the TAC 10 in response to the subscriber (or other service) controlling the TAC, using the web or other packet-based system, to change the subscriber's telephone provisioning or perform another function, such as make a VoiP call."    Wood '328 at 5:8-12. |

17

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | 

FIG. 4

To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | **Wood '328** discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling.

*See* claim 26 & FIG. 6 above. |

18

| U.S. Patent No. 7,822,188 | | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|---|
| | | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | | **Wood '328** discloses the method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network.<br><br>*See* claim 26 & FIG. 6 above.<br><br>"The invention may also include ivr/vm/voverip."    Wood '328 at 4:59.<br><br>"FIG. 4 is a flowchart of actions that may be taken by the TAC 10 in response to the subscriber (or other service) controlling the TAC, using the web or other packet-based system, to change the subscriber's telephone provisioning or perform   another function, such as make a VoiP call."    Wood '328 at 5:8-12. |

19

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | <br><br>FIG. 4 |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | **Wood '328** discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network.<br><br>*See claim 26 & FIG. 6 above.* |

20

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | **Wood '328** discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 26 & FIG. 6 above.<br><br>To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 34. The method as defined in claim 26, the method further comprising: | **Wood '328** discloses the method as defined in claim 26, the method further comprising.<br><br>*See* claim 26 above. |

21

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | **Wood '328** discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system.<br><br>*See, e.g.:*<br><br>"The [Tandem Access Controller] TAC 10 is connected to or inside the conventional PSTN tandem switch 16 such that calls may flow through the TAC 10 in the same manner as the existing PSTN tandem switch, except that additional 3rd-party features are applied to the call." Wood '328 at 3:66-4:3.<br><br>"The PSTN tandem switch 16 directs a first call (from the calling party 20 to the subscriber's phone 14 using the subscriber's public phone number) to the TAC 10 . . . Hence, the calling party essentially calls the TAC 10, using the subscriber's public phone number, and the TAC 10, after processing the call using the selected features, calls the subscriber, as appropriate, using the subscriber's private phone number and connects the two calls." Wood '328 at 4:11-25.<br><br>"Incoming call data is received by the TAC 10 from the tandem switch 16. The TAC 10 processor checks calling and called numbers, class of service, time of day, number lists, etc." Wood '328 at 5:27-30.<br><br>"The connection to the tandem switch 16 may be as simple as a telephone circuit, since the TAC 10 receives an incoming call from a |

22

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | caller and processes the call."  Wood '328 at 6:9-12. |
| | "A telephone system comprising: . . . a tandem access controller (TAC) . . . said TAC for receiving a first call by a calling party, entering a first telephone number, intended for said subscriber . . ."; Wood '328 at claim 1. |

23



U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328")

FIG. 5

24

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| reading at least one user specified rule from computer readable memory; | **Wood '328** discloses reading at least one user specified rule from computer readable memory. |
| | *See, e.g.:* |
| | "In one embodiment, the TAC 10 is a programmed processor. The TAC 10 may use any combination of hardware, firmware, or software and, in one embodiment, is a conventional computer programmed to carry out the functions described herein." Wood '328 at 3:60-65. |
| | "As a registered subscriber, . . . the user [can] make additions or changes to features such as speed calling, call forwarding, selection of such descriptors as time of day, busy status, callerID status, etc. A user-friendly web page leads the subscriber through the various procedures and available features. The selections made by the subscriber are translated into provisioning data and transmitted to the TAC 10. The TAC 10 in turn keeps track of incoming and outgoing calls based on this information. The subscriber can also program a set of the call control features via a telephone link in the event a data link connection is unavailable." Wood '328 at 4:61-5:7. |
| | "Examples of some of the actions taken by the TAC 10 are: . . . stor[ing] phone numbers downloaded from provisioning system . . . [and] stor[ing] lists of numbers in groups used for processing incoming calls." Wood '328 at 5:15-16, 5:19-20 & 5:23-25. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a | **Wood '328** discloses reading at least one user specified rule from computer |

25

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | readable memory.<br><br>*See, e.g.:*<br><br>"In one embodiment, the TAC 10 is a programmed processor. The TAC 10 may use any combination of hardware, firmware, or software and, in one embodiment, is a conventional computer programmed to carry out the functions described herein." Wood '328 at 3:60-65.<br><br>"When the subscriber 12 terminates (or answers) the second call, the TAC 10 terminates the first call and connects it to the second call, thereby connecting the calling party 20 to the subscriber 12." Wood '328 at 4:16-19.<br><br>"[T]he TAC 10, after processing the call using the selected features, calls the subscriber, as appropriate, using the subscriber's private phone number and connects the two calls." Wood '328 at 4:21-24.<br><br>"A telephone system comprising: . . . a tandem access controller (TAC), said TAC for receiving a first call by a calling party, entering a first telephone number, intended for said subscriber . . . said TAC for applying said features to said first call, placing a second call to said subscriber using a second telephone number different from said first telephone number, and completing a communications path between said calling party and said subscriber after said subscriber has answered said second call." Wood '328 at claim 1. |

26

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
| | *See also* FIG. 5 above. |
| 35. The method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. | **Wood '328** discloses the method as defined in claim 26, the method further comprising providing software used to penetrate a firewall. |
| | *See* claim 26 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | **Wood '328** discloses the method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. |
| | *See* claim 26 above. |
| | To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other |

27

| U.S. Patent No. 7,822,188 | U.S. Patent No. 6,574,328 ("Wood '328") |
|---|---|
|  | references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

28

Exhibit A-30

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Pat. No. 6,091,808 ("Wood '808")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Pat. No. 6,091,808 (Wood '808 et al.) invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Wood '808 was published in July 18, 2000, from an application with a priority date of at least October 17, 1996, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention.    Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| 1. A method of processing calls, the method comprising: | **Wood '808** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "Method of and Apparatus for Providing Telephone Call Control and Information".  Wood '808 at Title.<br>• "Telephone call management is provided via a computer network (web) facility which can be remotely accessed by subscribers using web browsers. The web facility includes an information database for storing personal telephone directories and call logs, and a telephone call control system coupled to a telephone switch via a switch-computer interface. Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database without requiring the subscribers' browsers to be active. Subscribers can make telephone calls and control telephone communications via the browsers and the web facility. Subscribers do not require any hardware or software in addition to a telephone and web browser."  Wood '808 at Abstract. |

2

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention):  |
| | • Fig. 2 (disclosing a block diagram schematically illustrating one form of a web facility of the arrangement of FIG. 1): |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | **Wood '808** discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber. |
| | *See, e.g.*: |
| | • "Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the |

3

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | database …"   Wood '808 at Abstract. |
| | • "a computer network facility including a web server for communications with web browsers of telephone subscribers, an *information database for storing telephone number information relating to the subscribers … wherein information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and is stored in the database for the respective subscribers*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by the respective subscribers to the information database via web browsers of the respective subscribers and the web server of the computer network facility."   Wood '808 at Claim 8. |
| | • "Preferably the step of remotely accessing the computer network facility comprises *providing telephone number information from the computer network facility* for remote display to a subscriber identified by the calling telephone number. The telephone number information can comprise a personal telephone directory of the subscriber, and logged information relating to telephone communications to and/or from the calling telephone number."   Wood '808 at 2:21-28. |
| | • "*information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and being stored in the database*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by subscribers to the information database via the server of the computer network facility."   Wood '808 at 2:47-56. |
| | • "For telephone calls incoming to the telephone 10 via the telephone |

4

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
|  | switch 16, the SCI 26 provides to the web facility 22 information messages containing for example the called and calling numbers, and the date and time of the call. This information is entered by the call APIs 44 into a call log for the respective subscriber in the database 42 via the functions 46 and 44." Wood '808 at 7:46-52. <br><br> Fig. 2 (disclosing a block diagram schematically illustrating one form of a web facility of the arrangement of FIG. 1): <br><br>  <br><br> "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on." Wood '808 at 5:54-58. <br><br> "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further |

5

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information." Wood '808 at 6:1-17. Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):  |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireless network, a wireless network, and/or an Internet network; | **Wood '808** discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireless network, a wireless network, and/or an Internet network. *See, e.g.:* |
| | • "Information on calls to and/or from telephone numbers of subscribers is |

6

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| • | communicated from the switch to the web facility to be stored in the database …"   Wood '808 at Abstract. |
|  | "a computer network facility including a web server for communications with web browsers of telephone subscribers, an *information database for storing telephone number information relating to the subscribers … wherein information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and is stored in the database for the respective subscribers*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by the respective subscribers to the information database via web browsers of the respective subscribers and the web server of the computer network facility."   Wood '808 at Claim 8. |
| • | "Preferably the step of remotely accessing the computer network facility comprises *providing telephone number information from the computer network facility* for remote display to a subscriber identified by the calling telephone number. The telephone number information can comprise a personal telephone directory of the subscriber, and logged information relating to telephone communications to and/or from the calling telephone number."   Wood '808 at 2:21-28. |
| • | "*information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and being stored in the database*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by subscribers to the information database via the server of the computer network facility." Wood '808 at 2:47-56. |

7

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • "For telephone calls incoming to the telephone 10 via the telephone switch 16, the SCI 26 provides to the web facility 22 information messages containing for example the called and calling numbers, and the date and time of the call. This information is entered by the call APIs 44 into a call log for the respective subscriber in the database 42 via the functions 46 and 44."  Wood '808 at 7:46-52. |
| | • Fig. 2 (disclosing a block diagram schematically illustrating one form of a web facility of the arrangement of FIG. 1): |
| |   Fig. 2 |
| | • "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on."  Wood '808 at 5:54-58. |
| | • "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the |

8

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information." Wood '808 at 6:1-17. Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):  |
| participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address; | **Wood '808** discloses participating at the call processing system in a first call with the subscriber, wherein the first call is associated with a second phone address. *See, e.g.:* • "Information on calls to and/or from telephone numbers of subscribers is |

9

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | communicated from the switch to the web facility to be stored in the database …"   Wood '808 at Abstract. |
| • | "a computer network facility including a web server for communications with web browsers of telephone subscribers, an *information database for storing telephone number information relating to the subscribers … wherein information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and is stored in the database for the respective subscribers*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by the respective subscribers to the information database via web browsers of the respective subscribers and the web server of the computer network facility."   Wood '808 at Claim 8. |
| • | "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on."   Wood '808 at 5:54-58. |
| • | "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 |

10

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information." Wood '808 at 6:1-17. Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):  Fig. 3 |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | Wood '808 discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address. *See, e.g.:* • "producing at the computer network facility using the web browser a |

11

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number." Wood '808 at Claim 1. |
| | • "A method as claimed in claim 12 wherein the information supplied from the telephone switch to the web facility identifies calling and called telephone numbers of the telephone subscribers." Wood '808 at Claim 13. |
| | • "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including *information identifying calling and called telephone numbers*; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at 2:6-16. |
| | • "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on." Wood '808 at 5:54-58. |
| | • "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further |

12

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information."  Wood '808 at 6:1-17. Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):  |
| bridging the first call and the first outcall; | **Wood '808** discloses bridging the first call and the first outcall. *See, e.g.:* • "establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message."  Wood '808 at Claim 1. |

13

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and *establishing a telephone connection between the calling and called telephone numbers from the switch* in response to the telephone connection message."    Wood '808 at 2:6-16. |
| | • "Thus the invention enables subscribers to control telephone connections, and obtain information from telephone directories and call logs, using a web browser without any need for extra hardware to couple the browser to the telephone. Call logs are maintained without requiring the browsers of the subscribers to be active. In addition, the web or computer network facility can be accessed by each subscriber from any location with web access facilities."    Wood '808 at 2:31-38. |
| | • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68."    Wood '808 at 6:46-50. |
| | • "On clicking the DIAL button 75, the web page manager 36 communicates a message, containing a dial request, a calling telephone number CN of the subscriber (as displayed in the frame 54), and a called telephone number DN from the windows 68, via the functions 38 and 44 to the call control interface 46, via which this message is forwarded via the path 44 and SC1 46 to the telephone switch 16. The switch 16 checks validity of the telephone numbers and that the subscriber's telephone 10 (calling telephone number CN) is on-hook, and provides a (possibly distinctive) ringing signal to the telephone 10. The subscriber, expecting this ring signal, takes his telephone 10 off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which |

14

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10. Error and/or status messages can be communicated from the telephone switch 16 via the SCI 46, path 44, and functions 46, 44, and 38 to the web page manager 36, and displayed on the web page, as desired and appropriate." Wood '808 at 6:56-7:9. Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention):  |
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | **Wood '808** discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address. *See, e.g.:* • In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the |

15

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone 10 (CN) to the called number (DN) and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly.    Wood '808 at 7:14-33. |
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | **Wood '808** discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address.

*See, e.g.:*

- "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number."    Wood '808 at Claim 1.

- "A method as claimed in claim 12 wherein the information supplied from the telephone switch to the web facility identifies calling and called telephone numbers of the telephone subscribers."    Wood '808 at Claim 13.

- "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a |

16

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | computer network facility to produce at the computer network facility a telephone connection message including *information identifying calling and called telephone numbers*; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message."   Wood '808 at 2:6-16. |
| • | "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on."   Wood '808 at 5:54-58. |
| • | "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information."   Wood '808 at 6:1-17. |
| • | Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2): |

17

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| |  Fig. 3 |
| bridging the second call and the second outcall. | **Wood '808** discloses bridging the second call and the second outcall.<br><br>*See, e.g.:*<br><br>• "establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at Claim 1.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a |

18

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | switch-computer interface; and *establishing a telephone connection between the calling and called telephone numbers from the switch* in response to the telephone connection message."   Wood '808 at 2:6-16. |
| • | "Thus the invention enables subscribers to control telephone connections, and obtain information from telephone directories and call logs, using a web browser without any need for extra hardware to couple the browser to the telephone. Call logs are maintained without requiring the browsers of the subscribers to be active. In addition, the web or computer network facility can be accessed by each subscriber from any location with web access facilities."   Wood '808 at 2:31-38. |
| • | "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68."   Wood '808 at 6:46-50. |
| • | "On clicking the DIAL button 75, the web page manager 36 communicates a message, containing a dial request, a calling telephone number CN of the subscriber (as displayed in the frame 54), and a called telephone number DN from the windows 68, via the functions 38 and 44 to the call control interface 46, via which this message is forwarded via the path 44 and SCI 46 to the telephone switch 16. The switch 16 checks validity of the telephone numbers and that the subscriber's telephone 10 (calling telephone number CN) is on-hook, and provides a (possibly distinctive) ringing signal to the telephone 10. The subscriber, expecting this ring signal, takes his telephone 10 off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10. Error and/or status messages can be communicated from the telephone switch 16 via the SCI 46, path 44, and functions 46, 44, and 38 to the web page manager 36, and displayed on the web page, as desired and appropriate."   Wood '808 at 6:56-7:9. |

19

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|---|
| | | •    Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention):  |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | | **Wood '808** discloses the method of claim 1, wherein the first call is initiated by the subscriber. *See* claim 1 above. •    "Telephone call management is provided via a computer network (web) facility which can be remotely accessed by subscribers using web browsers. The web facility includes an information database for storing personal telephone directories and call logs, and a telephone call control system coupled to a telephone switch via a switch-computer interface. Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the |

20

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | database without requiring the subscribers' browsers to be active. Subscribers can make telephone calls and control telephone communications via the browsers and the web facility. Subscribers do not require any hardware or software in addition to a telephone and web browser."   Wood '808 at Abstract.<br><br>• "Thus the invention enables subscribers to control telephone connections, and obtain information from telephone directories and call logs, using a web browser without any need for extra hardware to couple the browser to the telephone. Call logs are maintained without requiring the browsers of the subscribers to be active. In addition, the web or computer network facility can be accessed by each subscriber from any location with web access facilities."   Wood '808s at 2:31-38.<br><br>• "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68. This number can be entered and optionally edited by the subscriber by typing at the network browser 12, selected from the personal directory by clicking on a record in the window 80 as described above, or provided in another manner for example as described further below."   Wood '808s at 6:46-55. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | **Wood '808** discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition.<br><br>*See* claim 1 above.<br><br>• "It is well known to provide relatively sophisticated telephone call |

21

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | control and information features using a subscriber's telephone. Some examples of telephone call control features are dialling of stored numbers, redialling of previously dialled numbers, three-way calling, and call forwarding. Examples of telephone information features are calling number display, calling number logs, and call waiting messages. Numerous other examples of call control and information features exist." Wood '808 at 1:8-16. |
| | • "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or travelling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions."  Wood '808 at 9:46-64. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | **Wood '808** discloses the method of claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. |
| | • "It is well known to provide relatively sophisticated telephone call control and information features using a subscriber's telephone. Some |

22

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | examples of telephone call control features are dialling of stored numbers, redialling of previously dialled numbers, three-way calling, and call forwarding.    Examples of telephone information features are calling number display, calling number logs, and call waiting messages.  Numerous other examples of call control and information features exist." Wood '808 at 1:8-16.<br><br>• "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location.    This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or travelling using a mobile telephone and web browser.    A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office.    Conversely, on returning home he can again access the web facility 22 to remove the call forwarding.    The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions."    Wood '808 at 9:46-64. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | **Wood '808** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 1 above.<br><br>• "The telephone switch 16 can be a central office (C.O.) forming part of the public switched telephone network (PSTN), or a PBX or telephone key system which is coupled to the PSTN in a known manner."    Wood |

23

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|---|
| | | • '808 at 3:29-31. <br> • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68." Wood '808 at 6:48-50. <br> • "To this end, the web facility 22 also communicates call control signals and information relating to these telephone functions with the telephone switch 16 via the path 24 and the SCI 26." Wood '808 at 4:40-43. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | | **Wood '808** discloses the method of claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. <br><br> *See* claim 1 above. <br><br> • "Telephone call management is provided via a computer network (web) facility which can be remotely accessed by subscribers using web browsers." Wood '808 at Abstract. <br> • Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |

24

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | <br><br>• "Likewise, the form of the web browser 12 is entirely arbitrary. For example it may comprise a personal computer executing browser software in known manner, or a dedicated network browsing device, or a web browsing function integrated within another device such as a video game device or a television receiver or other communications device. Similarly, the functions of the web browser 12 and telephone 10 can be integrated into a single unit, with or without other functions, in any desired manner."   Wood '808 at 3:49-57.<br><br>• "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN."   Wood '808 at 3:58-67. |

25

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | **Wood '808** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SIP signaling.<br><br>*See* claim 1 above.<br><br>• "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the Windows 68."  Wood '808 at 6: 46-50. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | **Wood '808** discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network.<br><br>*See* claim 1 above.<br><br>• "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path."  Wood '808 at 3:41-44.<br><br>• "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN."  Wood '808 at 3:58-67. |

26

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the Windows 68."  Wood '808 at 6: 46-50. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | **Wood '808** discloses the method of claim 1, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 1 above.<br><br>• "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone.:  Wood '808 at 3:41-45.<br>• "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN."  Wood '808 at 3:58-67. |

27

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | **Wood '808** discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 1 above.<br><br><ul><li>"Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path." Wood '808 at 3:41-44.</li><li>"Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g, infra-red or radio) communication paths to the web and the PSTN." Wood '808 at 3:58-67.</li><li>"For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the Windows 68." Wood '808 at 6: 46-50.</li></ul> |
| 11. The method as defined in claim 1, the method further comprising: | *See* claim 1 above. |
| receiving at the call processing system a third call | **Wood '808** discloses receiving at the call processing system a third call from a |

28

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| from a calling party directed to the first phone address; | calling party directed to the first phone address.<br><br>• "For telephone calls incoming to the telephone 10 via the telephone switch 16, the SCI 26 provides to the web facility 22 information messages containing for example the called and calling numbers, and the date and time of the call."  Wood '808 at 7:46-49.<br>• "For alerting the subscriber to an incoming telephone call, a ringing signal is supplied to the telephone 10 in conventional manner. In addition, if the subscriber's web browser (or a sub-set of this such as a Java applet) is active, then the web page manager 36 is supplied with information about the call (e.g. calling number, name, etc. as provided for the call log as described above) via the functions 44 and 38 and provides an informative alert to the subscriber's web page (or applet window). This obviates the need for processing and display facilities in the telephone 10 to provide call information."  Wood '808 at 8:14-24. |
| reading at least one subscriber specified rule from computer readable memory; and | **Wood '808** discloses reading at least one subscriber specified rule from computer readable memory.<br><br>• "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or travelling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect |

29

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions.'"    Wood '808 at 9:46-64. |
| based at least in part on at least one subscriber specified rule, transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address. | **Wood '808** discloses transferring the third call to a destination associated with the subscriber, wherein the destination is assigned a phone address different than the first phone address, based at least in part on at least one subscriber specified rule.<br><br>• "It is well known to provide relatively sophisticated telephone call control and information features using a subscriber's telephone. Some examples of telephone call control features are dialling of stored numbers, redialling of previously dialled numbers, three-way calling, and call forwarding. Examples of telephone information features are calling number display, calling number logs, and call waiting messages. Numerous other examples of call control and information features exist." Wood '808 at 1:8-16.<br><br>• "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or travelling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related |

30

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|---|
| | | procedures to perform these functions."    Wood '808 at 9:46-64. |
| 12. The method as defined in claim 1, the method further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication. | | **Wood '808** discloses the method of claim 1, further comprising providing the subscriber with software used to enable a firewall to be penetrated by a call-related communication.

*See* claim 1 above.

• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 13. The method as defined in claim 1, the method further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall. | | **Wood '808** discloses the method of claim 1, further comprising providing software that adaptively penetrates a firewall so that a call-related communication is not stopped by the firewall.

*See* claim 1 above.

• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |

31

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") | |
|---|---|---|
| 14. The method as defined in claim 1, the method further comprising; | **Wood '808** discloses method as defined in claim 1.  *See* claim 1 above. | |
| while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination; | **Wood '808** discloses while the first outcall is in process, receiving at the call processing system a call transfer request from the subscriber, wherein the call transfer request is associated with a transfer destination.  *See* claim 1 above.  • In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. *The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN)* and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status | |

32

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | messages to the web page manager 36 accordingly.    Wood '808 at 7:14-33. |
| placing a third outcall to the transfer destination; and | **Wood '808** discloses placing a third outcall to the transfer destination.<br><br>*See* claim 1 above.<br><br>• In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. *The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN)* and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly.    Wood '808 at 7:14-33. |

33

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| connecting the first outcall with the third outcall. | **Wood '808** discloses connecting the first outcall with the third outcall. |
| | *See* claim 1 above. |
| | • "In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN) and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. *The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly.*" Wood '808 at 7:14-33. |
| 15. The method as defined in claim 1, wherein the plurality of phone addresses includes a work phone address, a home phone address, and a | **Wood '808** discloses the method of claim 1, wherein the plurality of phone addresses includes a work phone address, and a mobile |

34

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| mobile phone address. | phone address.<br><br>*See* claim 1 above.<br><br>• "For example, the telephone 10 can be a conventional telephone with pulse or DTMF (dual-tone multi-frequency) dialling, with or without any additional functions for control or information display, coupled to the telephone switch 16 via a twisted wire pair constituting the path 14. For the purposes of this invention, it is observed that even the dialling function of the telephone 10 is not essential and can be dispensed with (although it would of course be required for conventional use of the telephone 10). Alternatively, the path 14 could be provided *via* an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone."  Wood '808 at 3:33-45.<br><br>• "The subscriber is able to access his telephone Web page on the Web facility 22 from any Web broWser at any location. This enables all of his call management functions to be available to him regardless of Where he may be, for example at home, in an office, or travelling using a mobile telephone and Web browser." Wood '808 at 9:46-51. |
| | |
| 16. The method as defined in claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. | **Wood '808** discloses the method of claim 1, wherein the first phone address is a virtual telephone address that is not assigned by a carrier to the subscriber. |

35

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | *See* claim 1 above. |
| | • To the extent that Plaintiff contends this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 17. A method of processing calls, the method comprising: | *See* claim 1 above. |
| receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called; | **Wood '808** discloses receiving at a call processing system a first call request from a client telecommunications application hosted on a user computer, wherein the first call request identifies a first party to be called.<br><br>• "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number." Wood '808 at Claim 1.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at 2:6-16.<br><br>• "Referring to FIG. 1, in an arrangement in accordance with an embodiment of the invention a telephone subscriber has at least one |

36

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone 10 and a web browser 12. The telephone is coupled via a path 14 to a telephone switch 16, and the web browser is coupled via a path 18 to a network 20 constituting the web (Internet or World Wide Web)." Wood '808 at 3:21-32. |
| | Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |
| • |  |
| • | "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68." Wood '808 at 6:46-50. |
| • | "The subscriber, expecting this ring signal, takes his telephone 10 off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10." Wood '808 at 6:66-7:5. |
| • | "Referring to FIG. 3, one possible appearance of a call management web page provided by the web facility 22 is illustrated. It is emphasized that this, and the following description of call management functions which can be provided, are given purely by way of example and explanation, and the invention is not in any way limited to these examples or the |

37

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | manner in which they are provided." Wood '808 at 5:37-42.<br><br>• Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):<br><br>Fig. 3 |
| at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user; | **Wood '808** discloses at least partly in response to the first call request, placing a first outcall from the call processing system to a telephone associated with the user.<br><br>• "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number." Wood '808 at Claim 1.<br><br>• "According to one aspect, this invention provides a method of making a |

38

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message."   Wood '808 at 2:6-16. |
| | • "Referring to FIG. 1, in an arrangement in accordance with an embodiment of the invention a telephone subscriber has at least one telephone 10 and a web browser 12. The telephone is coupled via a path 14 to a telephone switch 16, and the web browser is coupled via a path 18 to a network 20 constituting the web (Internet or World Wide Web)." Wood '808 at 3:21-32. |
| | • Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |
| |  |
| | • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68." Wood '808 at 6:46-50. |
| | • "The subscriber, expecting this ring signal, takes his telephone 10 |

39

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10." Wood '808 at 6:66-7:5. |
| placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user; and | **Wood '808** discloses placing a second outcall from the call processing system to a telephone associated with the first party, wherein the second outcall is associated with signaling information, the signaling information including a user phone address associated with the user, wherein the user phone address is not the phone address of the call processing system, but is a phone address assigned to or specified by the user.<br><br>• "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number." Wood '808 at Claim 1.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at 2:6-16.<br><br>• "Referring to FIG. 1, in an arrangement in accordance with an embodiment of the invention a telephone subscriber has at least one telephone 10 and a web browser 12. The telephone is coupled via a path 14 to a telephone switch 16, and the web browser is coupled via a path 18 to a network 20 constituting the web (Internet or World Wide Web)." Wood '808 at 3:21-32. |

40

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
|  | Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention):  • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68."   Wood '808 at 6:46-50. • "The subscriber, expecting this ring signal, takes his telephone 10 off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10."   Wood '808 at 6:66-7:5. • "Preferably the step of remotely accessing the computer network facility comprises *providing telephone number information from the computer network facility* for remote display to a subscriber identified by the calling telephone number. The telephone number information can comprise a personal telephone directory of the subscriber, and logged information relating to telephone communications to and/or from the calling telephone number."   Wood '808 at 2:21-28. • "information relating to telephone communications to and/or from the telephone numbers of subscribers is communicated via the |

41

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | communications path from the telephone switch to the computer network facility and being stored in the database, and *information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by subscribers to the information database via the server of the computer network facility*." Wood '808 at 2:47-56. |
| causing the first outcall and the second outcall to be connected. | **Wood '808** discloses causing the first outcall and the second outcall to be connected.<br><br>• "establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at Claim 1.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and *establishing a telephone connection between the calling and called telephone numbers from the switch in* response to the telephone connection message." Wood '808 at 2:6-16.<br><br>• "Thus the invention enables subscribers to control telephone connections, and obtain information from telephone directories and call logs, using a web browser without any need for extra hardware to couple the browser to the telephone. Call logs are maintained without requiring the browsers of the subscribers to be active. In addition, the web or computer network facility can be accessed by each subscriber from any location with web access facilities." Wood '808 at 2:31-38. |

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68." Wood '808 at 6:46-50. |
| | • "On clicking the DIAL button 75, the web page manager 36 communicates a message, containing a dial request, a calling telephone number CN of the subscriber (as displayed in the frame 54), and a called telephone number DN from the windows 68, via the functions 38 and 44 to the call control interface 46, via which this message is forwarded via the path 44 and SCI 46 to the telephone switch 16. The switch 16 checks validity of the telephone numbers and that the subscriber's telephone 10 (calling telephone number CN) is on-hook, and provides a (possibly distinctive) ringing signal to the telephone 10. The subscriber, expecting this ring signal, takes his telephone 10 off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10. Error and/or status messages can be communicated from the telephone switch 16 via the SCI 46, path 44, and functions 46, 44, and 38 to the web page manager 36, and displayed on the web page, as desired and appropriate." Wood '808 at 6:56-7:9. |
| | • Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |

43

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| |  |
| 18. The method as defined in claim 17, wherein the user telephone is a landline phone. | **Wood '808** discloses the method of claim 17, wherein the user telephone is a landline phone. |
| | *See* claim 17 above. |
| | *See* claim 10 above. |
| | • "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone."   Wood '808 at 3:41-45. |
| | • "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining |

44

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|---|
| | | voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN." Wood '808 at 3:58-67. Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention):  |
| 19. The method as defined in claim 17, wherein the user telephone is a mobile phone. | | **Wood '808** discloses the method of claim 17, wherein the user telephone is a mobile phone.<br><br>*See* claim 17 above.<br><br>• "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone." Wood '808 at 3:41-45.<br>• "Thus there are numerous ways in which the telephone 10 and web |

45

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|---|
| | | browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN."    Wood '808 at 3:58-67. |
| 20. The method as defined in claim 17, wherein the user telephone is an Internet protocol phone. | | **Wood '808** discloses the method of claim 17, wherein the user telephone is an Internet protocol phone. |
| | | *See* claim 17 above. |
| | | • "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone."    Wood '808 at 3:41-45. |
| | | • "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the |

46

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | PSTN." Wood '808 at 3:58-67. |
| 21. The method as defined in claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. | **Wood '808** discloses the method of claim 17, wherein the first call request is received by the call processing system after the first call request traverses a firewall. |
| | *See* claim 17 above. |
| | • To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 24. The method as defined in claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. | **Wood '808** discloses the method of claim 17, wherein the first call request is provided via the user selecting a contact database entry or a call log entry. |
| | *See* claim 17 above. |
| | • "For telephone calls incoming to the telephone 10 via the telephone switch 16, the SCI 26 provides to the web facility 22 information messages containing for example the called and calling numbers, and the date and time of the call. This information is entered by the call APIs 44 into a call log for the respective subscriber in the database 42 via the functions 46 and 44. This takes place whether or not the subscriber's web |

47

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | browser 12 is active, so that the call log is not dependent on any activity of the subscriber. On log-in to the web page, the call log is supplied to the cache 40 as described above and is available to the subscriber. The subscriber can click the button 61 labelled CALL LOG, in response to which the web page manager 36 displays the call log in a scrolling window in the frame 57 in place of the personal directory. Each record in the call log can for example include a field containing the calling telephone number (e.g. as in the personal directory described above) supplied from the telephone switch 16 via the SCI 26, a field for a name which can be optionally provided either similarly by the telephone switch 16 by look-up from the calling telephone number, using the subscriber's (i.e. the called number's) personal directory via the database 42 or using other directory facilities such as a corporate directory as discussed below, and a field for the date and time of the call. Other fields, for example for the duration and status (e.g. answered or not) of the call provided by the SCI 26, and an associated e-mail address as described above and also provided by the database or directory lookup, can also be provided in the call log as desired."   Wood '808 at 7:46-8:7. |
| 25. The method as defined in claim 17, the method further comprising receiving an indication from the user as to which communication device the first outcall is to be placed. | **Wood '808** discloses the method of claim 17, further comprising receiving an indication from the user as to which communication device the first outcall is to be placed.<br><br>*See* claim 17 above.<br><br>• "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his |

48

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
|  | call management functions to be available to him regardless of where he may be, for example at home, in an office, or travelling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions."  Wood '808 at 9:46-64. |
| 26. A method of processing calls, the method comprising: | **Wood '808** discloses a method of processing calls, the method comprising. *See, e.g.:*  <br>• "Method of and Apparatus for Providing Telephone Call Control and Information".  Wood '808 at Title.  <br>• "Telephone call management is provided via a computer network (web) facility which can be remotely accessed by subscribers using web browsers. The web facility includes an information database for storing personal telephone directories and call logs, and a telephone call control system coupled to a telephone switch via a switch-computer interface. Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database without requiring the subscribers' browsers to be active. Subscribers can make telephone calls and control telephone communications via the browsers and the web facility. Subscribers do |

49

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | not require any hardware or software in addition to a telephone and web browser." Wood '808 at Abstract. |
| | Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |
| |  |
| | Fig. 2 (disclosing a block diagram schematically illustrating one form of a web facility of the arrangement of FIG. 1): |
| storing in computer readable memory an association between a user and a first phone address associated with a call processing system; | **Wood '808** discloses storing in computer readable memory an association between a user and a first phone address associated with a call processing system. |

50

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | *See, e.g.*:<br><br>• "Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database …" Wood '808 at Abstract.<br><br>• "a computer network facility including a web server for communications with web browsers of telephone subscribers, an *information database for storing telephone number information relating to the subscribers … wherein information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and is stored in the database for the respective subscribers*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by the respective subscribers to the information database via web browsers of the respective subscribers and the web server of the computer network facility." Wood '808 at Claim 8.<br><br>• "Preferably the step of remotely accessing the computer network facility comprises *providing telephone number information from the computer network facility* for remote display to a subscriber identified by the calling telephone number. The telephone number information can comprise a personal telephone directory of the subscriber, and logged information relating to telephone communications to and/or from the calling telephone number." Wood '808 at 2:21-28.<br><br>• "*information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and being stored in the database*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by subscribers to the |

51

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • information database via the server of the computer network facility." Wood '808 at 2:47-56. |
| | "For telephone calls incoming to the telephone 10 via the telephone switch 16, the SCI 26 provides to the web facility 22 information messages containing for example the called and calling numbers, and the date and time of the call. This information is entered by the call APIs 44 into a call log for the respective subscriber in the database 42 via the functions 46 and 44." Wood '808 at 7:46-52. |
| | • Fig. 2 (disclosing a block diagram schematically illustrating one form of a web facility of the arrangement of FIG. 1): |
| |  |
| | • "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on." Wood '808 at 5:54-58. |
| | • "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can |

52

| U.S. Pat. No. 6,091,808 ("Wood '808") | U.S. Patent No. 7,822,188 |
|---|---|
| • include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information."    Wood '808 at 6:1-17.<br><br>Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):<br><br><br><br>Fig. 3 | |
| **Wood '808** discloses receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline network, wireless network, and Internet network. | receiving from the user a plurality of user phone addresses associated with at least one network selected from the group including wireline |

53

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| network, wireless network, and Internet network; | *See, e.g.:* <br><br> • "information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and being stored in the database, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by subscribers to the information database via the server of the computer network facility."  Wood '808 at 2:47-56. <br><br> • "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone."  Wood '808 at 3:41-45. <br><br> • "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN."  Wood '808 at 3:58-67. <br><br> • "For telephone calls incoming to the telephone 10 via the telephone switch 16, the SCI 26 provides to the web facility 22 information messages containing for example the called and calling numbers, and the date and time of the call. This information is entered by the call APIs 44 into a call log for the respective subscriber in the database 42 via the functions 46 and 44."  Wood '808 at 7:46-52. <br><br> • "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he |

54

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | may be, for example at home, in an office, or travelling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions."   Wood '808 at 9:46-64. |
| storing the plurality of user phone addresses in computer readable memory; | **Wood '808** discloses storing the plurality of user phone addresses in computer readable memory.<br><br>*See, e.g.:*<br><br>• "Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database ..."   Wood '808 at Abstract.<br><br>• "a computer network facility including a web server for communications with web browsers of telephone subscribers, an *information database for storing telephone number information relating to the subscribers ... wherein information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and is stored in the database for the respective subscribers,* and information for controlling telephone communications is communicated via the communications path from the |

55

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | computer network facility to the telephone switch in response to remote access by the respective subscribers to the information database via web browsers of the respective subscribers and the web server of the computer network facility."   Wood '808 at Claim 8. |
| | • "Preferably the step of remotely accessing the computer network facility comprises *providing telephone number information from the computer network facility* for remote display to a subscriber identified by the calling telephone number. The telephone number information can comprise a personal telephone directory of the subscriber, and logged information relating to telephone communications to and/or from the calling telephone number."   Wood '808 at 2:21-28. |
| | • "*information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and being stored in the database*, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by subscribers to the information database via the server of the computer network facility." Wood '808 at 2:47-56. |
| | • "For telephone calls incoming to the telephone 10 via the telephone switch 16, the SCI 26 provides to the web facility 22 information messages containing for example the called and calling numbers, and the date and time of the call. This information is entered by the call APIs 44 into a call log for the respective subscriber in the database 42 via the functions 46 and 44."   Wood '808 at 7:46-52. |
| | • Fig. 2 (disclosing a block diagram schematically illustrating one form of a web facility of the arrangement of FIG. 1): |

56

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| |  Fig. 2 |
| | • "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on."    Wood '808 at 5:54-58. |
| | • "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information."    Wood '808 at 6:1-17. |
| | • Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.): |

57

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses; and | 

Fig. 3

**Wood '808** discloses receiving at the call processing system an indication from the user that the user wants to establish a call with a first party using a first of the plurality of phone addresses.

*See, e.g.:*

- "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68. This number can be entered and optionally edited by the subscriber by typing at the network browser 12, selected from the personal directory by clicking on a record in the window 80 as described above, or provided in another manner for example as described further |

58

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall, | below."   Wood '808 at 6:46-50.<br><br>**Wood '808** discloses placing a first outcall from the call processing system to the first party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the first outcall.<br><br>*See, e.g.:*<br><br>• "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number."   Wood '808 at Claim 1.<br><br>• "A method as claimed in claim 12 wherein the information supplied from the telephone switch to the web facility identifies calling and called telephone numbers of the telephone subscribers."   Wood '808 at Claim 13.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including ***information identifying calling and called telephone numbers***; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message."   Wood '808 at 2:6-16.<br><br>• "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on."   Wood '808 at 5:54-58.<br><br>• "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, |

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| • | an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information." Wood '808 at 6:1-17. Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.): |

60

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| |  |
| wherein a user communication device to be connected to the first outcall at least partly in response to a user action. | **Wood '808** discloses wherein a user communication device to be connected to the first outcall at least partly in response to a user action.<br><br>*See, e.g.*:<br><br>• "Telephone call management is provided via a computer network (web) facility which can be remotely accessed by subscribers using web browsers. The web facility includes an information database for storing personal telephone directories and call logs, and a telephone call control system coupled to a telephone switch via a switch-computer interface. Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database without requiring the subscribers' browsers to be active. |

61

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • Subscribers can make telephone calls and control telephone communications *via* the browsers and the web facility. Subscribers do not require any hardware or software in addition to a telephone and web browser." Wood '808 at Abstract.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection" Wood '808 at 2:6-7.<br><br>• "The web facility 22 provides an interface to the subscriber, via the web 20, path 18, and browser 12, in the form of one or more web pages that enable the subscriber to manage at least some and preferably all telephone functions for the telephone 10." Wood '808 at 4:32-36.<br><br>• Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention):<br><br> |
| 27. The method as defined in claim 26, the method further comprising: | **Wood '808** discloses the method as defined in claim 26.<br><br>*See* claim 26 above. |

62

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses; | **Wood '808** discloses receiving at the call processing system an indication from the user that the user want to establish a call with a second party via a second of the user phone addresses.<br><br>*See* claim 26 above.<br><br>• "In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN) and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly." Wood '808 at 7:14-33. |
| placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a | **Wood '808** discloses placing a second outcall from the call processing system to the second party, wherein the call processing system inserts the first phone address associated with the call processing system in a callerID field associated with signaling information corresponding to the second outcall, wherein the first |

63

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| callerID field associated with signaling information corresponding to the second outcall, wherein the first phone address associated with the call processing system is different than the second user phone address; and | phone address associated with the call processing system is different than the second user phone address. *See* claim 26 above. |
| | • "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number." Wood '808 at Claim 1. |
| | • "A method as claimed in claim 12 wherein the information supplied from the telephone switch to the web facility identifies calling and called telephone numbers of the telephone subscribers." Wood '808 at Claim 13. |
| | • "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including *information identifying calling and called telephone numbers*; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at 2:6-16. |
| | • "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on." Wood '808 at 5:54-58. |
| | • "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertisement banner obtained from the advertisement server in the |

64

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| • | frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information."    Wood '808 at 6:1-17. Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):  Fig. 3 |

65

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| causing, at least in part, a user communication device associate with the second user phone address to be connected to the second outcall. | **Wood '808** discloses causing, at least in part, a user communication device associated with the second user phone address to be connected to the second outcall.<br><br>*See* claim 26 above.<br><br>• "In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN) and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly."  Wood '808 at 7:14-33. |
| 28. The method as defined in claim 26, wherein | **Wood '808** discloses the method as defined in claim 26, wherein the signaling |

66

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| the signaling information associated with the first outcall is SS7 signaling. | information associated with the first outcall is SS7 signaling.<br><br>*See* claim 26 above.<br><br>● To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 29. The method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software. | **Wood '808** discloses the method as defined in claim 26, wherein the first communication device is a computer hosting Voice over IP software.<br><br>*See* claim 26 above.<br><br>● To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 30. The method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling. | **Wood '808** discloses the method as defined in claim 26, wherein the signaling information associated with the first outcall is SIP signaling.<br><br>*See* claim 26 above. |

67

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|---|
| | | • To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 31. The method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. | | **Wood '808** discloses the method as defined in claim 26, wherein the first outcall is placed using an Internet Protocol network. |
| | | *See* claim 26 above. |
| | | • "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path."   Wood '808 at 3:41-44. |
| | | • "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN."   Wood '808 at 3:58-67. |
| | | • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the Windows 68."   Wood '808 at 6: 46-50. |

68

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| 32. The method as defined in claim 26, wherein the first outcall is placed over a wireless network. | **Wood '808** discloses the method as defined in claim 26, wherein the first outcall is placed over a wireless network. *See* claim 26 above. <br><br> • "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone.: Wood '808 at 3:41-45. <br><br> • "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN." Wood '808 at 3:58-67. |
| 33. The method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. | **Wood '808** discloses the method as defined in claim 26, wherein the first outcall is placed over a switched circuit telephone network. |

69

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | *See* claim 26 above. |
| | • "The telephone switch 16 can be a central office (C.O.) forming part of the public switched telephone network (PSTN), or a PBX or telephone key system which is coupled to the PSTN in a known manner."  Wood '808 at 3:28-32. |
| | • "Alternatively, the path 14 could be provided via an ISDN (integrated services digital network) line or any other telephone communications path. With wireless communications, the telephone 10 can be a fixed or mobile telephone.:  Wood '808 at 3:41-45. |
| | • "Thus there are numerous ways in which the telephone 10 and web browser 12, and their paths 14 and 18, can be implemented, for example including a conventional telephone and personal computer executing browsing software coupled via separate twisted wire pair telephone lines (or via a single telephone line using multiplexed communications) to the telephone switch 16 and web 20, or an integrated mobile unit combining voice communication and network browsing functions coupled via wireless (e.g. infra-red or radio) communication paths to the web and the PSTN."  Wood '808 at 3:58-67. |
| 34. The method as defined in claim 26, the method further comprising: | **Wood '808** discloses the method as defined in claim 26, the method further comprising. |
| | *See* claim 26 above. |

70

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system; | **Wood '808** discloses receiving at the call processing system a call from a calling party directed to the first phone address associated with the call processing system. |
| | • "It is well known to provide relatively sophisticated telephone call control and information features using a subscriber's telephone. Some examples of telephone call control features are dialling of stored numbers, redialling of previously dialled numbers, three-way calling, and call forwarding. Examples of telephone information features are calling number display, calling number logs, and call waiting messages. Numerous other examples of call control and information features exist." Wood '808 at 1:8-16. |
| | • "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or travelling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions." Wood '808 at 9:46-64. |

71

| U.S. Pat. No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| reading at least one user specified rule from computer readable memory; | **Wood '808** discloses reading at least one user specified rule from computer readable memory.<br><br>*See* claim 26 above.<br><br>• "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or traveling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions."    Wood '808 at 9:46-64. |
| based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. | **Wood '808** discloses based at least in part on the at least one user specified rule, connecting the calling party call to a destination associated with the user, wherein the destination is assigned a phone address different than the first phone address. |

72

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | *See claim 26 above.* |
| | • "It is well known to provide relatively sophisticated telephone call control and information features using a subscriber's telephone. Some examples of telephone call control features are dialling of stored numbers, redialling of previously dialled numbers, three-way calling, and call forwarding. Examples of telephone information features are calling number display, calling number logs, and call waiting messages. Numerous other examples of call control and information features exist." Wood '808 at 1:8-16. |
| | • "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or traveling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions." Wood '808 at 9:46-64. |
| 35. The method as defined in claim 26, the method further comprising providing software used to | **Wood '808** discloses the method as defined in claim 26, the method further |

73

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| penetrate a firewall. | comprising providing software used to penetrate a firewall.

*See* claim 26 above.

• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 36. The method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall. | **Wood '808** discloses the method as defined in claim 26, the method further comprising providing software that adaptively penetrates a firewall.

*See* claim 26 above.

• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 37. The method as defined in claim 26, the method further comprising: | **Wood '808** discloses the method as defined in claim 26, the method further comprising.

*See* claim 26 above. |

74

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination; | **Wood '808** discloses while the first outcall is in process, receiving at the call processing system a call connect request from the user, wherein the call connect request is associated with a connect destination.<br><br>*See* claim 26 above.<br><br>• In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN) and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly.  Wood '808 at 7:14-33. |
| placing an outcall to the connect destination; and | **Wood '808** discloses placing an outcall to the connect destination. |

75

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | *See* claim 26 above. |
| | • In a corresponding manner, the subscriber can transfer an existing telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN) and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly.    Wood '808 at 7:14-33. |
| connecting the first outcall with the outcall to the connect destination. | **Wood '808** discloses connecting the first outcall with the outcall to the connect destination. |
| | *See* claim 26 above. |
| | • In a corresponding manner, the subscriber can transfer an existing |

76

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone call at his telephone 10 to another called number DN in the windows 68 by clicking the button 76 labelled TRANS. The web page manager again communicates the numbers CN and DN, with a call transfer request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 transfers the call from the telephone 10 (CN) to the called number (DN) and provides error and/or status messages to the web page manager 36 accordingly. Likewise, the subscriber can establish a conference connection to add another called number DN from the windows 68 to an existing telephone call at his telephone 10 by clicking the button 77 labelled CONF. The web page manager again communicates the numbers CN and DN, with a conference request, to the telephone switch 16 via the functions 38, 44, 46, and 26, in response to which the switch 16 establishes a conference connection of the call involving the telephone 10 (CN) with the additional called number (DN, again providing en-or and/or status messages to the web page manager 36 accordingly.   Wood '808 at 7:14-33. |
| 40. A method of processing calls, comprising: | **Wood '808** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "Method of and Apparatus for Providing Telephone Call Control and Information".   Wood '808 at Title.<br>• "Telephone call management is provided via a computer network (web) facility which can be remotely accessed by subscribers using web browsers. The web facility includes an information database for storing personal telephone directories and call logs, and a telephone call control |

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | system coupled to a telephone switch via a switch-computer interface. Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database without requiring the subscribers' browsers to be active. Subscribers can make telephone calls and control telephone communications via the browsers and the web facility. Subscribers do not require any hardware or software in addition to a telephone and web browser." Wood '808 at Abstract. |
| • | Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |
| • |  Fig. 2 (disclosing a block diagram schematically illustrating one form of a web facility of the arrangement of FIG. 1): |

78

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller; | **Wood '808** discloses receiving at a call processing system a message from an Internet protocol proxy regarding a first call from a caller.<br><br>*See, e.g.:*<br><br>• "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number." Wood '808 at Claim 1.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at 2:6-16. |



Fig. 2

79

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • "Referring to FIG. 1, in an arrangement in accordance with an embodiment of the invention a telephone subscriber has at least one telephone 10 and a web browser 12. The telephone is coupled via a path 14 to a telephone switch 16, and the web browser is coupled via a path 18 to a network 20 constituting the web (Internet or World Wide Web)." Wood '808 at 3:21-32. |
| | • Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention):  |
| | • "For example, clicking on the button 75 labelled DIAL triggers the telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68." Wood '808 at 6:46-50. |
| | • "The subscriber, expecting this ring signal, takes his telephone 10 off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10." Wood '808 at 6:66-7:5. |
| | • "Referring to FIG. 3, one possible appearance of a call management web page provided by the web facility 22 is illustrated. It is emphasized that this, and the following description of call management functions which |

80

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | can be provided, are given purely by way of example and explanation, and the invention is not in any way limited to these examples or the manner in which they are provided."    Wood '808 at 5:37-42.<br><br>Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):<br><br><br><br>Fig. 3 |
| determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber: | **Wood '808** discloses determining if the first call is directed to a telephone address of a subscriber of services offered by the call processing system, wherein at least partly in response to determining that the telephone address is that of a subscriber. |

81

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | *See, e.g.:* |
| | • "Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database ..."  Wood '808 at Abstract. |
| | • "a computer network facility including a web server for communications with web browsers of telephone subscribers, an *information* database for storing telephone number information relating to the subscribers ... wherein information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and is stored in the database for the respective subscribers, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by the respective subscribers to the information database via web browsers of the respective subscribers and the web server of the computer network facility."  Wood '808 at Claim 8. |
| | • "information relating to telephone communications to and/or from telephone numbers of subscribers is communicated via the communications path from the telephone switch to the computer network facility and being stored in the database, and information for controlling telephone communications is communicated via the communications path from the computer network facility to the telephone switch in response to remote access by subscribers to the information database via the server of the computer network facility."  Wood '808 at 2:47-56. |
| accessing an account record associated with the subscriber, the account record including at least | **Wood '808** discloses accessing an account record associated with the subscriber, the account record including at least one subscriber instruction. |

82

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| one subscriber instruction; | *See, e.g.:* |
| | • "It is well known to provide relatively sophisticated telephone call control and information features using a subscriber's telephone. Some examples of telephone call control features are dialling of stored numbers, redialling of previously dialled numbers, three-way calling, and call forwarding. Examples of telephone information features are calling number display, calling number logs, and call waiting messages. Numerous other examples of call control and information features exist." Wood '808 at 1:8-16. |
| | • "The subscriber is able to access his telephone web page on the web facility 22 from any web browser at any location. This enables all of his call management functions to be available to him regardless of where he may be, for example at home, in an office, or travelling using a mobile telephone and web browser. A particular advantage of this is provided if one of the telephone functions available to the subscriber is call forwarding. In this case for example the subscriber can access the web facility 22 from his office, activate via the web facility 22 a call forwarding function which causes the telephone switch 16 to redirect to his office telephone number calls that are directed to his home telephone number, and receive such calls at his office. Conversely, on returning home he can again access the web facility 22 to remove the call forwarding. The web facility 22 controls the telephone switch to effect and remove the call forwarding function in a similar manner to that described above for call transfer, using another button and related procedures to perform these functions." Wood '808 at 9:46-64. |
| | • "The web facility 22 provides an interface to the subscriber, via the web 20, path 18, and browser 12, in the form of one or more web pages that enable the subscriber to manage at least some and preferably all |

83

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone functions for the telephone 10. These functions for example can include all of the functions referred to in the introduction, some of which are further discussed below, as well as other functions which may be desired. To this end, the web facility 22 also communicates call control signals and information relating to these telephone functions with the telephone switch 16 via the path 24 and the SCI 26."   Wood '808 at 4:33-43. |
| based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber; | **Wood '808** discloses based at least in part on the subscriber instruction, placing a first outcall to a first communication device associated with the subscriber. |
| | *See, e.g.*: |
| | • "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number."   Wood '808 at Claim 1. |
| | • "A method as claimed in claim 12 wherein the information supplied from the telephone switch to the web facility identifies calling and called telephone numbers of the telephone subscribers."   Wood '808 at Claim 13. |
| | • "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message."   Wood '808 at 2:6-16. |

84

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on."   Wood '808 at 5:54-58. |
| | • "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information."   Wood '808 at 6:1-17. |
| | • Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.): |

85

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber; and |  Wood '808 discloses if the first outcall is not answered within a first number of rings or period of time, placing a second outcall to a second communication device associated with the subscriber. See, e.g.: • "producing at the computer network facility using the web browser a telephone connection message including information identifying a calling telephone number of the subscriber and a called telephone number." Wood '808 at Claim 1. |

86

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | • "A method as claimed in claim 12 wherein the information supplied from the telephone switch to the web facility identifies calling and called telephone numbers of the telephone subscribers."   Wood '808 at Claim 13. |
| | • "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including *information identifying calling and called telephone numbers*; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message."   Wood '808 at 2:6-16. |
| | • "The frame 54 can be used to display data relating to the subscriber, for example his name, telephone number, and e-mail ID (electronic mail identity), when he is logged on, and otherwise to display a message indicating that the subscriber is not logged on."   Wood '808 at 5:54-58. |
| | • "On initially accessing the web facility 22, the web page manager 36 produces the web page for example with logos in the frames 51 and 52, an advertising banner obtained from the advertisement server in the frame 53, and with the frame 57 presenting options (e.g. function buttons and/or editing windows) to permit the subscriber to register or log in. On logging in, the web page manager 36 communicates via the functions 38 and 44 to retrieve data for the subscriber from the database 44 and store this data in the cache 40 for convenient and rapid access. This data can include subscriber information which the page manager 36 then displays in the frame 54 as indicated above, preferences previously stored for the subscriber, and personal directories and call data as discussed further below. The page manager 36 then can also present the frames 55 and 56 for example as shown in FIG. 3, with the frame 57 being blank or containing any desired information."   Wood '808 at 6:1-17. |

87

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
|  | • Fig. 3 (disclosing an example of a web page layout which can be provided in the arrangement of FIGS. 1 and 2.):  Fig. 3 |
| receiving a call connect instruction from the subscriber; and | **Wood '808** discloses receiving a call connect instruction from the subscriber. *See, e.g.:* "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called |

88

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at 2:6-16. |
| instructing the call processing system to connect the first call to a third communication device. | **Wood '808** discloses instructing the call processing system to connect the first call to a third communication device.<br><br>*See, e.g.:*<br><br>• "establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at Claim 1.<br><br>• "According to one aspect, this invention provides a method of making a telephone connection comprising the steps of: remotely accessing a computer network facility to produce at the computer network facility a telephone connection message including information identifying calling and called telephone numbers; communicating the telephone connection message from the computer network facility to a telephone switch via a switch-computer interface; and establishing a telephone connection between the calling and called telephone numbers from the switch in response to the telephone connection message." Wood '808 at 2:6-16.<br><br>• "Thus the invention enables subscribers to control telephone connections, and obtain information from telephone directories and call logs, using a web browser without any need for extra hardware to couple the browser to the telephone. Call logs are maintained without requiring the browsers of the subscribers to be active. In addition, the web or computer network facility can be accessed by each subscriber from any location with web access facilities." Wood '808 at 2:31-38.<br><br>• "For example, clicking on the button 75 labelled DIAL triggers the |

89

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| | telephone switch 16 to set up a telephone connection between the subscriber's telephone 10 and a telephone directory number in the windows 68." Wood '808 at 6:46-50.<br><br>• "On clicking the DIAL button 75, the web page manager 36 communicates a message, containing a dial request, a calling telephone number CN of the subscriber (as displayed in the frame 54), and a called telephone number DN from the windows 68, via the functions 38 and 44 to the call control interface 46, via which this message is forwarded via the path 44 and SCI 46 to the telephone switch 16. The switch 16 checks validity of the telephone numbers and that the subscriber's telephone 10 (calling telephone number CN) is on-hook, and provides a (possibly distinctive) ringing signal to the telephone 10. The subscriber, expecting this ring signal, takes his telephone 10 off-hook, and this is detected by the telephone switch 16 in conventional manner, in response to which the switch 16 sets up the desired telephone connection to the called number DN in the same manner as if the number DN had been dialled by the subscriber at the telephone 10. Error and/or status messages can be communicated from the telephone switch 16 via the SCI 46, path 44, and functions 46, 44, and 38 to the web page manager 36, and displayed on the web page, as desired and appropriate." Wood '808 at 6:56-7:9.<br><br>• Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |

90

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|---|
| | |  |
| 41. The method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol. | | **Wood '808** discloses the method as defined in claim 40, wherein the Internet Protocol proxy is a Session Internet Protocol (SIP) proxy that converts SS7 signaling to SIP protocol.<br><br>*See* claim 40 above:<br><br>• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 42. The method as defined in claim 40, the method further comprising using two stage calling during the first outcall, wherein at least one of the two | | **Wood '808** discloses the method of claim 42, further comprising using two stage calling during the first outcall, wherein at least one of the two stages includes |

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| stages includes dialing a private branch exchange extension. | dialing a private branch exchange extension. |
| | *See* claim 40 above. |
| | • "The telephone switch 16 can be a central office (C.O.) forming part of the public switched telephone network (PSTN), or a PBX or telephone key system which is coupled to the PSTN in a known manner."    Wood '808 at 3:29-31. |
| 43. The method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. | **[Short_Ref]** discloses the method as defined in claim 40, wherein the call connect instruction is provided using DTMF tones. |
| | *See* claim 40 above: |
| | • "For example, the telephone 10 can be a conventional telephone with pulse or DTMF (dual-tone multi-frequency) dialling, with or without any additional functions for control or information display, coupled to the telephone switch 16 via a twisted wire pair constituting the path 14." Wood '808 at 3:33-37. |
| 49. The method as defined in claim 40, wherein the first communication device resides behind a | **Wood '808** discloses the method as defined in claim 40, wherein the first communication device resides behind a firewall. |

92

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
| firewall. | *See* claim 40 above: |
| | • To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to comb |
| 50. The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. | **Wood '808** discloses The method as defined in claim 40, wherein the first communication device is connected to a private branch exchange system. |
| | See claim 40 above: |
| | • "The telephone switch 16 can be a central office (C.O.) forming part of the public switched telephone network (PSTN), or a PBX or telephone key system which is coupled to the PSTN in a known manner." Wood '808 at 3:29-31.<br><br>• "Telephone call management is provided via a computer network (web) facility which can be remotely accessed by subscribers using web browsers. The web facility includes an information database for storing personal telephone directories and call logs, and a telephone call control system coupled to a telephone switch via a switch-computer interface. Information on calls to and/or from telephone numbers of subscribers is communicated from the switch to the web facility to be stored in the database without requiring the subscribers' browsers to be active. Subscribers can make telephone calls and control telephone |

93

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 6,091,808 ("Wood '808") |
|---|---|
|  | communications via the browsers and the web facility. Subscribers do not require any hardware or software in addition to a telephone and web browser." Wood '808 at Abstract.<br><br>Fig. 1 (disclosing a block diagram schematically illustrating an arrangement in accordance with an embodiment of the invention): |

94

Exhibit A-31

Initial Invalidity Claim Chart for
United States Patent No. 7,822,188
Based on U.S. Pat. No. 7,194,080 ("Worsham")

Subject to the reservations stated in Defendants' Initial Invalidity Contentions ("Invalidity Contentions"), U.S. Pat. No. 7,194,080 (Worsham et al.) invalidates Claims 1- 37, 40-43 and 49-50 of United States Patent No. 7,822,188 (the "'188 Patent") pursuant to 35 U.S.C. § 102 and/or 35 U.S.C. § 103. Worsham was published on Mar. 20, 2007, from an application with a priority date of at least June 29, 2001, before the alleged invention of the '188 Patent.

The analysis provided in this chart in some instances uses CallWave Communications, LLC's ("CallWave") proposed (or implied) claim constructions, which Defendants does not believe will be sustained by the Court. To the extent any of the charted prior art references should fail to disclose an element of any claims of the '188 Patent, Defendants reserve the right to rely upon the knowledge of one skilled in the art, or any other disclosed prior art references, alone or in combination, whether produced by Defendants or by CallWave, to show the element and thereby invalidate those claims. In addition, Defendants have listed references in their Invalidity Contentions that they may rely on to establish the knowledge and understanding of a person of ordinary skill in the art at the time of the claimed invention. Citations given in the chart below are merely representative of the respective elements and are not meant to be exhaustive.

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| 1. A method of processing calls, the method comprising: | **Worsham** discloses a method of processing calls.<br><br>*See, e.g.:*<br><br>• "The present invention generally relates to providing a telephonic connection between a calling party and a called party. More particularly, the present invention relates to attempting to connect the calling party to the called party by sequentially ringing numbers in an alternative number list associated with a main number of the called party"   Worsham at 1:7-12.<br><br>• "An exemplary embodiment of the present invention utilizes a Sequential Ring Application that is installed on a Service Control Point (SCP). The Sequential Ring Application (SRA) can be implemented as a software and/or hardware application executable by the SCP." Worsham at 2:3-7.<br><br>• "When the SCP detects the of the query resulting from the T_No_Answer trigger or of the T_Busy trigger, the SCP determines the called telephone number from a data packet sent by the called SSP over |

2

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | an SS7 data link." Worsham at 2:23-26 . |
| storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber; | **Worsham** discloses storing in computer readable memory associated with a call processing system a phone address associated with a first subscriber. <br><br> *See, e.g.:* <br><br> • "The popularity of the cellular telephone evidences the fact that modern telephone users desire to be reachable to calling parties without being restricted by physical location. Before cellular telephones were so widely available, telephone users in many areas could subscribe to a call forwarding service from their local telephone service provider. Call forwarding could be used to associate the subscriber's main number with an alternative number. When a calling party attempted to reach the subscriber, while the call forwarding service was activated, the alternative number would be rung, instead of the main number. Thus, a subscriber could enjoy the freedom to change its physical location, while maintaining some ability to receive calls that were actually made to the user's main number. The subscriber could typically forward incoming calls to any other telephone number." Worsham at 1:16-30. <br><br> • "When the SRA is invoked, the SRA will access a database associated with the SCP to obtain a call list associated with the called telephone number. The SRA will determine a first alternative number and will send an instruction to the triggered SSP to ring the alternative number." Worsham at 2:32-36. <br><br> • "An SSP 104 may have a plurality of subscriber lines connected thereto, such as a wireline telephone 100." Worsham at 3:56-58. <br><br> • "Much of the intelligence utilized by the AIN 101 to switch calls and provide other telecommunications services resides in a Service Control Point (SCP) 114. As is known to those skilled in the art, SCPs 114 were initially integrated into the network 101 to handle message translations |

3

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | and billing transactions for the implementation of 800-number services. An 800 number subscriber has at least one telephone number that can be called by a telephone user. Because there is no physical Central Office or geographic area that corresponds to the 800-area code, it is more economical to provide a few central locations at which a lookup of the directory number for an 800 call can be made, than to provide the requisite translation information at all SSPs 104, 106. SCPs 114 may have associated databases for directory numbers corresponding to functional 800 numbers."   Worsham at 4:1-15. |
| | • "SCP 114 also may have databases that identify customers that are subscribers to one or more telecommunication services (e.g., caller ID). To maximize the efficiency of processing data and calls at each SSP 104, 106, relatively small sets of triggers are defined. A trigger in the AIN 101 is an event associated within a call instance that generates a data packet to be sent from an SSP to a SCP 114. The trigger causes the SCP 114 to query associated databases to determine whether some calling feature or service should be implemented for a particular call. The instructions based on this query are returned to the SSP 104, 106 from the SCP 114 in a return data packet over an SS7 datalink 108, 110, 112."   Worsham at 4:16-27. |
| | • "In the example depicted in FIG. 1, a user of the telephone 100 can ring another telephone 130 by dialing a directory number associated with the telephone 130."   Worsham at 4:50-52. |
| | • *See* Fig. 1: |

4

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| |  Fig. 1 |
| storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network; | **Worsham** discloses storing in computer readable memory a plurality of phone addresses for the subscriber associated with at least one network selected from the group including a wireline network, a wireless network, and/or an Internet network.<br><br>*See, e.g.*:<br><br>• "The popularity of the cellular telephone evidences the fact that modern telephone users desire to be reachable to calling parties without being restricted by physical location. Before cellular telephones were so widely available, telephone users in many areas could subscribe to a call forwarding service from their local telephone service provider. Call forwarding could be used to associate the subscriber's main number with an alternative number. When a calling party attempted to reach the subscriber, while the call |

5

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | forwarding service was activated, the alternative number would be rung, instead of the main number. Thus, a subscriber could enjoy the freedom to change its physical location, while maintaining some ability to receive calls that were actually made to the user's main number. The subscriber could typically forward incoming calls to any other telephone number."  Worsham at 1:16-30. |
| | • "When the SRA is invoked, the SRA will access a database associated with the SCP to obtain a call list associated with the called telephone number.   The SRA will determine a first alternative number and will send an instruction to the triggered SSP to ring the alternative number."  Worsham at 2:32-36. |
| | • "An SSP 104 may have a plurality of subscriber lines connected thereto, such as a wireline telephone 100."   Worsham at 3:56-58. |
| | • "Much of the intelligence utilized by the AIN 101 to switch calls and provide other telecommunications services resides in a Service Control Point (SCP) 114. As is known to those skilled in the art, SCPs 114 were initially integrated into the network 101 to handle message translations and billing transactions for the implementation of 800-number services. An 800 number subscriber has at least one telephone number that can be called by a telephone user. Because there is no physical Central Office or geographic area that corresponds to the 800-area code, it is more economical to provide a few central locations at which a lookup of the directory number for an 800 call can be made, than to provide the requisite translation information at all SSPs 104, 106. SCPs 114 may have associated databases for directory numbers corresponding to functional 800 numbers."  Worsham at 4:1-15. |
| | • "SCP 114 also may have databases that identify customers that are subscribers to one or more telecommunication services (e.g., caller ID). To maximize the efficiency of processing data and calls at each SSP 104, 106, relatively small sets of triggers are defined. A trigger |

6

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | in the AIN 101 is an event associated within a call instance that generates a data packet to be sent from an SSP to a SCP 114. The trigger causes the SCP 114 to query associated databases to determine whether some calling feature or service should be implemented for a particular call. The instructions based on this query are returned to the SSP 104, 106 from the SCP 114 in a return data packet over an SS7 datalink 108, 110, 112." Worsham at 4:16-27. |
| | • "In the example depicted in FIG. 1, a user of the telephone 100 can ring another telephone 130 by dialing a directory number associated with the telephone 130." Worsham at 4:50-52. |
| | • *See* Fig. 1: |
| | 
Fig. 1 |
| participating at the call processing system in a first | **Worsham** discloses participating at the call processing system in a first call with |

7

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| call with the subscriber, wherein the first call is associated with a second phone address; | the subscriber, wherein the first call is associated with a second phone address. *See, e.g.:* <br><br> • To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address; | **Worsham** discloses placing a first outcall from a call processing system to the first called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the first outcall, wherein the first phone address is different than the second phone address. *See, e.g.:* <br><br> • To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| bridging the first call and the first outcall; | **Worsham** discloses bridging the first call and the first outcall. *See, e.g.:* <br><br> • "One trigger is a T_No_Answer trigger, which is fired in response to a call to the main number that is not answered within a predefined number |

8

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | of rings. Another trigger is a T_Busy trigger that is fired in response to a call to the main number that is made when the main number is busy. Each trigger causes the SCP to access the call list and to cause the SSP to ring an alternative telephone number associated with the main telephone number. If this attempt to reach the called party also fails, then the SSP again fires the trigger and an attempt is made to connect the calling party to the next number on the call list." Worsham at Abstract. |
| • | "A sequential number ringing system connecting a calling party to a first alternative number associated with a main number dialed by the calling party ... wherein the SSP is further operative to fire the T_No_Answer trigger in response to a determination that a call to the main number cannot be connected because the main number is not answered within a predefined ring number; wherein the SRA is operative to cause the SSP to connect the calling party to the first alternative number" Worsham at Claim 1; *See also* Claims 3, 10, 15, 20, 23, 31, 32. |
| • | " More particularly, the present invention relates to attempting to connect the calling party to the called party by sequentially ringing numbers in an alternative number list associated with a main number of the called party." Worsham at Field of the Invention. |
| • | "A conventional voice line telephone 100 is connected to the AIN 101 at a switch 104. The switch 104 is also referred to as Service Switching Point (SSP) 104, because of its ability to operate as a switching component of the AIN 101 housed at a central office. The switch 104 will, hereinafter, be referred to as the SSP 104. An SSP 104 may have a plurality of subscriber lines connected thereto, such as a wireline telephone 100. The AIN 101 can have an indefinite number of SSPs 104, 106. The SSPs 104 and 106 communicate with each other over an SS7 protocol data communication link 108 and with other AIN telecommunications components over other SS7 data links 110, 112. Calls can be connected between SSPs 104, 106 over a voice trunk 109. The SS7 data links 108, 110, 112, are used to coordinate the routing of |

9

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | calls and other network functions, while the voice trunk 109 is used to support voice connections between telephones 100, 130, 132, 134." Wortham at 3:51-67.<br><br>• "The SCP 114 is a sophisticated, computerized switching system that responds to data packets and/or triggers over the SS7 data links 110, 112 to route calls and to interconnect other telecommunications components and AIN users to provide telecommunications services."   Wortham at 4:34-38.<br><br>• "FIG. 2 is a block diagram depicting a sequential alternative number ringing system that is an exemplary embodiment of the present invention that operates within an Advanced Intelligent Network (AIN). The AIN 201 of FIG. 2 includes the necessary network elements to connect a call between a calling telephone 200 and a called telephone 230. As described above in connection with FIG. 1, the calling telephone 200 can be used to dial a main telephone number associated with the called telephone 230. The call attempt will be initially processed by the calling SSP 204 which will contact a called SSP 206 associated with the called telephone 230. The calling SSP 204 will contact the called SSP 206 over SS7 datalink 208. The called SSP 206 will ring the called telephone 230 in the conventional manner. If the called telephone 230 is answered, the called SSP 206 will notify the calling SSP 204 that the called telephone 230 has been answered. The calling SSP 204 and the called SSP 206 will cooperate to establish a voice connection over a voice trunk 209. The voice connection will allow a calling party using the calling telephone 200 to conduct a conversation with a called party using the called telephone 230."   Worsham at 5:4-24.<br><br>• "Advantageously, the SRA 215 enables the elimination of the use of a Services Node (not shown) to attempt connections to alternative telephone numbers associated with a main telephone number." Worsham at 5:42-45.<br><br>• "On the other hand, when a call can be completed between the calling |

10

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address; | party telephone 300 and the called party telephone 302, the calling SSP 304 will communicate with the called SSP 306 over the SS7 data link 308 to set up a voice connection over a voice trunk 309."  Worsham at 7:13-17.<br><br>● "Accordingly, the method of FIG. 5 will attempt to connect a calling party to a called party's main telephone number. If this connection cannot be made, the method will determine whether the called party is a sequential ring subscriber. If the called party is a sequential ring subscriber, the method will access a call list and attempt to place the call to each of the alternative telephone numbers included in the call list. The method will track the outcome of the call attempt made to each alternative telephone number. When a successful connection is made, the method will stop any subsequent attempts. On the other hand, when a call attempt cannot be completed, the method will access the call list to get a next alternative number and will attempt to contact that alternative number. When the call list is exhausted, the method will stop." Worsham at 8:60-9:7.<br><br>**Worsham** discloses participating at the call processing system in a second call with the subscriber, wherein the second call is conducted via a subscriber communication device associated with a third phone address.<br><br>*See, e.g.:*<br><br>● To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |

11

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address; and | **Worsham** discloses placing a second outcall from a call processing system to the second called party, wherein the call processing system inserts the first phone address in a callerID field associated with signaling information associated with the second outcall, wherein the first phone address is different than the third phone address.<br><br>*See, e.g.:*<br><br>● To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| bridging the second call and the second outcall. | **Worsham** discloses bridging the second call and the second outcall.<br><br>*See, e.g.:*<br><br>● "One trigger is a T_No_Answer trigger, which is fired in response to a call to the main number that is not answered within a predefined number of rings. Another trigger is a T_Busy trigger that is fired in response to a call to the main number that is made when the main number is busy. Each trigger causes the SCP to access the call list and to cause the SSP to ring an alternative telephone number associated with the main telephone number. If this attempt to reach the called party also fails, then the SSP again fires the trigger and an attempt is made to connect the calling party to the next number on the call list." Worsham at Abstract.<br><br>● "A sequential number ringing system connecting a calling party to a first alternative number associated with a main number dialed by the calling party … wherein the SSP is further operative to fire the T_No_Answer trigger in response to a determination that a call to the main number |

12

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | cannot be connected because the main number is not answered within a predefined ring number; wherein the SRA is operative to cause the SSP to connect the calling party to the first alternative number" Worsham at Claim 1; *See also* Claims 3, 10, 15, 20, 23, 31, 32. |
| | • "More particularly, the present invention relates to attempting to connect the calling party to the called party by sequentially ringing numbers in an alternative number list associated with a main number of the called party." Worsham at Field of the Invention. |
| | • "A conventional voice line telephone 100 is connected to the AIN 101 at a switch 104. The switch 104 is also referred to as Service Switching Point (SSP) 104, because of its ability to operate as a switching component of the AIN 101 housed at a central office. The switch 104 will, hereinafter, be referred to as the SSP 104. An SSP 104 may have a plurality of subscriber lines connected thereto, such as a wireline telephone 100. The AIN 101 can have an indefinite number of SSPs 104, 106. The SSPs 104 and 106 communicate with each other over an SS7 protocol data communication link 108 and with other AIN telecommunications components over other SS7 data links 110, 112. Calls can be connected between SSPs 104, 106 over a voice trunk 109. The SS7 data links 108, 110, 112, are used to coordinate the routing of calls and other network functions, while the voice trunk 109 is used to support voice connections between telephones 100, 130, 132, 134." Wortham at 3:51-67. |
| | • "The SCP 114 is a sophisticated, computerized switching system that responds to data packets and/or triggers over the SS7 data links 110, 112 to route calls and to interconnect other telecommunications components and AIN users to provide telecommunications services." Wortham at 4:34-38. |
| | • "FIG. 2 is a block diagram depicting a sequential alternative number ringing system that is an exemplary embodiment of the present invention that operates within an Advanced Intelligent Network (AIN). The AIN |

13

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | 201 of FIG. 2 includes the necessary network elements to connect a call between a calling telephone 200 and a called telephone 230. As described above in connection with FIG. 1, the calling telephone 200 can be used to dial a main telephone number associated with the called telephone 230. The call attempt will be initially processed by the calling SSP 204 which will contact a called SSP 206 associated with the called telephone 230. The calling SSP 204 will contact the called SSP 206 over SS7 datalink 208. The called SSP 206 will ring the called telephone 230 in the conventional manner. If the called telephone 230 is answered, the called SSP 206 will notify the calling SSP 204 that the called telephone 230 has been answered. The calling SSP 204 and the called SSP 206 will cooperate to establish a voice connection over a voice trunk 209. The voice connection will allow a calling party using the calling telephone 200 to conduct a conversation with a called party using the called telephone 230." Worsham at 5:4-24. |
| | • "Advantageously, the SRA 215 enables the elimination of the use of a Services Node (not shown) to attempt connections to alternative telephone numbers associated with a main telephone number." Worsham at 5:42-45. |
| | • "On the other hand, when a call can be completed between the calling party telephone 300 and the called party telephone 302, the calling SSP 304 will communicate with the called SSP 306 over the SS7 data link 308 to set up a voice connection over a voice trunk 309." Worsham at 7:13-17. |
| | • "Accordingly, the method of FIG. 5 will attempt to connect a calling party to a called party's main telephone number. If this connection cannot be made, the method will determine whether the called party is a sequential ring subscriber. If the called party is a sequential ring subscriber, the method will access a call list and attempt to place the call to each of the alternative telephone numbers included in the call list. The method will track the outcome of the call attempt made to each |

14

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | alternative telephone number. When a successful connection is made, the method will stop any subsequent attempts. On the other hand, when a call attempt cannot be completed, the method will access the call list to get a next alternative number and will attempt to contact that alternative number. When the call list is exhausted, the method will stop." Worsham at 8:60-9:7. |
| 2. The method as defined in claim 1, wherein the first call is initiated by the subscriber. | **Worsham** discloses the method of claim 1, wherein the first call is initiated by the subscriber.<br><br>*See* claim 1 above.<br><br>• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 3. The method as defined in claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition. | **Worsham** discloses the method of claim 1, wherein the first call is forwarded to the call processing system on at least one of a call forward on ring-no-answer condition, a call-forward-all calls condition, or of a forward-on-busy condition.<br><br>*See* claim 1 above. |

15

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
|  | • "Because the SRA will be given control of the call, the SRA can determine whether any subsequent call attempts need to be made. If the call attempt to the first alternative telephone number is unsuccessful (e.g., busy or no answer), then the SRA will cause a similar call attempt to be made to the second alternative telephone number in the call list. This pattern will repeat until either a call is completed or the call list is exhausted (i.e., no un-tried alternative telephone numbers remain in the call list)"  Worsham at 2:54-62. |
|  | • FIG. 1 is a block diagram depicting a conventional call forwarding system that operates within a conventional Advanced Intelligent Network. Modern telephone switching conforms to a telecommunications protocol referred to as Signaling System 7 (SS7). The AIN 101 is a telecommunications switching network that utilizes the well-known SS7 protocol to connect switching centers and other telecommunications resources to provide call routing and various other services to telephone users. Essentially, the AIN 101 is a collection of telecommunications components and interconnections that support the provisioning of AIN messages known as triggers and enable the components to respond to fired triggers by generating responses or by executing an associated instruction. Some AIN components can generate queries and other AIN components can generate responses to queries. Some queries are generated after a certain condition occurs, for example, the firing of a trigger at an SSP."  Worsham at 3:34-50. |
|  | • "In the example depicted in FIG. 1, a user of the telephone 100 can ring another telephone 130 by dialing a directory number associated with the telephone 130. A voice link can be created between the calling telephone 100 and the called telephone 130 over the voice trunk 109, if the called telephone 130 is answered in response to the ring. If the called telephone 130 is not answered and the called telephone 130 is a subscriber to a conventional call forwarding service, a second telephone 132 may be |

16

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | rung in an attempt to connect the calling telephone 100 to a called party associated with the called telephone 130 and the second telephone 132. Alternatively, a third telephone 134 associated with the called party may be rung simultaneously." Worsham at 4:50–62. |
| 4. The method as defined in claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system. | **Worsham** discloses the method of claim 1, wherein the first call is forwarded to a pilot number associated with the call processing system.<br><br>*See* claim 1 above.<br><br>● To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 5. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SS7 signaling. | **Worsham** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SS7 signaling.<br><br>*See* claim 1 above.<br><br>● "The SSPs 104 and 106 communicate with each other over an SS7 protocol data communication link 108 and with other AIN |

17

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | telecommunications components over other SS7 data links 110, 112. Calls can be connected between SSPs 104, 106 over a voice trunk 109. The SS7 data links 108, 110, 112, are used to coordinate the routing of calls and other network functions, while the voice trunk 109 is used to support voice connections between telephones 100, 130, 132, 134." Worsham at 3:59-63. |
| | • "When the SCP detects the of the query resulting from the T_No_Answer trigger or of the T_Busy trigger, the SCP determines the called telephone number from a data packet sent by the called SSP over an SS7 data link." Worsham at 2:23-26. |
| | • "On the other hand, when a call can be completed between the calling party telephone 300 and the called party telephone 302, the calling SSP 304 will communicate with the called SSP 306 over the SS7 data link 308 to set up a voice connection over a voice trunk 309." Worsham at 7:13-17. |
| 6. The method as defined in claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. | **Worsham** discloses the method of claim 1, wherein the first call is initiated via a telecommunications client application hosted on a computer terminal associated with the subscriber. |
| | *See* claim 1 above. |
| | • To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, |

18

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 7. The method as defined in claim 1, wherein the signaling information associated with the first outcall is SIP signaling. | **Worsham** discloses the method of claim 1, wherein the signaling information associated with the first outcall is SIP signaling.<br><br>*See* claim 1 above.<br><br>• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 8. The method as defined in claim 1, wherein the first outcall is placed using an Internet Protocol network. | **Worsham** discloses the method of claim 1, wherein the first outcall is placed using an Internet Protocol network.<br><br>*See* claim 1 above.<br><br>• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, |

19

| U.S. Patent No. 7,822,188 | | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|---|
| | | as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 9. The method as defined in claim 1, wherein the first outcall is placed over a wireless network. | | **Worsham** discloses the method of claim 1, wherein the first outcall is placed over a wireless network.<br><br>*See* claim 1 above.<br><br>●   To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references, as identified in Defendants' Invalidity Contentions, that contain this functionality. |
| 10. The method as defined in claim 1, wherein the first outcall is placed over a switched circuit telephone network. | | **Worsham** discloses the method of claim 1, wherein the first outcall is placed over a switched circuit telephone network.<br><br>*See* claim 1 above.<br><br>●   "Typically, there are two main classes of call forwarding services, including **Switch**-based and Advanced Intelligent Network (AIN) based. Switch-based call forwarding is done entirely by the home switch (the switch the customer is connected to). Any customer interactions to set, change, or delete a forwarding number occur with the subscriber |

20

| U.S. Patent No. 7,822,188 | U.S. Pat. No. 7,194,080 ("Worsham") |
|---|---|
| | (customer) accessing directly the switch. Such a system is usually simple, but the service provide by that system is "as is", and cannot easily be modified or customized.<br><br>"AIN-based call forwarding services involve a trigger and a query/response from a service control point (SCP). Such a system can be modified and customized more easily, but additional resources are often needed such as a trigger in the switch. Typically, once a trigger is provisioned on a customer's line, the trigger cannot be used for multiple services. That is, the trigger can only be mapped to a single service on the SCP. Depending on what the service does, additional resources may be required such as the involvement of a service node (SN). For example, as with so called "flexible call forwarding", a service node primarily is used to play announcements and to collect digits from the customer to change call forwarding settings, but usually it is not used during call processing. Accordingly, disadvantages of an AIN-based system involve the use of other resources such as triggers, SCP, and service node, plus additional trunking service."    Worsham at 1:31-57. |
| 11. The method as defined in claim 1, the method further comprising; | *See* claim 1 above. |
| receiving at the call processing system a third call from a calling party directed to the first phone address; | **Worsham** discloses receiving at the call processing system a third call from a calling party directed to the first phone address.<br><br>• To the extent that Plaintiff contends this prior art reference does not specifically disclose this particular limitation, it would have been obvious to one of ordinary skill in the art at the time of the invention to include such functionality, or to combine this reference with the teachings of other references. |

21